JAMES PUZEY (NV SBN 05745)
jpuzey@nvlawfirm.com
KEARNEY PUZEY DAMONTE
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700

SHERRIE M. FLYNN (*Pro Hac Vice*)
sflynn@ch-law.com
ROBERT K. ASHLEY (*Pro Hac Vice Forthcoming*)
rashley@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiffs and Counter-Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, and individual; BLOCKCHAIN FUNDING, INC. a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCOMPLAINT | Case No. 3:25-cv-00020-MMD-CSD<br><br>**JOINT CASE MANAGEMENT REPORT**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025 |

///

Plaintiffs and Counter-Defendants UTHERVERSE, INC. and BRIAN SHUSTER, on the one hand, and Defendants and Counterclaimants BRIAN QUINN, JOSHUA DENNE, BLOCKCHAIN FUNDING, INC., BLOCKCHAIN ALLIANCE LLC, MASTERNODE PARTNERS, LLC, NIYA HOLDINGS, LLC and NIMA MOMAYEZ, and Defendant LYNNE MARTIN on the other hand, by and through their respective counsel of record, jointly submit this Joint Case Management Report pursuant to Order Setting Case Management Conference.[1] ECF 31.

1. **Statement of the Case**

    a.    **Plaintiff and Counter-Defendants' Statement of the Case**

Defendants Quinn and Denne, with the full knowledge and participation of the other Defendants, concocted an elaborate and premeditated scheme to defraud Plaintiffs UI and Shuster, embezzle and extort money from them and others, and eventually bankrupt UI and Utherverse Digital, Inc. ("UDI"), another company owned by Shuster, to cover up their scheme. The scheme targeted Shuster, UI and UDI because of their involvement in virtual world environments and cryptocurrency, and their vulnerability resulting from the need for cash for development of the virtual world environments.

Quinn and Denne convinced Shuster they were trustworthy, could infuse millions of dollars of investments into UI and UDI for virtual world development, and could assist in the launching of a cryptocurrency for trading and use in those virtual worlds. Quinn and Denne promised to pay up to $5 million US dollars to cover all the costs to prepare, market and rapidly launch a top cryptocurrency that would fund the expansion and development costs of UDI's virtual world software, identify and bring investors interested in purchasing UI stock, and market and presell cryptocurrency tokens, to infuse much needed cash into the companies. Quinn and Denne reneged on their promises.

In furtherance of the scheme, Quinn and Denne sold stock in UI that they had no right to sell, presold UTHER tokens under falsified Simple Agreements for Future Tokens ("SAFTs") and

---

[1] During counsel for the parties meet and confer on March 27, 2025, counsel for Defendants indicated that he would be appearing for Defendant Jeremy Roma. Counsel acknowledged the default notice that had been submitted by Plaintiffs and discussed a potential resolution to setting aside the default. Those discussions are ongoing. In the interim, the undersigned counsel for Defendants filed a Notice of Appearance for Mr. Roma. *See* Notice of Appearance [ECF 38].

pocketed the money from the sales. They also convinced Shuster to enter into a variety of loans and agreements that were ultimately determinantal to UI and UDI, based on false and misleading statements, among numerous other misdeeds and violations of the law.

Quinn and Denne also attempted to entrap Shuster to violate the law to maintain control over him and his companies. When Shuster began to question their motives, Quinn and Denne threatened to bring bogus legal action against Shuster and his companies in a further attempt to extort money from them. Denne and some of the Defendants named herein did file a frivolous lawsuit against Shuster, his companies, and others seeking more than $2.9 billion dollars in alleged damages (*i.e.*, *Denne v. Shuster*, Cal. Sup. Ct., Co. of Orange, Case No. 30-2024-01438251-CU-FR-NJC, filed Nov. 8, 2024; the "Orange County Case"). However, the action had multiple deficiencies including that the Orange County court lacked jurisdiction over the defendants. On April 2, 2025, Plaintiffs in the Orange County Case requested dismissal without prejudice.

Plaintiffs' Complaint includes counts for Violation of the Racketeer Influenced and Corrupt Organizations Act, Fraud in the Inducement, Intentional Misrepresentation, Conversion, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Tortious Interference with Contract. Plaintiffs seek, among other relief, treble damages, an order enjoining Defendants from engaging in additional unlawful acts, an order rescinding the agreements at issue, punitive damages, attorneys fees and costs of suit.

b.  **Defendants and Counterclaimants' Statement of the Case**

Plaintiffs/Counterdefendants Brian Shuster, Utherverse, Inc., Utherverse Digital, Inc., Peter Gantner, Nexus Venture LLC, Ari Good, Gary Shuster, and other entities under Brian Shuster's control orchestrated and/or participated in a scheme to defraud investors, including Counterclaimants, and defamed certain Counterclaimants.

In short, Utherverse Inc. and Shuster developed a digital world, a "metaverse" (called "Utherverse"), in which participants could access virtual economies, trade using cryptocurrencies, and engage in other virtual-world activities. Shuster falsely misrepresented the assets (including patents), user data, financial data, operability, and profitability of Utherverse, Inc. and its metaverse to Counterclaimants in order to induce Counterclaimants to enter into contracts, expend their own

time and effort, provide their own funding, and/or procure funding from others (including other Counterclaimants) in the form of investor capital, loans, and payments for future "Uther" tokens. Counterdefendants fraudulently misled Counterclaimants to believe that they had or would acquire interest in Utherverse Inc. and/or its tokens such that taking the foregoing actions to support Utherverse and its metaverse were in Counterclaimants' own interest. Counterdefendants ultimately misused the aforementioned funds or otherwise unjustly retained them. Counterdefendants, particularly Shuster as Chairman of Utherverse Inc., further sent libelous letters about certain Counterclaimants to investors falsely alleging that those Counterclaimants altered documents, stole investor funds, and stole Utherverse money and stock. Counterclaimants accordingly brought claims related to the fraud and defamatory conduct.

