1  JAMES PUZEY (NV SBN 05745)
   jpuzey@nvlawfirm.com
2  KEARNEY PUZEY DAMONTE
   800 South Meadows Parkway, Suite 800
3  Reno, Nevada 89521
   Telephone: (775) 851-8700
4
   SHERRIE M. FLYNN (*Pro Hac Vice*)
5  sflynn@ch-law.com
   ROBERT K. ASHLEY (*Pro Hac Vice Forthcoming*)
6  rashley@ch-law.com
   COLEMAN & HOROWITT, LLP
7  Attorneys at Law
   499 W. Shaw Avenue, Suite 116
8  Fresno, California 93704
   Telephone: (559) 248-4820
9  Facsimile: (559) 248-4830

10 Attorneys for Plaintiffs and Counter-Defendants (excluding Utherverse International Ltd.)

11              **UNITED STATES DISTRICT COURT**

12          **DISTRICT OF NEVADA – RENO DIVISION**

13

14 | UTHERVERSE, INC., a Nevada corporation, | Case No. 3:25-cv-00020-MMD-CSD
15 | BRIAN SHUSTER, an individual, |

16 |                    Plaintiffs, | **MEMORANDUM OF POINTS AND**
                                      **AUTHORITIES IN SUPPORT OF**
17 | v. |                             **MOTION TO DISMISS AMENDED**
                                      **COUNTERCLAIM**
18 | BRIAN QUINN, an individual; JOSHUA
   | DENNE, and individual; BLOCKCHAIN      **ORAL ARGUMENT REQUESTED**
19 | FUNDING, INC. a Delaware corporation;
   | BLOCKCHAIN ALLIANCE LLC, a             **Complaint Filed:** January 10, 2025
20 | Wyoming Limited Liability Company;
   | MASTERNODE PARTNERS, LLC, a
21 | Wyoming Limited Liability Company;      **Counterclaim Filed:** February 28, 2025
   | LYNNE MARTIN, an individual; NIYA
22 | HOLDINGS, LLC, a Nevada limited liability **Amended Counterclaim Filed:** April 27, 2025
   | company; NIMA MOMAYEZ, an individual;
23 | and JEREMY ROMA, an individual,

24 |                    Defendants. | Date:        TBD
                                      Time:        TBD
25 | ————————————————————— | Courtroom:   TBD
   | AND RELATED COUNTERCLAIM.
26 |                                | Filed Concurrently with Notice of Motion and
27 |                                | Motion to Dismiss and [Proposed] Order

28

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

PROCEDURAL HISTORY...........................................................................................2

DISCUSSION ...............................................................................................................2

    A.    Legal Standards Governing Rule 12(b)(6) Motions ......................................3

    B.    All Causes of Action in the ACC Comprise Impermissible "Shotgun Pleading"..........3

    C.    Allegations of Fraud, Even if Not Necessary Elements of a Claim, Must be Pleaded With Specificity ..........................................................................5

    D.    The First Cause of Action Fails Because Fraud is Not Pleaded With Particularity.......6

    E.    The Second Cause of Action Fails Because a Fiduciary Relationship Is Not Pleaded ...7

    F.    The Third Cause of Action Fails Because There Can Be No Aiding and Abetting if There is No Fiduciary Duty..............................................................................9

    G.    The Fourth Cause of Action Fails Because Civil Conspiracy is Not Pleaded With Specificity and is Prohibited by the Intracorporate Conspiracy Doctrine ...........................10

        1.    Good's Role in the Alleged Conspiracy is Not Alleged With Specificity .......10

        2.    Gantner's Role in the Alleged Conspiracy is Not Alleged With Specificity ...11

        3.    Nexus' Role in the Alleged Conspiracy is Not Alleged With Specificity .......11

        4.    Gary's Role in the Alleged Conspiracy is Not Alleged With Specificity ........12

        5.    The ACC Violates the Intracorporate Conspiracy Doctrine ...........................12

    H.    The Second, Third and Fourth Causes of Action Also Fail Because Damages Alleged Were Suffered by Corporate Entities Requiring a Shareholder Derivative Action .............13

    I.    The Fifth Cause of Action Fails Because the Terms of the Niya Note and How it Was Allegedly Breached Are Not Set Forth in the Complaint ......................................13

    J.    The Sixth Cause of Action Fails Because the Terms of the Blockchain Funding SAFT Allegedly Breached Are Not Set Forth in the Complaint ......................................16

    K.    The Seventh Cause of Action for Breach of the Masternode SAFT Fails for the Same Reasons That the Sixth Cause of Action Fails.................................................17

L.    The Eighth Cause of Action Fails Because the Terms of the Blockchain Funding Note and How it Was Breached Are Not Alleged..........................................................................18

M.    The Ninth Cause of Action Fails Because the Complaint Does Not Provide Facts Sufficient to Determine Even What Agreement is at Issue ................................................19

N.    Reservation of Right to Contest Personal Jurisdiction ................................................20

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*
    484 F.Supp.3d 921 (D. Or. 2020) .......................................................................... 4

*Atlantic Corp. v. Twombly,*
    550 U.S. 544, 570 (2007) ......................................................................................14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................ 1, 3, 14, 15, 19

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 570 (2007) ......................................................................................14

*Cork v. CC-Palo Alto, Inc.*
    534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................. 10

*Chur v. Eighth Judicial District Court in and for County of Clark*
    136 Nev. 68 (2020) .................................................................................................. 8

*Daily Income Fund, Inc. v. Fox*
    464 U.S. 523 (1984) ............................................................................................... 13

*Destfino v. Reiswig*
    630 F.3d 952, 958 (9th Cir. 2011) .........................................................................4

*Ebeid ex rel. U.S. v. Lungwitz*
    616 F.3d 993 (9th Cir. 2010) ...................................................................... 5, 7, 11

*Evans v. Chichester School Dist.*
    533 F.Supp.2d 523 (E.D. Pa. 2008) .................................................................... 12

*Fayer v. Vaughn*
    649 F.3d 1061 (9th Cir. 2011) ................................................................................ 3

*Gonzales v. Lloyds TSB Bank*
    532 F. Supp. 2d 1200 (C.D. Cal. 2006) ............................................................. 10

*Guzman v. Johnson,*
    137 Nev. 126 (2021) ................................................................................................ 7

*In re Amerco Derivative Litigation*
    127 Nev. 196 (2011) ................................................................................................ 9

*In re Gilead Scis. Sec. Litig.*
    536 F.3d 1049 (9th Cir. 2008) ................................................................................ 3

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,*
    326 U.S. 310, 316 (1945)........................................................................................20

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ................................................................................ 5

*Kwan v. SanMedica, Int'l*
    854 F.3d 1088 (9th Cir. 2017) ................................................................................ 3

*Levitt v. Yelp! Inc.*

765 F.3d 1123 (9th Cir. 2014) ................................................................................... 3

*Mason v. County of Orange*
251 F.R.D. 562 (C.D. Cal. 2008) ............................................................................ 4

*Mollett v. Netflix, Inc.*
795 F.3d 1062 (9th Cir. 2015) ................................................................................. 3

