MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, | Case No.: 3:25-cv-00020-MMD-CSD |
| Plaintiffs, | **COUNTERCLAIMANTS' OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIM** |
| v. | |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual. | |
| Defendants. | |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual, | |
| Counterclaimants, | |
| v. | |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,

Counterdefendants.

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Niya Holdings, LLC ("Niya Holdings"), and Nima Momayez ("Momayez") (collectively, "Counterclaimants"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, file this Memorandum of Points and Authorities in Support of Counterclaimants' Opposition ("Opposition") to Counter-Defendants Utherverse, Inc. ("Utherverse, Inc."), Brian Shuster ("Shuster"), Utherverse Digital, Inc. ("Utherverse Digital"), Peter Gantner ("Gantner"), Nexus Venture LLC ("Nexus"), Ari Good ("Good"), Gary Shuster's ("Gary") (collectively, "Counter-Defendants") (all together, the "Parties") Motion to Dismiss Amended Counterclaim ("Motion").

This Opposition is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument this Court may request.

DATED this 13th day of June, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: /s/ Maximilien D. Fetaz
MAXIMILIEN D. FETAZ, ESQ.
ZACHARY R. MEYER, ESQ.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

33895652

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Counter-Defendants' Motion is ironic.  While claiming Counterclaimants have offered a shotgun pleading, Counter-Defendants' Motion itself shoots from the hip asserting that all counterclaims ("ACC") must be dismissed while feigning inability to discern which of the misrepresentations, breaches, and allegations correspond to each counterclaim and employing a hyper-technical analysis of specific allegations when advantageous.  Unfortunately for Counter-Defendants, this Court's precedent supports the structure of the ACC.[1]

Counter-Defendants' strategy is understandable when considering their absurd theory of the case.  If Counter-Defendants cannot succeed on technicalities or discourage Counterclaimants with needless creation of work at the pleading stage, they will have to prove that all the time, resources, and money that Counterclaimants dedicated to Utherverse and the ownership interest they acquired was not done so in pursuit of a return or profit, but to painstakingly keep Utherverse on the verge of insolvency.[2]  Common sense and discovery will disprove Counter-Defendants' theory and confirm the well-pleaded allegations in the ACC that—based on Shuster's misrepresentations about past performance and financial data—Counterclaimants invested in Utherverse in pursuit of supporting Utherverse and collectively enjoying the profits from everyone's efforts.

As the ACC confirms, the respective parties in this dispute entered into various agreements starting in 2022 to develop Utherverse.  Counterclaimants committed millions of dollars to the enterprise.  However, through a series of events that occurred over the next year, Counterclaimants discovered that Shuster and his co-conspirators' many promises and representations were actually breaches and misrepresentations.  The relationship between the parties came to a head in April 2024, and an agreement was reached on a separation.  Again, however, Shuster and Utherverse breached.

---

[1] Locating the allegations corresponding to counterclaims is no more onerous a task than fishing for the allegations that Counter-Defendants' complaint ("Complaint") incorporates by reference into its claims.

[2] Unless otherwise specified "Utherverse" is used herein to refer to all entities controlled by Shuster bearing the name "Utherverse," which are his alter egos.  *See* ACC at ¶70-72.

Thus, despite Counter-Defendants' curious theory and attempt to use technicalities to avoid hearing this dispute on the merits, Counterclaimants maintain valid claims against Counter-Defendants that should be heard before this Court. Counterclaimants request that the Court deny the Motion.

## II.    FACTUAL BACKGROUND

Utherverse specializes in creation of cryptocurrency and metaverses in which cryptocurrency can be transacted. *See* ACC at ¶31. In or about 2022, Denne was introduced to Shuster, the owner and operator of the Utherverse, which, at the time, was scattered across eleven LLCs. *See id.* ¶32. Utherverse was in desperate need of reorganization, effective management, and investment capital, all of which Denne had the experience and background to provide or procure. *See id.* ¶32.

### A.    Utherverse's Foundational Misrepresentations

After their introduction, Shuster touted the success of the Utherverse's metaverses to entice Denne and others to agree to provide services and capital. *See id.* ¶33. Shuster made various intentional misrepresentations that overstated the capabilities and financial strength of the Utherverse, including that Utherverse: had 50 million users of its metaverses; over one million metaverses on its platform; annual revenue of $8-10 million; $16 billion in transactions on its platform; was capitalized with $45 million of Shuster's own money; spent more than $40 million on development of its metaverses; was franchised in 17 countries; generated more than $77 million in revenues from memberships, marketplaces, advertising and other revenue streams; owned a large number of valuable patents that were disputed in pending infringement that Utherverse would surely win; and, platform development was ongoing but it would be operational on specific dates that all came to pass without Utherverse being operational. *See id.* ¶34.

Shuster succeeded in enticing Denne, who then dedicated significant time, resources, and personal funds to Utherverse and acquired capital for Utherverse from others, including through agreements ("Agreements"), who likewise relied on the misrepresentations. *See id.* ¶35.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### B.    Niya Note

On April 11, 2022, Utherverse executed a senior secured convertible promissory note ("Niya Note") with Counterclaimant Momayez and her company, Niya Holdings. *See id.* ¶36. Under the Niya Note, Niya Holdings provided Utherverse with $1,350,000.00. Niya Holdings entered into the Niya Note "in reliance on Shuster's misrepresentations[] as previously detailed [above]." *Id.* Utherverse agreed to the terms of repayment in the Niya Note. *See id.* However, Utherverse later refused to repay the Niya Note and has not returned the funds. *See id.* Utherverse's conduct evidences that it never intended to repay the Niya Note. *See id.*

### C.    Blockchain Funding SAFT

On May 10, 2022, Utherverse and Counterclaimant Blockchain Funding, Denne's company, executed a simple agreement for future tokens ("SAFT") under which Blockchain funding purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 ("Blockchain Funding SAFT"). *See id.* ¶37. Blockchain Funding paid; Utherverse never delivered the tokens or remitted Blockchain Funding's payment. *See id.*

### D.    Masternode SAFT

On May 10, 2022, Counterclaimant Masternode, one of Denne's investor contacts, purchased 150,000,000 tokens at the then-price per token of $0.000033334 for a total purchase amount of $5,000.01 ("Masternode SAFT"). *See id.* ¶38. Masternode paid; Utherverse failed to deliver tokens or remit the $5,000.01. *See id.*

