MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,

Plaintiffs,

v.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual.

Defendants.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual,

Counterclaimants,

v.

Case No.: 3:25-cv-00020-MMD-CSB

**COUNTERCLAIMANTS' OPPOSITION TO MOTION TO STRIKE**

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,

Counterdefendants.

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Niya Holdings, LLC ("Niya Holdings"), and Nima Momayez ("Momayez") (collectively, "Counterclaimants"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, file this Memorandum of Points and Authorities in Support of Counterclaimants' Opposition ("Opposition") to Counter-Defendants Utherverse, Inc. ("Utherverse, Inc."), Brian Shuster ("Shuster"), Utherverse Digital, Inc. ("Utherverse Digital"), Peter Gantner ("Gantner"), Nexus Venture LLC ("Nexus"), Ari Good ("Good"), and Gary Shuster's ("Gary") (collectively, "Counter-Defendants") (all together, the "Parties") Motion to Strike Amended Affirmative Defenses and Portions of Amended Counterclaim Pursuant to FRCP 12(f) ("Motion").

This Opposition is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument this Court may request.

DATED this 13th day of June, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Counter-Defendants' Motion is a paradigm of why motions to strike are highly disfavored. Despite acknowledging the high standard for a motion to strike, the Motion attacks the vast majority of Counter-Defendants' affirmative defenses and general allegations, often in swaths at a time. In almost every contention regarding allegations from the Amended Counterclaims ("ACC"), Counter-Defendants merely recite that the defense or allegation is "immaterial, impertinent, and scandalous" with no citation to authority or application of the standards cited earlier. The Motion is a transparent attempt to needlessly create work.

But the standard for a motion to strike is just that—high. Thus, while Counter-Defendants succeeded in creating work for Counterclaimants, they fail to satisfy Rule 12(f) as that work demonstrates below.

## II. FACTUAL BACKGROUND

Utherverse [1] specializes in creation of cryptocurrency and metaverses in which cryptocurrency can be transacted. *See* ACC at ¶31. In or about 2022, Denne was introduced to Shuster, the owner and operator of the Utherverse, which, at the time, was scattered across eleven LLCs. *See id.* ¶32. Utherverse was in desperate need of reorganization, effective management, and investment capital, all of which Denne had the experience and background to provide or procure. *See id.*

### A. Utherverse's Foundational Misrepresentations

After their introduction, Shuster touted the success of the Utherverse's metaverses to entice Denne and others to agree to provide services and capital. *See id.* ¶33. Shuster made various intentional misrepresentations that overstated the capabilities and financial strength of Utherverse, including that Utherverse had: 50 million users of its metaverses; over one million metaverses on its platform; annual revenue of $8-10 million; $16 billion in transactions on its platform; was capitalized with $45 million of Shuster's own money; spent more than $40 million on development

[1] Unless otherwise specified "Utherverse" is used herein to refer to all entities controlled by Shuster bearing the name "Utherverse," which are his alter egos. *See* ACC at ¶¶70-72.

of its metaverses; was franchised in 17 countries; generated more than $77 million in revenues from memberships, marketplaces, advertising, and other revenue streams; owned a large number of valuable patents that were disputed in pending infringement litigation that Utherverse would surely win; and, platform development was ongoing but it would be operational on specific dates that all came to pass without Utherverse being operational. *See id.* ¶34.

Shuster succeeded in enticing Denne, who then dedicated significant time, resources, and personal funds to Utherverse and acquired capital for Utherverse from others, including through agreements ("Agreements"), who likewise relied on the misrepresentations. *See id.* ¶35.

**B. Niya Note**

On April 11, 2022, Utherverse executed a senior secured convertible promissory note ("Niya Note") with Counterclaimant Momayez and her company, Niya Holdings. *See id.* ¶36. Under the Niya Note, Niya Holdings provided Utherverse with $1,350,000.00. Niya Holdings entered into the Niya Note "in reliance on Shuster's misrepresentations[] as previously detailed [above]." *Id.* Utherverse agreed to the terms of repayment in the Niya Note. *See id.* However, Utherverse later refused to repay the Niya Note and has not returned the funds. *See id.* Utherverse's conduct evidences that it never intended to repay the Niya Note. *See id.*

**C. Blockchain Funding SAFT**

On May 10, 2022, Utherverse and Counterclaimant Blockchain Funding, Denne's company, executed a simple agreement for future tokens ("SAFT") under which Blockchain funding purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 ("Blockchain Funding SAFT"). *See id.* ¶37. Blockchain Funding paid; Utherverse never delivered the tokens or remitted Blockchain Funding's payment. *See id.*

**D. Masternode SAFT**

On May 10, 2022, Counterclaimant Masternode, one of Denne's investor contacts, purchased 150,000,000 tokens at the then-price per token of $0.000033334 for a total purchase amount of $5,000.01 ("Masternode SAFT"). *See id.* ¶38. Masternode paid; Utherverse failed to deliver tokens or remit the $5,000.01. *See id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**E. Blockchain Funding Note**

