1  JAMES PUZEY (NV SBN 05745)
   jpuzey@nvlawfirm.com
2  KEARNEY PUZEY DAMONTE
   800 South Meadows Parkway, Suite 800
3  Reno, Nevada 89521
   Telephone: (775) 851-8700
4
   SHERRIE M. FLYNN (*Pro Hac Vice*)
5  sflynn@ch-law.com
   ROBERT K. ASHLEY (*Pro Hac Vice Forthcoming*)
6  rashley@ch-law.com
   COLEMAN & HOROWITT, LLP
7  Attorneys at Law
   499 W. Shaw Avenue, Suite 116
8  Fresno, California 93704
   Telephone: (559) 248-4820
9  Facsimile: (559) 248-4830

10 Attorneys for Plaintiffs and Counter-Defendants (excluding Utherverse International, Ltd.)

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, and individual; BLOCKCHAIN FUNDING, INC. a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual,<br><br>　　　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 3:25-cv-00020-MMD-CSD<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FRCP 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025<br><br>**Amended Counterclaim Filed:** April 27, 2025<br><br>Date:　　　TBD<br>Time:　　　TBD<br>Courtroom:　TBD<br><br>Filed Concurrently with Reply Brief in Support of Motion to Strike |

1  Counter-Defendants, Utherverse, Inc. ("UI"); Brian Shuster ("Shuster"); Utherverse Digital, Inc. ("UDI"); Peter Gantner ("Gantner"); Nexus Venture LLC ("Nexus"); Ari Good ("Good"); and Gary Shuster ("Gary"; collectively, "Counter-Defendants"), respectfully submit their Reply Brief in Support of Motion to Dismiss Amended Counterclaim ("Motion to Dismiss").

## INTRODUCTION

Counterclaimants open their Opposition to Motion to Dismiss ("Opposition" or when cited, "Opp.") by calling a motion seeking a Counterclaim that is more comprehensible "ironic" and accusing counsel of "feigning inability" to understand the Amended Counterclaim ("ACC"). The Counterclaimants' second paragraph describes a civil action for criminal racketeering as "absurd".[1] Counterclaimants next call motion practice under the Federal Rules of Civil Procedure ("FRCP") a "needless creation of work". We elect to treat the matter seriously, to be briefed without disparagement or name calling. It is precisely *because* Counter-Defendants take the matter seriously that they need to know what evidence is required to defeat the counterclaims, a task that is impossible when counterclaims are pled with formulaic murkiness.

The opposition is perfused with the theme that just enough information is given to figure out what Counterclaimants are suing over. However, the Complaint and the ACC tell markedly different stories and allege different agreements. Unlike a simple contract claim, this is a racketeering case with a fraud counterclaim where multiple agreements, some of which are alleged to have been falsified, are being litigated. Given the complexity of the allegations, Counter-Defendants should not be left guessing what evidence must be adduced to disprove the allegations of the ACC.

## DISCUSSION

**A.   Legal Standards Governing Rule 12(b)(6) Motions**

The Opposition argues that a complaint should not be dismissed unless it "appears beyond a doubt" that the non-moving party cannot prove facts entitling it to relief. Opp. 11:4-6. This does

---

[1] The Supreme Court has recognized that the "complexity of an illegal scheme may not be used as a shield to avoid detection". *Andresen v. Maryland,* 427 U.S. 463, 480 fn. 10 (1976). See *U.S. v. Gray*, 367 F.3d 1263, 1265 (11th Cir. 2004) (upholding conviction, rejecting argument that a fraudulent scheme was "so absurd" that it could not have defrauded anybody). An obvious scheme has little chance of success. A complex scheme has more chance of success. A scheme so complicated that it appears absurd until closely examined is perhaps the most effective form of fraud.

not alter the requirement that the facts pled, if taken as true, must prove a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal punctuation omitted).

