JAMES PUZEY (NV SBN 05745)
jpuzey@nvlawfirm.com
KEARNEY PUZEY DAMONTE
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700

SHERRIE M. FLYNN (*Pro Hac Vice*)
sflynn@ch-law.com
ROBERT K. ASHLEY (*Pro Hac Vice Forthcoming*)
rashley@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiffs and Counter-Defendants (excluding Utherverse International, Ltd.)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA – RENO DIVISION**

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, and individual; BLOCKCHAIN FUNDING, INC. a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. 3:25-cv-00020-MMD-CSD<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES AND PORTIONS OF AMENDED COUNTERCLAIM PURSUANT TO FRCP 12(f)**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025<br><br>**Amended Counterclaim Filed:** April 27, 2025<br><br>Date:         TBD<br>Time:        TBD<br>Courtroom: TBD<br><br>Filed Concurrently with Reply Brief in Support of Motion to Dismiss |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE

Counter-Defendants, Utherverse, Inc. ("UI"); Brian Shuster ("Shuster"); Utherverse Digital, Inc. ("UDI"); Peter Gantner ("Gantner"); Nexus Venture LLC ("Nexus"); Ari Good ("Good"); and Gary Shuster ("Gary"; collectively, "Counter-Defendants"), respectfully submit their Reply Brief in Support of Motion to Strike Affirmative Defenses and Portions of Amended Counterclaim Pursuant to FRCP 12(f) ("Motion to Strike").

## INTRODUCTION

In their Opposition to Motion to Strike ("Opposition", and when cited "Opp."), Counterclaimants accuse Counter-Defendants of needlessly creating work. The opposite is the case. Had Counterclaimants carefully drafted their Counterclaim to meet applicable pleading standards and to avoid needless allegations and spurious issues, this Motion to Strike would be unnecessary. Instead, Counterclaimants did a rush "cut and paste" job, neglecting to remove allegations from a dismissed California state court case, and either failed to delete or purposefully included allegations that are redundant, immaterial, impertinent and/or scandalous.

## DISCUSSION

**A.    Affirmative Defenses are Subject to Heightened Pleading Requirements**

After the decisions in *Twombly*[1] and *Iqbal*[2], there has been much disagreement among district courts regarding the plausibility standards under which pleadings, including affirmative defenses pled in the answer are to be resolved. While a few courts have declined to extend the *Twombly/Iqbal* heightened standard to affirmative defenses, the majority view appears to be that the *Twombly/Iqbal* plausibility standard <u>does</u> apply to affirmative defenses. *See Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1172 (N.D. Cal. 2010) (stating that, "Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense...").

Moreover, the Nevada Supreme Court has emphasized that affirmative defenses must provide adequate notice to the opposing party. In *Great Am. Ins. Co. v. General Builders Inc.*, 113 Nev. 346 (Nev. 1997), the court ruled that an affirmative defense must be pleaded with sufficient

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

clarity to notify the opposing party of its nature. *Id.*, 353-54.

In this case, Counterclaimants' Affirmative Defenses provide no bases for the defenses. Instead, Counterclaimants rely on mere incantations of the names of the defenses themselves. This does not meet Counterclaimants' burden to provide fair notice of its defense. Additionally, many of the defenses are simply not proper affirmative defenses.

**B.    A Showing of Prejudice is Not Required in the Ninth Circuit**

In their Opposition, Counterclaimants contend that "Where the moving party cannot demonstrate the material will prejudice a party, 'courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f).'" Opp. 10:21-23 (citing *DS-Concept*, 2017 WL 2180982, at *3 and quoting *New York City Employees' Retirement System v. Barry*, 667 F.Supp.2d 1121, 1128 (N.D. Cal. 2009). However, there is no Supreme Court or Ninth Circuit authority requiring a plaintiff to demonstrate prejudice to justify a motion to strike affirmative defenses.

