MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, | Case No.: 3:25-cv-00020-MMD-CSD |
| Plaintiffs, | **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual. | |
| Defendants. | |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual, | |
| Counterclaimants, | |
| v. | |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

34713009

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  UTHERVERSE, INC., a Nevada corporation,
   and BRIAN SHUSTER, an individual,
2  UTHERVERSE DIGITAL INC., a
   Vancouver, British Columbia, Corporation;
3  UTHERVERSE INTERNATIONAL, LTD., a
   British Virgin Islands Corporation; PETER
4  GANTNER, an individual; NEXUS
   VENTURE LLC, an Arizona Limited Liability
5  Company; ARI GOOD, an individual; GARY
   SHUSTER, an individual; and DOES 1-25,
6  inclusive,

7                         Counterdefendants.

8          Defendants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc.

9  ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners,

10 LLC ("Masternode"), Lynne Martin ("Martin"), Niya Holdings, LLC ("Niya Holdings"), Nima

11 Momayez ("Momayez"), and Jeremy Roma ("Roma") (collectively, "Defendants"), by and through

12 their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, file this Memorandum

13 of Points and Authorities in support of Defendants' Motion for Judgment on the Pleadings

14 ("Motion").

15         This Motion is based on the following memorandum of points and authorities, the papers

16 and pleadings on file, and any argument this Court may request.

17         DATED this 25th day of September, 2025.

18

19                              BROWNSTEIN HYATT FARBER SCHRECK, LLP

20                              BY: */s/ Maximilien D. Fetaz*
                                    Maximilien D. Fetaz, Esq.
21                                  Zachary R. Meyer, Esq.
                                    100 North City Parkway, Suite 1600
22                                  Las Vegas, NV 89106-4614

23                                  *Attorneys for Defendants/Counterclaimants*

24

25

26

27

28

                                        2

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs' claim that Defendants violated the Racketeer Influence and Corrupt Organizations ("RICO") Act is deeply flawed, impossibly vague, and legally insufficient.  For example, Plaintiffs' Complaint cites no particular subsection of 18 U.S.C. § 1962.  It alleges elements that appear to correspond to Section 1962(c) but also states allegations that use language from subsections (a), (b), and (d), so there is no telling under which subsection the RICO claim is intended to proceed.  This vagueness alone warrants dismissal of the RICO claim.  In addition, in order to state a claim under any subsection of Section 1962, Plaintiffs must allege, among other things, that an "enterprise" existed; and, because the claim is alleged against all Defendants, the Complaint must establish an enterprise among all Defendants.  However, the allegation listing elements in Plaintiffs' RICO claim states an "enterprise" as an element and proceeds to explain how each element is met *except* for the enterprise element.  In total, "enterprise" appears twice in the entire Complaint:  once in the aforementioned generic list of elements and once more in the body without elaboration.  The Complaint is thus devoid of allegations expressly supporting the existence of an enterprise.  Defendants and this Court are left to extrapolate as to *both* the subsection of Section 1962 that Plaintiffs are proceeding under and the allegations that could support an enterprise.

In addition to these glaring omissions, Plaintiff's claim fails to satisfy the "pattern" element of RICO because there is no threat of continued criminal activity, fails to satisfy the "conduct" element of RICO because there is no allegation that each defendant conducted the enterprise's affairs, fails to satisfy the "proximate cause" requirement of RICO because the theory of harm is too remote, as well as other failings referenced below.  Because these legal insufficiencies cannot be corrected through amended pleadings, this Court should dismiss Plaintiffs' civil RICO claim with prejudice.

Further, with dismissal of the RICO count, the ninth and final defendant Jeremy Roma should be released from the case, along with defendants Martin and Masternode.  As explained below, the only claim that would remain against Roma (Count Eight, alleging Tortious Interference

3

34713009

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

with Contract) is a legally insufficient state law claim over which this Court should decline to exercise jurisdiction in the interest of justice.  And similarly, the only claims against Martin and Masternode would be legally insufficient state law claims over which this Court should decline to exercise jurisdiction in the interest of justice.

## II.    THE DEFICIENT RICO ALLEGATIONS

On January 10, 2025, Utherverse[1] filed its Complaint alleging, among other claims, a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO Claim") predicated upon wire fraud against all Defendants.  *See* 18 U.S.C. §§ 1962, 1964, 1343; Compl. at ¶¶103-13.  The Complaint does not specify under which subsection of Section 1962 the RICO Claim is proceeding, despite each of the four subsections proscribing discrete conduct.  *See* 18 U.S.C. § 1962; Compl. at ¶¶103-13.

Based on the recitation of the elements in one of the allegations under the RICO Claim, Utherverse may be proceeding under Section 1962(c).  *See* Compl. at ¶104 (alleging that Defendants "engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity").  However, the RICO Claim also sounds in Section 1962(d), alleging, for example, that Defendants "engaged in a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act."  Compl. at ¶104.  The allegations in the RICO Claim, which incorporates all 102 previous allegations by reference, likewise sound in Section 1962(a), as some allegations suggest that Defendants invested income into Utherverse derived from racketeering.  *See, e.g.*, Compl. at ¶42 ("Having caused [Utherverse] to substantially increase its operating costs based on false promises that they would deliver funds to cover the costs, Quinn and Denne carefully titrated the flow of funds to [Utherverse] so that [Utherverse] did not fail while the fraud was ongoing.").  And, the incorporated allegations also sound in Section 1962(b) because they suggest Defendants engaged in racketeering activity to gain control of Utherverse.  *See, e.g.*, Compl. at ¶22 (alleging that Quinn

---

[1] Unless otherwise specified, "Utherverse" or "Plaintiffs" is used herein to refer to Brian Shuster and all entities controlled by Shuster bearing the name "Utherverse," which are his alter egos.  *See* Amended Counterclaims at ¶¶70-72.

4

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

and Denne "attempted to entrap Shuster to violate the law to maintain control over him and his companies").

