1  JAMES PUZEY (NV SBN 05745)
   jpuzey@nvlawfirm.com
2  KEARNEY PUZEY DAMONTE
   800 South Meadows Parkway, Suite 800
3  Reno, Nevada  89521
   Telephone: (775) 851-8700
4
   SHERRIE M. FLYNN (*Pro Hac Vice*)
5  sflynn@ch-law.com
   ROBERT K. ASHLEY (*Pro Hac Vice*)
6  rashley@ch-law.com
   COLEMAN & HOROWITT, LLP
7  Attorneys at Law
   499 W. Shaw Avenue, Suite 116
8  Fresno, California 93704
   Telephone: (559) 248-4820
9  Facsimile: (559) 248-4830

10  Attorneys for Plaintiffs and Counter-Defendants (excluding Utherverse International, Ltd.)

11          **UNITED STATES DISTRICT COURT**

12        **DISTRICT OF NEVADA – RENO DIVISION**

13

| | |
|---|---|
| 14  UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual, | Case No. 3:25-cv-00020-MMD-CSD |
| 15 | |
|         Plaintiffs, | **OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF 70)** |
| 16 | |
| v. | |
| 17 | **ORAL ARGUMENT REQUESTED** |
| 18  BRIAN QUINN, an individual; JOSHUA DENNE, and individual; BLOCKCHAIN FUNDING, INC. a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual, | **Complaint Filed:** January 10, 2025 |
| 19 | |
| 20 | **Counterclaim Filed:** February 28, 2025 |
| 21 | **Amended Counterclaim Filed:** April 27, 2025 |
| 22 | |
| 23 | |
|         Defendants. | Date:       TBD |
| 24 | Time:       TBD |
| 25  AND RELATED COUNTERCLAIM. | Courtroom:  TBD |

26

27

28

MEMO. OF POINTS AND AUTHORITIES IN OPP. TO MTN FOR JUDGMENT ON THE PLEADINGS (ECF 70)

1    Plaintiffs, Utherverse, Inc. ("UI") and Brian Shuster ("Shuster"), respectfully submit their

2    Opposition Brief to Defendants' Motion for Judgment on the Pleadings.

3                                    **INTRODUCTION**

4    Defendants' Rule 12(c) motion advances a merits-loaded narrative that ignores both the

5    governing pleading standard and the detailed allegations of a multi-year, multi-actor fraud pled as

6    a RICO enterprise. At bottom, Defendants ask the Court to treat a coordinated, fraudulent financing

7    and token-sale scheme as a string of "ordinary business transactions" and to dismiss the federal

8    RICO claim with prejudice so they can then jettison out-of-state actors on supposed

9    personal-jurisdiction grounds and dismiss the entire matter on subject matter jurisdiction grounds.

10   But the Complaint plausibly alleges (and provides particularized examples of) an

11   association-in-fact enterprise run primarily by Quinn and Denne, aided by other participants—

12   including Roma, Martin/Masternode, Momayez/Niya—who executed complementary parts of the

13   plan, with scores of interstate and international communications, forged documents, doctored

14   SAFTs, and diverted investor funds over more than two years. See, e.g., Compl. ¶¶ 15–33, 37–45,

15   50–58, 76–87, 96–113, 124–129.

16   Defendants' motion repackages factual disputes that should be determined at trial or, at

17   minimum, on a summary judgment motion, as "plausibility" defects: it insists the pled enterprise is

18   missing, that continuity cannot be inferred, that each defendant lacks two predicates, that proximate

19   causation is too "remote," and that any RICO conspiracy is not pled. See, e.g., Mot. pp. 8–13

20   [enterprise], 13–16 [pattern/continuity and "ordinary business" alternative], 18–20 [*Reves* and

21   two-predicate-act arguments], 16–18 [proximate cause], 21–22 [conspiracy].