Counterclaimants largely deny Counterdefendants' allegations of violation of the Racketeer and Corrupt Organizations Act of 18 U.S.C. § 1964, fraud, conversion, breach of fiduciary duty, aiding and abetting of fiduciary duty, and tortious interference with contract. Counterclaimants' defenses include those listed in the Answer to Complaint and Countercomplaint [ECF 30], at pp. 17-18.

**2. Jurisdictional Basis**

Jurisdiction of this Court is based on 28 U.S.C. § 1331 as Plaintiffs' claim is rooted in a federal statute, namely the Racketeer Influenced and Corrupt Organizations Act ("RICO"; 18 U.S.C. §§ 1961 et seq.). The Court has supplemental jurisdiction over the state law claims and counterclaims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case and controversy.

**3. Additional Parties and Amendment of the Pleadings**

Currently, the parties are not aware of any additional parties to be added to the case. If any additional parties are identified through discovery, an appropriate Motion to Amend will be filed to add them. Counterclaimants intend to file an amended counterclaim. Counter-Defendants reserve their right to file a Motion to Dismiss.

**4. Pending Motions**

Currently, there are no pending motions before the Court.

5. **Related Cases**

The parties believe that a case pending in the Superior Court of California, County of Orange, captioned, *Joshua Denne et al. v. Brian Shuster et al.*, Case No. 30-2024-01438251-CU-FR-NJC is related to the instant case. All defendants served in that case have moved to quash service of the summons based on a lack of personal jurisdiction. The hearing on defendants' motions is scheduled for June 25, 2025. On April 2, 2025, Plaintiffs in the Orange County Case requested dismissal without prejudice. As of the filing of this Joint Report, the Orange County Case has not been dismissed.

6. **Statement Regarding Discovery**

   a. **Rule 26(f) Initial Disclosures**

   The parties agreed to exchange initial disclosures on April 18, 2025.

   b. **Discovery Requests Served**

   As of the date of filing of this Joint Report, no discovery requests have been served by any party.

   c. **Protective Order**

   The parties anticipate that a protective order will be necessary to protect confidential information. The parties have met and conferred and expect to submit a Stipulated Protective Order for the Court's approval on or before April 30, 2025.

   d. **Timing, Sequencing and Phasing of Discovery**

   Concurrently with this Joint Report, the parties are submitting a proposed discovery schedule for the Court's consideration. The parties are unaware of any issues related to the timing, sequencing, phasing, or scheduling of discovery.

   e. **Discovery Outside of Nevada**

   The parties anticipate that discovery may be necessary outside of Nevada. At least two defendants reside in California, and at least one defendant and two counter-defendants are residents of Arizona. The parties plan to meet and confer regarding taking depositions by remote means. Additionally, third-party subpoenas for documents and testimony may also be necessary outside of Nevada.

  **f.**  **Number of Depositions**

Currently, the parties anticipate that no more than ten (10) depositions will be required per side, as set forth in Federal Rules of Civil Procedure (FRCP), Rule 30. If necessary, the parties will meet and confer on any additional depositions beyond the ten-deposition limit.

**7.**  **Electronically Stored Information (ESI)**

The parties expect the types of ESI to include emails, text messages, social media posts, word processing documents, spreadsheets, presentations, photographs, video and audio files, voicemails, and corresponding metadata. The ESI is believed to exist on the parties' computers, servers, in databases, on cell phones, and in social media applications.

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

The parties agreed that all documents will be produced utilizing a load file. Files not susceptible to production in PDF format (i.e., spreadsheets, audio files, video files, photographs, etc.) will be produced in native format. All other files will be produced in a searchable PDF format. Emails will be produced with attachments, if any, following the email to which it corresponds. The parties agree not to degrade the searchability of documents as part of the document production process.

Pursuant to Federal Rule of Evidence 502(d), the parties agree that the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery. The parties agree to the process set forth in FRCP 26(b)(5) regarding a claim of privilege or protection for information produced in discovery.

Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**8.**  **Trial by Jury and Length of Trial**

A jury trial has been requested by all parties that have appeared in the action. The expected length of the trial is 7-10 court days.

///

**9.   Potential Settlement**

Counsel for the respective parties have touched on potential settlement, but have agreed that, at minimum, written discovery is necessary prior to a court sponsored settlement conference or other potential avenues for settlement.

**10.   Consent to Magistrate Judge**

Currently, the parties have not consented to proceed before the magistrate judge.

**11.   Bifurcation or Phasing of Trial**

Currently, the parties believe that bifurcation or phasing of trial is unnecessary.

DATED: April 3, 2025                         COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn
Sherrie M. Flynn. Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248- 4820
Email: sflynn@ch-law.com

James W. Puzey, Esq
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851- 8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs and Counter-Defendants, Utherverse, Inc. and Brian Shuster

DATED: April 3, 2025                         BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Maximilien D. Fetaz
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

Attorneys for Defendants and Countercomplainants, Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Niya Holdings, LLC, and Nima Momayez, and Defendants, Lynn Martin and Jeremy Roma