*Moser v. Benefytt, Inc.,*
8 F.4th 872, 877 (9th Cir. 2021) ..............................................................................20

*North Arlington Medical Bldg., Inc. v. Sanchez Constr. Co.*
86 Nev. 515 (1970) ................................................................................................ 17

*Parametric Sound Corporation v. Eighth Judicial District Court in and for County of Clark*
133 Nev. 417 (2017) .............................................................................................. 13

*Patel v. Am. Nat'l Prop. & Cas. Co.*
367 F.Supp.3d 1186 (2019) .............................................................................. 14, 15

*Petricevic v. Shin*
No. CV 20-00283 LEK-WRP) 2021 WL 2700382 (D. Hawaii, June 30, 2021) ........................12

*Pinel v. Aurora Loan Servs., LLC*
814 F.Supp.2d 930 (N.D. Cal. 2011) ....................................................................... 5

*Riggins v. Polk County Procurement Dept.*
No. 8:12-CV-1755-T-17TBM, 2013 WL 5304056 (M.D. Fla., Sept. 20, 2013) ..................... 19

*Rockridge Trust v. Wells Fargo, N.A.*
985 F. Supp. 2d 1110. (N.D. Cal 2013) ................................................................... 10

*Shoen v. SAC Holding Corp.*
122 Nev. 621 (2006) ............................................................................................... 8

*Shumlich v. U.S. Bank, N.A.*
No. 2:24-CV-01681-MJP, 2025 WL 19871 (W.D. Wash., Jan. 2, 2025) ................................. 4

*Sierra Development Co. v. Chartwell Advisory Group, Ltd.*
223 F.Supp.3d 1098 (D. Nev. 2016) ...................................................................... 14

*Suarez-Smith v. BAC Home Loans Servicing, LP*
(D. Nev., Oct. 21, 2011, No. 2:11-CV-00201-GMN) 2011 WL 5025143, at *4.......................10

*Swatz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) ............................................................................... 5, 7

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) ................................................................ 5,6,  7, 11

*W. Mining Council v. Watt*
643 F.2d 618 (9th Cir. 1981) ................................................................................... 3

*Wasco Prods. v. Southwall Techs., Inc.*
435 F.3d 989 (9th Cir. 2006) ................................................................................ 10

*Ziglar v. Abbasi*
582 U.S. 120 (2017) .............................................................................................. 12

1

**Statutes**

2

18 U.S.C. §§ 1961 ................................................................................................................ 1

3

**Other**

4

FRCP 8 ........................................................................................ 3, 5, 9, 14, 19

5

FRCP 9 ........................................................................... 1, 5, 6, 9, 10, 11, 12, 17

6

FRCP 10 ...................................................................................................... 3, 5

7

FRCP 11 ......................................................................................................... 4

8

FRCP 12 ........................................................................................ 2, 3, 20, 21

9

FRCP 17 ........................................................................................................ 13

10

FRCP 23.1 ................................................................................................ 2, 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3        This is an action for violation of the Racketeer Influenced and Corrupt Organizations Act

4    (18 U.S.C. §§ 1961 et seq.), fraud in the inducement, intentional misrepresentation, and related

5    causes of action. Defendants Brian Quinn ("Quinn") and Joshua Denne ("Denne"), with the full

6    knowledge and participation of the other Defendants, concocted an elaborate and premeditated

7    scheme to defraud Plaintiffs Utherverse Inc. ("UI") and Brian Shuster ("Shuster"), embezzle and

8    extort money from them and others, and eventually bankrupt UI and Utherverse Digital, Inc.

9    ("UDI") to cover up their scheme. The scheme targeted UI, UDI, and Shuster because of their

10   involvement in virtual world environments and cryptocurrency, and their vulnerability resulting

11   from the need for cash for development of the virtual world environments.

12       Quinn and Denne convinced Shuster they were trustworthy, could infuse millions of dollars

13   of investments into UI and UDI for virtual world development, and could assist in the launching of

14   a cryptocurrency for trading and use in those virtual worlds.  In furtherance of the scheme, Quinn

15   and Denne sold stock in UI that they had no right to sell, presold "UTHER" cryptocurrency tokens

16   under falsified Simple Agreements for Future Tokens ("SAFTs") and pocketed the money from the

17   sales.  They also convinced Shuster to enter into a variety of loans and agreements that were

18   ultimately determinantal to UI and UDI, based on false statements, among numerous other misdeeds

19   and violations of the law.

20       Counter-Defendants, Shuster, UI, UDI, Peter Gantner ("Gantner"), Nexus Venture LLC

21   ("Nexus"), Ari Good ("Good") and Gary Shuster ("Gary"; collectively "Moving Parties")

22   respectfully move to dismiss in its entirety the Amended Counterclaim ("ACC"; Doc. 48). The

23   ACC asserts nine causes of action sounding in fraud, breach of fiduciary duty, aiding and abetting,

24   civil conspiracy, and various breach of contract claims. As set forth below, each claim is fatally

25   deficient under the Federal Rules of Civil Procedure ("FRCP") and applicable law. The fraud-based

26   allegations fail to satisfy the specificity requirement of FRCP 9(b) and amount to nothing more than

27   "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" forbidden by the Supreme Court.

28   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The fiduciary duty and related aiding/conspiracy

claims are improperly brought as direct claims despite alleging only harm to the corporation – a classic derivative scenario requiring compliance with FRCP Rule 23.1. The contract-based claims fare no better: Counterclaimants do not plead the basic elements of breach or damages with plausibility.

Moreover, the ACC violates basic pleading rules by impermissibly lumping together multiple defendants and multiple claims in a confusing "shotgun" manner that fails to give fair notice of who is alleged to have done what, and which of the scattered and disordered allegations underlie which causes of action. For these reasons, and as detailed further below, the ACC should be dismissed. Moving Parties respectfully request dismissal with prejudice, as the pleading's fundamental flaws – legal and factual – cannot be cured by further amendment.

## PROCEDURAL HISTORY

On January 10, 2025, Shuster and UI filed their Complaint (Doc. 1).  On February 28, 2025, Defendants, except Jeremy Roma ("Roma")[1], answered and, except for Defendant Lynne Martin (Martin"), counterclaimed (Doc. 30).  On April 27, 2025, Defendants (including Roma) filed an amended answer, and except for Martin and Roma, filed the ACC at issue here.  The ACC names UDI, Utherverse International Ltd., ("UI Ltd."), Gantner, Nexus, Good, and Gary as Counter-Defendants, in addition to Plaintiffs UI and Shuster. (*See* Doc 48.).

## DISCUSSION

The Amended Counterclaim attempts to set forth nine causes of action: (1) Fraud (against Shuster, UI and UDI); (2) Breach of Fiduciary Duty (against Shuster); (3) Aiding and Abetting Breach of Fiduciary Duty (against Good, Gantner, Nexus and Gary); (4) Civil Conspiracy (against Shuster, UI, UDI, Good, Gantner, Nexus, and Gary); (5) Breach of the NIYA Note (against Shuster and UDI); (6) Breach of the Blockchain Funding SAFT (against Shuster and UI Ltd.); (7) Breach of the Masternode SAFT (against Shuster and UI Ltd.); (8) Breach of the Blockchain Funding Note (against Shuster and UDI); and (9) Breach of an Exit Agreement (against Shuster, UI and UDI).