### E.    Blockchain Funding Note

On June 5, 2023, Blockchain Funding loaned Utherverse $350,000.00, which was evidenced by a promissory note ("Blockchain Funding Note"). *See id.* ¶39. The Blockchain Funding Note was secured by a stock pledge agreement ("Stock Pledge Agreement") memorializing the Note and pledging 2,800,000 shares of Utherverse stock to Blockchain Funding. *See id.* Blockchain Funding provided the $350,000.00 to Utherverse under the impression that the stock shares were transferred, but Utherverse denies that the stock was transferred and has failed to remit the $350,000.00. *See id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

33895652

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

F.     **Additional Counterclaimant Expenses**

Relying on the Utherverse's aforementioned misrepresentations and presuming performance of the Agreements, Counterclaimants expended significant funds to promote and advance the success of Utherverse totaling more than $1,376,500.00.  *See id.* ¶40.  Utherverse promised repayment, but never repaid.  *See id.*

Counterclaimants also expended significant funds to improve the reputation of Utherverse, which was associated with the pornography industry, and secure Utherverse a banking relationship. *See id.* ¶¶41, 47.

G.     **Unraveling Utherverse's Fraud and Deception**

Counterclaimants leveraged their reputations and professional relationships to provide business opportunities to Utherverse.  *See, e.g.*, *id.* ¶42.  Denne worked to secure a $25 million agreement between Utherverse and an investor, but days before the Counterclaimant wired the money, an employee of Shuster contacted the investor and informed him that Shuster was a fraudster and that there was a lawsuit for fraud pending against him.  *See id.*  The Counterclaimant withdrew from the agreement.  *See id.*

Denne hired a specialist to make Utherverse more investable.  *See id.* ¶43.  The specialist consolidated the eleven LLCs that Utherverse formerly consisted of and created a parent company with subsidiaries.  *See id.*  The specialist attempted to verify and create proper intellectual property documentation of the patents that Utherverse's patents.  *See id.* ¶¶43, 34(i).  Yet the specialist could not verify Shuster's ownership of numerous patents that Shuster represented he or Utherverse owned, demonstrating that Utherverse intentionally misrepresented its intellectual property portfolio.  *See id.* ¶43.

Denne hired a CEO for Utherverse who had experience working as a CEO in Utherverse's industry.  *See id.* ¶44.  The CEO could not continue in his role as CEO because Shuster:  would not pay him for his work, interfered with his governance of Utherverse, and exposed the CEO to liability.  *See id.*

When Denne attempted to hire a CFO to clean up Utherverse's books and records, create proper timelines and budgets, and oversee use of Counterclaimant funds, Shuster refused to hire

6

him because doing so would have revealed Shuster's misrepresentations and misuse of the funds. *See id.* ¶45.

Denne hired a Public Company Accounting Oversight Board ("PCAOB") to produce audited financial statements enabling Utherverse to participate in crowdfunding. *See id.* ¶46. The PCAOB discovered that Utherverse's revenue was not $8-10 million per year—as Shuster misrepresented—but less than $1.5 million per year. *See id.* ¶¶46, 34(c). The PCAOB was also unable to confirm that Shuster had invested $45 million of his own funds—another misrepresentation. *See id.* ¶¶46, 34(e).

Shuster hired a "Pro-Developer" to perform work for Utherverse whom Utherverse paid $30,000 a month. *See id.* ¶49. Counterclaimants discovered that the Pro-Developer was outsourcing his work for $1,500 to another developer, submitting that developer's work as his own, and pocketing the remaining $28,500. *See id.* Shuster was complicit in this scheme and receiving a portion of the funds. *See id.*

Shuster engaged in a variety of other conduct that was either propagated in furtherance of his fraud or to cover up the same, including:

- paying commissions to two separate unlicensed brokers for brokering the Niya Note;

- obtaining a $1 million investment from Chauncey Lufkin ("Lufkin"), whom Shuster placed on the board of Utherverse, Inc. and for whose investment Shuster paid another brokerage fee to an unlicensed broker, Jasmine Yuan;

- entering into a consulting agreement with Lufkin's wife following receipt of Lufkin's investment and paying her with Utherverse shares, creating a conflict of interest;

- concealing from Counterclaimants and omitting from SEC disclosures that Lufkin was under investigation and sanctioned by the SEC for cryptocurrency investment fraud;

- refusing to remove Lufkin and his wife from their board and management positions after their conflict of interest, Shuster's concealment, and SEC noncompliance were divulged;

- selling pre-sale tokens on an unregistered, non-SEC complaint platform;

- accepting investments in tokens from non-accredited U.S. investors;

- paying commissions and referral fees to U.S.-based individuals for sale of tokens;

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

- taking equity investments from non-accredited U.S. investors and paying commissions to unlicensed individuals for securing the investments;

- failing to report new investments to the SEC, IRS, or local tax authorities;

- laundering money through Utherverse;

- using investor funds to make pornographic films;

- using investor funds to pay for his and others' personal travel expenses;

- using investor funds to pay for legal work unassociated with Utherverse; and

- gifting Utherverse, Inc. shares and tokens to friends, such as an escort, for reasons unassociated with Utherverse's business. *See id.* at ¶56.

**H.    The Parties' Failed Separation and Utherverse's Conduct Thereafter**

During the Parties' relationship, Shuster failed to meet over twenty significant developmental deadlines, particularly "launch dates" for projects associated with metaverses and Utheverse's cryptocurrency tokens. *See id.* ¶48.  These deadlines were a farce; Utherverse set them to delay and conceal its fraudulent activities. *See id.*

In April 2024, after Shuster failed to meet another deadline, Denne terminated his business relationship with Utherverse through oral and written discussions. *See id.* ¶¶50-51.  Shuster provided written acknowledgment of Denne's efforts and interests, including:  the monies Denne spent on behalf of Utherverse; Denne's ownership of 510,000,000 tokens; and Denne's ownership of 2,800,000 shares of Utherverse, Inc. *See id.* ¶51.  Denne also paid $160,000 to facilitate separation. *See id.*