On June 5, 2023, Blockchain Funding loaned Utherverse $350,000.00, which was evidenced by a promissory note ("Blockchain Funding Note"). *See id.* ¶39. The Blockchain Funding Note was secured by a stock pledge agreement ("Stock Pledge Agreement") memorializing the Note and pledging 2,800,000 shares of Utherverse stock to Blockchain Funding. *See id.* Blockchain Funding provided the $350,000.00 to Utherverse under the impression that the stock shares were transferred, but Utherverse denies that the stock was transferred and has failed to remit the $350,000.00. *See id.*

**F. Additional Counterclaimant Expenses**

Relying on the Utherverse's aforementioned misrepresentations and presuming performance of the Agreements, Counterclaimants expended significant funds to promote and advance the success of Utherverse totaling more than $1,376,500.00. *See id.* ¶40. Utherverse promised repayment, but never repaid. *See id.*

Counterclaimants also expended significant funds to improve the reputation of Utherverse, which was associated with the pornography industry, and secure Utherverse a banking relationship. *See id.* ¶¶41, 47.

**G. Unraveling Utherverse's Fraud and Deception**

Counterclaimants leveraged their reputations and professional relationships to provide business opportunities to Utherverse. *See, e.g.*, *id.* ¶42. Denne worked to secure a $25 million agreement between Utherverse and an investor, but days before the investor wired the money, an employee of Shuster contacted the investor and informed him that Shuster was a fraudster and that there was a lawsuit for fraud pending against him. *See id.* The investor withdrew from the agreement. *See id.*

Denne hired a specialist to make Utherverse more investable. *See id.* ¶43. The specialist consolidated the eleven LLCs that Utherverse formerly consisted of and created a parent company with subsidiaries. *See id.* The specialist attempted to verify and create proper intellectual property documentation of the patents that Utherverse possesses. *See id.* ¶¶43, 34(i). Yet the specialist could not verify Shuster's ownership of numerous patents that Shuster represented he or Utherverse

owned, demonstrating that Utherverse intentionally misrepresented its intellectual property portfolio. *See id.* ¶43.

Denne hired a CEO for Utherverse who had experience working as a CEO in Utherverse's industry. *See id.* ¶44. The CEO could not continue in his role as CEO because Shuster: would not pay him for his work, interfered with his governance of Utherverse, and exposed the CEO to liability. *See id.*

When Denne attempted to hire a CFO to clean up Utherverse's books and records, create proper timelines and budgets, and oversee use of Counterclaimant funds, Shuster refused to hire him because doing so would have revealed Shuster's misrepresentations and misuse of the funds. *See id.* ¶45.

Denne hired a Public Company Accounting Oversight Board ("PCAOB") to produce audited financial statements enabling Utherverse to participate in crowdfunding. *See id.* ¶46. The PCAOB discovered that Utherverse's revenue was not \$8-10 million per year—as Shuster misrepresented—but less than \$1.5 million per year. *See id.* ¶¶46, 34(c). The PCAOB was also unable to confirm that Shuster had invested \$45 million of his own funds—another misrepresentation. *See id.* ¶¶46, 34(e).

Shuster hired a "Pro-Developer" to perform work for Utherverse whom Utherverse paid \$30,000 a month. *See id.* ¶49. Counterclaimants discovered that the Pro-Developer was outsourcing his work for \$1,500 to another developer, submitting that developer's work as his own, and pocketing the remaining \$28,500. *See id.* Shuster was complicit in this scheme and receiving a portion of the funds. *See id.*

Shuster engaged in a variety of other conduct that was either propagated in furtherance of his fraud or to cover up the same, including:

- paying commissions to two separate unlicensed brokers for brokering the Niya Note;
- obtaining a \$1 million investment from Chauncey Lufkin ("Lufkin"), whom Shuster placed on the board of Utherverse, Inc. and for whose investment Shuster paid another brokerage fee to an unlicensed broker, Jasmine Yuan;



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

- entering into a consulting agreement with Lufkin's wife following receipt of Lufkin's investment and paying her with Utherverse shares, creating a conflict of interest;
- concealing from Counterclaimants and omitting from SEC disclosures that Lufkin was under investigation and sanctioned by the SEC for cryptocurrency investment fraud;
- refusing to remove Lufkin and his wife from their board and management positions after their conflict of interest, Shuster's concealment, and SEC noncompliance were divulged;
- selling pre-sale tokens on an unregistered, non-SEC complaint platform;
- accepting investments in tokens from non-accredited U.S. investors;
- paying commissions and referral fees to U.S.-based individuals for sale of tokens;
- taking equity investments from non-accredited U.S. investors and paying commissions to unlicensed individuals for securing the investments;
- failing to report new investments to the SEC, IRS, or local tax authorities;
- laundering money through Utherverse;
- using investor funds to make pornographic films;
- using investor funds to pay for his and others' personal travel expenses;
- using investor funds to pay for legal work unassociated with Utherverse; and
- gifting Utherverse, Inc. shares and tokens to friends, such as an escort, for reasons unassociated with Utherverse's business.

*See id.* ¶56.