**B.    Shotgun Pleading Issue**

The Opposition (6:16-18) repeats the ACC claims that "Utherverse consisted of eleven (11) separate LLCs with no apparent ties to one another" (ACC, ¶ 32) that were not converted into corporations until after Denne brought in Pritcher (*id.*, ¶ 43; see also ¶ 32). This conversion is alleged to be after the alleged misrepresentations by "Utherverse"[2] were made to Denne, causing him to bring in Pricher. It is not permissible to plead that a corporation defrauded someone, causing that person to create the corporation after the corporation defrauded him or her. Schrodinger's Fraud is not a cause of action.

Countercomplainants rely on a single case for the proposition that incorporating general allegations into each count is not improper. The case cited endorsed incorporation of prior matter into each claim where "the general allegations provide context for Plaintiff's claims". *Navajo Health Foundation - Sage Memorial Hospital, Inc. v. Razaghi Development Company, LLC,* 2023 WL 2843649 at *3 (D. Nev. 2023). The issue is not whether all allegations preceding the causes of action should be dismissed. Rather, dismissal is proper because the ACC does not "state clearly how each defendant is alleged to have violated plaintiffs' legal rights", making adequacy of pleading the issue. *See Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir. 2011).

**C.    The Recitation of Facts in the Opposition is Contrary to the ACC**

Allegations not made in the pleadings are not before the Court. FRCP 12(d). The Opposition spends six pages purporting to recite allegations from the ACC without quoting more than a few phrases from the ACC itself. It appears this mechanism was used, intentionally or not, to rehabilitate an inadequately pled ACC by creatively rewriting allegations.

---

[2] "Utherverse" is defined in the ACC as only Utherverse Digital and Utherverse Inc., yet it is defined in the Opposition as including any entity "controlled by Shuster bearing the name 'Utherverse'", apparently including the eleven alleged LLCs, Utherverse Intl. Ltd, and Utherverse Gaming. Opp. Fn. 2. This mismatch means that any comparison of the allegations in the ACC with the characterizations of those allegations in the Opposition must include guesswork as to which definition of "Utherverse" the Opposition is referring.

1    Of particular concern is that the Opposition repeats allegations from the ACC that are made
2    on information and belief without identifying those allegations as being made on information and
3    belief. This is of high salience because "a plaintiff who makes [fraud] allegations on information
4    and belief must state the factual basis for the belief." *Neubronner v. Milken,* 6 F.3d 666, 672 (9th
5    Cir. 1993); *see Luce v. Edelstein,* 802 F.2d 49, 54 fn. 1 (2d Cir. 1986). This forces Counter-
6    Defendants and the Court to identify which alleged facts in the Opposition were pled on naked
7    information and belief. Below are a few examples of the creatively rewritten allegations.

8    The Opposition states "Niya Holdings entered into the Niya Note 'in reliance on Shuster's
9    misrepresentations…'" (Opp. 5:4-6, citing ACC ¶ 36), and states that "Utherverse's conduct
10   evidences that it never intended to repay the Niya Note." (*Id*. 5:8). Yet, the ACC alleges, on
11   information and belief that it was not Utherverse but Shuster who never intended to honor the Niya
12   Note, without alleging a single fact giving rise to that belief. ACC ¶ 36.

13   The Opposition claims that "<u>Counterclaimants</u> leveraged their reputations and professional
14   relationships to provide business opportunities to Utherverse." Opposition, 6:10-11 (emphasis
15   added). However, the cited paragraph, ACC ¶ 42, says in relevant part only that "Through a
16   longstanding relationship that Denne had developed with a private investor, Denne was able to
17   secure an agreement that would have raised $25 million for Utherverse." Thus, the Opposition
18   indicates that seven Counterclaimants leveraged their assets for Utherverse, the ACC alleges that
19   only one did so.