In fact, in an unpublished but often cited opinion, the Ninth Circuit rejected the argument that a moving party should be required to demonstrate prejudice. *See, e.g., GS Holistic, LLC v. Crows Landing Smooth Shop Inc.*, No. 1:22-cv-1454 JLT SAB, 2023 WL 2815746 (April 6, 2023, E.D. Cal. 2023) (acknowledging that, albeit in an unpublished opinion, "the Ninth Circuit rejected the argument that a moving party should be required to demonstrate prejudice… 'Rule 12(f) says nothing about a showing of prejudice.' The Ninth Circuit expressly indicated it 'decline[d] to add additional requirements to the Federal Rules of Civil Procedure ("FRCP") when they are not supported by the text of the rule'", citing *Atlantic Richfield Co. v. Ramirez*, 1999 WL 273241 at *2 (9th Cir. 1999) (internal citation omitted), and declining to require plaintiff to show prejudice in moving to strike under Rule 12(f)). Furthermore, the text of rule 12(f) allows a court to strike material sua sponte.

Given that Counterclaimants have cited to no controlling authority in this circuit that requires evidence of material prejudice on behalf of the Plaintiff, Counter-Defendants should not be required to show prejudice.

///

### C. Counterclaimants Affirmative Defenses Should Be Stricken

#### 1. 1st Affirmative Defense (Failure to State a Claim)

Counterclaimants cite Connecticut District Court and Southern District of New York decisions to support their contention that "[I]t is well settled that the failure-to-state-a claim defense is a perfectly appropriate defense to include in the answer." Opp. 11:19-22. This is not the case in the Ninth Circuit, which recognizes that failure to state a claim is not a cognizable affirmative defense. *See Comercializadora Recmaq v. Hollywood Auto Mall, LLC*, 2014 WL 3628272, at *17 (S.D. Cal. July 21, 2014). Rather, failure to state a claim upon which relief can be granted is a failure of plaintiff's prima facie case. *Vogel v. OM ABS, Inc.*, 2014 WL 340662, at *2 (C.D. Cal. Jan. 30, 2014) citing *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1174 (N.D. Cal. 2010) ("*Barnes*").

Accordingly, Counterclaimants First Affirmative defense should be stricken.

#### 2. 2nd Affirmative Defense (Plaintiff's Failed to Join Indispensable Parties)

The Opposition states that "Counterclaimants are but a few of several investors in Utherverse who provided funds to Utherverse; therefore, there are likely several investors who fit the profile of Counter-Defendants' bizarre theory…" Opp. 12:6-9.

As an initial matter, as much as Counterclaimants would like this Court to believe that Counter-Defendants' theory is "bizarre" or "absurd" (*see* Counterclaimants' Opposition to Motion to Dismiss Counterclaim (Doc. 60), 3:9-10), the U.S. Supreme Court has recognized that the "complexity of an illegal scheme may not be used as a shield to avoid detection." *Andersen v. Maryland*, 427 U.S. 463, 480, fn. 10 (1976).

What Counterclaimants are really saying is that there may be additional Counterclaimants who were defrauded, <u>not</u> that there may be other Defendants that must be joined. Regardless, FRCP 15 freely gives leave to add affirmative defenses when justice so requires. The fact that Counterclaimants do not identify the indispensable party fails to give Counter-Defendants fair notice and thus should be stricken. *See* Motion to Strike (Doc. 57-1), 4:16-21.

#### 3. 3rd Affirmative Defense (Plaintiff's Failed to Plead with Particularity)

The Opposition clarifies that "Counterclaimants here allege more generally that Counter-

1  Defendants failed to plead claims with particularity." Opp. 12:17-18. This purported affirmative
2  defense is legally insufficient because it is not a proper affirmative defense. An affirmative defense
3  is one that admits the allegations in the complaint and provides a legal reason why the Defendants
4  should not be liable. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)
5  ("*Zivkovic*"); *Barnes* at 1174. That Counter-Defendants failed to plead claims with particularity
6  does not constitute a proper defense because it does not admit the allegations in the Complaint[3]
7  while asserting a legal reason why Counterclaimants should not be liable.