Conspicuously absent from both the RICO Claim and the rest of the Complaint are any allegations defining the "enterprise," identifying what type of enterprise listed under the definition of "enterprise" in Section 1961(4) is at issue, or distinguishing any such enterprise from the alleged wire fraud predicates. *See* Compl. at ¶¶103-13 (stating the elements of a RICO claim and describing how all of the elements are met *except* for the enterprise element). Other than in the elements generically listed in the RICO Claim itself, "enterprise" appears in only one location in the Complaint without elaboration. *See* Compl. at ¶99 (referring to Defendants' alleged scheme as a "fraudulent enterprise"); ¶104 (listing "an enterprise" as one of the elements of a RICO claim).

The Complaint includes allegations about Denne and Quinn's *individual* criminal histories, but there is no indication that they performed any of the crimes in their alleged histories in concert much less in furtherance of a common goal coinciding with the fraud allegations against the other Defendants. *See* Compl. at ¶¶19-20. The only allegation in the Complaint alluding to an enterprise among *any* Defendants other than conclusory allegations of fraud states that "Quinn and Denne have also reportedly been involved in a myriad of Ponzi and other fraudulent schemes, both separately and together," but it has no apparent applicability here where no Ponzi scheme is alleged and no further details are alleged about the previous schemes. *Id.* at ¶20.

Throughout the Complaint, permutations of one or more Defendants are alleged to have engaged in discrete, independent instances of fraud, which instances are correlated only by Plaintiffs' bizarre and conclusory allegations that all Defendants collectively schemed to keep on the brink of bankruptcy the very company they had invested in, transacted with, or loaned money to: Utherverse. *See generally* Compl. There is no allegation that, for example, Martin, Roma, and/or Momayez coordinated or shared a common goal with one another. *See* Compl. at ¶¶37, 39, 50-53, 81-82, 84. Yet, the RICO Claim lumps all Defendants into one enterprise without elaboration. *See id.* at ¶¶103-13.

34713009

1    **III.    ARGUMENT**

2         **A.    Legal Standard**

3         Any party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed.

4    R. Civ. P. 12(c).  "Analysis under Rule 12(c) is substantially identical to analysis under Rule

5    12(b)(6) because, under both rules, a court must determine whether the facts alleged in the

6    complaint, taken as true, entitle the plaintiff to a legal remedy." *Wall v. NSB E. Bonanza LLC*,

7    2022 WL 526133, at *2 (D. Nev. Feb. 22, 2022) (quoting *Chavez v. United States*, 683 F.3d 1102,

8    1108 (9th Cir. 2012)).  "Because the motions are functionally identical, the same standard of review

9    applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine*

10   *Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

11        Thus, to survive a Rule 12(c) motion, a plaintiff must plead "enough facts to state a claim

12   to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

13   claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the

14   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

15   U.S. 662, 678 (2009).  A complaint that alleges only "labels and conclusions" or a "formulaic

16   recitation of the elements of the cause of action" will not survive dismissal.  *Twombly*, 550 U.S. at

17   555.  Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions

18   of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

19   Cir. 2001).  "Dismissal is proper when the complaint does not make out a cognizable legal theory

20   or does not allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins. Co. v.*

21   *Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

22        Additionally, when fraud or civil RICO claims are alleged, "a party must state with

23   particularity the circumstances" giving rise to the claim.  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor*

24   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *T1 Payments LLC v. New U Life Corp.*, 2022 WL 195111,

25   at *12 (D. Nev. Jan. 21, 2022) ("Nevada and federal civil RICO claims sound in fraud, so Rule

26   9(b)'s heightened pleading standard applies.").  Rule 9(b) requires that plaintiffs allege "the who,

27   what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

28   1097, 1106 (9th Cir. 2003) (internal citations omitted).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## B.     Plaintiffs Failed to State a Claim for Violation of the RICO Act.

"To State a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[2] *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima S.P.R.L. v. Imrex Co Inc.*, 473 U.S. 479, 496 (1985)). The "pattern" element requires at least two predicate criminal acts that are not only related, but which also "pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989); *see also Blake v. Dierdorff*, 845 F.2d 1365, 1370-71 (9th Cir. 1988) (affirming dismissal of Complaint against individual defendant against whom only one predicate act was alleged); 18 U.S.C. § 1961(5) (defining "pattern of racketeering activity").

As explained below, the RICO count should be dismissed because it failed in nearly every way to state a legally sufficient claim: (1) it failed to identify a "RICO enterprise" as required; (2) it failed to satisfy the "pattern" element of RICO because it neither alleges a threat of continued criminal activity nor alleges that each defendant participated in at least two predicate acts; (3) it failed to satisfy the "conduct" element of RICO because the Complaint does not allege that each defendant participated in the operation or management of an enterprise; and (4) it failed to satisfy RICO's proximate cause requirement because the alleged harm is too remote. Further, to the extent Plaintiffs intended to pursue a conspiracy claim in violation of § 1962(c), the Complaint is legally insufficient because it failed to allege that Defendants knew they were engaged in racketeering.

Most of these deficiencies cannot be rectified with an amended complaint, because the underlying RICO theory itself is not legally cognizable. Therefore, Defendants seek dismissal of the RICO claim with prejudice.

/ / /

---

[2] Because Plaintiffs only state the elements of a Section 1962(c) violation, this Motion presumes that is the only subsection of Section 1962 under which Plaintiffs' RICO Claim proceeds. *See* Compl. at ¶104. However, Defendants maintain that the Complaint's failure to cite or otherwise specify the subsection under which the RICO Claim proceeds warrants dismissal of the RICO Claim. *See Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 511 n.4 (S.D.N.Y. 1990) ("Failure to plead a specific subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged."). In any event, Plaintiffs' RICO Claim fails under each subsection because all require an "enterprise," which Plaintiffs failed to establish as explained herein. *See* 18 U.S.C. § 1962.

**1.      Plaintiffs Failed to Identify a "RICO Enterprise."**

"'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4).  As the Complaint contains no allegations identifying what type of enterprise existed among any of Defendants under Section 1961(4), this Motion presumes that Plaintiffs have attempted to state an association-in-fact enterprise.  *See generally* Compl.