22   The motion further seeks to dismiss Count Eight against Roma and—if RICO is

23   dismissed—asks the Court to find no personal jurisdiction over Martin and Masternode. Mot. pp.

24   22–24.

25   All of these contentions fail under Rule 12(c)'s Rule 12(b)(6) analog: taking Plaintiffs'

26   well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the

27   Complaint states a claim under 18 U.S.C. § 1962(c) and (d). See, e.g., *Dworkin v. Hustler Mag.,*

28   *Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) [A Rule 12(b) motion is a "Rule 12(c) analog."]; *Chavez*

1   *v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ["Judgment on the pleadings is properly

2   granted when, accepting all factual allegations in the complaint as true, there is no issue of material

3   fact in dispute, and the moving party is entitled to judgment as a matter of law. Analysis under Rule

4   12(c) is substantially identical to analysis under Rule 12(b)(6)"] (internal citations and punctuation

5   omitted); *Wall v. NSB E. Bonanza LLC*, 2022 WL 526133, at *2 (D. Nev. Feb. 22, 2022).

6       Defendants' "ordinary business" gloss cannot override detailed factual matter that is both

7   particularized and consistent with a *Boyle*/*Odom* enterprise, an open-ended pattern,

8   operation/management participation by each RICO defendant, and direct business-or-property

9   injuries to Plaintiffs. See *Boyle v. United States*, 556 U.S. 938, 944–48 (2009); *Odom v. Microsoft

10  Corp.*, 486 F.3d 541, 548–53 (9th Cir. 2007) (en banc) ["As is evident from the text, this definition

11  is not very demanding"]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–43 (1989); *Reves v. Ernst

12  & Young*, 507 U.S. 170, 179–85 (1993); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–

13  659 (2008).

14      Moreover, Defendants seem willfully blind to the actual allegations. *Inter alia*, Defendants

15  used Shuster to "assist Defendants … in getting investors to pay money that Defendants would

16  divert for their own use." Compl. ¶ 32. They sold Utherverse, Inc. ("UI") shares and tokens that

17  "they did not own or have the right to sell", "diverted the funds from UI to their personal bank

18  accounts" and then told UI and Shuster that the investors "chose not to invest". (Compl. ¶ 33). They

19  expressly "instructed the developer of the [token] presale software to change the digital wallet that

20  was to receive funds such that the funds would be wrongfully diverted to Quinn and/or Denne."

21  Compl. ¶ 64. Funds from the SAFTs were fraudulently "diverted to Denne, Blockchain Funding,

22  Blockchain Alliance…" Compl. ¶ 86. They went so far as to "ensure that Shuster was bankrupted

23  and imprisoned" if he took steps to mint the token (Compl. ¶ 101), knowing that the defrauded

24  "investors" would come looking for the non-existent tokens that the defendants had "sold" them

25  despite having no right or tokens to sell. Compl. ¶ 102.

26      Separately—and regardless, the jurisdictional gambit aimed at Martin and Masternode is

27  foreclosed: Defendants did not preserve any personal-jurisdiction defense in the Answer, so it is

28  waived under Rules 12(h)(1) and 12(b). See Defendants' Answer at "AFFIRMATIVE

1    DEFENSES" [listing twelve defenses; no personal-jurisdiction defense] (ECF No. 30 at 17–18/41).

2        Moreover, none of these determinations need to be made to dispose of this motion. Rule

3    12(c) clearly states that it may be asserted only "[a]fter the pleadings are closed". In the Ninth

4    Circuit (and others, without any apparent circuit split), the pleadings are not closed while a

5    counterclaim has not yet been answered. See *Norcal Gold, Inc. v. Laubly* 543 F.Supp.2d 1132, (E.D.

6    Cal. 2008) [for purposes of Rule 12(c), the pleadings are "closed" only when the parties have filed

7    all of the pleadings Rule 7(a) contemplates]; see also *In re Villegas*, 132 B.R. 742, 745 (9th Cir.