However, as detailed below and pursuant to FRCP 12(b)(6), each cause of action fails to

---

[1] Roma was originally not represented by counsel, and default was entered against him (Doc. 37). Subsequently, Roma engaged the other defendants' counsel to represent him as well, and the parties stipulated to set aside the default (Doc. 44). On April 10, 2025, default was set aside (Doc. 45).

1    state the necessary factual allegations to support a claim for relief.

2    **A.    Legal Standards Governing Rule 12(b)(6) Motions**

3    Pursuant to the FRCP, a complaint may be dismissed because of the plaintiff's "failure to

4    state a claim upon which relief can be granted." FRCP 12(b)(6). A dismissal under Rule 12(b)(6)

5    may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged

6    under a cognizable legal theory. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).

7    All well-pleaded allegations of material fact are taken as true and construed in the light most

8    favorable to the non-moving party. *Kwan v. SanMedica, Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

9    The Federal Rules of Civil Procedure "govern[] the pleading standard 'in all civil actions and

10   proceedings in the United States district courts.'" *Iqbal* at 684.

11   A court need not accept as true "allegations that are merely conclusory, unwarranted

12   deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

13   (9th Cir. 2008).  Nor must a court "assume the truth of legal conclusions merely because they are

14   cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

15   1981); *see also Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

16   The Ninth Circuit is guided by the following principles for Rule 12(b)(6) motions: (1) to be

17   entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply

18   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

19   to give fair notice and to enable the opposing party to defend itself effectively; and (2) the factual

20   allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not

21   unfair to require the opposing party to be subjected to the expense of discovery and continued

22   litigation. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

23   As detail below, the Counterclaim fails in these basic principles such that Moving Parties

24   should not be subjected to the expense of continued litigation.

25   **B.    All Causes of Action in the ACC Comprise Impermissible "Shotgun Pleading"**

26   FRCP Rules 8 and 10(b) prohibit "shotgun pleading" where all allegations are based on an

27   unidentified subset of all pleaded facts all of which are incorporated by reference and made by some

28   or all parties without clarity. "Pleadings that seek to overwhelm defendants with an unclear mass

of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered 'shotgun' pleadings." *A.B. v. Hilton Worldwide Holdings Inc.,* 484 F.Supp.3d 921, 943 (D. Or. 2020). "Another type of 'shotgun' pleading is a complaint that asserts claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id* [internal punctuation omitted]. "Finally, a complaint may constitute impermissible 'shotgun' pleading if it fails to connect its factual allegations to the elements comprising plaintiff's claims such that it denies the parties adequate notice of the allegations supporting each cause of action." *Id.*

Courts have "found impermissible shotgun pleadings present in complaints alleging 'everyone did everything' because such allegations prevent defendants from understanding the nature of the claims asserted against each of them." *Shumlich v. U.S. Bank, N.A.,* No. 2:24-CV-01681-MJP, 2025 WL 19871, at *2 (W.D. Wash., Jan. 2, 2025), citing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ["The district court made clear in this order that plaintiffs must amend their 'shotgun pleading' to state clearly how each and every defendant is alleged to have violated plaintiffs' legal rights. The second amended complaint was properly dismissed because it failed to do this, continuing to make 'everyone did everything' allegations." (internal punctuation removed)]. Indeed, a complaint that "generally realleges all the preceding allegations, regardless of whether those allegations conflict with the claim for relief", or "whether the facts alleged support such an allegation", "raises questions about whether ... counsel has violated Federal Rule of Civil Procedure 11". *Mason v. County of Orange* 251 F.R.D. 562, 563 (C.D. Cal. 2008).

The Counterclaim is textbook shotgun pleading. Every cause of action begins with "Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein." *See e.g.*, ACC ¶ 73. No effort is made to identify which of the countless alleged facts are relied on. It should not be the burden of counter defendants responding to the last cause of action to parse every one of the 142 paragraphs incorporated by reference to try to figure out which allegations support the claims made. For example, while paragraph 149 alleges that "Quinn and Denne performed their obligations under the Exit Agreement", the Ninth Cause of Action is brought by all Counterclaimants such that

1    Moving Parties must parse the entirety of the ACC to discern whether there is support for a claim

2    that others of the Counterclaimants (a) were party to the alleged Exit Agreement, and (b) if so,

3    whether they performed their obligations.

4        While called "shotgun" pleading by the myriad of cases disapproving such practices, it is

5    just as much a due process concern. It is impossible to rebut allegations that are internally

6    inconsistent, often irrelevant (*e.g.*, allegations about stock registration seem unlikely to be relevant

7    to a breach of contract claim on a promissory note, yet Moving Parties are forced to determine

8    whether Counterclaimants are somehow attempting to recover on that basis, as those allegations are

9    incorporated by reference), and simply hidden amongst countless and contradictory allegations.

10       The Court should find this shotgun pleading improper under FRCP 8 and 10(b), and on that

11   basis dismiss the ACC.

12   **C.    Allegations of Fraud, Even if Not Necessary Elements of a Claim, Must be Pleaded**

13        **With Specificity**

14       Under FRCP Rule 9(b), fraud must be pleaded with specificity. Rule 9(b) provides that in

15   "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

16   or mistake." Under this rule, "[a]verments of fraud must be accompanied by the who, what, when,

17   where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106

18   (9th Cir. 2003) (internal punctuation omitted), *Pinel v. Aurora Loan Servs., LLC*, 814 F.Supp.2d

19   930, 941 (N.D. Cal. 2011), *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). In

20   addition, the "plaintiff must set forth what is false or misleading about a statement, and why it is

21   false." *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010). General or conclusory

22   allegations are insufficient to meet this standard.

23       Further, in *Swartz v. KPMG LLP*, the court clarified that allegations of fraud must include

24   "an account of the time, place, and specific content of the false representations as well as the

25   identities of the parties to the misrepresentations" *Swatz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

26   2007). One of the purposes of Rule 9(b) is to protect defendants from baseless accusations of fraud,

27   which can harm their reputation and goodwill. *Kearns v. Ford Motor, Co.* at 1125. This rule ensures

28   that defendants are fully informed of the specific allegations against them, allowing them to prepare

1    an adequate defense.

2          Indeed, any allegations of fraud – whether a necessary element of a claim or not – must be

3    stated with particularity. *Vess v. Ciba-Geigy Corp. USA,* at 1103 ("Vess is correct that fraud is not

4    an essential element of the California statutes on which he relies... [b]ut he is not correct in

5    concluding that his averments of fraud therefore escape the requirements of the rule."). Thus, claims

6    arising from "allegations of a unified fraudulent course of conduct" such that the claims may be

7    said to be "grounded in fraud," even if that claim does not seek recovery specific to fraud, must

8    also be pleaded with specificity. *Id* at 1106.