The above discussions and acknowledgments are reflected in an exit agreement ("Exit Agreement") that sought to wind down the relationship among Quinn, Denne, Shuster, and Utherverse on mutually beneficial terms. *See id.* ¶52.  The Exit Agreement provided an exit strategy including sale of the tokens that Utherverse promised to mint and distribution of proceeds from them. *See id.* ¶53.  Shuster reneged on the Exit Agreement and contended that neither Quinn, Denne, nor Counterclaimants own or are entitled to anything with regard to Utherverse. *See id.*

In September 2024, Shuster sent formal letters to Denne's investor contacts many of whom Denne had recruited to support Utherverse. *See id.* ¶54.  In the letters, Shuster falsely accused

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Denne of fraud, including altering documents, stealing investor funds, and stealing Utherverse

2  money and stock.  *See id.*  Shuster implored the recipients to keep the letters secret and investigate

3  Denne.  *See id.*

4      **I.      Good, Gantner, Nexus, and Gary Facilitate Utherverse's Fraud**

5      Good facilitated some or all of Shuster and Utherverse's fraud, concealment, and breaches.

6  *See id.* ¶¶58-59.  Good created, formed, and operated a business structure for Shuster enabling him

7  to misappropriate money from Counterclaimants, including creating and transferring money to

8  offshore accounts and corporations.  *See id.* ¶58.  Good benefitted because he has ownership interest

9  in Utherverse and knowingly received misappropriated funds as payment.  *See id.*  Good also issued

10  various letters to undermine Counterclaimants' interests and right to benefit from the various

11  agreements such as by purporting to cancel the agreements without remitting the funds.  *See id.*

12  ¶59.

13      Gantner supported Shuster's fraud and concealment by developing an unlicensed platform

14  that competed with and undermined Counterclaimants' interests in Utherverse's platform.  *See id.*

15  ¶61.  Gantner sold Utherverse tokens and shares to non-accredited investors, including on the

16  unlicensed platform, and received commissions from Shuster.  *See id.*  Gantner knowingly accepted

17  funds that Shuster misappropriated from Counterclaimants.  *See id.*  Gantner parroted Shuster's

18  misrepresentations or made misrepresentations of his own to entice Counterclaimants to invest,

19  including overstating the readiness of the Utherverse platform or tokens for launch, financial data

20  like Utherverse's revenues (*e.g.*, over $70,000,000 in revenues), and user data (*e.g.*, over 50 million

21  users).  *See id.*  Gantner exploited his roles as a developer and CEO of Utherverse's platform,

22  knowing that his technical expertise, background, and intimate knowledge of the platform would

23  lead Counterclaimants to trust his misrepresentations.  *See id.*  Gantner used his business, Nexus,

24  to help Shuster launder, misappropriate, or hide money from Counterclaimants.  *See id.* ¶63.

25      Gary aided and conspired with Shuster to defraud and misappropriate Counterclaimants's

26  funds.  *See id.* ¶65.  Gary is Shuster's brother, was Chief Intellectual Property Officer of Utherverse

27  Digital, was general counsel of Utherverse, Inc., and is a member and serves on the executive board

28  of Utherverse Gaming, LLC ("Utherverse Gaming").  *See id.*  With Gary's support and knowledge

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

9

of the falsity, Shuster misrepresented to Counterclaimants that: Utherverse owned certain patents over which there was pending infringement litigation with Epic Games, Inc., Utherverse was likely to win the litigation, and victory would increase Utherverse's value. *See id.* ¶66. Shuster so represented to entice Counterclaimants to provide more money and resources that he could misappropriate. *See id.* However, the patents (such as Patent Numbers 8276071, 8812954, 9123157, 9724605, and 10198154) are designated as invented by Shuster (expect for 10198154 that shows Gary as the inventor) and assigned to Utherverse Gaming. *See id.* Yet they remain prominently featured on the Utherverse website as though Utherverse possesses rights to them. *See id.* Shuster and Gary schemed to misrepresent ownership of the patents to enable Shuster to obtain funds from Counterclaimants. *See id.*

When Utherverse minted its tokens in Fall 2024 ("UTHX" token), Utherverse failed to deliver tokens to Counterclaimants under the SAFTs. *See id.* ¶68. Utherverse nevertheless circulated UTHX tokens into the market in small amounts to inflate their price. *See id.* UTHX briefly sold at $2.00 per token, but then plummeted to a value of less than $0.01 per token when Utherverse finally released the tokens to investors, who immediately sold the tokens and deflated the price. *See id.* Utherverse feigned a malfunction in the UTHX token and created a new token ("UTHR" token). *See id.* ¶69. UTHR was distributed to a select few and in some cases non-accredited investors, while all investors holding UTHX tokens were left with a token devoid of value. *See id.* Utherverse again attempted to inflate UTHR with similar results: UTHR sold for $0.70 and shrank to $0.07. *See id.*

### J. Procedural History

On January 10, 2025, Utherverse filed the Complaint. *See* Compl. Counterclaimants filed their Amended Answer and ACC on April 24, 2025, which ACC included claims for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, breach of the Niya Note, breach of the Blockchain Funding SAFT, breach of the Masternode SAFT, breach of the Blockchain funding Note, and breach of the Exit Agreement. *See generally* ACC.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### III.    <u>ARGUMENT</u>

"When reviewing a dismissal for failure to state a claim . . . all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999). "A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond a doubt that the non-moving party can prove not set of facts in support of its claim which would entitle it to relief." *Id.*

Under Rule 9(b), "[i]n alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged" as well as what is false or misleading about a misrepresentation. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

"Federal Rule of Civil Procedure 8(a) states that '[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) (alteration in original). "Complaints that repeatedly incorporate all preceding paragraphs by reference— sometimes called shotgun pleadings—have been found to violate Rule 8." *Lapena v. Las Vegas Metro. Police Dep't*, No. 221-CV-2170-JCM-NJK, 2024 WL 1345226, at *2 (D. Nev. Mar. 29, 2024) (quoting *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1000 (E.D. Cal. 2022)). However, "incorporation of the general allegations into each [c]ount does not [necessarily] make [a complaint] a 'shotgun' pleading." *Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co., LLC*, No. 219-CV-00329-GMN-EJY, 2023 WL 2843649, at *3 (D. Nev. Jan. 30, 2023).