**H. <u>The Parties' Failed Separation and Utherverse's Conduct Thereafter</u>**

During the Parties' relationship, Shuster failed to meet over twenty significant developmental deadlines, particularly "launch dates" for projects associated with metaverses and Utherverse's cryptocurrency tokens. *See id.* ¶48. These deadlines were a farce; Utherverse set them to delay and conceal its fraudulent activities. *See id.*

In April 2024, after Shuster failed to meet another deadline, Denne terminated his business relationship with Utherverse through oral and written discussions. *See id.* ¶¶50-51. Shuster provided written acknowledgment of Denne's efforts and interests, including: the monies Denne spent on behalf of Utherverse; Denne's ownership of 510,000,000 tokens; and Denne's ownership

of 2,800,000 shares of Utherverse, Inc. *See id.* ¶51. Denne also paid $160,000 to facilitate separation. *See id.*

The above discussions and acknowledgments are reflected in an exit agreement ("Exit Agreement") that sought to wind down the relationship among Quinn, Denne, Shuster, and Utherverse on mutually beneficial terms. *See id.* ¶52. The Exit Agreement provided an exit strategy including sale of the tokens that Utherverse promised to mint and distribution of proceeds from them. *See id.* ¶53. Shuster reneged on the Exit Agreement and contended that neither Quinn, Denne, nor Counterclaimants own or are entitled to anything with regard to Utherverse. *See id.*

In September 2024, Shuster sent formal letters to Denne's investor contacts many of whom Denne had recruited to support Utherverse. *See id.* ¶54. In the letters, Shuster falsely accused Denne of fraud, including altering documents, stealing investor funds, and stealing Utherverse money and stock. *See id.* Shuster implored the recipients to keep the letters secret and investigate Denne. *See id.*

**I. Good, Gantner, Nexus, and Gary Facilitate Utherverse's Fraud**

Good facilitated some or all of Shuster and Utherverse's fraud, concealment, and breaches. *See id.* ¶¶58-59. Good created, formed, and operated a business structure for Shuster enabling him to misappropriate money from Counterclaimants, including creating and transferring money to offshore accounts and corporations. *See id.* ¶58. Good benefitted because he has ownership interest in Utherverse and knowingly received misappropriated funds as payment. *See id.* Good also issued various letters to undermine Counterclaimants' interests and right to benefit from the Agreements such as by purporting to cancel the agreements without remitting the funds. *See id.* ¶59.

Gantner supported Shuster's fraud and concealment by developing an unlicensed platform that competed with and undermined Counterclaimants' interests in Utherverse's platform. *See id.* ¶61. Gantner sold Utherverse tokens and shares to non-accredited investors, including on the unlicensed platform, and received commissions from Shuster. *See id.* Gantner knowingly accepted funds that Shuster misappropriated from Counterclaimants. *See id.* Gantner parroted Shuster's misrepresentations or made misrepresentations of his own to entice Counterclaimants to invest, including overstating the readiness of the Utherverse platform or tokens for launch, financial data





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

like Utherverse's revenues (*e.g.*, over $70,000,000 in revenues), and user data (*e.g.*, over 50 million users). *See id.* Gantner exploited his roles as a developer and CEO of Utherverse's platform, knowing that his technical expertise, background, and intimate knowledge of the platform would lead Counterclaimants to trust his misrepresentations. *See id.* Gantner used his business, Nexus, to help Shuster launder, misappropriate, or hide money from Counterclaimants. *See id.* ¶63.

Gary aided and conspired with Shuster to defraud and misappropriate Counterclaimants' funds. *See id.* ¶65. Gary is Shuster's brother, was Chief Intellectual Property Officer of Utherverse Digital, was general counsel of Utherverse, Inc., and is a member and serves on the executive board of Utherverse Gaming, LLC ("Utherverse Gaming"). *See id.* With Gary's support and knowledge of the falsity, Shuster misrepresented to Counterclaimants that: Utherverse owned certain patents over which there was pending infringement litigation with Epic Games, Inc., Utherverse was likely to win the litigation, and victory would increase Utherverse's value. *See id.* ¶66. Shuster so represented to entice Counterclaimants to provide more money and resources that he could misappropriate. *See id.* However, the patents (such as Patent Numbers 8276071, 8812954, 9123157, 9724605, and 10198154) are designated as invented by Shuster (expect for 10198154 that shows Gary as the inventor) and assigned to Utherverse Gaming. *See id.* Yet they remain prominently featured on the Utherverse website as though Utherverse possesses rights to them. *See id.* Shuster and Gary schemed to misrepresent ownership of the patents to enable Shuster to obtain funds from Counterclaimants. *See id.*

When Utherverse minted its tokens in Fall 2024 ("UTHX" token), Utherverse failed to deliver tokens to Counterclaimants under the SAFTs. *See id.* ¶68. Utherverse nevertheless circulated UTHX tokens into the market in small amounts to inflate their price. *See id.* UTHX briefly sold at $2.00 per token, but then plummeted to a value of less than $0.01 per token when Utherverse finally released the tokens to investors, who immediately sold the tokens and deflated the price. *See id.* Utherverse feigned a malfunction in the UTHX token and created a new token ("UTHR" token). *See id.* ¶69. UTHR was distributed to a select few and in some cases non-accredited investors, while all investors holding UTHX tokens were left with a token devoid of

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

value. *See id.* Uthervese again attempted to inflate UTHR with similar results: UTHR sold for $0.70 and shrank to $0.07. *See id.*

**J. <u>Procedural History</u>**

On January 10, 2025, Utherverse filed the Complaint. *See* Compl. Counterclaimants filed their Amended Answer ("AA") and ACC on April 24, 2025, which ACC included claims for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, breach of the Niya Note, breach of the Blockchain Funding SAFT, breach of the Masternode SAFT, breach of the Blockchain funding Note, and breach of the Exit Agreement. *See generally* ACC.