20   The ACC alleges that "Pritcher <u>eliminated</u> the majority of the eleven LLCs that made up
21   Utherverse and created a coherent parent company with subsidiaries." ACC ¶ 43 (emphasis added).
22   However, the Opposition states that the "specialist [unnamed but presumably Pritcher] <u>consolidated</u>
23   the eleven LLCs that Utherverse formerly consisted of and created a parent company with
24   subsidiaries." Opp. 6:16-18 (emphasis added). LLCs "consolidated" into a corporation would
25   potentially transfer liability for fraudulent statements into the new entity. However, LLCs
26   "eliminated" would not transfer their liability for fraud, it would die with them. Counterclaimants
27   cannot have it both ways.

28   The largest fabrication, by word count, of facts not pled in the ACC is found in the

1  Opposition at 7:14–8:9. ACC ¶ 56 provides a laundry list of alleged facts presented as "Specific
2  examples of Shuster's character and propensity for fraudulent activity". The Opposition instead
3  claims that the list was "conduct that was either propagated in furtherance of his fraud or to cover
4  up the same". If it was not pled in the ACC, it is not before the Court. The ACC pled that those
5  alleged acts were examples of Shuster's character and not the basis of any fraud claim.

6  A critical misrepresentation is that "Shuster sent formal letters to Denne's investor
7  contacts," and "implored the recipients to keep the letters secret and investigate Denne." Opp. 8:27–
8  9:3. This is not what the ACC states. Instead, the ACC pleads that "Shuster implored recipients of
9  these letters … to undertake any investigation, criminal reporting, and civil litigation against the
10 fraudsters." ACC ¶ 54. Asking victims to make criminal reporting is not an act that the victimizer
11 would do. Perhaps in recognition of that, the Opposition simply pretends that the ACC never pled
12 that Shuster encouraged people to report to law enforcement.

13 Although these are only a few examples, the Opposition Brief serves as a powerful
14 illustration of why the ACC should be dismissed.

15 **D.    The Allegations Against Ari Good, Gary Shuster, Peter Gantner, and Nexus are Badly**
16 **Mischaracterized in the Opposition and Do Not State a Claim**

17 **1.    Ari Good:** The entirety of the allegations against Good appear in ACC ¶¶ 58-59. He
18 is alleged, on information and belief without facts supporting any belief to have: (1) "knowingly
19 aided and conspired with Shuster to fraudulently conceal and withhold funds obtained from
20 Counterclaimants", (2) "created, formed, and operated a business structure which Shuster utilized…
21 in a manner constituting theft", and (3) "knowingly received funds fraudulently obtained from
22 Counterclaimants." ACC, ¶ 58. He is also alleged (not on information and belief) to have "issued
23 several cease and desist letters" and to have "knowingly undermined Counterclaimants' interests
24 and right to benefit from the Notes and SAFTs … by … attempting to cancel the agreements without
25 remitting the funds received by Counter-Defendants pursuant to those agreements." ACC ¶ 59. He
26 is alleged, again on information and belief, to have had "an individual interest in Utherverse" and
27 that his actions "benefitted his individual interest in Utherverse". *Id.* Taken together, the allegations
28 not made on information and belief would prove only that he acted within his scope of work as a

transactional lawyer.

**2. Gary Shuster:** Gary Shuster, like Ari Good, is counsel for certain of the Counter-Defendants. By suing two of the lawyers for some Counter-Defendants, Counterclaimants have effectively deprived Counter-Defendants of the right to have counsel of their choice appear on their behalf in this action. Given the lack of actionable allegations, it is not surprising that the Opposition glosses over the insufficient pleadings by summarizing them inaccurately.