**4.    4th Affirmative Defense (Unclean Hands)**

9  Even assuming, *arguendo*, that allegations in the Counterclaim may be imported into
10 Counterclaimants' affirmative defenses (which Counter-Defendants do not concede), the
11 Counterclaim's allegations of fraud are not pled with the required specificity, and thus, do not
12 provide fair notice of the facts surrounding the affirmative defense of unclean hands. Thus, this
13 affirmative defense should be stricken.

**5.    5th, 7th, 8th, 10th, and 24th through 28th Affirmative Defenses**

15 The law states that duplicative defenses should be stricken. (Fed. R. Civ. P. 12(f) (The court
16 may strike from a pleading … any redundant… matter"). Counterclaimants states that its 5th, 7th,
17 8th, 10th, 24th through 28th affirmative defenses should not be stricken based on the same
18 arguments they made in support of their 4th affirmative defense, thus implying that these defenses
19 are duplicative of their unclean hands defense (Opposition, 13:12-19). Regardless, these affirmative
20 defenses fail for the same reason as the 4th affirmative defense above – they do not provide fair
21 notice of the facts surrounding the affirmative defenses (see FRCP 8) and thus, should be stricken.

22 In addition to being duplicative, the 24th through 28th affirmative defenses state among
23 other things that "Shuster breached his fiduciary duties to Defendants;" (Opposition, 18:18) and
24 "Shuster forfeited any entitlements because of his breach of fiduciary duties." (Opposition, 18:19).
25 These purported affirmative defenses are legally insufficient and should be stricken because they
26 do not constitute proper affirmative defenses under Nevada law and the Federal Rues of Civil

---

[3] Note that only some Counter-Defendants are Plaintiffs (*i.e.*, Shuster and UI).

Procedure.

As indicated above, an affirmative defense is one that admits the allegations in the complaint but provides a legal reason why the Defendants should not be liable. *Zivkovic,* at 1088; *Barnes,* at 1174. The 24th through 28th affirmative defenses do not admit allegations in Counter-Defendant's complaint while asserting a legal reason why Defendants should not be liable. Thus, they should be stricken.

### 6.     6th, 9th, 11th through 20th, and 31st through 33rd Affirmative Defenses

These Affirmative Defenses are clearly improper, not properly pled, or not affirmative defenses at all. For example, the statement that "Counterclaimants made no false representations of material facts which they knew to be false", or statements like "Counterclaimants had no intent to defraud Plaintiffs" are not proper affirmative defenses.

Generally, affirmative defenses accept, rather than contradict, well-pleaded allegations of the complaint. *Crow v. Wolpoff & Abramson*, No. 06-CV-3228, 2007 WL 1247393, at *2 (D. Minn. Apr. 19, 2007) (citing *Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D. Ill. 1995). Counterclaimants grocery list of affirmatives defenses are actually negative defenses not cognizable under applicable substantive law. One court has held that "'a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and such matter is not raised by a negative defense.'" *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont. III. Natl Bank*, 576 F. Supp. 985, 991 (N.D. Ill. 1983) (citing 2A Moore's Federal Practice ¶ 8.27 [4], at 8-260). The Ninth Circuit has also adopted a rule that "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense. *Zikovic v. S. Cal Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

It appears that Counterclaimants are either confused or trying to confuse this Court regarding who has the burden of proof with respect to Affirmative Defenses. *See* Opp. 14:1-6 (where Counterclaimants erroneously argue that "if… proving these defenses would negate elements of [Counter-Defendants] claims, then [the affirmative defenses] 'pertain' and are 'necessary[ ] to the issues in question.'" (third bracket in original).)

Because Counterclaimants cannot establish that defenses that contradict or negate an element of a well-pleaded complaint are appropriate affirmative defenses, the 6th, 9th, 11th through 20th, and 31st through 33rd Defenses listed above should be stricken.

      **7.    21st through 23rd, 29th, and 30th Affirmative Defenses**

Counterclaimants' Affirmative Defenses that: "Defendants have committed no acts of dominion over Plaintiffs' property/chattels", "Defendants' acts of dominion, if any, were not wrongful", "Shuster violated his duty of loyalty to Defendants" and Shuster owed a fiduciary duty to Defendants…" are not proper affirmative defenses for the reasons stated for the 24th through 28th Affirmative Defenses and the 6th, 9th, 11th through 20th, and 31st through 33rd Affirmative Defenses. These statements merely negate elements of Counter-Defendants' claims.