In *United States v. Turkette*, 452 U.S. 576, 583 (1981), the Supreme Court contrasted the "enterprise" requirement from the "pattern of racketeering activity" requirement as follows:

> [An] enterprise is . . . a group of persons **associated together for a common purpose** of engaging in a course of conduct.  The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by [18 U.S.C. § 1961(1)].  The former is proved by evidence of an **ongoing organization**, formal or informal, and by evidence that the various associates **function as a continuing unit**.  The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.  While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.  The **'enterprise' is not the 'pattern of racketeering activity'**; it is an entity separate and apart from the pattern of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be proved[.]

(emphasis added) (citation omitted).  However, an enterprise "need not have a hierarchal structure or a 'chain of command'; decisions may be made on ad hoc basis by any number of methods—by majority vote, consensus, a show of strength, etc."  *Boyle v. United States*, 556 U.S. 938, 948 (2009).  "Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies."  *Id.*  "While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by period of quiescence."  *Id.*

As explained below, Plaintiffs' RICO claim must be dismissed because it failed to identify any enterprise whatsoever, for the following reasons: (a) the Complaint does not allege an entity among Defendants separate and apart from the alleged wire fraud predicates; (b) the Complaint

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

8

does not describe the enterprise; and (c) shorn of conclusory allegations regarding fraud, the Complaint only alleges ordinary business activity.

### a. Plaintiffs Failed to Distinguish an Enterprise from the Alleged RICO Predicates.

Although the enterprise requirement "is not very demanding," an "association-in-fact enterprise must have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." *Odom*, 486 F.3d at 548; *Boyle*, 556 U.S. at 945 (internal quotation marks omitted). Furthermore, in order to state a claim under § 1962(c), "[t]he enterprise must be a distinct entity from Defendant[s], 'not simply the same 'person[s]' referred to by [] different name[s].'" *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *3 (C.D. Cal. July 13, 2015) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)).

Plaintiffs' Complaint consists of a collection of allegations of fraud propagated by one or more defendants with no elaboration on what structure exists among Defendants independent of those instances of fraud. *See generally* Compl. For example, Plaintiffs summarize the fraudulent scheme by alleging as follows:

> Defendants proceeded with a complex scheme to defraud Shuster, UI, UDI, and investors. The scheme included defrauding two sets of victims: (1) Shuster, UDI and UI (by diverting money intended for investment in UI to Defendants' own accounts); and (2) individuals and entities that thought they were investing in UI (whether by purchasing stock or by purchasing UTHER tokens), but who received no valid stock or tokens and instead had their "investment" diverted for use by Defendants, while Defendants concealed the "investment" from UI.

*Id.* at ¶30. Notice that this allegation only alleges a scheme and that Defendants allegedly propagated it; there is no explicit or implicit mention of any structure independent of that scheme, or any indication of a relationship among Defendants other than the scheme. *See Turkette*, 452 U.S. at 583 (explaining that "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages").

The closest Plaintiffs come to alluding to a structure independent of the alleged fraud is to use plural conclusory language like "acting in concert" and grouping permutations of the

9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Defendants together in the allegations, particularly Quinn and Denne. *See, e.g.*, Compl. at ¶15. However, the fact that multiple Defendants are alleged to have propagated a fraud does not imply "an entity separate and apart from" that pattern of fraudulent activity; otherwise, every claim for fraud involving more than one defendant would qualify as a RICO claim. *See Gomez*, 2015 WL 4270042, at *8 (explaining that "[b]ecause RICO liability requires more than a pattern of § 1961(1) predicate crimes, any interpretation of RICO that would render such a pattern sufficient for RICO liability would clearly expand the statute beyond the applications intended by Congress and beyond the scope established under Supreme Court precedent").

Moreover, although the Complaint alleges an enterprise among *all* Defendants, the Complaint vacillates between alleging fraudulent activity by Quinn and Denne and by one or more of the other Defendants, reflecting no structure whatsoever or potentially multiple inadequately pled enterprises. *See, e.g.*, ¶50 (grouping Quinn, Denne, Moyamez, NIYA and Blockchain Funding together in alleging fraud); ¶69 (grouping Quinn, Denne, and Blockchain Alliance together in alleging fraud); ¶39 (grouping Quinn, Denne, and Roma together in alleging fraud); ¶34 (only alleging Quinn and Denne falsified a SAFT). Even assuming, *arguendo*, that mere repeated reference to more than one Defendant could establish an enterprise, an inference that some permutation of Defendants constitutes an enterprise does not imply that any other permutation or all of Defendants collectively must constitute an enterprise. *See Bredberg v. Middaugh*, No. 21-35156, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) (commenting that, because "[t]he alleged racketeering activity [was] the only apparent connection among the defendants" the plaintiff failed to "establish the existence of an enterprise").

Notably, the allegations against Defendants Momayez, Roma, and Martin are few and involve discrete instances of alleged fraud that likewise reflect no structure beyond that inherent to the described fraud, so the basis for dismissal of the RICO claim as to them for lack of an enterprise is particularly compelling. *See* Compl. at ¶¶37, 39, 50-53, 81-82, 84.

Finally, Plaintiffs' failure to identify the subsection of Section 1962 under which its RICO Claim proceeds and failure to allege what sort of enterprise exists among one or more Defendants leaves open the possibility that Plaintiffs believe one of the entity defendants is the "enterprise" for

10

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

purposes of the RICO Claim.  *See* Compl. at ¶¶103-13; 18 U.S.C. § 1964(1) (listing entities as types of enterprises).  This failure and vagueness alone is a basis for dismissal of the RICO claim, as the Complaint provides no notice that this is the theory Plaintiffs proceed under.  *See Atl. Gypsum Co.*, 753 F. Supp. at 511 n.4.  Further, if Plaintiffs wish to proceed on the theory that one or more of the entity Defendants is a RICO enterprise, then the RICO Claim must be dismissed as to those Defendants for the additional reason that if "a corporation is the enterprise, it cannot also at the same time be the RICO defendant" under 18 U.S.C § 1962(c).  *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2526, 219 L. Ed. 2d 1204 (2024).