8    BAP 1991) ["Pleadings are not closed until at least an answer has been filed .... Judgment on the

9    pleadings may not be entered where no answer has been filed"].

10        In this matter, there is currently a motion to dismiss Defendants' amended counterclaim

11   (EFC No. 56) and a motion to strike affirmative defenses and portions of the Amended counterclaim

12   pursuant to FRCP 12(f) (ECF No. 57) still pending before the Court. Therefore, the pleadings are

13   <u>not</u> closed, and Defendants are barred from asserting their Rule 12(c) claim.

14        The motion should be denied in full. At minimum, leave to amend must be granted. (See

15   *Lopez v. Smith*, 203 F.3d 1122, 1127–31 (9th Cir. 2000) (en banc) [In the context of 12(b)(6), the

16   pre-close of pleadings analog to Rule 12(c), "in a line of cases stretching back nearly 50 years, we

17   have held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should

18   grant leave to amend even if no request to amend the pleading was made, unless it determines that

19   the pleading could not possibly be cured by the allegation of other facts.'"]

20                                    **BACKGROUND**

21        Contrary to contentions in Defendants' motion, the Complaint is well-pled and alleges a

22   coordinated scheme, led and organized by Quinn and Denne, to extract cash and control from

23   Utherverse by (i) promising major financing and market access; (ii) pre-selling tokens through

24   doctored SAFTs; (iii) diverting investor funds; (iv) using a convertible "Niya Note" as leverage to

25   keep Plaintiffs precariously solvent; and (v) sabotaging competing financing (e.g., the "Disruptive

26   Technologies" deal) to preserve control and conceal the fraud. See, e.g., Compl. ¶¶ 15–33, 37–45,

27   50–58, 76–87, 96–102, 103–113, 124–129.

28        Illustrative particulars include repeated interstate wires promising imminent funding (April–

1    August 2022), forged or altered documents (falsified SAFTs), a set of token-presale transactions

2    with no vesting or release schedule, and redirection of investor proceeds away from Utherverse to

3    Defendants. See, e.g., Compl. ¶¶ 44 [non-exhaustive list of wires], 76–87 [Blockchain/Masternode

4    SAFTs and diversions], 105–108 [hundreds of interstate and foreign wire communications; forged

5    documents], 109–113 [pattern and injury].

6        Roma's role includes facilitating communications surrounding a $30 million "Binding

7    Letter" with Disruptive Technologies and (as pled) fabricating a negative "former associate" story

8    used to scuttle that financing, thereby keeping Plaintiffs' cash-starved posture that made the broader

9    scheme sustainable. Compl. ¶¶ 37–41.

10       Martin/Masternode's role includes executing a SAFT while misrepresenting legal capacity

11   and then (as pled) selling unauthorized tokens and pocketing proceeds, again integrating with the

12   scheme's debt-and-diversion objectives. Compl. ¶¶ 80–85.

13       Niya/Momayez's role includes the convertible "Niya Note" (assured to be converted to

14   tokens), later weaponized through an abrupt demand for repayment—contrary to assurances—to

15   threaten bankruptcy at a critical point. Compl. ¶¶ 52–56.

16                              **LEGAL STANDARD**

17       Rule 12(c) mirrors Rule 12(b)(6). Dismissal is improper if the complaint "contain[s]

18   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19   *Chavez*, supra, 683 F.3d at 1108 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Dworkin*,

20   supra, 867 F.2d at 1192; *Wall*, supra, 2022 WL 526133, at *2. Fraud-predicated RICO claims must

21   be pled with Rule 9(b) particularity, but the enterprise and pattern requirements are evaluated

22   holistically, and plausibility does not permit courts to reject a well-pled explanation merely because

23   a defendant posits a different "commonsense alternative." See *Boyle*, supra, 556 U.S. at 944–948;

24   *Odom*, supra, 486 F.3d at 553; *H.J. Inc.*, supra, 492 U.S. at 241–243.