9    **D.    The First Cause of Action Fails Because Fraud is Not Pleaded With Particularity**

10          As described above, under FRCP 9(b), fraud must be pleaded with specificity. The first

11   cause of action for fraud reads like a copy-and-paste from a book on pleading requirements, devoid

12   of any substance. See ACC ¶¶ 73-84.  The first cause of action alleges that Shuster, UI and UDI

13   "represented to Counterclaimants that specific facts concerning Utherverse and Shuster were true",

14   the representations were false, were known to be false when made, were made recklessly without

15   regard for truth, and Shuster, UI and UDI intended that Counterclaimants rely on the representations

16   and Counterclaimants did so. *Id.* ¶¶ 74-79.

17          Even ignoring the violation of the prohibition on shotgun pleading, a review of earlier

18   portions of the ACC to determine which facts were allegedly false, leads to uncertainty. The General

19   Background section of the ACC contains a list of alleged representations by Brian Shuster, yet that

20   list is not alleged to be false. *See* ACC ¶ 34.  Other representations *are* alleged to be false (*see e.g.*,

21   ACC ¶ 33, stating "Shuster claimed numerous past successes, millions of active Utherverse users,

22   billions in transactions on the Utherverse platform, and a robust patent portfolio, among numerous

23   other representations that were later learned to be false." Yet other allegations of fraud are made on

24   information and belief. *See e.g.*, ACC ¶ 36, stating, "on information and belief, Counterclaimants

25   allege that Shuster never intended to honor the Niya Note or repay the funds, but always intended

26   to defraud and steal the money".  We need not resolve the question of which representations out of

27   the universe of representations included in the ACC are alleged to be false to determine that the

28   pleading standard of Rule 9(b) is not met because the entirety of the claim rises and falls with

1    paragraph 74. That paragraph alleges that "Shuster ... represented to Counterclaimants that specific

2    facts concerning Utherverse and Shuster were true, as alleged herein," and the "specific facts" are

3    not identified. As allegations of fraud require specificity, this is even less permissible than attaching

4    a newspaper to a libel complaint and claiming that "somewhere in this newspaper Defendant made

5    a libelous statement of some kind."

6         Regardless, even if the ACC does identify some representations made by Shuster as false,

7    the ACC fails because it is void of any indication of when, where and to whom the representations

8    were made. *See Vess v. Ciba-Geigy Corp. US* at 1106; *Swatz v. KPMG LLP* at 764. Nor does the

9    ACC set forth what is false or misleading about the representations, and why it is false or

10   misleading, as required under the specificity standard for fraud. See *Ebeid ex rel. U.S. v. Lungwitz*

11   at 998.

12        Consequently, the First Cause of Action for Fraud should be dismissed with prejudice.

13   **E.    The Second Cause of Action Fails Because a Fiduciary Relationship Is Not Pleaded**

14        Under Nevada law, a "claim for breach of fiduciary duty customarily has three elements:

15   (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach."

16   *Guzman v. Johnson,* 137 Nev. 126, 132 (2021).

17        The existence of a fiduciary relationship is *the* foundational element in any breach of

18   fiduciary duty claim. If there is no fiduciary relationship, there can be no duty to breach.  Here, the

19   term "fiduciary" first appears in conclusory form in the Second Cause of Action for Breach of

20   Fiduciary Duty, which states simply and without any factual basis, "Shuster was Counterclaimants'

21   fiduciary." ACC ¶ 85. Additionally, the ACC states, also in a conclusory fashion, "Shuster acted

22   on Counterclaimants' behalf for the purpose of obtaining their investments in Utherverse." ACC ¶

23   86.  It is theoretically possible that Counterclaimants may cobble together bits and pieces of

24   allegations made elsewhere in the ACC to find factual allegations that may support the existence of

25   a fiduciary duty, but the prohibition on shotgun pleading is expressly intended to avoid forcing a

26   party answering a complaint from having to scour page after page to locate allegations that could

27   plausibly support a claim. Litigation is not a hide-the-claims game, nor is it an invitation to drive

28   up costs by forcing an answering party to pay lawyers to engage in a game of hide and seek.

Remarkably, Counterclaimants also fail to allege a breach of fiduciary duty. They simply allege that "Shuster failed to act as a reasonably careful person would have acted under the same or similar circumstances." ACC ¶ 87.  These hollow, perfunctory allegations make it difficult to know to whom the fiduciary duty was alleged to be owed, but the overall "vibe" of the counterclaims is that Shuster is alleged to have caused harm to Counterclaimants by breaching a fiduciary duty to UI and UDI (though none is directly alleged) -- entities in which he serves as an officer.  However, under Nevada law, even a grossly negligent breach of fiduciary duty does not give rise to liability: "NRS 78.138(7) applies to all claims of individual liability against directors and officers, precluding the imposition of liability for grossly negligent breaches of fiduciary duties." *Chur v. Eighth Judicial District Court in and for County of Clark,* 136 Nev. 68, 69 (2020). There is no other way to allege a breach of fiduciary duty against Shuster, as "NRS 78.138 provides the sole mechanism to hold directors and officers individually liable for damages in Nevada." *Id* at 71.

Even assuming, *arguendo*, somewhere in the ACC the shotgun left enough factual allegations to cobble together a claim that Shuster owed a fiduciary duty to Counterclaimants that did not arise in the context of UI or UDI, bringing the claim outside of the reach of *Chur*, the claim still fails. In *Shoen v. SAC Holding Corp*., 122 Nev. 621 (2006) – the case abrogated by *Chur*, *supra* – the court examined when a breach of fiduciary duty has occurred in the absence of the statutory bar.  The *Shoen* court held that "directors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law." Simply failing to act "as a reasonably careful person" does not rise to the level of triggering a breach of fiduciary duty claim. *Id.* at 640.

Finally, a breach of fiduciary duty claim requires an allegation that the breach caused damages. Counterclaimants use standard form language to claim damages – hardly the level of specificity required to claim breach of fiduciary duty. The sole damages allegations are that "Counterclaimants were harmed and Shuster's conduct was a substantial factor in causing Counterclaimants' harm," ACC ¶ 88.  And "As a direct and proximate result of Shuster's actions, Counterclaimants have sustained damages in an amount to be proven at trial." *Id*. ¶ 89. These vague allegations fail to rise to even the level required by FRCP 8, much less meet the particularity

1    required by FRCP 9. Thus, the Second Cause of Action fails and should be dismissed.

2    **F.    The Third Cause of Action Fails Because There Can Be No Aiding and Abetting if**

3    **There is No Fiduciary Duty**

4        Nevada has adopted Delaware's standard for aiding and abetting breach of fiduciary duty.

5    The pleading must allege four elements: "(1) a fiduciary relationship exists, (2) the fiduciary

6    breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4)

7    the breach of the fiduciary relationship resulted in damages." *In re Amerco Derivative Litigation,*

8    127 Nev. 196, 225 (2011). Thus, this cause of action inherits all the defects of the Second Cause of

9    Action (Breach of Fiduciary Duty) and cannot be maintained.

10        Additionally, the third element – that the third party knowingly participated in the breach –

11    is pled as a legal conclusion rather than as facts supporting the legal conclusion. The entirety of the

12    "aiding and abetting" appears to hinge on the barebones allegation that "Good, Gantner, Nexus and

13    Gary knowingly and substantially assisted and/or encouraged Shuster to breach his fiduciary

14    duty..." ACC ¶ 93.  This does not state facts sufficient to support a claim under FRCP 8, let alone

15    under FRCP 9.