Importantly, "'Rule 8(a) must be read in harmony with Rule 9(b),'" which requires plaintiffs to plead fraud with particularity." *Id.* (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d, 1132, 1156 (C.D. Cal. 2008)). "Indeed, length and complexity of a complaint may be a 'necessary consequence of the number and complexity of the schemes alleged.'" *Id.* (quoting *Fid. Nat. Title Ins. Co. v. Castle*, No. C 11-00896 SI, 2011 WL 6141310, at *3 (N.D. Cal. Dec. 8, 2011)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP

100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### A.    The ACC is Not a Shotgun Pleading.

Counterclaimants' ACC does not qualify as a shotgun pleading because Utherverse can reasonably discern the allegations corresponding to the claims against each individual Counter-defendant.  *See* Motion at 3:25-5:11.  "A 'shotgun pleading' is a 'pleading that excessively prioritizes *breadth* over *depth* such that the complaint is 'so vague and ambitious that [the defendants] [could] not reasonably be required to frame the responsive pleading.'"  *Collins v. Nevada Dep't of Corr.*, No. 2:22-CV-01795-CDS-BNW, 2025 WL 638627, at *20 (D. Nev. Feb. 25, 2025) (alterations and emphases in the original) (quoting *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *47, 2013 WL 1336830 (D. Ariz. Mar. 28, 2013)).  "Such a pleading can take two forms: first, when one party 'pleads multiple parties did an act, without identifying which party did what specifically.'"  *Id.*  "Second, a shotgun pleading occurs when . . . one party 'pleads multiple counts[] and does not identify which specific facts fit that [c]ount in that very [c]ount, but instead rely on a blanket incorporation clause that incorporates all of the statement of facts.'"  *Id.* (alterations in original).

Counter-Defendants incorrectly presume that incorporating previous allegations by reference into a claim renders the overall complaint a shotgun pleading.  *See, e.g.*, Motion at 4:21-23; *see also Navajo Health Found.*, 2023 WL 2843649, at *3 (explaining that  "incorporation of the general allegations into each [c]ount does not [necessarily] make [a complaint] a 'shotgun' pleading"); *Physicians Care All., LLC v. All Day Beauty, LLC*, No. 2:18-CV-2602-HRH, 2019 WL 176782, at *2 (D. Ariz. Jan. 11, 2019) (commenting that "a complaint is not a shotgun pleading 'simply because it incorporates by reference previous allegations'" (quoting *All. Labs, LLC v. Stratus Pahrms., Inc.*, No. 2:12-cv-00927 JWS, 2013 WL 273404, at *2 (D. Ariz. Jan. 24, 2013))).  "Rather, a court will dismiss a complaint [as being a shotgun pleading] if the 'incorporated by reference' language renders the complaint confusing and incomprehensible."  *Aguila v. Corp. Caterers IV, Inc.*, No. 1:15-CV-24350-KMM, 2016 WL 1045839, at *1 (S.D. Fla. Mar. 16, 2016).

Counter-Defendants indiscriminately condemn "[e]very cause of action" in the ACC as failing the shotgun pleading standard.  Motion at 4:21.  This also misgives the standard, which does not require dismissal of *all* claims merely because, for example, Counter-Defendants cherry-picked

a single line from a claim and feigned confusion about to whom that claim applies. *See, e.g.*, *id.* at 4:27-5:3; *Navajo Health Found.*, 2023 WL 2843649, at *3 (rejecting a shotgun pleading argument seeking dismissal of all claims as overly broad because some claims did not fail the standard).

None of Counter-Defendants' arguments establish that any ACC claim is "so vague and ambitious that [the defendants] [could] not reasonably be required to frame the responsive pleading.'" *Collins*, 2025 WL 638627, at *20 (alterations in original) (quoting *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *47). Counter-Defendants point to the cause of action for breach of the Exit Agreement as an example of a shotgun claim. *See* Motion at 4:27-5:3. Far from explaining how it cannot reasonably be required to respond to this cause of action, Counter-Defendants merely lament that they might have to "parse" the ACC to determine who was a party to the Agreement and whether they performed their obligations. *See id.* If Counter-Defendants simply read the ACC in good faith it would be apparent that paragraphs 50-53 are germane to this cause of action, particularly because they mention "Exit Agreement." *See* ACC at ¶¶50-53.

Continuing with the same example, neither of the *Collins* criteria for shotgun pleadings acknowledged by this Court are satisfied. *See Collins*, 2025 WL 638627, at *20. Paragraph 53 states that Shuster "reneged and took the patently incorrect position that neither Quinn, Denne, nor Counterclaimants own or are entitled to anything with regard to Utherverse," so "which party did what" is clear. *Id.* (quoting *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *47); ACC at ¶53. And the ninth cause of action identifies the "specific facts that fit that count" without "rely[ing] on a blanket incorporation clause" alone. *Collins*, 2025 WL 638627, at *20 (quoting *In re Mortgs. Ltd.*, 2013 Bankr. LEXIS 1393, at *47); *see Navajo Health Found.*, 2023 WL 2843649, at *3. Paragraph 149 states Denne and Quinn performed "as much as possible" and clearly refers to Denne and Quinn's previous conduct acknowledged in the exit Agreement and Denne's payment of an additional $160,000.00 as reflected in paragraph 51. ACC at ¶149; *see id.* ¶51.[3]

---

[3] Utherverse alludes to shotgun pleadings violating due process without citing any authority. *See* Motion at 5:4-9; *Atkins v. Gittere*, No. 2:02-CV-01348-JCM-BNW, 2020 WL 3893628, at *55 (D. Nev. July 10, 2020) (commenting that this Court need not address issues not support by relevant authority and cogent argument). In any event, the ACC does not violate due process because it is not a shotgun pleading as explained.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**B.     Counterclaimants' Fraud Claim Satisfies the Particularity Standard.**

Counterclaimants sufficiently alleged the "who, what, when, where, and how" of Shuster's fraud, including alleging what was false or misleading and why. *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627). The "who" is Shuster and Utherverse who act through Shuster. *See* ACC at 39:14; Motion at 6:2-3. The ACC specifies that Shuster's misrepresentations were made to Denne. *See, e.g.*, ACC at ¶¶32-34. The ACC further specifies that misrepresentations were made to the parties to the Agreements. *See, e.g., id.* ¶¶36-39, 66.