## III. <u>ARGUMENT</u>

"Motions to strike are not favored and 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *DS-Concept Trade Inv., LLC v. Morgan-Todt, Inc.*, No. 16-CV-02785-YGR, 2017 WL 2180982, at *3 (N.D. Cal. May 18, 2017) (quoting *Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)). "When a court considers a motion to strike, it 'must view the pleading in a light most favorable to the pleading party.'" *Id.* (quoting *In re 2TheMart.com, Inc. Sec Lit.*, 114 F Supp.2d 955, 965 (C.D. Cal. 2000)). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Id.*

"Rule 12(f) of the Federal Rules of Civil Procedure states that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fed. R. Civ. P. 12(f)). "Where the moving party cannot demonstrate the material will prejudice a party, 'courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f).'" *DS-Concept*, 2017 WL 2180982, at *3 (quoting *New York City Employees' Retirement System v. Barry*, 667 F.Supp.2d 1121, 1128 (N.D. Cal. 2009)).

"To show that a defense is 'insufficient,' 'the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *California Dep't of Toxic Substances Control v. Alco*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Pac., Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (quoting *Securities & Exchange Comm'n v. Sands*, 902 F. Supp. 1149, 1165 (C.D.Cal.1995)). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Id.* (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd. on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Id.* (citing *Gilbert v. Eli Lilly Co., Inc.*, 56 F.R.D. 116, 121, n. 4 (D.P.R. 1972)). To be stricken as scandalous, allegations "must reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court." *Vay v. Huston*, No. CIV. A. 14-769, 2015 WL 4461000, at *4 (W.D. Pa. July 21, 2015) (quoting *Donnelly v. Commonwealth Fin. Sys., Inc.*, 2008 WL 762085, at *4 (M.D.Pa. Mar.20, 2008)).

### A. Counterclaimants' Affirmative Defenses Should not be Stricken.

"[A]ffirmative defenses are not subject to the heightened pleading requirements set forth in *Twombly* and *Iqbal*." *Threshold Enters. Ltd. v. Lifeforce Digital Inc.*, 730 F. Supp. 3d 940, 944 (N.D. Cal. 2024) (citing *Kanaan v. Yaqub*, 709 F. Supp. 3d 864, 868 (N.D. Cal. Dec. 26, 2023)).

Defense 1:[2] "Plaintiffs failed to state a claim upon which relief can be granted." AA at 17:19; *see* Motion at 4:9.

"[I]t is well settled that the failure-to-state-a-claim defense is a perfectly appropriate affirmative defense to include in the answer." *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 80 (D. Conn. 2015) (quoting *Erickson Beamon, Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105 (NRB), 2014 WL 3950897, at *4 (S.D.N.Y. Aug. 13, 2014)).

Although Counter-Defendants offer conflicting authority on the propriety of this affirmative defense, it should not be stricken for the additional reason that Counter-Defendants have failed to and cannot demonstrate that it will materially prejudice them. *See DS-Concept*, 2017 WL 2180982,

[2] Counterclaimants follow the same formatting as the Motion for this Court's convenience, but note that Counter-Defendants' formatting, including grouping together defenses and allegations with shallow analysis therefor, reflects Counter-Defendants' desire to minimize their effort but maximize Counterclaimants' time and expense responding.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

at *3. If anything, it benefits Counter-Defendants by providing notice that Counterclaimants are contemplating filing a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(b)(6).

Defense 2: "Plaintiffs failed to join indispensable parties." AA at 17:20; Motion at 4:16.

Counterclaimants plead failure to name an indispensable party without naming a particular party because discovery will likely reveal that Shuster and Utherverse's fraud implicates unidentified indispensable parties. Counterclaimants are but few of several investors in Utherverse who provided funds to Utherverse; therefore, there are likely several investors who fit the profile of Counter-Defendants' bizarre theory that Utherverse was fraudulently provided money and resources to render Utherverse insolvent. *See, e.g.*, Compl. ¶18. This affirmative defense poses no prejudice to Counter-Defendants and, at the worst, it benefits them by providing notice. *See DS-Concept*, 2017 WL 2180982, at *3.

Defense 3: "Plaintiffs failed to plead their claims with particularity." AA at 17:21; *see* Motion at 4:23-28.

The authority counter-claimants rely on, *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995), aff'd sub nom. *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998), specifically states that "not stat[ing] *fraud* with particularity is not an affirmative defense" whereas Counterclaimants here allege more generally that Counter-Defendants failed to plead claims with particularity. (emphasis added); *see* AA at 17:21. Although this distinction is subtle, again, Counter-Defendants allege an intricate and bizarre fraudulent scheme, leaving Counterclaimants to guess what additional details are necessary to Counter-Defendants' claims before discovery, so *S.E.C.* should not be applied dispositively. Counter-Defendants have also identified no prejudice they would suffer if this claim is not stricken. *See DS-Concept*, 2017 WL 2180982, at *3.