The ACC alleges on information and belief that: (1) "Gary knowingly aided and conspired with Shuster to defraud" (a legal conclusion); (2) he is the brother of Brian Shuster; (3) he was Chief Intellectual Property Officer of UDI (an obviously legal position), General Counsel of UI, and on the executive board of non-party "Utherverse Gaming". ACC ¶ 65. The ACC goes on to allege, irrelevant as it is for determining Gary's liability, that Brian Shuster emphasized his relationship with Gary in allegedly claiming authority to act on behalf of Utherverse Gaming. ACC ¶ 66. The ACC, on information and belief alleges that Gary provided "support and/or approval" to other Counter-Defendants' allegedly actionable statements, without details[3] and is listed as an inventor on a patent.

Like the fraud allegations against attorney Good, this too falls far short of what FRCP 9(b) was intended to do, namely, "force[] the plaintiff to conduct a careful pretrial investigation." *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co*., 412 F.3d 745, 749 (7th Cir. 2005). The lack of such an investigation resulted in allegations that fail "the particularity requirement of Rule 9(b) [which] is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co*., 631 F.3d 436, 441 (7th Cir. 2011), *accord Andrews Farms v. Calcot, Ltd.,* 527 F.Supp.2d 1239, 1250 (E.D. Cal. 2007).

**3. Peter Gantner:** The Opposition trots out a variety of allegedly fraudulent statements and acts by Gantner while concealing that all but one of the fraud allegations against him are made on information and belief without pleading the facts giving rise to the belief. Opposition, 9:13-24;

---

[3] As he is alleged to have been counsel to two of the Counter-Defendants, the support or approval alleged would have to have been pled as exceeding what attorneys are permitted to do in zealously advocating for their clients.

1  *see also* ACC ¶ 61. The only acts of Gantner not alleged on information and belief are pled without
2  specificity, are "Gantner further intentionally misrepresented <u>*and/or*</u> overstated the capabilities
3  (e.g., the readiness of the Utherverse platform <u>*and/or*</u> UTHER tokens for launch), financial data
4  (e.g., claimed over $70,000,000.00 in revenues), user data (e.g., claimed over 50 million users), and
5  other information about Utherverse's platform that was material to Counterclaimants' and investors'
6  dedication of funds, time, and effort to Utherverse" ACC ¶ 61 (emphasis added). Counterclaimants
7  never identify which of the multiple listed topics was misrepresented as opposed to merely
8  "overstated," why the representations were false, or when and to whom the representations were
9  made. Such opaque allegations make it impossible for Gantner to know what he is supposed to
10 defend against.

11       **4.**      **Nexus LLC:** The ACC spends only five lines on Nexus, all of which are alleged on
12 information and belief. In full, the allegations against Nexus are "On information and belief,
13 Counter-Defendant Nexus knowingly aided and conspired with Shuster to defraud and conceal and
14 withhold funds obtained from Counterclaimants. On information and belief, Nexus was created,
15 owned, and operated by Gantner, who allowed Shuster to use Nexus to launder money and
16 misappropriate or hide funding from investors." ACC ¶ 63. The Opposition reduces those
17 allegations to a bit over a single line: "Gantner used his business, Nexus, to help Shuster launder,
18 misappropriate, or hide money from Counterclaimants." Opp. 9:23-24. Even so, the Opposition
19 misstates the ACC. The ACC alleges that Nexus "hid[] funding from investors" while the
20 Opposition changes "investors" to a smaller group of "Counterclaimants".

21 **E.**      **The Allegations of Fraud Based on Contractual Breach Do Not State a Claim**

22       Without using the term, the Counterclaim "allege[s] the tort of promissory fraud, which is
23 cognizable when a party enters into an agreement without intending to be bound by its terms." *Hsu*
24 *v. OZ Optics Ltd*. (N.D. Cal. 2002) 211 F.R.D. 615, 620 ("*Hsu*"); *see, e.g.* Opp. 5:1-8, citing ACC
25 ¶ 36 (claiming breach of the Niya Note supports a claim that "Shuster … always intended to defraud
26 and steal the money"); Opp. 5:9-14, citing ACC ¶ 37 (claiming breach of the Blockchain Funding
27 SAFT supports a claim that "Shuster and Utherverse never intended to fulfill their obligations under
28 the … SAFT"); Opp. 5:15–19, citing ACC ¶ 38 (same with regard to Masternode SAFT).