Additionally, the 23rd Affirmative Defense does not meet the minimum standard of pleading pursuant to FRCP 8. Thus, for these reasons, the 21st through 23rd, 29th, and 30th Affirmative Defenses should be stricken.

      **8.    Affirmative Defense 36 (Reservation of Right to Amend Amended Answer)**

In their Opposition, Counterclaimants admit that this reservation is not an affirmative defense and concede it should be stricken. Opp. 14:27-15:3. Thus, this Court should strike Affirmative Defense 36.

**D.    Counterclaimants Allegations Should Be Stricken:**

      **1.    Allegations Regarding CA Penal Code Section 496(c) and Security Laws Have No Possible Bearing on the Subject Matter of the Litigation**

<u>21:1-10 & 21:15 (portion stating "treble damages under California Penal Code § 496(c)")</u>.

In these portions of the ACC, Counterclaimants allege that Counter-Defendants violated California securities laws and committed theft under California Penal Code section 496(c)[4]. Counterclaimants as much as admit that these allegations are left over from the California litigation, yet maintain they are material. Opposition, 15:5-11. They frame the materiality as the "unlawful objective" of the cause of action for civil conspiracy. *Id*. at 15:12-19.

Indeed, a claim for civil conspiracy requires the commission of an underlying tort. If the underlying tort is inadequately pled, the conspiracy cannot stand. *Cambridge Elecs. Corp. v. MGA Elecs., Inc*., 227 F.R.D. 313, 336 (C.D. Cal. 2004). Here, however, the underlying tort pled is not a

---

[4] CA Penal Code Section 496 makes it a crime to knowingly buy, receive, conceal, sell, or withhold stolen property. Subsection (c) provides that an injured person may bring an action for three times the amount of actual damages.

1  violation of Penal Code Section 496, but instead, is fraud. ACC, 42:1-17; *see also* 33:1-2. These
2  leftover allegations have no significance, importance, or possible bearing on the civil conspiracy
3  cause of action, or the underlying fraud pled. In fact, the ACC makes no plausible, non-conclusory
4  allegations as to receipt of stolen property by any of the Counter-Defendants named in the fraud
5  cause of action (*i.e.*, Shuster, UI, or UDI), or in the civil conspiracy cause of action (*i.e.*, UI, UDI,
6  Good, Gantner, Nexus or Gary).[5] Nor have Counterclaimants sought treble damages in their prayer
7  for relief. The allegations of ACC 21:1-10 and 21:15 simply have no bearing whatsoever on the
8  subject matter of this litigation.

            **2.      Conclusory Allegations Regarding Shuster Intent to Defraud and Theft of
                       Funds Have No Possible Bearing on the Subject Matter of the Litigation**

            23:24-26 (starting after "but now refuses to do so"); 26:7-9 (starting after "whatsoever");
            26:16-19 (starting after "whatsoever"); 27-1-3 (starting after "whatsoever")

13       These parts of the ACC allege (with variations) that "Shuster has stolen the funds" and "On
14  information and belief… Shuster never intended to honor the [alleged agreement] and intended to
15  defraud and steal the money." Counterclaimants argue that the allegations are pertinent and material
16  to characterizing the overall fraudulent scheme by Shuster and/or Utherverse. Opp., 16:6-7; 16:19-
17  20; 17:9-11 (indicating same reasons); and 17:13-15 (indicating same reasons). To the extent that
18  Counterclaimants are presenting such allegations as relevant background facts and/or to establish
19  of pattern of fraud, these "facts" are conclusory, and no explanation is given as to what information
20  Counterclaimants base their belief on. Thus, the allegations are not necessary to the issues in
21  question. Further, such allegations improperly cast a derogatory light on Shuster and Utherverse
22  because there is no credible factual basis alleged in the ACC to support a cause of action for theft.
23       Thus, such allegations have no bearing whatsoever on the subject matter of this litigation
24  are impertinent, immaterial, and scandalous and should be stricken.
25  ///