### b.  Plaintiffs Failed to Adequately Describe a RICO Enterprise.

Plaintiffs not only failed to distinguish a structure from that inherent to their alleged fraud predicates, but they failed to satisfy the pleading requirements for an enterprise altogether.  "In this Circuit, a plaintiff seeking to plead a RICO claim based on a predicate act of fraud must comply with the pleading requirements for fraud under Rule 9(b), which demands plaintiff pleads 'with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.'"  *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1253 (N.D. Cal. 2014) (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (1991)).  The Rule 9(b) particularity requirement extends to allegations supporting the existence of an enterprise.  *See Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1158-59 (D. Or. 2016) (applying the Rule 9(b) standard to the enterprise requirement); *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *4-6 (S.D. Cal. May 22, 2009) (same).

In *Mohebbi*, the court held that the plaintiff's allegations were insufficient to satisfy the enterprise requirement for a RICO claim predicated upon fraud. The court set forth the plaintiff's relevant allegations as follows:

> "Defendants and their numerous related corporations are corporations which alone and together constitute one or more ascertainable structures separate and apart from the herein-alleged pattern of racketeering activity so as to constitute an enterprise," (FAC, ECF 29 ¶ 101), which engaged in "illegal money laundering, OFAC regulations evasion, forging government documents, and numerous other illegal activities." (*Id. see also* ¶ 108 ("defendants

[engaged in] mail fraud, wire fraud, fraud in the offering and sales of securities, money laundering, [and] OFAC fraud")) Plaintiff alleges that "all defendants conducted and participated directly and indirectly in the conduct of such enterprise's affairs," (*id.* ¶102, *see also* ¶ 104 ("each defendant illegally operated and conducted an integral part of the enterprise")), that "all defendants benefitted from the operation of the enterprise," (*id.* ¶103), and that Defendants "engaged in a continuing pattern of racketeering activity." (*Id.* ¶107).

50 F. Supp. 3d at 1254. Notwithstanding the foregoing allegations expressly dedicated to the enterprise requirement, the court concluded that the plaintiff "alleged no [] structure." *Id.* The court elaborated that:

> Plaintiff merely alleges that the Defendants and their corporations form an enterprise. Such a cursory allegation gives the Court no information as to the form or structure of that enterprise, the ways in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the enterprise. Plaintiff does not cite *any* facts about the alleged enterprise whatsoever—only that every Defendant sued in this matter is a part of the enterprise. Plaintiff does not allege *how* each individual Defendant is engaged in the enterprise, only making a cursory allegation that all "Individual Defendants and their numerous related corporations" constitute the structure of the enterprise.

*Id.* (emphasis in original).

Unlike the plaintiff in *Mohebbi*, here, as discussed, at no point does the Complaint provide a discrete section or allegation(s) dedicated to satisfying the enterprise requirement. *See id.*; *see also generally* Compl. The Complaint mentions "enterprise" twice: once in the recitation of the elements of the RICO Claim section and once in passing without elaboration. *See id.* at ¶¶99, 104. If the allegations in *Mohebbi* are not sufficient despite expressly trying to define the enterprise, then the Complaint here—which makes no effort to even describe the enterprise at issue beyond using plural language—cannot satisfy the standard. *See* 50 F. Supp. 3d at 1254.

Even if this Court is inclined to extrapolate from the allegations in the Complaint that do not mention the word "enterprise," the Complaint still fails to establish an enterprise. Like the complaint in *Mohebbi*, at best, the Complaint merely alleges in a conclusory fashion that Defendants formed an enterprise. *See id.* The Complaint includes no information about what structure the enterprise has, the way decisions are made within the enterprise, a hierarchy, or any

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12

substantive information to give form to the enterprise.[3]  *See id.*  As with the complaint in *Mohebbi*, the Complaint here also does not cite "*any* facts about the alleged enterprise whatsoever—only that every Defendant sued in this matter is a part of the enterprise" and does not "allege *how* each individual Defendant is engaged in the enterprise, only making a cursory allegation" that all Defendants constitute the enterprise.  *Id.* (emphasis in original); *see* Compl. at ¶¶103-13.

Nor do Plaintiffs sufficiently describe a common purpose among Defendants as necessary to establish an enterprise.  *See Turkette*, 452 U.S. at 583.  In *Jamster*, the court held that the plaintiffs' "conclusory allegations" presented in support of its RICO claim predicated upon fraud were "woefully inadequate to state a claim." 2009 WL 1456632, at *6.  The plaintiffs in *Jamster* had described the scheme as follows:  "Content Providers would advertise the services which would lead to fraudulent charges, and the Wireless Providers would actually bill and collect payments from customers, keep a portion for themselves as payment for their part in the fraudulent enterprise and pay the remainder to the Content Providers." *Id.*  That allegation and the others in the complaint like it "fail[ed] to establish that Wireless Providers and Content Providers acted with a *common purpose* to accomplish the alleged fraudulent scheme." *Id.* (emphasis added).

Here, Plaintiffs' allegations reflect even less of a common purpose or coordination among Defendants than that reflected in the insufficient allegations about Wireless Providers and Content Providers in *Jamster*.  At best, all Plaintiffs allege is that each of Defendants individually misappropriated funds, transacted with Plaintiffs, or tangentially caused Plaintiffs to acquire more debt in disjointed schemes, not that they all shared a common purpose as an enterprise in doing so. *See, e.g.*, Compl. at ¶87 ("To date, Quinn and/or Denne have misappropriated at least $1,410,500.00, from no less than sixteen (16) investors[.]); ¶¶80-84 (alleging that Martin entered into an agreement with Utherverse to purchase tokens for the purpose of putting Utherverse into debt); ¶69 (alleging that "Denne convinced Shuster that UI should purchase stock from Blockchain Alliance," Denne's company); ¶39 (alleging that Quinn, Denne, and Roma fabricated a story to

---

[3] Although *Boyle*, *see* 556 U.S. at 948, states that criteria like a hierarchy or decision-making procedures are not *necessary*, the *Mohebbi* court lists these features of enterprises as examples of *sufficient* criteria, *see* 50 F. Supp. 3d at 1254, so *Boyle* and *Mohebbi* are not in conflict.