25                                **ARGUMENT**

26   A.    <u>The Motion is Impermissible, as the Pleadings Have Not Closed</u>

27       In the Ninth Circuit, "the pleadings are closed for the purposes of Rule 12(c) once a

28   complaint and answer have been filed, assuming … that no counterclaim or cross-claim is made."

*Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005); see *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) ["Fed.R.Civ.P. 7(a) prescribes when the pleadings are closed. In a case such as this when, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply"]. Plaintiffs have not answered the counterclaim, nor have the third parties added as counter-defendants in the counterclaim. The pleadings are not closed, and this motion should be denied as violative of the legal standard that moving parties quote yet ignore in their brief. Mot. 6:3–4.

Though outside the Ninth Circuit, the Eleventh Circuit confronted a nearly identical situation, and its reasoning is directly on point. In *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1339 (11th Cir. 2014), a plaintiff failed to timely answer a counterclaim, yet the defendant moved for judgment on the pleadings on the complaint. The Eleventh Circuit unequivocally held that "because [the] failure to respond to [the] counterclaim meant that the pleadings had not yet closed, the district court's evaluation of [the] motion for judgment on the pleadings was premature." The appellate court reversed the Rule 12(c) judgment, emphasizing that the pleadings were not closed as long as the counterclaim had no answer.

In the instant matter, Counterclaimants added new parties to the action in the counterclaim, and the new parties' own claims against Defendants and Counterclaimants have yet to be filed – meaning that not only are the responsive pleadings not closed, but the time for filing affirmative claims for relief by these new parties has yet to pass. As such, the motion should be denied as impermissible under the plain language of FRCP 12(c).

If the Court elects to reach the merits notwithstanding the not-closed pleadings, Plaintiffs still prevail under the Rule 12(b)(6) standard as discussed below.

**B.    The Complaint Pleads a § 1962(c) RICO Enterprise**

**1.    Association-In-Fact Enterprise**

Defendants contend Plaintiffs "failed to identify any enterprise whatsoever," insisting the Complaint describes only "ordinary business activity" and no structure beyond the racketeering acts. Mot. pp. 8–16.

However, *Boyle* makes clear that an association-in-fact enterprise requires only (1) a

common purpose, (2) relationships among those associated, and (3) sufficient longevity to pursue the purpose. *Boyle,* supra, 556 U.S. at 946. The enterprise "need not have a hierarchical structure or a 'chain of command'"; it may be "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 944, 948. *Odom* likewise recognizes a flexible standard satisfied by factual allegations showing concerted action and role differentiation in pursuit of a common aim. *Odom*, supra, 486 F.3d at 552–553. *Boyle* makes it simple: the statutory "enumeration of included enterprises is obviously broad, encompassing 'any ... group of individuals associated in fact.'" *Boyle,* 556 U.S. at 944.

That is exactly what is pled. The Complaint alleges a common purpose—diverting investor money and leverage from Plaintiffs, sustaining control by keeping UI/Utherverse Digital, Inc. ("UDI") "close enough to insolvency," and ultimately profiting from misappropriated proceeds and control—carried out by defined roles: Quinn/Denne as organizers and public-facing fundraisers; Roma as the liaison who helped tank the Disruptive financing; Martin/Masternode as SAFT counterparties used to generate debt pressure and unauthorized token sales; Momayez/Niya as convertible-note leverage. See Compl. ¶¶ 15–33, 37–41, 50–58, 76–87, 96–102, 103–113, 124–129.

The allegations describe inter-defendant communications, coordinated timing (e.g., "titrat[ing] the flow of funds"), and forged/altered documents to advance the scheme—more than enough to infer the "ongoing organization" and "continuing unit" *Boyle* requires. See Compl. ¶¶ 31–45, 86–88, 96–102, 105–108.