16        Furthermore, the breach of fiduciary duty alleged is that "Shuster failed to act as reasonably

17    careful person would have acted under the same or similar circumstances." ¶ 87. There is no

18    reported Nevada case recognizing a cause of action for ordinary negligence giving rise to breach of

19    fiduciary duty. There is no reported Nevada case recognizing aiding and abetting negligence as a

20    cause of action under Nevada law.

21        As to attorneys Gary Shuster and Ari Good, "aiding and abetting" negligence would

22    presumably take the form of providing negligent legal advice. However, the attorneys owe their

23    duty of care to the client, not an adverse third party. The proper way to seek compensation from

24    these attorneys would be for the clients to bring a malpractice action seeking indemnity if and after

25    the client is held liable for such claims. To hold otherwise would allow parties adverse to an

26    attorney's client to sue the attorneys for providing negligent advice to their client – an absurd result

27    that would allow adverse parties to manufacture conflicts of interest in every attorney client

28    relationship and chill the provision of legal advice. This result is prohibited by the Sixth

1    Amendment.  Thus, the Third Cause of Action fails and should be dismissed.

2    **G.    The Fourth Cause of Action Fails Because Civil Conspiracy is Not Pleaded With**

3    **Specificity and is Prohibited by the Intracorporate Conspiracy Doctrine**

4    "Civil conspiracy is not an independent cause of action—it must arise from some underlying

5    wrong." *Suarez-Smith v. BAC Home Loans Servicing, LP* (D. Nev., Oct. 21, 2011, No. 2:11-CV-

6    00201-GMN) 2011 WL 5025143, at *4; *accord Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156,

7    1189 (N.D. Cal. 2021), *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156-57. (N.D.

8    Cal 2013). Counterclaimants were required – but failed – to adequately plead the elements of the

9    underlying fraud.  For this reason alone, the Cause of Action for Civil Conspiracy fails.

10    Even assuming, *arguendo*, that fraud was pleaded with specificity, which Moving Parties

11    dispute, if the object of the conspiracy involves fraud, the conspiracy claim must also meet the

12    heightened pleading requirements of FRCP 9(b). This includes specifying the role of each defendant

13    in the conspiracy and the fraudulent conduct alleged.  *Wasco Prods. v. Southwall Techs., Inc.*, 435

14    F.3d 989, 991-992 (9th Cir. 2006), *Gonzales v. Lloyds TSB Bank*, 532 F. Supp. 2d 1200, 1206 (C.D.

15    Cal. 2006), *Rockridge Trust* at 1157.

16    Here, the ACC is far from specifying the role of each defendant in the conspiracy.  While

17    an argument may be made that Shuster's role in the conspiracy is defined (although Moving Parties

18    dispute that it is defined with the requisite specificity), the roles of the UI, UDI, Good, Gantner,

19    Nexus and Gary are unclear.  As far as Moving Parties can discern, the ACC attempts to set forth

20    the roles of Counter-Defendants in paragraphs 58-69.  However, none of these paragraphs (and as

21    far as Moving Parties can tell, no other paragraphs in the ACC) detail the roles of UI and UDI in

22    the alleged conspiracy.[2]   The other Moving Parties will each be addressed separately below.

23    **1.    Good's Role in the Alleged Conspiracy is Not Alleged With Specificity**

24    The factual allegations related to the conspiracy and Good are almost entirely set forth in

25    paragraphs 58 and 59 and are largely made on information and belief (*e.g.*, "On information and

26    belief Good created, formed and operated a business structure… including setting up and

27

28    _____

[2] Paragraph 68 alleges that "Utherverse, through Shuster, Good and Gantner circulated the UTHER tokens into the market…"  However, it is unclear whether "Utherverse" refers to UI, UDI or UI Ltd.  It is also unclear whether any of the actions alleged in paragraphs 68 or 69, amount to misconduct in furtherance of the alleged conspiracy.

1  transferring money to offshore accounts and corporations", and "On information and belief, Good

2  knowingly received funds fraudulently obtained from Counterclaimants"). ACC ¶ 58. Other

3  allegations not made on information and belief appear to implicate Good in his role as an attorney

4  (*e.g.*, by issuing cease and desist letters and "attempting to cancel the agreements without remitting

5  the funds received by Counter-Defendants pursuant to those agreements"). ACC ¶ 59.  In any case,

6  specifically is sorely lacking– and entirely absent outside of Good's legal work on behalf of his

7  client.  For example, what type of business structure did Good create, what offshore corporations

8  did he transfer money to, and what agreements did he attempt to cancel?  Such vague allegations

9  fall well-short of the pleading requirements of FRCP 9(b).

10      **2.   Gantner's Role in the Alleged Conspiracy is Not Alleged With Specificity**

11      Similarly, many allegations against Gantner related to the alleged conspiracy are also made

12  on information and belief and appear to be largely set forth in paragraph 61 of the ACC.  For

13  example, Counterclaimants allege that "On information and belief, Gantner created and developed

14  a non-licensed platform that competed with the Utherverse platform – to illegally and fraudulently

15  sell tokens and receive commissions" and "On information and belief, Gantner knowingly received

16  funds fraudulently obtained from Counter-Defendants."  ACC ¶ 61.  While, on the surface, some

17  of the allegations (*e.g.*, allegations of intentional misrepresentation on the part of Gantner) may

18  appear to have more "teeth" than some of the other allegations, missing is the required specificity

19  of when, where, and how the representations were made, what is false or misleading about the

20  representations, and why they are false.  *See Vess v. Ciba-Geigy Corp. USA* at 1106, *Ebeid ex rel.*

21  *U.S. v. Lungwitz* at 998. Thus, allegations against Gantner also fall well short of the specificity

22  requirements of FRCP 9(b).

23      **3.   Nexus' Role in the Alleged Conspiracy is Not Alleged With Specificity**

24      As to Counter-Defendant Nexus, non-conclusory factual allegations are nearly non-existent.

25  The ACC alleges only that "Nexus knowingly aided and conspired with Shuster to defraud, and

26  conceal and withhold funds obtained from Counterclaimants," and "Nexus was created, owned and

27  operated by Gantner, who allowed Shuster to use Nexus to launder money…" ACC ¶ 63.  The

28  allegations against Nexus fail the specificity standard as well.