The "what" are the myriad misrepresentations that Shuster made as alleged in the ACC as well as the Agreements for which Shuster misrepresented his intent to perform. *See id.* ¶¶33-34 (misrepresentations listed and preceded by an allegation stating that Shuster made "representations that were later determined to be false"); ¶36 (stating that Utherverse entered into the Niya Note to defraud and steal money); ¶37 (alleging Utherverse entered into the Blockchain Funding SAFT to defraud Blockchain Funding of its money); ¶38 (same with regard to Masternode funding SAFT); ¶39 (same with regard to Blockchain Funding Note); ¶40 (same with regard to miscellaneous expenses); ¶48 (Shuster misrepresented deadlines); ¶66 (detailing Shuster's misrepresentations about patent litigation).

Ironically, Counter-Defendants' arguments demonstrate that they can identify the misrepresentations, but choose to ignore them and their context. *See* Motion at 6:17-7:5 (identifying misrepresentations but refusing to acknowledge them as such). However, this Court "must read the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-10549-MRP-MANX, 2014 WL 12609429, at *3 n.2 (C.D. Cal. Jan. 7, 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The allegation immediately preceding the list of misrepresentations provides that Shuster made "numerous other representations that were later learned to be false," so the ensuing list of representations sets forth misrepresentations. *See* ACC at ¶¶33-34; Motion at 6:18-20. The ACC also confirms that the items on the list are misrepresentations in later allegations. *See, e.g.*, ACC at ¶46 (alleging that the PCAOB "discovered that Utherverse's revenue was not $8-10 million per

14

year" and was "unable to confirm in any way that Shuster had invested $45 million of his own funds"); ¶34(c), (e).  Counter-Defendants are not entitled to ignore the list or its context merely because the corresponding fraud claim incorporates the list by reference.  *See* Motion at 6:28-7:3 (analyzing the particularity standard against a single line from the fraud claim); *Collins*, 2025 WL 638627, at *20; *Navajo Health Found.*, 2023 WL 2843649, at *3; *In re Countrywide*, 2014 WL 12609429, at *3 n.2.

Moreover, the complexity and variety of the misrepresentations alleged throughout the ACC reflects Counter-Defendants' complicated and varied fraudulent conduct, so Rule 9(b) does not excuse their refusal to read the entire ACC.  *See Navajo Health Found.*, 2023 WL 2843649, at *3 (commenting that "Rule 8(a) must be read in harmony with Rule 9(b)" and that "the length and complexity of a complaint may be a 'necessary consequence of the number and complexity of the schemes alleged.'" (quoting *In re Countrywide*, 588 F. Supp. 2d at 1156; *Fid. Nat. Title Ins. Co.*, 2011 WL 6141310, at *3)).

The dates listed throughout the ACC satisfy the "when."  *See, e.g.*, ACC at ¶2 ("since at least 2022 . . . ."); ¶32 (stating that "Denne was introduced to Shuster and Utherverse in or about 2022"); ¶36 (alleging Shuster fraudulently entered into the Niya Note on April 11, 2022); ¶37 (same as to the Blockchain Funding SAFT on May 10, 2022); ¶38 (same as to Masternode SAFT on May 10, 2022); ¶39 (same as to the Blockchain Funding Note on June 5, 2023).  The Ninth Circuit deemed similar allegations stating timeframes spanning multiple years compliant with Rule 9(b) in *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1181 (9th Cir. 2016), including allegations that misrepresentations occurred "[b]etween and during about 2005 and about 2007" and "[d]uring or after June 2008."  Indeed, the ACC alleges that the relationship began in 2022 and attempted to resolve through the Exit Agreement in April 2024.  *See* ACC at ¶¶32, 50.  The allegations of fraud necessarily fall within that time frame.  *See, e.g.*, *Id.* ¶¶33-34, 33-34, 40, 48, 66.

Counterclaimants satisfy the "where" and "how."  Where "fraud allegedly occurred over a period of time[,] . . . Rule 9(b)'s particularity requirement is less stringently applied."  *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006).  The "allegations [must] give [the]

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

[d]efendant adequate notice of the 'specific fraudulent conduct' of which he is accused and enable him to 'adequately defend against such allegations.'" *Id.* at 1077 (quoting *In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).  Furthermore, Rule 9(b) "should not be applied with such draconian strictness as to undermine the liberal spirit of the Federal Rules of Civil Procedure." *In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig.*, 583 F. Supp. 1388, 1398 (E.D. Pa. 1984).

In *Dynabest Inc. v. Yao*, the court found that the Rule 9(b) particularity requirement was met where the complaint contained "a long list of alleged misrepresentations" in which "[e]ach of the entries in [the] list [was] accompanied by a description specifying the approximate date the facsimile was sent, the recipient of the facsimile, and the contents of the facsimile."  760 F. Supp. 704, 707 (N.D. Ill. 1991).  "Although the places of transmission and receipt [were] not set out," the court concluded "it [could] be assumed that they are the principal places of business for [the] parties involved." *Id.*

Here, Shuster's misrepresentations clearly occurred over the course of approximately two years. *See, e.g.*, ACC at ¶¶32-34, 36-39, 56.  Like the complaint in *Dynabest*, the ACC alleges a detailed list of misrepresentations, to whom they were made, their approximate date, and it can be inferred that they were made in Utherverse's principal places of business via various communications and received by Counterclaimants in their principal places of business. *See* ACC at ¶¶6-17, 32-34, 36-39; 760 F. Supp. at 707.  The list of misrepresentations and those associated with the Agreements are sufficient to put Utherverse on notice. *See Wright v. Brooke Grp. Ltd.*, No. C99-3090MWB, 2001 WL 34008490, at *2, 3 (N.D. Iowa Mar. 9, 2001) (concluding that the complaint's failure to "allege where or when [the plaintiff] saw or read the advertisements [was] not fatal . . . because the defendants kn[ew] which of its advertisements [containing misrepresentations] are fraudulent" and "[t]he uncertainties about pleading when and where [the plaintiff] saw or read the advertisements can be balanced against the certainty with which plaintiffs plead the specific advertisements of the alleged misrepresentations").

Finally, the ACC reflects that the misrepresentations were false given that they deliberately misstated data about Utherverse and misleading in that they indicated Utherverse was more profitable and a sound investment vehicle than it truly was. *See, e.g.*, ACC at ¶¶33-34, 43, 46, 55.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**C.**    **Counterclaimants Sufficiently Pled Breach of Fiduciary Duty.**

To establish a breach of fiduciary duty, a plaintiff must establish "(1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach." *Guzman v. Johnson*, 483 P.3d 531, 538 (Nev. 2021).