Defense 4: "Plaintiffs' claims are barred by Plaintiffs' unclean hands." AA at 17:22; *see* Motion at 5:1.

Counter-Defendants had to deliberately ignore the bases for unclean hands as they read through the ACC looking for allegations to nitpick in their Motion. *See* Motion at 6:23-10:5 (listing allegations from the ACC); *see also, e.g.*, ACC at ¶1 (alleging that "[t]his case involves the fraudulent offer and sale of unregistered securities by Shuster and [Utheverse]" and that Shuster

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

"act[ed] in concert with partners Gantner, Nexus, and attorneys Good and Gary . . . [to] orchestrate[] a scheme to defraud investors"). Counter-Defendants were not entitled to ignore the obviously applicable allegations in the Counterclaims, as "counterclaims . . . are . . . components of . . . an answer[.]" *DeCurtis LLC v. Carnival Corp.*, No. 20-CV-22945, 2022 WL 658885, at *3 (S.D. Fla. Feb. 9, 2022), report and recommendation adopted, No. 20-21547-CIV, 2022 WL 658103 (S.D. Fla. Mar. 4, 2022). Because the ACC spelled out myriad fraudulent misrepresentations—and even a statute that Counter-Defendants violated—Counterclaimants received sufficient notice, which notice need not be commensurate with the *Twombly*/*Iqbal* pleading standard. *See* ACC at ¶4; *Threshold*, 730 F. Supp. 3d at 944.

Additionally, Counter-Defendants have only shown that they refuse to read the ACC, not that they will suffer prejudice. *See DS-Concept*, 2017 WL 2180982, at *3.

Defenses 5, 7, 8, 10, 24-28. *See* Motion at 6:3-5.

Counter-Defendants' conclusion that "these affirmative defenses are pled bare of any supporting factual allegations" is again based entirely on their refusal to read the ACC. *Id.* at 6:3-4; *see, e.g.*, ACC at ¶¶1, 4. It is accompanied by no legal analysis other than a terse reference to their previous unclean hands analysis. *See* Motion at 6:3-5. Counter-Defendants' unclean hands analysis fails for the reasons stated above, so these affirmative defenses should not be stricken for the same reasons. *See DeCurtis*, 2022 WL 658885, at *3; *Threshold*, 730 F. Supp. 3d at 944; *DS-Concept*, 2017 WL 2180982, at *3.

Defenses 6, 9, 11-20, 31-33. *See* Motion at 6:6-13.

Amidst Counter-Defendants' sarcasm is a concession that, at worst, these affirmative defenses could only cause prejudice to *Counterclaimants* by shifting the burden of proof because Counter-Defendants have to prove these defenses as elements of their own claims anyway. *See id.* at 6:7-12. Counterclaimants do not necessarily agree with this analysis but accept the concession that Counter-Defendants will not suffer prejudice, which means these defenses should not be stricken. *See DS-Concept*, 2017 WL 2180982, at *3.

The only legal support in Counter-Defendants' contention against these defenses is a nod to the prohibition against impertinence and repetition in Rule 12(f) without any analysis. *See*

Motion at 6:12-13. Both grounds fail. If, as Counter-Defendants state, proving these defenses would negate elements of their claims, then they "pertain" and are "necessary[] to the issues in question." *California Dep't of Toxic Substances*, 217 F. Supp. 2d at 1032 (quoting *Fantasy*, 984 F.2d at 1527). The defenses are, furthermore, not repetitive because they only appear once in the AA, and run counter to Counter-Defendants' allegations notwithstanding who has the burden of proof. *See id.*

Defenses 21-23, 29, 30. *See* Motion at 6:14-16.

Counter-Defendants provide neither analysis nor citation of authority regarding any individual defense from this list. *See* Motion at 6:14-16. *See Atkins v. Gittere*, No. 2:02-CV-01348-JCM-BNW, 2020 WL 3893628, at *55 (D. Nev. July 10, 2020) (commenting that this Court need not address issues not supported by relevant authority and cogent argument).

Each of these affirmative defenses are material in any event. *See California Dep't of Toxic Substances*, 217 F. Supp. 2d at 1032 ("'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[.]" (quoting *Fantasy*, 984 F.2d at 1527)); *DS-Concept*, 2017 WL 2180982, at *3 ("Motions to strike are not favored and 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" (quoting *Colaprico*, 758 F. Supp. at 1339)).

For example, Defense 21 provides that, "Defendants have committed no acts of dominion over Plaintiffs' property/chattels." AA at 18:14. This defense is material insofar as Counter-Defendants allege that certain Counterclaimants have misappropriated funds belonging to Utherverse, which this defense negates (*i.e.*, Counterclaimants do not exercise any dominion over something belonging to Counter-Defendants). *See, e.g.*, Compl. ¶15. Defenses 22-23 likewise negate Counter-Defendants' allegations that Counterclaimants are exercising control over Counter-Defendants' property. *See* AA at 18:22-23.

Defense 36: " . . . Defendants reserve the right to amend their Amended Answer to add affirmative defense should the necessity arise." AA at 19:15-16; *see* Motion at 6:17-22.