"However, promissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to plead facts from which the Court can infer that the allegedly fraudulent statements were actually false when made." *Hsu* at 620.

It is well established that an alleged breach of contract alone does not allege the scienter required for fraud: "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Hsu* at 620 (internal citation omitted). Put another way:

> "…plaintiff is precluded from simply pointing to a defendant's statement, noting that the content of the statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made... This argument is specious. It assumes that the alleged breach of contract can be used as evidence that [defendant] never intended to honor the contract, thereby committing fraud. Such an assumption is unwarranted because it contradicts the heightened pleading requirements of Rule 9(b)." *Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1153–1154 (S.D. Cal. 2001).

F.   **The Allegations of Fraud Violate Rule 9(b)**

Given the pattern of misstating the ACC allegations in the Opposition, focus must be on the allegations in the ACC, not on the restatement of them in the Opposition. The Opposition cites paragraphs 32–34 for the proposition that "Shuster's misrepresentations were made to Denne". Paragraph 32 makes no allegations of misrepresentations – only that "Denne was introduced to Shuster and Utherverse in or about 2022". Paragraphs 33 and 34 do not contain the name "Denne". As explained above, breach of contract does not establish the scienter required to allege fraud. Thus, paragraphs 36 (Niya Note), 37 (Blockchain Funding SAFT), 38 (Masternode SAFT), and 39 (Blockchain Funding Note) do not support the fraud cause of action, as scienter is not properly alleged.

The Opposition cites paragraph 66 for Shuster's misrepresentations related to the Epic Games litigation. Opp. 14:16-16. Paragraph 66 alleges on information and belief that Shuster represented that a positive result from a lawsuit against Epic Games would directly affect the value of Utherverse but does not plead that it was false. Similarly, paragraph 66 also alleges that Shuster "represented himself as having authority to act on behalf of Utherverse Gaming" but does not allege that the representation is untrue. The allegation on information and belief that "Utherverse Gaming

[become] the sole and exclusive owner of the patents" does not indicate whether UI or UDI held any ongoing interest in the patent litigation.

Paragraphs 33 and 34 are cited as setting out "the myriad misrepresentations of Shuster" (Opp. 14:8-9). However, as noted above, the laundry list of allegedly fraudulent statements does not indicate to whom the representations were made, when they were made, or where or how they were made. It is impossible, for example, to disprove the vague allegation that Shuster made a representation, "relied upon by Counterclaimants", that "Utherverse has spent more than $40 million on development of its metaverse offerings", as the statement could have been made in any way, on any day, to any person. Paragraph 48 is also cited (Opp. 14:15), but it makes an error analogous to paragraphs 36 – 39: it alleges that software development deadlines were missed, and "on information and belief" the deadlines were only provided to defraud. Like the alleged breaches of contract, however, missing a deadline does not mean that the party had scienter when stating the deadline. Further, no allegation is made as to who was provided these deadlines, how they were stated, and when they were stated.

The Opposition next argues that Counter-Defendants' ability to read the ACC somehow means that the heightened pleading standard for fraud is met. Opp. 14:17-15:6. The argument itself reveals the problem: Paragraph 33 is cited as identifying four vague allegedly false representations as "among others that were later learned to be false" and asks us to import that statement into later paragraphs, such as 34. The Opposition then says that a statement in paragraph 46 should be compared to the previous allegations so that Counter-Defendants can discover that paragraph 34(c) was later alleged to be false. Opp. 14:27-15:2. The Opposition excuses its lack of clarity and specificity by stating that a complex fraud results in a complex complaint – but misses the point entirely. A simple complaint is easy to parse. If the complexity of the alleged fraud is so high that the complaint must likewise be complex, it becomes more important, not less, that the allegations be clear so that they can be understood.