---

[5] Allegations as to UI and UDI are completely absent. As to Good, Gantner, Nexus, and Gary, the ACC repeats the same conclusory allegation (with minor differences), that "On information and belief, [Counter-Defendant] knowingly aided and conspired with Shuster to fraudulently conceal and withhold funds obtained from Counterclaimants" (ACC, 33:4-5; 33:25-27; 34:17-19; 34:27-35:1), and as to Good and Gantner that "On information and belief… [Counter-Defendant] knowingly received funds fraudulently obtained from Counterclaimants" (*id*. at 33:8-10; 34:2-4).

**3.    Allegations Related to Utherverse's Alleged Ties to the Pornographic Industry Are Scandalous and Have No Bearing on the Subject Matter of the Litigation**

27:27-28:3 (¶ 41 n total); 29:10-13 (¶ 47 in total)

These portions of the ACC allege that Shuster/Utherverse were tied to the pornographic industry. The Opposition feigns relevance based on expenditures by Counterclaimants to improve Utherverse's reputation. Opp. 17:17-19 and 18:8-10. Tellingly, there are no allegations that Shuster/Utherverse misrepresented any ties to the pornographic industry. (*Id.*, 24:21-25:15.)

Moreover, allegations of involvement in the pornographic industry reflect on Shuster's moral character, are not relevant to the alleged fraud or breach of contract issues and are added only to potentially inflame the jury. *See Solek v. K.B. Transportation, Inc.*, No. 21-cv-10442, 2021 WL 5183873 (E.D. Mich. 2021) at *1 (striking paragraphs related to defendant's alleged possession of child pornography); *Allstate Ins. Co. v. OMIC, LLC*, No. 17-13908, 2018 WL 8806551 at *5 (E.D. Mich. Sep. 24, 2018) (striking allegations not linked to the fraud scheme and included only to "inflame a factfinder and shed negative light on [the defendant's] character").

Thus, these paragraphs of the ACC should be stricken.

**4.    Allegations Related to Hackett Are, At Minimum, Immaterial**

28:20-23 (¶ 44, starting after "past")

The Opposition relates Denne's alleged hiring of Hackett as "an expense of time and effort that Denne would not have incurred but for Shuster's fraudulent misrepresentations about Utherverse's profitability" and "Denne is thus entitled to damages for his efforts on behalf of Utherverse with regard to Hackett…" Opposition, 17:27-28, 18:3-4.

However, even if these portions of the Opposition are stricken, the beginning of paragraph 44 would remain, which indicates that Denne brought in Hackett. ACC 28:19-20. What would be stricken are allegations that Hackett resigned due to lack of payment, ineffective corporate governance, fear of liability, and that Hackett is still owed money. Hacket is not a party to the action and whether or not he was paid and how much are not at issue here.

Further, the allegations related to Hackett's reasons for allegedly resigning create a serious risk of prejudice to Shuster and may cause delay and confusions because Hackett is not a party to

this action, it would be burdensome for Shuster to answer such allegations, and the inclusion of such allegations may complicate the trial by requiring evidence of an agreement with Hackett not germane here. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (streamlining resolution and focusing jury attention on the real issues by striking allegations that did not involve parties to the action, created serious risks of prejudice, delay and confusions of issues, and would unnecessarily complicate the trial by requiring evidence of unrelated agreements) ("*Fantasy*").

Consequently, the allegations related to Hackett's alleged resignation and the reasons therefor should be stricken.

### 5. Allegations Related to Alleged Defamatory Statements by Shuster have No Bearing on the Subject Matter of the Litigations

30:12-20 (¶ 54 in total)

For similar reasons as those set forth in item 4 above, allegations related to letters allegedly sent by Shuster containing allegedly defamatory statements confuse the issues, would be burdensome for Shuster to answer and implicate non-parties to the action. *See Fantasy,* at 1528. Such allegations have no bearing on the alleged fraud or on any other issues in this action.