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    "keep [Utherverse] in a weak position financially while continuing to divert funds to themselves");

2    ¶52 (alleging that Momayez, Quinn, and Denne schemed to provide Utherverse with a loan to force

3    Utherverse into bankruptcy). Yet, again, the RICO Claim is collectively alleged against *all*

4    Defendants as though they functioned as a unit. *See* Compl. at ¶¶103-13.

5        There is no indication in the Complaint that, for example, Momayez and Martin coordinated

6    with one another, or that Denne, Roma and Martin collectively coordinated with one another. *See*

7    *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175

8    (E.D. Cal. 2017) (holding a RICO claim insufficient where plaintiffs' complaint "fail[ed] to allege

9    facts indicating that all the named defendants acted with the same purpose in mind. Instead,

10   plaintiffs only allege a series of disconnected incidents, each involving a subset of the overall group

11   of defendants, with no clear indication of a unified agenda"). Rather, Plaintiffs "argue in a

12   conclusory fashion that [Defendants] have . . . a common purpose" by intermittently weaving

13   "defendants" or one or more of Defendants' names into allegations. *Id.*; *see also Jamster*, 2009

14   WL 1456632, at *5 ("Plaintiffs cannot meet their particularized burden by artfully inserting

15   modifiers . . . in an attempt to show a common purpose.").

16          c.    **Shorn of Conclusory Allegations, the Complaint Only Alleges**
                  **Ordinary Business Activity, which Cannot Sustain the RICO**
17                **Claim.**

18       "Allegations that are consistent with ordinary business activities or purposes are insufficient

19   when pleading an association-in-fact RICO enterprise." *Woodell v. Expedia Inc.*, No. C19-

20   0051JLR, 2019 WL 3287896, at *8 (W.D. Wash. July 22, 2019). "Where the alleged association-

21   in-fact is formed through routine contracts for services, the 'common purpose' element [of the

22   enterprise requirement] is unmet because the entities are pursuing their own individual economic

23   interests, rather than a shared purpose." *Id.*

24       In *Shaw v. Nissan North America., Inc.*, the court rejected the plaintiffs' contention that

25   their "allegation that [defendants] shared a common purpose of fraudulently selling defective

26   vehicles is all that is needed to satisfy the requirement of plausibly stating the existence of an

27   enterprise." 220 F. Supp. 3d 1046, 1055 (C.D. Cal. 2016); *see id.* at 1053 (noting the application

28   of the Rule 9(b) particularity requirement to RICO claims with fraud predicates). The court

14

34713009

explained that, "[w]hile Plaintiffs repeatedly state that Nissan and BorgWarner shared a common fraudulent purpose, they have not adequately alleged plausible facts that satisfy the common purpose requirement.  Rather, the facts alleged . . . suggest ordinary business activity on the part of the relevant actors."  *Id.* at 1055.  The court emphasized that "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation."  *Id.* at 1056 (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render the plaintiffs' allegations plausible."  *Id.*

Here, the Complaint distills to a series of ordinary business transactions that Plaintiffs have strained to reimagine as fraudulent conduct.  Take, for example, the operative allegations regarding Martin.  *See* Compl. at ¶¶80-85.  The Complaint alleges that Martin, through her company Masternode, entered into an agreement in which Masternode paid $5,000 to receive tokens that Utherverse promised to mint at a later date.  *See id.* at ¶¶80-81.  The Complaint does *not* allege that Martin or Masternode failed to pay the $5,000, but rather digress into accusing Martin of misrepresenting that her business was in good standing when she entered into the agreement.  *See id.* at ¶82.  The Complaint alleges that Utherverse "relied on" this misrepresentation, but does not explain how Utherverse did so to its detriment.  *Id.* at ¶83.  The allegations then shift once again to stating in a conclusory fashion that this $5,000 transaction was actually a ruse to saddle Utherverse with more debt because Quinn, Denne, and Martin knew Utherverse would fail to uphold *its* promise to mint the tokens by a certain date.  *See id.* at 84.

The foregoing fails to allege facts that exclude the commonsense alternative explanation: Utherverse breached a contract by selling tokens to Masternode and failing to deliver the tokens by an agreed upon date, which but for the breach was an ordinary contract and business transaction.  *See Shaw*, 220 F. Supp. 3d at 1056.  Essentially the same explanation applies to the Blockchain Funding SAFT allegations.  *See* ¶¶76-79.  For another example, Momayez most likely executed the Niya Note for the same reason that any other creditor executes a note: to receive return of the

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  principal plus interest, not to bankrupt Utherverse and risk receiving neither. *See* Compl. at ¶¶50-
2  56.

3       Indeed, *all* of the agreements and transactions alleged in the complaint admit of a
4  commonsense alternative explanation that Plaintiffs ignore in favor of alleging a bizarre scheme by
5  Defendants to bankrupt Utherverse despite Defendants standing to profit significantly more from
6  Utherverse's success. *See* Compl. at ¶31 (alleging that Defendants "needed [Utherverse] to stay
7  solvent, but also to be close enough to insolvency that [Utherverse] would not make any public
8  announcements about ceasing investment rounds"). The unrefuted commonsense alternative:
9  Defendants each individually attempted to loan money, buy stock or tokens, or otherwise invest in
10 the success of Utherverse through conduct that is unremarkable in the context of financing a
11 business startup.