Defendants' reliance on cases faulting bare labels is misplaced. The Complaint does not merely intone "enterprise"; it lays out the who/what/when/where/how of a multi-participant scheme spanning 2022–2024, with dates, amounts, counterparties, and communications. See, e.g., Compl. ¶ 44 [nine specific wires]; ¶¶ 76–87 [SAFT terms and dates]; ¶¶ 105–108 [hundreds of interstate/foreign communications, forged documents]. As such, Rule 9(b) is satisfied.

## 2.    Distinctness

Defendants also hint at a "person/enterprise" distinctness problem. Mot. pp. 8–13. There is none. The enterprise pled is an association-in-fact among multiple persons; each RICO defendant is

a § 1962(c) "person," distinct from the enterprise as such. The Supreme Court in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–163 (2001) clarified that a RICO "person" must be distinct from the "enterprise." In that case, the Court held that a corporate owner or employee, as a natural person, is legally distinct from the corporation, which is a separate legal entity with its own rights and responsibilities. See also *Odom*, 486 F.3d at 546-547, where the Ninth circuit emphasized that an enterprise under RICO can include any group of individuals associated in fact, even if not a legal entity. The Court noted that Congress did not impose a requirement for an economic motive in defining an enterprise under §1962(c). *Id.* This broad interpretation supports the argument that the enterprise alleged in the complaint is valid and distinct from individual defendants, who are "persons" under RICO.

In this case the defendants, Brian Quinn, Joshua Denne, Lynne Martin, Nima Momayez and Jeremy ROMA, are associated in fact and each of them as individuals are distinct from the entities, Blockchain Funding, Inc., Blockchain Alliance LLC, MASTERNODE PARTNERS, LLC, and NIYA HOLDINGS, LLC.

## C.  The Complaint Alleges a RICO "Pattern" Through Both Closed and Open-Ended Continuity

Defendants contend the allegations "distill to a single, narrow scheme with a single goal," so there is no continuity. Mot. pp. 16–18. Such an interpretation misconstrues the pleading and RICO continuity. The Complaint alleges a two plus year course (January 2022 to at least late 2024) involving "hundreds, if not thousands" of interstate wires and multiple sets of victims (UI, UDI, UI investors, etc.), with repeated use of doctored SAFTs and token sales promises plus ongoing leverage via the Niya Note. Compl. ¶¶ 30–33, 44, 50–58, 76–87, 96–108, 109–113.

The allegations readily support (1) closed ended continuity (duration and number of predicates) and (2) open ended continuity (the scheme's nature—ongoing fundraising/SAFT sales and investor solicitations) — "by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 242–243. The Complaint further alleges at least sixteen investors already defrauded with more expected to be uncovered, reinforcing continuity. Compl. ¶ 87.

Similarly, Defendants' invitation to credit their "ordinary business" alternative (Mot. pp.

15–16) cannot defeat plausibility where the pled facts "allow[] the court to draw the reasonable inference" of racketeering. Under the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, a complaint must contain sufficient factual matter to state a claim that is plausible on its face, meaning the allegations must allow the court to reasonably infer liability for the misconduct alleged. The court must assess whether the facts pleaded tend to exclude the benign alternative explanation offered by the defendants. *Iqbal*, 556 U.S. at 678.

Moreover, the plausibility standard articulated in *Iqbal* and *Twombly* requires more than mere consistency with an alternative explanation. When faced with competing explanations, the plaintiff must provide facts that tend to exclude the possibility of the alternative explanation being true. This principle is reinforced in cases such as *Petzschke v. Century Aluminum Co.*, where the court held that allegations must go beyond mere consistency with liability and must include facts that render the plaintiff's theory more plausible than the alternative explanation. 729 F.3d 1104, 1108 (9th Cir.2013). The systemic nature of the alleged misconduct, including the use of forged documents and diversion of funds, supports the inference that the defendants engaged in a fraudulent scheme rather than engaging in acts in the "ordinary course of business" as Defendants contend.