### 4.  Gary's Role in the Alleged Conspiracy is Not Alleged With Specificity

As to Counter-Defendant Gary, non-conclusory factual allegation related to the conspiracy *are* non-existent.  The ACC's allegations of wrongdoing on the part of Gary are that he "knowingly aided and conspired with Shuster to defraud, conceal and obtain and/or withhold funds from Counterclaimants and investors" and that Shuster's representations and misappropriations were made with Gary's support and approval.  ACC ¶¶ 65, 66.  These allegations (as well as those against attorney, Good) are wholly insufficient, and violates the Sixth Amendment by allowing suit by a third party for what the ACC appears to characterize as the provision of legal advice comprising a pernicious conspiracy.[3]

Thus, none of the allegations against Good, Gantner, Nexus and Gary related to the alleged conspiracy are pleaded with any level of specificity, let alone specificity sufficient to comply with FRCP 9.  Thus, for this additional reason, the conspiracy cause of action fails.

### 5.    The ACC Violates the Intracorporate Conspiracy Doctrine

Additionally, under the intracorporate conspiracy doctrine, "claims against attorneys based on conspiracies formed in the attorney-client context" are prohibited. *Evans v. Chichester School Dist.*, 533 F.Supp.2d 523, 529 (E.D. Pa. 2008); s*ee also, Petricevic v. Shin*, No. CV 20-00283 LEK-WRP) 2021 WL 2700382, at *7 (D. Hawaii, June 30, 2021) [no action for conspiracy may be brought against attorneys acting within the scope of representing clients].  The doctrine applies to any agent, whether the agent is an attorney or not, as "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi,* 582 U.S. 120, 153 (2017).

The ACC – in the first paragraph – alleges that Good and Gary are "attorneys".  ACC ¶ 1.  Nowhere is it alleged that they acted other than in their official capacities.  Thus, an action for conspiracy against Good and Gary cannot be maintained.  Additionally, paragraph 27 expressly admits that the conditions requiring application of the intracorporate conspiracy doctrine are met: "each of the Counter-Defendants was … the agent … of each of the remaining Counter-

---

[3] Without specificity, we are left to make an educated guess as to what the ACC appears to rely on.

Defendants".  Counterclaimaints allege, in essence, that all persons and entities involved were part of the same entity. This alone precludes allegations of conspiracy. Thus, the Fourth Cause of Action fails and should be dismissed.

**H.    The Second, Third and Fourth Causes of Action Also Fail Because Damages Alleged Were Suffered by Corporate Entities Requiring a Shareholder Derivative Action**

A claim is derivative when the first-order injury is to the corporation. The Supreme Court has long held that a derivative action requirement applies "to those actions in which the right claimed by the shareholder is one the corporation itself could have enforced." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 527–8 (1984). Nevada has adopted Delaware's Tooley two-prong test for determining whether an action must be brought as a derivative one: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)". *Parametric Sound Corporation v. Eighth Judicial District Court in and for County of Clark* 133 Nev. 417, 427 (2017). Where the answer to both prongs is "the corporation," the claim is derivative. *Id*. Thus, under both federal and Nevada law, the Second, Third and Fourth Causes of Action must be prosecuted in the name of the corporation(s) allegedly harmed, as the real party in interest.

Federal Rule 17(a) requires that an action "be prosecuted in the name of the real party in interest." When the claim belongs to the corporation, the corporation (or a properly aligned derivative plaintiff) must appear. The pleading is not verified, makes no pre-suit demand on the corporations, and pleads no particulars of demand futility, as required by Rule 23.1 and Nevada law. *Parametric*, *supra*.

**I.    The Fifth Cause of Action Fails Because the Terms of the Niya Note and How it Was Allegedly Breached Are Not Set Forth in the Complaint**

The Fifth Cause of Action is a breach of contract claim against Shuster and Utherverse Digital, arising from an instrument termed the "Niya Note" ¶¶103–112.  In essence, Niya alleges it loaned money (approximately $1.35 million) to Utherverse via a promissory note, and that Shuster and UDI breached the Note by failing to repay it. Niya claims it has been harmed as a result ¶112.

Pursuant to Federal procedural law, "[a] pleading must contain a 'short and plain statement

1    of the claim showing that the pleader is entitled to relief.'" *Iqbal* at 677-78, quoting Fed. Rule Civ.

2    Proc. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

3    accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678, *quoting Bell*

4    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

5    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6    defendant is liable for the misconduct alleged." *Id*.  "The plausibility standard… asks for more than

7    a sheer possibility that a defendant acted unlawfully." *Id*.  Pleading facts that are 'merely consistent

8    with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility…" *Id.,*

9    quoting *Twombly* at 557.

10    To state a claim for breach of contract under Nevada substantive law, a plaintiff must allege:

11    "(1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance;

12    (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages."  *Sierra*

13    *Development Co. v. Chartwell Advisory Group, Ltd*., 223 F.Supp.3d 1098, 1103 (D. Nev. 2016),

14    *Patel v. Am. Nat'l Prop. & Cas. Co*., 367 F.Supp.3d 1186, 1191 (2019).

15    In *Patel*, the plaintiff alleged that in January 2017, he contracted and paid for a homeowner's

16    insurance policy with the defendant, and subsequently in March of 2017, a septic tank backed up

17    and flooded his home. *Patel*, 367 F.Supp. at 1190.  Plaintiff further alleged that he entered into a

18    valid contract that required him to make regular payments and defendant breached the insurance

19    contract by failing to pay his claims.  *Id*. at 1192.  Defendant moved to dismiss based on failure to

20    state a claim for which relief could be granted.  *Id*. at 1191.

21    In granting defendant's motion to dismiss the breach of contract claim, the court indicated

22    that "Plaintiff's allegations fail to establish what terms of the contract were allegedly breached and

23    the manner in which Defendant allegedly breached them. Without additional factual content,

24    Plaintiff's assertion that Defendant breached the contract because it did not pay Plaintiff's claim is

25    nothing more than a legal conclusion, and therefore insufficient under the relevant pleading

26    standards."  *Patel*, 367 F.Supp.3d at 1192, citing *Iqbal* 556 U.S. at 678.

27    Here, the Fifth Cause of Action sets forth only a bare recitation of the elements of the

28    breach of contract and is devoid of factual content.  See ACC ¶¶ 103-112.  Instead, what sparse

factual allegations are made with regard to the Niya Note are set forth in the "General

Background" section of the ACC, and are as follows:

> On or about April 11, 2022, Shuster, on behalf of Utherverse, executed a senior secured convertible promissory note with Counterclaimants Momayez and Niya Holdings ("Niya Note"). Pursuant to the Niya Note, Momayez, on behalf of Niya Holdings, transferred $1,350,000 to Utherverse… Shuster, on behalf of Utherverse, agreed to repay Momayez and Niya Holdings pursuant to the terms of the Niya Note, but now refuses to do so. Instead, Shuster has stolen the funds. ACC ¶ 36.

A copy of the Niya Note is not attached, and the repayment terms are not set forth in the

ACC. There are no allegations as to whether payment was to be made in a lump sum or in

installments, when such payment(s) were due, and when and how Shuster and UDI breached the

Note.  Additionally, the Counterclaim describes the Niya Note as a "senior secured convertible"

promissory note. If that is true, Niya presumably received collateral or a security interest to secure

the loan's repayment.  However, there is no allegation that it would be a breach of the Note to trigger

seizure of the collateral. There is also no indication of what conditions would trigger conversion and

into what the Note would or could be converted.  By failing to address these and other terms, the

ACC leaves gaping holes in the facts surrounding the Niya Note.