Under Nevada law, "[a] fiduciary exists when one places heightened confidence in another such that the latter must then act in good faith and for the other's benefit." *Valley Health Sys., LLC v. Murray*, 544 P.3d 904, 908 (Nev. 2024) (en banc); *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("A 'confidential or fiduciary relationship' exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." (citing *Paskvan v. Mesich*, 455 P.2d 229 (Alaska 1969); *Stevens v. Marco*, 305 P.2d 669 (Cal. App. 1956); *Ford v. Guarantee Abstract and Title Co., Inc.*, 553 P.2d 254 (Kan. 1976))). Such a relationship "may arise by reason of kinship or professional, business, or social relationships between the parties." *Perry v. Jordan*, 900 P.2d 335, 337 (Nev. 1995) (per curiam).

In *Perry,* the court found a confidential (*i.e.*, fiduciary) relationship based in part on the gap in expertise between the parties, one of whom, Perry, was a "well-educated businessperson" and the other, Jordan, had only an eighth-grade education. *Id.* at 336; *see id.* at 338. Perry exploited Jordan's trust to persuade her to purchase Perry's clothing store at a premium and after pay Perry to manage it until, ultimately, Perry abandoned her role as manager. *See id.* at 337. Jordan testified that Perry knew she "had no experience, ability, or interest in managing" the store. *Id.*

A fiduciary relationship exists here. As alleged in the ACC, Shuster possessed technical expertise regarding Utherverse's metaverses and cryptocurrency tokens, causing Counterclaimants—who neither created nor held the intimate information that Shuster held being the creator of the Utherverse—to place heightened confidence in Shuster and trust his misrepresentations. *See, e.g.*, ACC at ¶31 (Utherverse's description of its expertise); ¶34 (misrepresenting Utherverse's "million[s]" of "metaverses," its possession of "valuable patents," and the dates on which the Utherverse platform would be operational); ¶¶37-38 (detailing agreements for tokens that Utherverse promised to mint); ¶48 (reflecting that Counterclaimants

17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  trusted that Shuster would meet deadlines for launching the Utherverse platform).    As

2  Counterclaimants "repose[d] a special confidence" in Shuster—just as Jordan trusted Perry's

3  expertise—Shuster "in equity and good conscience, [was] bound to act in good faith and with due

4  regard to the interests of" Counterclaimants.  *Long*, 639 P.2d at 530; *see Perry*, 900 P.2d at 337.

5  Shuster did the opposite; he exploited Counterclaimants' ignorance to misappropriate their funds.

6  *See* ACC at ¶¶35-40, 48, 55, 56, 66, 68-69.

7      Counter-Defendants may not ignore the general allegations of the ACC establishing the

8  elements of breach of fiduciary duty.  *See Collins*, 2025 WL 638627, at *20; *Navajo Health Found.*,

9  2023 WL 2843649, at *3; *In re Countrywide*, 2014 WL 12609429, at *3 n.2; Motion at 7:23-28.

10  Counterclaimants' allegation that "Shuster failed to act as a reasonably careful person would have

11  acted" incorporates Shuster's conduct described in the ACC, whether unintentional or intentional,

12  that breached his fiduciary duty.  ACC at ¶87; *see* Motion at 8:1-3.  And Counterclaimants suffered

13  damages in the amounts alleged in the ACC corresponding to the Agreements and other expenses

14  that Counterclaimants would not have paid but for their confidence in Shuster.  *See, e.g.*, ACC at

15  ¶¶35-40, 56; *see also* Motion at 8:22-9:1.

16      Additionally, Utherverse's attempt to  rely on NRS 78.138 fails, as Counterclaimants pled

17  Shuster committing fraud in order to overcome the standard set in NRS 78.138(7).  *See supra*

18  Section II.B.

19      **D.    Counterclaimants Adequately Pled Aiding and Abetting.**

20      Counterclaimants' aiding and abetting breach of fiduciary duty claim is adequately pled.

21  *See* ACC at ¶¶91-97.  Such a claim has four elements: "(1) there must be a fiduciary relationship

22  between two parties, (2) that the fiduciary breached, (3) the defendant third party knowingly and

23  substantially participated in or encouraged that breach, and (4) the plaintiff suffered damages as a

24  result[.]"  *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014).

25      As discussed, Shuster breached his fiduciary duty and Counter-Defendants may not ignore

26  Counterclaimants' satisfactory general allegations under the shotgun pleading standard.  *See*

27  Motion at 9:8-15.  Counterclaimants' allegation that "Good, Ganter, Nexus and Gary knowingly

28  and substantially assisted and/or encouraged Shuster to breach his fiduciary duty" refers to the

allegations under the "Co-Defendant Accomplices That Aided and Conspired With Shuster In Perpetrating His Fraud" heading. *See, e.g.*, ACC at ¶¶58-59 (alleging that Good "created, formed, and operated a business structure which Shuster utilized to obtain money from Counterclaimants . . . including setting up and transferring money to offshore accounts and corporations"); ¶¶61, 63 (alleging that Gantner and his business, Nexus, "created and developed a non-licensed platform—that competed with Utherverse's platform" and "knowingly received funds fraudulently obtained from Counterclaimants"); ¶66 (alleging that Gary "supported" and/or provided "approval" to Shuster to misrepresent the patents that Utherverse owns to Counterclaimants to obtain their funds and resources). The ensuing damages were those incurred by Counterclaimants as a result of trusting Shuster as a fiduciary. *See, e.g.*, ACC at ¶¶35-40, 56.

Counterclaimants stated their "reasonabl[e] care[]" allegation in their breach of fiduciary duty claim so that the claim would capture all of Shuster's breaches of fiduciary duty alleged in the general allegations, which include fraud. *See* ACC at ¶87. Further, Counter-Defendants' assertion that Counterclaimants' allegations implicate doctrines regarding legal advice is unsupported by authority and fails because the ACC allegations against Gary and Good are not limited to legal advice. *See* Motion at 9:21-10:1; ACC at ¶¶59, 66.