This allegation appears at the end of affirmative defense listed under the "Affirmative Defenses" heading in the ACC and was meant to strictly be a reservation rights, not a statement

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

that reserving right is an affirmative defense. Although Counterclaimants maintain that it does not prejudice Counter-Defendants, Counterclaimants are not opposed to it being stricken. *See DS-Concept*, 2017 WL 2180982, at *3.

**B. <u>Counterclaimants' ACC Allegations Should not be Stricken.</u>**

Counter-Defendants accuse Counterclaimants of a "cut-and-paste job." Motion at 7:2-3. Indeed, Counterclaimants carried over many of their allegations from their complaint in the California litigation that concerned the same facts as the instant litigation because doing otherwise would needlessly create more work, which Counterclaimants, unlike Counter-Defendants, are not inclined to do. However, Counterclaimants' allegations are material in any event.

<u>21:1-10 & 21:15</u>. *See* Motion at 6:25-7:11.

Counterclaimants' allegations regarding California Penal Code Section 496(c) are material. Counterclaimants allege a claim for civil conspiracy, which "arises where two or more persons undertake some concerted action with the intent 'to accomplish *an unlawful objective* for the purpose of harming another,' and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (emphasis added) (quoting *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998)); *see* ACC at ¶¶98-102. The fact that Counter-Defendants violated Section 496(c) evinces that, by acting in concert to defraud Counterclaimants, they were accomplishing an unlawful objective for the purpose of harming Counterclaimants. *See Guilfoyle*, 335 P.3d at 198; *California Dep't of Toxic Substances*, 217 F. Supp. 2d at 1032 (requiring only an "important relationship" for materiality under Rule 12(f)). Moreover, because Counter-Defendants *did* violate Section 496(c), and to the extent the violation serves a predicate unlawful objective, Counterclaimants would be entitled to treble damages as provided thereunder. *See* Cal. Penal Code § 496(c).

<u>24:9 – 12 (¶ 31, in total)</u>. *See* Motion at 7:13-14.

This allegation, taken from Utherverse's website, is pertinent and material to showing what Utherverse holds itself out to be, which not only provides context and clarifies some of the esoteric subject-matter in this case (*i.e.*, cryptocurrency tokens and metaverses), but stands as one of the many representations that Utherverse has made to give the false impression that Utherverse is a



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

successful business. Counter-Defendants make no effort to explain its prejudice because it poses no prejudice. *See DS-Concept*, 2017 WL 2180982, at *3.

25:24 – 26 (¶ 36, starting after "but now refuses to do so"). *See* Motion at 7:15-19.

The ACC alleges various fraudulent misrepresentations made by Shuster and explains that, in reliance on those misrepresentations, Counterclaimants invested money into Utherverse through, among other things, loans like the Niya Note. *See* ACC at ¶¶33-34, 36. These allegations are thus pertinent and material to characterizing the overall fraudulent scheme propagated by Utherverse and the actions Counterclaimants took in reliance thereon. These allegations are hardly scandalous, particularly because they are necessary to establishing that Utherverse defrauded Counterclaimants and did so to steal funds. *See Vay*, 2015 WL 4461000, at *4 (requiring that allegations be "cruel" to a defendant, use "repulsive" language, or "detract from the dignity of the court" to be deemed scandalous).[3]

26:7 – 9 (¶ 37, starting after "whatsoever"). *See* Motion at 7:20-24.

As with the Niya Note, the allegations concerning fraud associated with the Blockchain Funding SAFT help explain how, relying on Utherverse's fraudulent misrepresentations, Counterclaimants invested money into Utherverse through, among other things, agreements to purchase cryptocurrency tokens, which monies Utherverse misappropriated. *See* ACC at ¶37. Counter-Defendants assert that these allegations can only be pertinent or material to Counterclaimants' claim for breach of the Blockchain Funding SAFT, but they are also relevant to describing Utheverse's overall fraudulent scheme, which supports Counterclaimants' fraud claim. *See* Motion at 7:22-24; ACC at ¶¶73-79, 113-22.

---

[3] Counter-Defendants allege that the ACC being a "shotgun pleading" makes it impossible to know what allegations may be relevant. *See* Motion at 7:19 n.3. As described in the concurrently filed Counterclaimants' Opposition to Counter-Defendants' Motion to Dismiss, Counter-Defendants' "shotgun pleading" arguments are an attempt to feign ignorance of the allegations in the ACC that clearly apply to claims therein. Counterclaimants had a right to incorporate allegations by reference into their claims—just as Counter-Defendants did in the Complaint—under this Court's own authority. *See Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co., LLC*, No. 219-CV-00329-GMN-EJY, 2023 WL 2843649, at *3 (D. Nev. Jan. 30, 2023) (commenting that "incorporation of the general allegations into each [c]ount does not [necessarily] make [a complaint] a 'shotgun' pleading").





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

26:16 – 19 (¶ 38, (starting after "whatsoever"). *See* Motion at 7:25-8:4.