The Opposition attempts to excuse the failure to provide dates for any of the alleged misrepresentations by pointing out that (a) the dates contracts were allegedly signed were provided and (b) a date range of 2022 to April 2024 meets the heightened pleading standard. The Opposition

cites *United States v. United Healthcare Insurance Company* 848 F.3d 1161, 1181 (9th Cir. 2016) ("*United Healthcare*") for the proposition that providing a three-year date range adequately alleges the "when" for purposes of alleging fraud. The case stands for no such thing. It concerned allegations of <u>continuous</u> use of a software product to create lists used to commit fraud between 2005 and 2007, and during or after June 2008. Instead, *United Healthcare* found that "only broad allegations lacking particularized supporting details", exemplified by the allegation "beginning in or about 2005 and at least once per year thereafter … Defendant HMOs … retained coding companies…" "are insufficient to show the allegations against these defendants have a 'factual basis'". *United Healthcare* at 1182.

The Opposition then misreads *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006) ("*Hempfling*") as holding that when fraud takes place over a long period of time, citing the date range is enough. Not so. In that case, "the fraud allegedly occurred over a period of time", but the complaint "sets forth specific dates [during that period] on which Hempfling conducted-tax [sic] related seminars." *Id*. *Dynabest Inc. v. Yao*, 760 F.Supp. 704, 707 (N.D. Ill. 1991) is cited to claim a "long list of alleged misrepresentations" can meet the heightened pleading standard. However, that case required far more than a long list: "Each of the entries in this list is accompanied by a description specifying the approximate date the facsimile was sent, the recipient of the facsimile, and the contents of the facsimile. Although the places of transmission and receipt are not set out, it can be assumed that they are the principal places of business for both parties involved." *Id*. Here, unlike *Dynabest*, the ACC just lists alleged misrepresentations without identifying any of the types of facts that *Dynabest* found dispositive.

### G. The Allegations of Breach of Fiduciary Duty Do Not State a Claim

We need only review the ACC (and not the inaccurate summary of the ACC in the Opposition) to see the lack of a fiduciary relationship. ACC ¶ 31 is cited for the proposition that "Shuster possessed technical expertise", (Opp. 17:21-25), but the text states "Utherverse advertises itself [as having] 15 years of experience…" In addition, the Opposition's citation to ACC ¶ 34 (containing no allegations of Shuster's expertise), ¶¶ 37-38 (describing agreements for tokens) and ¶ 48 (alleging only that deadlines were promised and missed) is unavailing. Opp. 17:25–18:1. The

ACC does not adequately plead a fiduciary relationship.

### H. The Allegations of Aiding and Abetting Do Not State a Claim

One cannot aid or abet breach of a non-existent fiduciary duty. Likewise, knowing participation in breach of fiduciary duty is impermissibly pled as a legal conclusion. The Opposition again rewrites the ACC's allegations to create a more viable claim out of impermissibly vague allegations by quoting tiny portions of ACC ¶¶ 58, 61, and 66 but omitting that the quoted allegations are made "On information and belief". The factual basis for the information and belief is not pled, and without such basis, all "information and belief" allegations fail. *See Neubronner v. Milken, supra*.

### I. The Allegations of Civil Conspiracy Do Not State a Claim

The parties agree that allegations of civil conspiracy for fraud cannot survive a failure to adequately plead fraud. As explained in Section F above, the fraud allegations are not pled with the particularity required to state a claim. Even without this dispositive error, the allegations fail as they are made on information and belief without identifying the facts supporting that belief as required by *Neubronner v. Milken, supra*.[4]

### J. A Derivative Action is Required

Counterclaimants complain that a derivative action is not required as the "Motion does not identify the corporation in the name of which the above causes of action must be prosecuted." Opp. 21:12-13. Identifying the corporation necessarily requires the ACC to differentiate between the corporations, something it expressly refuses to do. ACC ¶ 1. Counterclaimants should not be allowed to intentionally plead vaguely, and then argue the Motion fails because of Counter-Defendants' failure to identify which of those conflated entities is the party for which a derivative action is required.