### 6. Allegations Regarding Shuster's Character are Scandalous and Irrelevant

31:3-4 (¶ 56 starting after "misrepresentations"); 31-5 – 32:24 (¶ 56, portions listed a-n)

These portions of the ACC purport to be "specific examples of Shuster's character and propensity for fraudulent activity…" ACC, 31: 34. The Opposition indicates that the allegations lettered a-n are "all pertinent and material to the fraud and breach of fiduciary duty claims" because they demonstrate that "Shuster misappropriated investors' funds", including those of Counterclaimants, "squandered those funds, and deliberately mismanaged Utherverse and investors' interests by extension." Opposition, 19:8-12. However, the ACC is clear that a-n are "examples" included to show Shuster's character but are not themselves allegations of fraudulent activity. ACC, 31:3-4. Indeed, a closer inspection reveals that none of the allegations are pertinent to the causes of action for fraud or breach of fiduciary duty, even though they may utilize the word "fraud" or some version of it.

Even putting aside that each of these "examples" of fraudulent activity are conclusory and conspicuously lack the specificity required by FCRP 9(b), each create a risk of prejudice to Shuster and may cause delay and confusions because the allegations involve individuals who are not parties to this action, it would be burdensome for Shuster to answer such allegations, and the inclusion of such allegations may complicate the trial by requiring evidence of agreements with non-parties not germane here. *See Fantasy* at 1528. Thus, each of these allegations should be stricken.

### 7. Allegations Related to Fraudulent Actions Not Known Have No Bearing on the Subject Matter of the Litigation

<u>32:25-27 (¶ 57 in total)</u>

The Opposition indicates this paragraph should not be stricken because it is "not cogently argued" and is without supporting authority. Opposition, 20:16-17. It further claims that the allegation is pertinent and material because the case "revolves around allegations from both sides that funds were misappropriated through fraud..." *Id.*, 20:18-19.

Common sense dictates that paragraph 57 is not a factual allegation and the statement has no bearing on the subject matter of the litigation. Of course, discovery may lead to additional allegations of fraud, and banking data and cryptocurrency wallet data will likely be requested in discovery. The addition of such allegations is unnecessary and immaterial and should be stricken.

### 8. Allegations Related to Alleged Manipulation of Value of Cryptocurrency Token Are Immaterial

<u>36:3-18 (¶¶ 68, 69 in total)</u>

The Opposition states that these paragraphs are material because they demonstrate that Counter-Defendants "had [tokens] in their possession while they were manipulating the markets" and it "demonstrates that tokens were withheld and that Utherverse fraudulently promised to deliver the tokens to obtain funds from Counterclaimants that they never planned to deliver." Opposition, 21:3-6. However, the focus of these paragraphs is not on the failure of Utherverse or other Counter-Defendants to deliver tokens to Counterclaimants, but on alleged manipulation of the token market.[6]

---

[6] Other portions of the ACC allege that Shuster never delivered tokens to Blockchain Funding and Masternode partners. *See e.g.*, ACC 26:3-7, 26:13-16.

None of the causes of action alleged in the ACC related to cryptocurrency market manipulation and such allegations do nothing more than confuse the issues in the action. *See Fantasy* at 1528. Thus, these paragraphs should be stricken.

### 9. Allegations Related to Utherverse Advertising

<u>24:9-12 (¶ 31, in total)</u>

Counter-Defendants dispute that this paragraph "clarifies some of the esoteric subject-matter (sic) in this case", and that they must explain the prejudice caused by this paragraph. *See* Section B, above. Regardless, Counter-Defendants withdraw their request to strike paragraph 31 of the ACC.

## CONCLUSION

For the reasons set forth above, and in their moving papers, Counter-Defendants respectfully request that the Court strike affirmative defenses 1-33 and 36, and those portions of the ACC detailed above.

Dated: June 20, 2025                COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn
Sherrie M. Flynn. Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248- 4820
Email: sflynn@ch-law.com

James W. Puzey, Esq
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851- 8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., Peter Gantner, Nexus Venture LLC, Ari Good and Gary Shuster