12      To reiterate, there are no non-conclusory allegations in the Complaint specifically
13 elaborating on the enterprise that existed among Defendants or some permutation of Defendants,
14 much less allegations defining a coherent a common purpose. *See generally* Compl. However, to
15 the extent that this Court is inclined to extrapolate from the allegations that appear to allude to a
16 common purpose—and forgive Plaintiffs' failure to meet the Rule 9(b) standard—Plaintiffs'
17 allegations *still* fail to establish an enterprise because they do not rule out that, shorn of conclusory
18 language about the bizarre scheme, all Plaintiffs have described is ordinary business conduct. *See*
19 *Shaw*, 220 F. Supp. 3d at 1056; *see also Jimenez v. Serv. Emps. Int'l Union Loc. 775*, 590 F. Supp.
20 3d 1349, 1362 (E.D. Wash. 2022), *aff'd*, No. 22-35238, 2023 WL 6971457 (9th Cir. Oct. 23, 2023)
21 (holding that plaintiffs failed to establish a RICO claim because "[s]etting aside Plaintiff's legal
22 conclusion regarding the existence of an enterprise, what remains are merely allegations that [the]
23 Defendants are associated in a manner that is directly related to their business activities"); *Jamster*,
24 2009 WL 1456632, at *5 (observing that "[w]ithout the adjectives, the allegations [in the complaint]
25 allege conduct consistent with ordinary business conduct and an ordinary business purpose" rather
26 than a common purpose as necessary for a RICO claim; explaining that "[t]he challenge . . . is to
27 set forth sufficient allegations to distinguish ordinary business conduct from fraudulent conduct;"
28 and noting that "[p]leading by adjective does not comply with Rule 9(b).").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

### 2.    Plaintiffs' RICO Theory Fails to Satisfy the "Pattern" Element.

Although Plaintiffs' failure to define and identify a "RICO enterprise" is the most obvious legal flaw in the Complaint, it is not the only flaw.  Their theory also fails to satisfy the "pattern of criminal activity" element, which requires a threat of continued criminal activity as well as at least two acts of racketeering. 18 U.S.C. § 1961(5); *H.J. Inc.*, 492 U.S. at 239.

#### a.    Plaintiffs' RICO Theory Does Not Allege a Threat of Continued Criminal Activity, as Required.

In order for a RICO claim to satisfy the "pattern" requirement, the alleged predicate acts must not only be related but must also "pose a threat of continued criminal activity."  *H.J. Inc.*, 492 U.S. at 239 ("It is this factor of *continuity plus relationship* which combines to produce a pattern." (emphasis in original) (quoting 116 Cong. Rec., at 18940 (1970)).  This continuity requirement ensures that RICO is used as a tool against "long-term criminal conduct" by enterprises, and not for standard conspiracies.  *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995); *see H.J. Inc.*, 492 U.S. at 242; *Sun Savings and Loan Association v. Dierdorff*, 825 F.2d 187, 192 (9th Cir. 1987) (RICO should not be applied to "perpetrators of 'isolated' or 'sporadic' criminal acts").

The Ninth Circuit has uniformly and repeatedly held that "predicate acts designed to bring about a single event . . . d[o] not pose a threat of continuity."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *Medallion Television Enters., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1988)); *see also Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (holding that RICO claim failed "[s]ince the only goal of the Greene defendants was the successful prosecution of the *Wollersheim* state tort suit, there was no threat of activity continuing beyond the conclusion of that suit"); *Medallion Television Enters., Inc.*, 833 F.2d at 1364 (dismissing RICO case because the "allegations concern a single fraudulent inducement to enter a contract.  Once the [contract was entered into], the fraud, if indeed it was a fraud, was complete"); *Jarvis v. Regan*, 833 F.2d 149, 153 (9th Cir. 1987) (pattern requirement not satisfied by allegations that legal aid organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative); *Schreiber Distrib.*

34713009

*Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (dismissing RICO count because "fraudulent diversion" was complete).

In this case, the Complaint describes a narrow scheme with one goal—to keep Plaintiffs on the verge of bankruptcy. The alleged scheme does not have any other goal nor are there any other potential victims of it. Further, even the most generous read of Plaintiffs' allegations provides no indication that the Defendants together pose any further threat of continuing their alleged conduct.

In sum, taking all of the allegations as true, Plaintiffs do not articulate any threat of continued criminal activity. Their claim is simply not the type of long-term, continuous enterprise scheme that RICO was designed to address. For this reason, the Complaint does not and cannot satisfy the "pattern" requirement of RICO.

### b.    Plaintiffs Fail to Allege that Defendants Roma, Martin, Masternode, Momayez, and Niya Holdings Each Participated in at Least Two Predicate Acts.

The "pattern" element also requires each defendant to have participated in "at least two acts of racketeering activity." 18 U.S.C. § 1961(5); *Blake v. Dierdorff*, 856 F.2d 1365, 1370-71 (1988) (dismissing Complaint as to defendant against whom only one predicate is alleged). Any defendant who is not alleged to have participated in at least two acts of racketeering activity must be dismissed from the case. *Id.*

In this case, the Complaint alleges multiple predicate acts allegedly committed by Denne and Quinn. However, the Complaint fails to specifically allege at least two predicate acts specifically committed by each of Roma, Martin, Masternode, Momayez, and Niya Holdings.

- Roma is specifically alleged to have participated in only one predicate act, i.e., helping "fabricate[]" a story "to keep UDI in a weak position financially." Compl. at ¶ 39.

- Martin is specifically alleged to have participated in only one predict act: misrepresenting that Masternode had the full legal capacity and authority to execute the Masternode SAFT. *See id.* at ¶¶82, 116, 124.

- Masternode is specifically alleged to have engaged in only one predicate act: misrepresenting that Masternode had the full legal capacity and authority to execute the Masternode SAFT. *See id.*

- Momayez is specifically alleged to have engaged in only one predicate act: misrepresenting that Niya Holdings would not demand repayment of the Niya Note and instead convert the Note into UTHER Tokens. *See id.* at ¶¶52, 54, 124.