Additionally, the Nevada Supreme Court has emphasized that civil RICO claims must go beyond technical deficiencies and demonstrate the necessary elements of the predicate crimes, such as intent and continuity of criminal activity. This ensures that the claims are not dismissed as frivolous or as mere contract disputes but are recognized as allegations of serious criminal conduct with broader implications. *Hale v. Burkhardt*, 104 Nev. 632 (1988), *Cummings v. Charter Hosp.*, 111 Nev. 639 (1995).

By pleading facts that show continuous criminal activity, (i.e., scheme involving forgery and financial fraud), the plaintiff can establish the plausibility of racketeering activity, thereby overcoming the "ordinary business" defense and surviving a motion to dismiss. *Siragusa v. Brown* 114 Nev. 1384 (1998).

Plaintiff's RICO claims are sufficiently pled as to survive the motion on judgment on the pleadings.

**D.**     **The Complaint Pleads § 1962(c)'s "Conduct" Element and Predicates as to Each RICO Defendant**

    **1.**     **Operation or Management**

Defendants assert each of Roma, Martin, Masternode, Niya, and Momayez merely pursued "their own business affairs" and did not direct enterprise affairs. Mot. pp. 19–20.

*Reves* requires participation "in the operation or management" or "some part in directing" enterprise affairs, 507 U.S. at 179, 185—not that each defendant be the primary architect of the criminal scheme. The federal interpretation as recognized in Nevada, focuses on whether defendants participated in directing the broader scheme. *Ahearn v. State*, 132 Nev. 938 (2016). That is, the standard is satisfied when defendants play integral roles in the enterprise's operations, even if they are not the masterminds of the entire scheme.

Applying this legal interpretation, the Complaint plausibly establishes that each defendant played a distinct but integral role in directing the enterprise's affair. Quinn and Denne organized and directed the overall scheme, clearly satisfying the management and direction requirement. Roma's alleged role as liaison and obstructor of the $30M Disruptive deal demonstrates active participation in directing a crucial aspect of the enterprise's operations; Martin/Masternode's alleged use of SAFT instruments to add debt and misdirect token sales shows direct participation in the financial manipulation central to the enterprise's fraudulent objectives. Simiarly, Momayez/Niya's alleged note leverage activities constitute participation in the enterprise's financial operations. Compl. ¶¶ 37–41, 50–56, 80–87.

The allegations demonstrate that each defendant performed tasks that were integral to the enterprise's fraudulent objectives, which satisfies the *Reves* standard for participation in the enterprise's affair. Even under Nevada's civil RICO law, defendants need only be "employed by or associated with any enterprise to conduct or participate directly or indirectly in the affairs of the enterprise through a racketeering activity. *Ahearn v. State*, 132 Nev. 938 (2016).

Therefore, the Complaint adequately alleges that each defendant satisfied the *Reves* participation standard by playing integral, directed role in the enterprise's affairs, regardless of whether they were the primary architects of the scheme.

### 2.    Predicate Act and Rule 9(b)

Moreover, the motion claims several defendants have "only one predicate." Mot. pp. 18–20. This argument cherry picks from an integrated pleading that attributes repeated wire fraud predicates to "Defendants, and each of them," tied to specific episodes (doctored SAFTs; forged documents; interstate wires; token sale misrepresentations; Niya Note assurances and reversal), together spanning hundreds of communications. Compl. ¶¶ 44, 105–108, 124–129. The Complaint also pleads specific misrepresentations by Martin/Masternode (legal capacity and token matters) and by Momayez/Niya (convert not call assurances), plus Roma's fabrication regarding the Disruptive deal—each in furtherance of the broader scheme and in repeated communications. Compl. ¶¶ 37–41, 52–56, 80–85, 124.

These allegations satisfy Rule 9(b)'s heightened standard. Any counting dispute over which messages qualify as distinct predicates is a fact question ill-suited to Rule 12(c) motion.