Critically, Niya fails to plead that it suffered any uncompensated damages from the alleged

breach of the Niya Note. Niya cannot claim a money loss if it still holds valuable collateral or if it

could have mitigated its loss by exercising its rights against the security.  The ACC states in generic

terms that "Niya Holdings was in fact harmed and suffered damages in an amount to be proven at

trial" as a result of the breach. (ACC ¶112), but it offers no detail as to what those damages are. If

the Niya Note was a straightforward loan of $1.35 million, one would expect the damages to be at

least that principal amount (plus any accrued interest) remaining unpaid. Yet Niya does not state that

the $1.35 million has not been repaid or that it is owed a specific sum. It simply says a breach

occurred and it was harmed. Such a bare allegation of damage is insufficient under *Iqbal* and is a

"formulaic recitation" with no factual substance. Niya must, at the very least, be required to plead

the amount unpaid on the note and how the breach caused its loss, so that the claim may be

understood well enough to respond to, and so that the Court can assess plausibility.

*///*

Moving Parties and the Court should not have to guess what the material terms of the NIYA Note were, which term(s) of the NIYA Note were breached, and how or whether Niya remains unpaid and unsecured on the Note. Because the Counterclaim does not set forth the basic information to state a claim for relief, the Fifth Cause of Action should be dismissed.

**J.    The Sixth Cause of Action Fails Because the Terms of the Blockchain Funding SAFT Allegedly Breached Are Not Set Forth in the Complaint**

The Sixth Cause of Action is also a breach of contract claim against Shuster and UI Ltd., arising from an agreement termed the "Blockchain Funding SAFT". ACC ¶¶ 113–122. As with all the breach of contract causes of action (Fifth through Ninth), the alleged agreement is not attached, and the basic terms are not set forth in the ACC.

Law applicable to the Fifth Cause of Action above is also applicable here (as well as to the Seventh through Ninth Causes of Action), and like the Fifth Cause of Action, the Sixth Cause of Action sets forth only a bare recitation of the elements of the breach of contract claim, devoid of the necessary factual content. *See* ACC ¶¶ 113-122.

The nominal allegations set forth in the General Background section that appear relevant to Sixth Cause of Action are as follows:

> On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant Blockchain Funding, by and through Denne, executed a simple agreement for future tokens ("SAFT") whereby Blockchain Funding purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 USD ("Blockchain Funding SAFT"). Blockchain Funding fulfilled its obligations and made payment to Utherverse in accordance with the Blockchain Funding SAFT. However, Shuster never delivered tokens to Blockchain Funding or remitted Blockchain Funding's payment for the tokens in accordance with the Blockchain Funding SAFT. Shuster now takes the position that Blockchain Funding does not own any tokens whatsoever. Instead, Shuster has stolen the funds. ACC ¶ 37.

The Counterclaim is devoid of any factual allegations as to when tokens were to be delivered, under what conditions, if any, delivery of tokens may have been excused, or under what conditions payment was to be remitted. Further, no allegations are made as to how Shuster or UI Ltd. breached the Blockchain Funding SAFT.

In fact, the Counterclaim alleges that only Blockchain Funding and UI Ltd. are parties to the Blockchain Funding SAFT (ACC ¶ 114) but then goes on to state that "Blockchain Funding,

1   Shuster, and Utherverse International ltd. are mutually obligated to perform under the Blockchain

2   Funding SAFT" with no indication of how or why Shuster is so obligated.  *See* ACC ¶¶ 114-15.  As

3   no allegation of a personal guaranty is made, the ACC likely relies on an alter ego theory to hold

4   Shuster personally liable for the corporate debt.[4]   While Nevada does allow alter ego liability in

5   appropriate cases, it is an extraordinary remedy with specific requirements, namely unity of interest

6   and fraudulent use of the corporate form. *North Arlington Medical Bldg., Inc. v. Sanchez Constr.*

7   *Co.*, 86 Nev. 515, 520 (1970). As with other forms of fraud, pleading of alter ego requires specificity

8   pursuant to FRCP 9(b). Yet, Moving Parties are unable to identify specific allegations of fact that,

9   if true, would establish such fraudulent use.

10      For these reasons, the Sixth Cause of Action for breach of the Blockchain Funding SAFT

11   should be dismissed with prejudice.

12   **K.    The Seventh Cause of Action for Breach of the Masternode SAFT Fails for the Same**

13   **Reasons That the Sixth Cause of Action Fails**

14      The allegations in the ACC as to the Masternode SAFT are almost identical to the

15   allegations related to the Blockchain SAFT.  The cause of action names Shuster and UI Ltd. and

16   alleges that Masternode and UI Ltd. are parties to the Masternode SAFT (ACC ¶ 124) but that

17   Masternode, Shuster and UI Ltd. are mutually obligated to perform under the agreement (*Id.* ¶ 125).

18   There is no explanation as to why Shuster is obligated.

19      The salient allegations in the General Background section that appear relevant here are:

20          On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant
        Masternode, by and through Denne, executed a SAFT whereby Masternode
21      purchased 150,000,000 tokens at the then-price per token of $0.000033334, for a
        total purchase amount of $5,000.01 USD ("Masternode SAFT"). Masternode
22      fulfilled its obligations and made payment to Utherverse in accordance with the
        Masternode SAFT. However, Shuster never delivered tokens to Blockchain or
23      remitted Blockchain's payment for the tokens in accordance with the SAFT.
        Shuster now takes the position that Masternode does not own any tokens
24      whatsoever. Therefore, on information and belief, Counterclaimants allege that
        Shuster and Utherverse never intended to fulfill their obligations under the
25      Masternode SAFT and instead intended to defraud Masternode of the money paid

26

27   _____
     [4] An alter ego theory is asserted generally with regard to Shuster and UI Ltd. at paragraph 72 but likewise is devoid of
28   any factual basis.

1    in reliance on the Masternode SAFT. ACC ¶ 38

2    Again, the ACC is devoid of any factual allegations as to when tokens were to be delivered,

3    under what conditions the delivery of tokens may have been excused, if any, or under what

4    conditions payment was to be remitted. No allegations are made as to how Shuster or UI Ltd.

5    breached the Blockchain Funding SAFT. Further, Moving Parties cannot identify specific

6    allegations that, if true, would establish unity of interest or fraudulent use of the corporate form.

7    Thus, the Seventh Cause of Action for Breach of the Masternode SAFT fails and should be

8    dismissed with prejudice.

9    **L.    The Eighth Cause of Action Fails Because the Terms of the Blockchain Funding Note**

10    **and How it Was Breached Are Not Alleged**

11    The Eighth Cause of Action is for breach of contract against Shuster and UDI. The

12    Counterclaim alleges that Blockchain Funding, Shuster, and UDI are parties and mutually obligated

13    to perform under the Blockchain Funding Note, and that Shuster and UDI "breached the material

14    terms of the Blockchain Funding Note by failing to perform under its terms." (ACC ¶¶ 134-137.)