### E.    Counterclaimants Adequately Pled Civil Conspiracy.

Counterclaimants adequately plead their claim for civil conspiracy among Counter-Defendants. *See* ACC ¶¶98-102. "Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Guilfoyle*, 335 P.3d at 198 (quoting *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998)). "[A] plaintiff must provide evidence of an explicit or tacit agreement between the alleged conspirators." *Id.* Claims for civil conspiracy must satisfy the Rule 9(b) pleading standard if predicated upon fraud. *See Honghui Deng v. Nevada ex rel. Bd. of Regents for Nevada Sys. of Higher Educ.*, No. 217-CV-03019-APG-VCF, 2020 WL 1470866, at *2 n.1 (D. Nev. Mar. 25, 2020).

For the reasons stated in section II.B. above, Counterclaimants adequately pled fraud. *See* Motion at 10:8-9. Those allegations underlying that fraud claim, combined with the allegations

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

about Good, Gantner, Nexus, and Gary's role in furthering that fraud, plausibly and specifically establish the civil conspiracy claim.  *See, e.g.*, ACC at ¶¶58-59 (alleging that Good "created, formed, and operated a business structure which Shuster utilized to obtain money from Counterclaimants . . . including setting and transferring money to offshore accounts and corporations"); ¶¶61, 63 (alleging that Gantner and his business, Nexus, "created and developed a non-licensed platform—that competed with Utherverse's platform" and "knowingly received funds fraudulently obtained from Counterclaimants"); ¶66 (alleging that Gary "supported" and/or provided "approval" to Shuster to misrepresent the patents that Utherverse owns).

The Motion does not cite authority for the proposition that a claim for civil conspiracy based on fraud must establish that each conspirator individually made misrepresentations, perpetrated the fraud directly, or satisfied other criteria that the Motion insists upon.  *See, e.g.*, Motion at 11:7-9. Such nit-pciking does not detract from the fact that the allegations establish an agreement among Shuster—who committed the fraud—and Good, Gantner, Nexus, Gary, and Utherverse,[4] who supported that fraud.  *See Guilfoyle*, 335 P.3d at 198; ACC at ¶¶58-69.

The Motion infers the intercorporate conspiracy doctrine applies because of the general allegations in the ACC that Good and Gary are attorneys.  *See* Motion at 12:13-13:3.  However, the remaining allegations reflect that Gary and Good supported Shuster's fraud through conduct independent of their capacities as attorneys.  *See* ACC at ¶¶58-59, 66; *Petricevic v. Shin*, No. CV 20-00283 LEK-WRP, 2021 WL 2700382, at *5 (D. Haw. June 30, 2021) ("It is . . . axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy." (quoting *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)).  For example, Good did not need to act in his capacity as an attorney to have "created, formed, and operated a business structure which Shuster utilized to obtain money from Counterclaimants" and "set[] up and transfer[ed] money to offshore accounts

---

[4] Utherverse asserts that the allegations against the co-conspirators fail to distinguish among the Utherverse entities, but this is unnecessary as Counterclaimants allege that each entity is an alter ego of Shuster, against whom Counterclaimants adequately pled fraud.  *See* ACC at ¶¶70-72.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

and corporations." *Id.* ¶58.  Nor was Gary's status as an attorney necessary to support and approve

of Shuster's misrepresentations about patents and litigation over them.  *See id.* ¶66.

### F.    A Shareholder Derivative Action is not Required.

Counterclaimants were not required to bring a shareholder derivative action to state their

claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or civil conspiracy.

*See* Motion at 13:4-21.  "[W]hether a claim is direct or derivative must be resolved solely based on

two questions, "(1) who suffered the alleged harm (the corporation or the suing stockholders,

individually); and (2) who would receive the benefit of any recovery or other remedy (the

corporation or the stockholders, individually)?"  *Parametric Sound Corp. v. Eighth Jud. Dist. Ct.*

*in & for Cnty. of Clark*, 401 P.3d 1100, 1107 (Nev. 2017) (quoting *Tooley v. Donaldson, Lufkin &*

*Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)).

The Motion does not identify the corporation in the name of which the above causes of

action must be prosecuted.  *See* Motion at 13:4-21.  Counterclaimants do not sue for harm to the

Utherverse entities, and the entities whom Counter-Defendants harmed—Blockchain Funding,

Blockchain Alliance, Masternode Partners, and Niya Holdings—are prosecuting this action in their

own names as the real parties in interest.  *See generally* ACC; Fed R. Civ. P. 17(a).  All

Counterclaimants, both individuals and entities, suffered harm from Shuster's breach of fiduciary

duty, the aiding and abetting, and the civil conspiracy among Counter-defendants to further

Shuster's fraud.  *See Parametric Sound*, 401 P.3d at 1108 ("[A]ll shareholders can share a common

injury and a direct claim will still exist, so long as the shareholders have directly suffered harm that

is not dependent on any injury to the corporation").

### G.    Breach of the Niya Note was Adequately Pled.

Counter-Defendants allege that more details were required about the Niya Note to establish

a breach and list additional allegations that Counterclaimants could have made.  *See* Motion at

13:22-16:4*.* They are incorrect.  To establish breach, a plaintiff must "demonstrate the following

elements:  (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as

a result of the breach."  *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D.

Nev. 2009) (citing *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919–20 (D.Nev.2006)).

21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The ACC provides that:  the Niya Note was a valid agreement between Utherverse and Niya Holdings; Niya Holdings "transferred $1,350,000 to Utherverse"; Utherverse "agreed to repay" Niya Holdings; and that Utherverse "now refuses to [repay]," has "stolen the funds," and "never intended to . . . repay the funds[.]"  ACC at ¶36; *see also id.* ¶¶103-112.  Thus, a valid agreement existed, Utherverse breached by not repaying and stealing the funds, and Niya Holdings suffered $1,350,000 in damages.  *See Cohen-Breen*, 661 F. Supp. 2d at 1171.  Counter-Defendants' list of additional factual allegations that Counterclaimants *could* have made is unavailing, as the ACC's allegations satisfy the elements for breach.  *See* Motion at 15:7-15.  Nothing more was required to put Utherverse on notice.[5]  *Cohen-Breen*, 661 F. Supp. 2d at 1171.

Counter-defendants' citation to *Patel*, an insurance policy case, is unpersuasive, as the Niya Note is a loan agreement, and the ACC sets forth the relevant terms, including that Utherverse agreed to repay.  *See* Motion at 14:15-26; *Patel v. Am. Nat'l Prop. & Cas. Co.*, 367 F.Supp.3d 1186, 1192 (2019) (explaining that the plaintiff failed to allege "what terms were allegedly breached and the manner in which" they were breached).