Ironically, Counter-Defendants practically engage in a "cut-and-paste job" of their own in the Motion with regard to allegations of fraud associated with the Agreements. *See* Motion at 7:15-8:9. The issue is not the repetition, however, but that none of these are cogent arguments because they just state "scandalous, immaterial, and impertinent" without any associated analysis or citation to authority. This court should not indulge Counter-Defendants' minimal effort. *See Atkins*, 2020 WL 3893628, at *55 (commenting that this Court need not address issues not supported by relevant authority and cogent argument).

Nevertheless, Counterclaimants' allegations regarding Utherverse's fraud associated with the Masternode SAFT are neither scandalous, immaterial, nor impertinent for the same reasons that the allegations associated with the aforementioned Agreements are not. *See* ACC at ¶¶38, 123-32.

27:1 – 3 (¶ 39, starting after "whatsoever"). *See* Motion at 8:5-9.

Counterclaimants' allegations regarding Utherverse's fraud associated with the Blockchain Funding Note are neither scandalous, immaterial, nor impertinent for the same reasons that the allegations associated with the aforementioned Agreements are not. *See* ACC at ¶¶39, 133-42.

27:27 – 28:3 (¶ 41, in total). *See* Motion at 8:10-12.

Shuster's ties to the pornography industry, while unflattering to Shuster, are material, pertinent, and not scandalous because Counterclaimants, particularly Denne, expended money ($230,000) to improve the reputation of Utherverse caused by those ties. *See* ACC at ¶41. Denne would not have done so had Shuster not, among other things, fraudulently misrepresented the financial data and success of Utherverse to entice Denne's investments, which investments Denne believed he was supporting by making said expenditures. *See id.* ¶¶34, 37, 39, 55. Thus, the expenses associated with Shuster's ties to the pornography industry are damages arising from Utherverse's fraud, as are any other expenses that Counterclaimants made relying on Shuster's misrepresentations.

28:20 – 23 (¶ 44, starting after "past"). *See* Motion at 8:13-15.

Denne's hiring of Hackett is another expense of time and effort by Denne that Denne would not have incurred but for Shuster's fraudulent misrepresentations about Utherverse's profitability.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*See* ACC at ¶¶34, 44, 55. Those misrepresentations led Denne to invest in Utherverse and presume that doing things like finding and hiring Hackett as a CEO advanced Denne's interests as an investor in Utherverse. Denne is thus entitled to damages for his efforts on behalf of Utherverse with regard to Hackett, and this allegation is accordingly pertinent and material to Counterclaimants' fraud claim and not scandalous. *See id.* ¶¶73-83.

<u>29:10 – 13 (¶ 47, in total)</u>. *See* Motion at 8:16-19.

This allegation is pertinent and material to Counterclaimants' fraud claim. *See* ACC at ¶¶47, 73-83. Again, relying on Shuster's misrepresentations about Utherverse's profitability, Denne expended effort, time, and resources in order to improve Utherverse's reputation by disassociating it from the pornography industry. In so doing, Denne enabled Utherverse to, among other things, secure a banking relationship and become more profitable. Denne was fraudulently induced to believe these efforts would advance his interests as an investor in Utherverse. *See id.* ¶¶34, 47, 55. Denne is thus entitled to compensation for his effort, time, and resources that were expended based on the misrepresentations, and this allegation in neither impertinent, immaterial, nor scandalous.

<u>30:12 – 20 (¶ 54, in total)</u>. *See* 8:20-23.

Shuster's defamatory letters are pertinent and material to Counterclaimants' fraud claim. *See* ACC at ¶¶54, 73-83. This allegation describes Utherverse's conduct in furtherance of its fraudulent scheme, which, as this allegation reflects, includes Shuster trying to place blame on Denne for Shuster's own misappropriation, mismanagement, and squandering of funds. Counterclaimants thus did not need to allege libel or slander for this allegation to be material or pertinent. *See DS-Concept*, 2017 WL 2180982, at *3 (disfavoring motions to strike "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation" (quoting *Colaprico*, 758 F. Supp. at 1339)).

<u>31:3 – 4 (¶ 56, starting after "misrepresentations")</u>. *See* Motion at 8:24-28.

Counter-Defendants do not cite authority for the proposition that the line that it quotes necessitates as a matter of law that the overall allegation is scandalous, impertinent, or immaterial. *See id.* Counter-Defendants' argument ignores the remainder of the allegation explaining that

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Shuster fraudulently used investor funds for his own personal gain and listing specific examples, which support Counterclaimants' fraud and breach of fiduciary duty claims. *See* ACC at ¶¶73-90; *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-10549-MRP-MANX, 2014 WL 12609429, at *3 n.2 (C.D. Cal. Jan. 7, 2014) (commenting that courts "must read the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context"); *DS-Concept*, 2017 WL 2180982, at *3.

<u>31:5 – 32:24 (¶ 56, portions lettered a-n)</u>. *See* Motion at 9:1-25.

The allegations listed under paragraph 56 are all pertinent and material to the fraud and breach of fiduciary duty claims, as they demonstrate that Shuster misappropriated investors' funds (which include those of Counterclaimants) through fraudulent misrepresentations, squandered those funds, and deliberately mismanaged Utherverse in a way that was detrimental to Utherverse and investors' interests by extension. *See* ACC at ¶¶56(a)-(n), 73-90. Counter-Defendants once again quote one line from the allegation and assert it dispositively establishes impertinence, immateriality, and scandal, but provide no authority for this proposition. *See* Motion at 9:2-3; *see also In re Countrywide*, 2014 WL 12609429, at *3 n.2; *DS-Concept*, 2017 WL 2180982, at *3.