The gravamen of the ACC's second, third and fourth causes of action is that some Counterclaimants made investments in Utherverse, and those investments have been impaired.

---

[4] The Opposition does not argue against the fact that the ACC fails to distinguish among the Utherverse entities (thereby creating uncertainty about which Utherverse entity is alleged to have done what) but instead argues that such clarity "is unnecessary as Counterclaimants allege that each entity is an alter ego of Shuster", referencing ACC ¶¶ 70 – 72. Opp. p. 20, fn. 4. Each of the cited ACC paragraphs is alleged entirely on information and belief, without identifying the facts giving rise to the belief.

Pretending that "Utherverse" is a single corporation, the ACC states that "Shuster's pattern of fraud and misrepresentation brought unfathomable potential liability upon Utherverse and the investors that relied upon those misrepresentations." ACC ¶ 56. If Utherverse and investors (*i.e.* stock purchasers) in Utherverse are the damaged parties as they allege, the claims belong to Utherverse. A recovery by Utherverse would make whole any stock purchasers by restoring the company to the valuation the purchasers expected when investing. No route exists to finding an investor personally has "unfathomable potential liability" based on a corporate officer's alleged fraudulent statements. Rather, the liability would be limited to loss of investment because of impairment of the company's stock value, the very definition of a derivative action.

**K.     None of the Contracts Were Adequately Pled**

The Opposition indicates that "the terms of all Agreements were incorporated by reference into the ACC, so the ACC was not required to exhaustively describe the Agreements", citing *Cuadros v. State Farm Fire and Cas. Co.*, No. 2:14-CV-1247 JCM (PAL), 2014 WL 7338945, at *3 (D. Nev., Dec. 23, 2014) for the proposition that "in addressing a motion to dismiss, a court may consider documents incorporated into a complaint by reference (*i.e.*, extensively referenced in the complaint) even if those documents are not attached to the complaint." Opp. p. 22, fn. 5.

That, however, is a creative recasting of the holding. The *Cuadros* case was a motion to dismiss where a party requested judicial notice of a contract extensively referenced in the complaint but not attached to the complaint. Although the court did not take judicial notice, it nonetheless considered an actual copy of the contract submitted with the request for judicial notice because of the exhaustive description ("policy's number, requirements, and contents") contained in the complaint. *Cuadros* at *3.

Counterclaimants' mischaracterization is underscored by the case *Cuadros* cited for the holding, *U.S. v. Ritchie,* 342 F.3d 903 (9th Cir. 2003). That case held that when a document is "incorporated by reference into a complaint [when] plaintiff refers extensively to the document … [t]he defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss…" *Id* at 908. Since none of the alleged contracts have been presented to the Court in the

moving or opposition papers, Counterclaimants' reliance on *Cuadros* fails.

Thus, the failure to plead the terms of the agreements remains as a point of failure in the contractual allegations.

## CONCLUSION

Each claim in the ACC fails to meet the standards required by FRCP 8 and, for the claims grounded in fraud, FRCP 9. Thus, the ACC should be dismissed.

Dated: June 20, 2025            COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn
    Sherrie M. Flynn. Esq.
    Robert K. Ashley, Esq.
    499 West Shaw Avenue, Suite 116
    Fresno, California 93704
    Telephone: (559) 248- 4820
    Email: sflynn@ch-law.com

    James W. Puzey, Esq
    800 South Meadows Parkway, Suite 800
    Reno, Nevada 89521
    Telephone: (775) 851- 8700
    Email: jpuzey@nvlawfirm.com

    Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., Peter Gantner, Nexus Venture LLC, Ari Good and Gary Shuster