- • Niya Holdings is specifically alleged to have engaged in only one predicate act: misrepresenting that it would not demand repayment of the Niya Note and instead convert the Note into UTHER tokens. *See id.*

To the extent Plaintiffs allege generally that "defendants" engaged in various types of behavior, these allegations fail to satisfy the particularity requirement of Fed. R. Civ. P. 9(b). *See Sun Savings*, 825 F.2d at 196. Thus, in the *Blake* case, the Ninth Circuit Court of Appeals affirmed dismissal of a RICO claim against two defendants alleged generally to have "made and participated in the making of false financial statements and other public reports," because such allegation did not meet the requirement that fraud be pled with particularity. *Blake*, 856 F.2d at 1371; *see also Corona v. Marencik*, 2019 WL 5576939, at *2 (D. Nev. Oct. 29, 2019) ("A formulaic recitation of a cause of action with conclusory allegations is not sufficient"); *Robins v. The Wolf Firm*, 2010 WL 2817202, at *2 (D. Nev. July 15, 2010) (dismissing RICO claim because plaintiffs "failed to plead with specificity . . . how each Defendant was a part of the enterprise").

Because the Complaint fails specifically to allege that Roma, Martin, Masternode, Momayez, and Niya Holdings each engaged in at least two predicate acts, the RICO Claim against them must be dismissed.

### 3. The Complaint Failed to Allege that Each Defendant Conducted the Enterprise's Affairs.

To state a claim under § 1962(c), a plaintiff must allege that each defendant "conduct[ed] or participate[d] . . . in the conduct of" an enterprise's affairs through a pattern of racketeering activity. The U.S. Supreme Court has interpreted this to mean that each RICO defendant must have "participated in the operation or management" of the enterprise and played "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993). Thus, a RICO claim fails when the defendant is conducting his own business affairs rather than those of the enterprise itself. *Id.* at 185.

In this case, as explained above, Plaintiffs failed to define an enterprise and therefore failed entirely to allege that each defendant participated in the operation or management of an enterprise. To the contrary, each defendant is alleged to have simply been engaging in his or her own business affairs.

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    For example, Jeremy Roma is accused of having engaged in negotiations and discussions

2    on behalf of a business in which he is alleged to have an ownership interest.  Compl. at ¶ 37.  He is

3    not alleged to have participated in the operation or management of any separate enterprise, nor is

4    he alleged to have designed the alleged fraudulent plan, put it into action, known its scope, or

5    participated in any way beyond a single matter involving his own alleged company.  Compl. at ¶¶

6    37-41.  He was engaged in his own business activities only.

7    Similarly, Martin and Masternode are only alleged to have entered into the Masternode

8    SAFT, and so only engaged in their own business affairs. *See id.* at ¶¶80-85.  There are no

9    allegations that either Martin or Masternode conducted or participated in any enterprise beyond

10   entering into the Masternode SAFT.  The same goes for Momayez and Niya Holdings, who are

11   only alleged to have entered into the Niya Note, but for whom Plaintiffs make no allegations of

12   coordination or participation in any affairs beyond the Niya Note. *See id.* at ¶¶50-56.

13   In sum, taking all of the allegations as true, Plaintiffs do not articulate any theory under

14   which defendants Roma, Martin, Masternode, Momayez, and Niya Holdings could be found to

15   have participated in the "operation or management" of any enterprise.  For this reason, the

16   Complaint does not and cannot satisfy the "conduct" requirement of RICO.

17   **4.    The Alleged Injury Articulated in the Complaint Is Too Remote to
18          Satisfy the "Proximate Cause" Requirement of RICO.**

19   An individual may bring a civil claim under RICO if he has been "injured in his business

20   or property by reason of a violation" of the statute.  18 U.S.C. § 1964(c).  This requires a plaintiff

21   to show "that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the

22   proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting

23   *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Proximate cause requires a connection

24   that is neither "'too remote,' 'purely contingent,' or 'indirec[t].'" *Id.* (quoting *Holmes*, 503 U.S. at

25   271).  In "the RICO context, the focus is on the directness of the relationship between the conduct

26   and the harm." *Id.* at 12.

27   Plaintiffs' RICO Claim focuses on alleged promises of big investments that never came to

28   fruition and which caused harm to Plaintiffs' startup company.  However, as stated by the Supreme

20

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Court in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the failure of Plaintiffs' startup business "could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of" Plaintiffs' failure to successfully launch the business was due to Defendants' big promises. *Id.* at 459. In other words, Plaintiffs' theory of injury is too remote and indirect.

Further, to the extent the Complaint references investors who were allegedly more directly defrauded by Defendants, this is insufficient to save Plaintiffs' claim. *See, e.g.*, Compl. at ¶87 ("To date, Quinn and/or Denne have misappropriated at least $1,410,500.00, from no less than sixteen (16) investors[.]"). "The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can generally be counted on to vindicate the laws by pursuing their own claims." *Id.* at 460 ("There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly"). Plaintiffs accordingly may not satisfy the "proximate cause" requirement with someone else's alleged injury.

### 5.    Any RICO Conspiracy Claim Fails Because There is No Allegation that Defendants Knew they Were Engaged in Racketeering.

Finally, to the extent Plaintiffs intend to claim that Defendants engaged in a RICO conspiracy to violate § 1962(c), the Complaint fails as a matter of law because it contains no allegation that Defendants knew they were engaged in racketeering.

A RICO conspiracy requires defendants to have been "aware of the essential nature and scope of the enterprise and intend[] to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984)). In this case, the Complaint does not allege that any defendant knew of the broader enterprise or pattern of racketeering activity. As explained above, there is no allegation that the various members of this group worked together or even knew about one another, so any RICO conspiracy claim must fail as a matter of law.

/ / /

/ / /

34713009

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

C. **Count Eight Should Also Be Dismissed as Against Roma.**

If the RICO Claim is dismissed as against Jeremy Roma, then the only remaining claim against him (Count Eight, Tortious Interference with Contract) is a state law claim over which this Court should decline to exercise jurisdiction in the interest of justice, thus dismissing him from the case.

Without the broad jurisdictional reach of the RICO Act, Plaintiffs would not have had jurisdictional grounds to include Roma in this lawsuit.[4]  A nonresident may be sued in Nevada only when he has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Bakewell v. Streaming Solutions LLC*, 2022 WL 17833337, at *1 (D. Nev. Dec. 21, 2022) (recognizing that this Court need only "address federal due process standards" because Nevada's "long-arm" statute applies to the full extent permitted by the due process clause).  In this case, as in *Walden*, there is simply no connection between Roma and the state of Nevada.  As set forth in the Complaint, Roma is a resident of California, does business in California, and has a residence in Dubai.  Compl. ¶ 13.  The Complaint does not and cannot articulate a basis to sue Roma in Nevada but for the RICO Claim which, as stated above, is legally insufficient as against Roma.

Under 28 U.S.C. § 1367 (Supplemental Jurisdiction), a district court may decline to exercise supplemental jurisdiction over a state law claim if the court "has dismissed all claims over which it has original jurisdiction" or for any other compelling reason.  Such a declination would be in the interest of justice here, because the Court's original jurisdiction over Roma was based on a grossly insufficient and weak RICO claim that should never have been brought.

In the alternative, Count Eight should be dismissed as against Roma because it fails as a matter of law.  Plaintiffs allege that Roma tortiously interfered with an alleged contract between plaintiffs and Disruptive Technologies, in which Roma "has an ownership interest."  Complaint ¶¶ 37, 158.  In Nevada, "a party cannot, as a matter of law, tortiously interfere with its own contract."

---

[4]  This Affirmative Defense was raised and preserved in the Amended Answer to Complaint, Affirmative Defense 34.

*Blanck v. Hager*, 360 F. Supp.2d 1137, 1154 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*, 81 Nev. 325, 402 P.2d 650, 651 (1965)).  Further, agents acting within the scope of employment cannot tortiously interfere with a contract to which the principal is party.  *Id*.

For all of these reasons, Count Eight should be dismissed as against Roma.

**D.    This Court Lacks Personal Jurisdiction Over Martin and Masternode if the RICO Claim is Dismissed.**

Just as there is no personal jurisdiction over Roma in the absence of an overarching RICO claim, nor is there personal jurisdiction over Martin or Masternode if the RICO claim is dismissed. *See Walden*, 571 U.S. at 283.  The Complaint fails to allege that either Martin or Masternode have any contacts with the forum state, Nevada.  *See Bakewell*, 2022 WL 17833337, at *1 ("[A] plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction."); *id.* at *2 (stating the standards for general and specific personal jurisdiction).  The Complaint only alleges that Martin resides in California and that Masternode's principal place of business was in Wyoming before it was administratively dissolved, but does not explain how either Martin or Masternode availed themselves of Nevada or directed their activities there.  *See* Compl. at ¶¶9-10.

The Complaint alleges that Utherverse, Inc. (referred to as "UI" in the Complaint) has "its principal place of business in Carson City, Nevada[,]" but does not allege the principal place of business of Utherverse *International Ltd.*, which is the only Utherverse entity alleged to be a party to the Masternode SAFT.  *See* Compl. at ¶¶3, 80; *see also* ECF No. 48, Amended Counterclaims, at ¶17 (alleging that Utherverse International Ltd. "is a corporation duly organized and existing under the laws of the British Virgin Islands").  Thus, no parties to the Masternode SAFT—the only link alleged between Martin, Masternode, and the disjointed schemes alleged in the Complaint—have contacts with Nevada, nor are there any allegations that the Masternode SAFT has any correlation with Nevada.  *See* Compl. at ¶¶80-85.

In the absence of allegations tying Martin, Masternode, or the Masternode SAFT to Nevada, due process is not satisfied, particularly because there is no reasonable basis to hale Martin or Masternode into a Nevada Court.  *See Bakewell*, 2022 WL 17833337, at *2 (setting forth the Due

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Process standard for specific personal jurisdiction).  Accordingly, this Court lacks personal

2  jurisdiction over Martin and Masternode and the Complaint must also be dismissed as to them if

3  this Court concludes that the RICO claim must be dismissed.

4      **E.    Dismissal Should Be With Prejudice.**

5      Dismissal of a claim with prejudice is appropriate where further amendment would be futile.

6  *Sanchez v. Los Angeles Dep't of Transp.*, 39 F.4th 548, 562 (9th Cir. 2022) (dismissal with

7  prejudice is appropriate when "no additional facts could possibly have cured the deficiency").  Such

8  is the case with Plaintiffs' RICO Claim, because it does not and cannot plausibly give rise to any

9  entitlement to relief to Plaintiffs.  Even if Plaintiffs could sufficiently define and identify an

10  "enterprise," they cannot under any set of facts satisfy the "pattern" element of RICO because their

11  case presents no threat of continued criminal activity, and they cannot under any set of facts satisfy

12  the "proximate cause" requirement because their theory of harm is too remote.

13      It is also appropriate for this Court to consider "prejudice to the opposing party" when

14  deciding whether to grant Plaintiffs leave to amend.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d

15  183, 186 (9th Cir. 1987).  In this case, allowing Plaintiffs the opportunity to amend their RICO

16  Claim would work great prejudice to defendants, particularly Jeremy Roma, Martin, and

17  Masternode against whom the RICO Claim (and thus any claim of personal jurisdiction) is truly

18  feeble.  Upon dismissal of the RICO Claim, Roma, Martin, and Masternode should be released

19  from the case entirely, and therefore dismissal with prejudice of this irremediable claim would be

20  in the interest of justice.

21      For these reasons, as well as all articulated above, Defendants seeks dismissal with

22  prejudice.  *Coronovirus Reporter v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (leave to amend

23  appropriately denied when it would be futile); *Sanchez*, 39 F.4th at 562.

24  / / /

25  / / /

26  / / /

27  / / /

28

24

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that this Court dismiss the following claims with prejudice: (a) Count One (RICO); (b) Count Eight as against Jeremy Roma (Tortious Interference with Contract); and (c) all claims as to Martin and Masternode for lack of personal jurisdiction.

DATED this 25th day of September, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

34713009

1

**CERTIFICATE OF SERVICE**

2        Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing

3    Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK,

4    LLP, and that the foregoing **DEFENDANTS' MOTION FOR JUDGMENT ON THE**

5    **PLEADINGS** was served via electronic service on the 25th day of September, 2025.

6

7

8                                    */s/ Wendy Cosby*

9                                    An employee of BROWNSTEIN HYATT FARBER
                                     SCHRECK, LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

34713009