### 3.    Proximate Cause

Defendants analogize to *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) to argue remoteness. Mot. pp. 16–18. The Supreme Court in *Anza* emphasized that to establish RICO standing, a plaintiff must demonstrate that the alleged RICO violation was the proximate cause of their injury. Moreover, the Court held that the plaintiff's harm must have a "direct relation" to the defendant's injurious conduct, rejecting claims where the harm is too remote or speculative. In *Anza*, the plaintiff alleged that a competitor's tax fraud allowed it to offer lower prices, causing the plaintiff to lose customers. However, the Court found that the plaintiff's injuries were "entirely distinct" from the alleged RICO violation (defrauding the state tax authority), as the harm was caused by the competitor's pricing decisions, not directly by the fraud itself.

Instead of the deficient allegations detailed in *Anza*, the Complaint sets forth direct business injuries that are not derivative or contingent on harm to third parties, thus satisfying the required pleading threshold. For example, in *Bridge v. Phoenix Bond & Indem. Co.*, the Supreme Court upheld RICO standing for plaintiffs who suffered direct harm from a fraudulent scheme, even though the misrepresentations were made to a third party. The Court clarified that first-party reliance is not required for RICO standing, as long as the plaintiff's injury was directly caused by

1   the defendant's fraudulent conduct. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

2       Here, Plaintiffs distinguish their case by alleging direct business or property injuries to

3   UI/UDI's business that are not derivative or contingent on harm to third parties (i.e., diverted

4   investor funds, increased costs incurred in reliance on the enterprise's wires and documents, debt

5   leverage via the Niya Note, and lost financing (e.g., the $30M Disruptive deal) caused by

6   Defendants' wire fraud/forgery scheme). Compl. ¶¶ 31–33, 41–45, 50–58, 87, 105–113, 124–129.

7   This is hardly the "attenuated connection" *Anza* addressed. By contrast, the allegations in the

8   Complaint specifically and repeatedly detail acts aimed at Plaintiffs and intended to damage

9   Plaintiffs.

10      Plaintiffs satisfied the proximate causation requirement by demonstrating a direct link

11  between Defendants' alleged RICO violation and their injuries, thus avoiding claims that rely on

12  speculative or complex casual chains.

13              **4.   RICO Conspiracy (§ 1962(d))**

14      The Complaint alleges the participants "acted and conspired in concert" to carry out the

15  scheme through repeated wire fraud acts. Compl. ¶¶ 103–108, 111, 124–129.

16      Under federal law, as interpreted by the Ninth Circuit, a conspiracy claim requires proof of

17  an agreement to commit an unlawful act and the intent to achieve the objective of the conspiracy.

18  Specifically, in context of a RICO Conspiracy, the Ninth Circuit has held that a defendant must be

19  "aware of the essential nature and scope of the enterprise and intended to participate in it." See

20  *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).

21      The allegations in the complaint, which infer that each conspirator was aware of the

22  enterprise's scope and intended to participate, align with this standard.

23  **E.   Count Eight against Roma is Well-Pled and Supplemental Jurisdiction Remains**

24      Defendants argue Count Eight (tortious interference) must fall with RICO and, on the

25  merits, claim Roma cannot interfere with "his own" contract or, alternatively, is shielded as an

26  "agent." Mot. pp. 21–23.

27      First, because the RICO claim survives, supplemental jurisdiction remains.

28      Second, the Complaint plausibly alleges Nevada's elements of tortious interference: a valid

contract (the Binding Letter), Roma's knowledge, intentional and unjustified acts to induce breach (fabricating a "former associate" story to spook Disruptive), actual disruption (the $30M financing never materialized beyond a test wire), and damages. Compl. ¶¶ 37–45. At the pleadings stage, that suffices. Nevada is a notice pleading state, meaning the court must liberally construe pleadings to place into issue matters that are fairly noticed to the adverse party. *de Becker v. UHS of Delaware, Inc.* 140 Nev.Adv.Op. 58 (Nev. 2024).

Third, Defendants' agency/privilege defense is fact bound and premature. The Complaint does not concede that Roma acted within any agency relationship or in Disruptive's interest; to the contrary, it alleges he acted in concert with Quinn/Denne to preserve the enterprise's leverage by depriving Plaintiffs of the Disruptive funds. Compl. ¶¶ 37–41.

Even if Roma had some connection to Disruptive, Nevada recognizes that an agent's privilege is conditional and does not apply where the agent acts with improper motive, outside the scope, or uses improper means—factual issues inappropriate for Rule 12(c). See *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (cited in Mot. pp. 22–23) [conditioning rule on "agents acting within the scope" and not using improper means].

## F. Defendants' Personal-Jurisdiction Challenge to Martin and Masternode is Waived, and In Any Event Fails at This Stage

### 1. Waiver

Defendants now argue that, if the RICO claim was dismissed, the Court would lack personal jurisdiction over Martin and/or Masternode. Mot. pp. 23–24.

However, such contention is folly, as Rule 12(h)(1) is clear: a party waives any Rule 12(b)(2) defense by omitting it from a Rule 12 motion or from the party's responsive pleading. Defendants filed an Answer listing a dozen defenses without raising personal jurisdiction, and they did not file any Rule 12(b) motion beforehand. See Answer at "AFFIRMATIVE DEFENSES" (nos. 1–12).

Having "proceeded to the merits," Defendants cannot resurrect a disfavored threshold defense through a conditional argument in a post pleading Rule 12(c) motion, nor do they cite any authority in support of their proposition. See, e.g., *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61–

1   62 (2d Cir. 1999) [waiver by failure to assert]; *Peterson v. Highland Music, Inc.*, 140 F.3d 1313,

2   1318–1319 (9th Cir. 1998) [similar]. That alone defeats the Motion's jurisdictional arguments.

3       **2.    Merits**

4       Even on the merits, the Complaint alleges Nevada ties sufficient to require jurisdictional

5   discovery (at least), including Nevada based UI, as a direct target of the enterprise, Nevada centric

6   impacts (diversion of investor funds from Nevada based operations and debt leverage aimed at UI),

7   and coordinated contacts directed at Nevada entities and their business. *See* Compl. ¶¶ 1–4, 30–33,

8   50–58, 76–87, 96–102, 103–113, 124–129.

9       The motion's contrary assertion simply recharacterizes those facts and asks the Court to

10  draw inferences against Plaintiffs. See Mot. pp. 23–24.

11      Such merits-based argument is wholly improper in a Rule 12(c) motion. At a minimum, if

12  the Court finds any pleading uncertain, jurisdictional discovery is warranted before dismissal.

13  **G.    At Minimum, Leave to Amend Should be Granted**

14      Should the Court identify any technical pleading defect, leave to amend is the rule, not the

15  exception. *Lopez*, supra, 203 F.3d at 1127–1131. Defendants' request for dismissal with prejudice

16  (Mot. p. 24) rests on factual disputes and an unduly narrow view of RICO. Such a request for

17  dismissal with prejudice is improper, and contrary to the black-letter law.

18                                  **CONCLUSION**

19      For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings should be

20  denied in full. If, however, the Court is inclined to grant Defendants' Motion as to any count,

21  Plaintiff respectfully requests leave to amend.

22  Dated: October 9, 2025                COLEMAN & HOROWITT, LLP

23

24                                  By: /s/ Sherrie M. Flynn
25                                      Sherrie M. Flynn. Esq.
                                        Robert K. Ashley, Esq.
26                                      Attorneys for Plaintiffs Utherverse, Inc. and Brian
                                        Shuster and Counter-Defendants Utherverse, Inc.,
27                                      Brian Shuster, Utherverse Digital Inc., Peter
                                        Gantner, Nexus Venture LLC, Ari Good and Gary
28                                      Shuster