15    In the General Background section, the ACC alleges only that:

16    On or about June 5, 2023, Blockchain Funding, by and through Denne,
     loaned to Utherverse a total of $350,000.00, evidenced by a promissory note

17    ("Blockchain Funding Note") executed by Utherverse, by and through Shuster. To
     secure the Blockchain Funding Note, Utherverse, by and through Shuster, executed

18    a stock pledge agreement ("Stock Pledge Agreement"), which memorialized the
     Blockchain Funding Note and pledged 2,800,000 shares of Utherverse Inc. Class A

19    Common Stock to Blockchain Funding. Blockchain Funding fulfilled its
     obligations and provided $350,000.00 to Utherverse in accordance therewith; and

20    Blockchain Funding understood that ownership of the shares had been transferred
     accordingly. However, the proceeds from the Blockchain Funding Note have not

21    been returned, and Shuster now takes the position that Blockchain Funding does
     not own any shares whatsoever. Therefore, on information and belief,

22    Counterclaimants allege that Shuster and Utherverse never intended to transfer the
     shares, but instead intended to defraud Blockchain Funding of the $350,000.00.

23    ACC ¶ 39.

24    Conspicuously absent are factual allegations regarding when payment(s) were due, and

25    when and how Shuster and UDI breached the Note. Moreover, and with regard to the Stock Pledge

26    Agreement, the ACC alleges that pursuant to the Stock Pledge Agreement, shares of UI stock were

27    pledged (presumably as collateral to secure the Blockchain Funding Note), that Blockchain Funding

28    understood the ownership of the shares had been transferred accordingly (not that the shares *had*

1  transferred but only that Blockchain *understood* them to be transferred) but stops short of asserting

2  a cause of action for breach of the Stock Pledge Agreement.  Further, the ACC states in generic

3  terms that because of Shuster and UDI's breach, "Blockchain Funding was in fact harmed and

4  suffered damages in an amount to be proven at trial" but blatantly omits facts as to whether any

5  portion of the $350,000 allegedly provided to UDI was even due.

6      The facts alleged are insufficient to permit a response and the cause of action is not plausible

7  on its face.  Thus, the Eighth Cause of Action should be dismissed with prejudice.

8  **M.    The Ninth Cause of Action Fails Because the Complaint Does Not Provide Facts**

9  **Sufficient to Determine Even What Agreement is at Issue**

10      The term "exit agreement" is vaguely defined in paragraph 52 as follows:

11  "Counterclaimants Quinn and Denne sought to wind down their relationship with Shuster and

12  Utherverse on mutually beneficial terms through an exit agreement." The only description of the

13  terms of that alleged agreement is found in paragraph 53, which discloses that there is a "detailed

14  exit strategy for Counterclaimants in the Exit Agreement, including sale of tokens and distribution

15  of funds therefrom..." ACC ¶ 52.

16      The entirety of the cause of action rests on an alleged "Exit Agreement" that is pled as

17  providing for an undefined "exit strategy" comprising "sale of tokens and distribution of funds

18  therefrom", without specifics as to which tokens, how many, and to whom they were to be sold,

19  how the funds would be distributed, or to whom. The term "Exit Agreement" next appears in

20  paragraph 144-152, where it is alleged that the "Exit Agreement" was breached and harm resulted.

21  Moving Parties cannot determine whether the contract even exists, and if it does, what its terms are.

22      "Litigation is not a guessing game." *Riggins v. Polk County Procurement Dept.*, No. 8:12-

23  CV-1755-T-17TBM, 2013 WL 5304056, at *3 (M.D. Fla., Sept. 20, 2013). The "pleading standard

24  Rule 8 announces does not require detailed factual allegations, but it demands more than an

25  unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 678 (internal punctuation

26  omitted).

27      The Ninth Cause of Action is precisely the kind of "unadorned, the-defendant-unlawfully-

28  harmed-me accusation" that *Iqbal* forbids, and should be dismissed with prejudice.

**N.    Reservation of Right to Contest Personal Jurisdiction**

Counterclaimants have sued multiple out-of-state and foreign defendants – including a British Columbia corporation (UDI), a Canadian resident (Gary), a Colombian resident (Good), an Arizona LLC (Nexus), and an Arizona resident (Gantner) (collectively "Foreign Jurisdiction Parties") – none of whom reside in Nevada. Each of the Foreign Jurisdiction Parties lack sufficient contacts with this forum to be subject to personal jurisdiction. Foreign Jurisdiction Parties thus maintain that this Court cannot exercise personal jurisdiction over them. Because this motion is Foreign Jurisdiction Parties' first response to the counterclaims, Foreign Jurisdiction Parties raises their objection to personal jurisdiction now, in order to avoid any waiver of that defense. Under the Federal Rules, a defendant waives any lack-of-personal-jurisdiction defense by failing to assert it in the first Rule 12 motion or responsive pleading. *Moser v. Benefytt, Inc*., 8 F.4th 872, 877 (9th Cir. 2021); Fed. R. Civ. P. 12(h)(1). Accordingly, Foreign Jurisdiction Parties hereby asserts their personal jurisdiction defense at this earliest opportunity and expressly preserve their objection to personal jurisdiction. The perfunctory and insufficient allegations in the ACC do not support a finding of personal jurisdiction over any of the Foreign Jurisdiction Parties, and the ACC should be dismissed as to those parties.

Foreign Jurisdiction Parties appear specially and only for the limited purpose of contesting the ACC's sufficiency and reserve the right to challenge this Court's personal jurisdiction. This reservation is consistent with the principle that personal jurisdiction is an individual due process right that a party can insist upon or waive by its litigation conduct. *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 (1945). Here, Foreign Jurisdiction Parties have not submitted to jurisdiction; on the contrary, they have timely invoked the defense at the first opportunity. Nothing in this motion should therefore be construed as a consent to personal jurisdiction in Nevada. By asserting an objection to personal jurisdiction now, Foreign Jurisdiction Parties ensure that their lack-of-jurisdiction defense is fully preserved without waiver, even as the Court considers the merits of Moving Parties' Rule 12(b)(6) motion. This approach – raising all available defenses initially – is not only procedurally required by Rule 12 but also a prudent practice endorsed by courts in this Circuit and beyond. Accordingly,

Foreign Jurisdiction Parties respectfully reserve their personal jurisdiction objection for the Court's later determination if denied at this stage, while proceeding with the instant Rule 12(b)(6) motion.

**CONCLUSION**

For the foregoing reasons, all nine causes of action fail to state a claim on which relief may be granted. Moving Parties respectfully request that the ACC be dismissed with prejudice.

Dated: May 30, 2025                    COLEMAN & HOROWITT, LLP


By:  /s/ Sherrie M . Flynn
Sherrie M. Flynn. Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248- 4820
Email: sflynn@ch-law.com

James W. Puzey, Esq
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851- 8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., Peter Gantner, Nexus Venture LLC, Ari Good and Gary Shuster