## H. Breach of the Blockchain Funding SAFT is Sufficiently Pled.

The Motion employs the same basic strategy with regard to the other claims for breach: incorrectly assert more allegations were required and ignore the general allegations supporting the elements for breach.  As discussed, Counter-defendants cannot ignore the clearly applicable allegations.  *See Collins*, 2025 WL 638627, at *20; *Navajo Health Found.*, 2023 WL 2843649, at *3; *In re Countrywide*, 2014 WL 12609429, at *3 n.2.

The allegations in the ACC regarding the Blockchain Funding SAFT state a plausible claim for breach.  *See* ACC at ¶¶37, 113-22.  The ACC provides that:  Utherverse and Blockchain Funding executed a SAFT "whereby Blockchain Funding purchased 360,000,000 tokens . . . for a total purchase amount of $12,000.24"; Blockchain Funding paid; and Utherverse never delivered the

---

[5] Moreover, the terms of all Agreements were incorporated by reference into the ACC, so the ACC was not required to exhaustively describe the Agreements.  *See Cuadros v. State Farm Fire & Cas. Co.*, No. 2:14-CV-1247 JCM (PAL), 2014 WL 7338945, at *3 (D. Nev. Dec. 23, 2014) (explaining that, in addressing a motion to dismiss, a court may consider documents incorporated into a compliant by reference (*i.e.*, extensively referenced in the complaint) even if those documents are not attached to the complaint).

tokens, remitted payment, and asserted Blockchain Funding is not owed any tokens. *Id.* ¶37. Thus, a valid agreement existed, Utherverse breached by not delivering tokens, and Blockchain Funding has suffered $12,000.24 in damages. *See Cohen-Breen*, 661 F. Supp. 2d at 1171. No additional allegations were required. *See id.*

The Motion makes an argument in passing that Counterclaimants' alter-ego arguments are insufficient to support the Utherverse Entities' and Shuster's liability under the Blockchain Funding SAFT. *See* Motion at 17:4-9. The ACC alleges unity of interest among Shuster and the Utherverse Entities, and, as discussed above, Shuster has used the entities to perpetrate fraud. *See* ACC at ¶¶70-72; *N. Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 471 P.2d 240, 243 (Nev. 1970) (providing the elements for establishing that a corporation is an alter ego).

## I.    Breach of the Masternode SAFT is Sufficiently Pled.

The allegations in the ACC regarding the Masternode SAFT state a plausible claim for breach. *See* ¶¶38, 123-32. The ACC provides that: Utherverse and Masternode executed a SAFT "whereby Masternode purchased 150,000,000 tokens . . . for a total purchase amount of $5,000.01"; Masternode "made payment"; and Utherverse never delivered the tokens, never remitted payment, and asserted Masternode is not owed any tokens. *Id.* ¶38. Thus, a valid agreement existed, Utherverse breached by not delivering tokens, and Masternode suffered $5,000.01 in damages. *See Cohen-Breen*, 661 F. Supp. 2d at 1171. No additional allegations were required. *See id.* The Motion's alter ago contention fails as to the Masternode SAFT for the same reason that it fails as to the Blockchain Funding SAFT. *See* Motion at 18:2-6.

## J.    Breach of the Blockchain Funding Note is Sufficiently Pled.

The allegations in the ACC regarding the Blockchain Funding Note state a plausible claim for breach. *See* ACC at ¶¶39, 133-42. The ACC provides that: Blockchain Funding and Utherverse executed a promissory note in which Blockchain funding "loaned to Utherverse a total of $350,000.00"; the note was secured by the Stock Pledge Agreement pledging shares of Utherverse, Inc. stock; Blockchain Funding provided the loan proceeds; the proceeds have not been returned; and Utherverse denies the transfer of any shares. *Id.* ¶39. Thus, a valid agreement existed, Utherverse breached by not paying or returning the loan proceeds and denying issuance of shares,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    and Blockchain Funding has suffered $350,000.00 in damages plus the value of the shares.  *See*

2    *Cohen-Breen*, 661 F. Supp. 2d at 1171.  No additional allegations were required.  *See id.*

3    **K.      Breach of the Exit Agreement was Sufficiently Pled.**

4    The allegations of the ACC regarding the Exit Agreement state a plausible claim for breach.

5    *See* ACC at ¶¶50-53, 143-52.  The ACC provides that:  Shuster acknowledged Denne's "monies

6    spent on behalf of Utherverse, as well as Denne's ownership of 510,000,000 and 2,800,000 shares

7    of Utherverse Inc."; Denne agreed to provide $160,000.00 in exchange for the acknowledgment

8    and to support the separation; that the exit strategy in the Exit Agreement consisted in part of "sale

9    of tokens and distributions therefrom"; and that Shuster reneged on the Exit Agreement, taking the

10   position that nothing is owed.  *Id.* ¶50-53.  Thus, there was a valid agreement, Shuster breached by

11   denying Denne's entitlement to tokens, shares, and/or funds, and Denne suffered damages in the

12   amount of $160,000.00 plus the value of the stock and tokens that Shuster acknowledged he owned

13   in the Exit Agreement.  *See Cohen-Breen*, 661 F. Supp. 2d at 1171.  No additional allegations were

14   required.  *See id.*[6]

15   **IV.     CONCLUSION**

16   For these reasons, Counterclaimants respectfully request that this Court deny Counter-

17   Defendants' Motion.

18   DATED this 13th day of June, 2025.

19                                   BROWNSTEIN HYATT FARBER SCHRECK, LLP

20                                   BY: */s/ Maximilien D. Fetaz*
21                                      Maximilien D. Fetaz, Esq.
                                        Zachary R. Meyer, Esq.
22                                      100 North City Parkway, Suite 1600
                                        Las Vegas, NV 89106-4614

23                                      *Attorneys for Defendants/Counterclaimants*

24

25

26

27

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

---

[6] The Motion reserves the right to object based on personal jurisdiction.  *See* Motion at 20:1-21:2.
Counterclaimants accordingly reserve their right to oppose the objection.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **COUNTERCLAIMANTS' OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIM** was served via electronic service on the 13th day of June, 2025.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

33895652