Counter-Defendants are incorrect that only shareholders of Utherverse could have a pertinent and material basis for alleging that Utherverse exposed itself to liability. *See* Motion at 9:7-12. Counterclaimants alleged a breach of fiduciary duty against Shuster, which duty required Shuster to "act in good faith and with due regard to the interests of" Counterclaimants as investors. *Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982); *see* ACC at ¶¶84-90. Exposing Utherverse and investors—who have an interest in Utherverse not being mired in litigation and losing value—to liability is a violation of the duty to act in the interests of Counterclaimants.

Likewise, Shuster damaging the reputation of Utherverse—in whose value investors have an interest—by making pornographic films and misappropriating investors' funds violates Shuster's duty to act in the best interests of investors, including Counterclaimants. *See* Motion at 9:13-16; *see also* ACC at ¶41 (explaining that Denne expended funds to disassociate Utherverse from the pornography industry to improve Utherverse's reputation and value). Thus, paragraph 56(k) is pertinent, material, and not scandalous.

Counter-Defendants are incorrect that the allegations concerning Shuster's misappropriation of investor funds for personal use could only be pertinent or material to claims brought by Utherverse (and demonstrates the danger of not treating Shuster as an alter ego). *See* Motion at 9:17-19. Among Utheverse's investors are Counterclaimants, who brought claims for fraud and breach of fiduciary duty related Utherverse's fraudulent misappropriation of their funds. *See* ACC at ¶¶73-90. They also had or have an interest in Utherverse's well-being as investors, so Shuster's harm to Utherverse harmed them by extension, as Shuster was required to act in their best interest. *See Long*, 639 P.2d at 530.

Regarding paragraph 56(n) of the ACC, this allegation is pertinent to Counterclaimants' breach of fiduciary duty claim. *See* ACC at ¶¶84-90; Motion at 9:20-25. Shuster had an obligation to act in the best interest of investors in Utherverse, which included Counterclaimants, and gifting shares and tokens to an escort—while simultaneously denying that the Counterclaimants who paid for shares and tokens are not entitled to them—for reasons unrelated to Utherverse's business constitutes not acting in investors' best interest. *See* ACC at ¶¶37-39, 56(n).

<u>32:25 – 27 (¶ 57, in total)</u>. *See* Motion at 9:26-10:1.

This contention is not cogently argued, as it just alleges that paragraph 57 is "impertinent, immaterial, and scandalous" without any supporting authority. *Id.* at 9:28; *see Atkins*, 2020 WL 3893628, at *55. This allegation is pertinent and material in any event because this case revolves around allegations from both sides that funds were misappropriated through fraud, and Shuster's bank account data and cryptocurrency wallet data are necessary to determine how the funds he acquired from Counterclaimants were used. *See DS-Concept*, 2017 WL 2180982, at *3 (disfavoring motions to strike "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation" (quoting *Colaprico*, 758 F. Supp. at 1339)). An allegation stating that discovery into records is necessary is not cruel, repulsive, or detracting from this Court's dignity, so the allegation is not scandalous either. *See Vay*, 2015 WL 4461000, at *4.

<u>36:3 – 18 (¶¶ 68, 69, in total)</u>. *See* Motion at 10:1-5.

These allegations are pertinent to Counterclaimants' claims for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, and breaches of the Blockchain





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Funding and Masternode SAFTs. *See* ACC at ¶¶73-102, 113-32. Counter-Defendants fraudulently promised Counterclaimants tokens in the SAFTs, which Counter-Defendants failed to deliver, but later, according to paragraphs 68 and 69 of ACC, they had them in their possession while they were manipulating the markets. *See id.* ¶¶37-38. This demonstrates that the tokens were withheld and that Utherverse fraudulently promised to deliver the tokens to obtain funds from Counterclaimants that they never planned to deliver.

Shuster had a fiduciary duty to act in investors' best interests, including Counterclaimants, whom were owed tokens. *See id.* ¶¶84-90. By manipulating the price of the tokens, Shuster and Utherverse did not act in the best interest of investors whom were owed tokens. *See id.* ¶¶37-38. Moreover, these allegations reflect that Good and Gantner acted in concert to assist Shuster and Utherverse in manipulating the value of the tokens to the detriment of investors whom were owed tokens, which is pertinent and material to showing Good and Gantner's roles in aiding and abetting Shuster's breach of fiduciary duty and the civil conspiracy among Counter-Defendants. Allegations about cryptocurrency token market manipulation are not cruel, repulsive, or detract from this Court's dignity. *See Vay*, 2015 WL 4461000, at *4.

## IV. CONCLUSION

For the foregoing reasons, Counterclaimants respectfully request that Counter-Defendants' Motion be denied.

DATED this 13th day of June, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **COUNTERCLAIMANTS' OPPOSITION TO MOTION TO STRIKE** was served via electronic service on the 13th day of June, 2025.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP