MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual. <br><br> Defendants. | Case No.: 3:25-cv-00020-MMD-CSD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual, <br><br> Counterclaimants, <br><br> v. | |

1

35529472

| | |
|---|---|
| 1 | UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive, |
| | Counterdefendants. |

Defendants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Lynne Martin ("Martin"), Niya Holdings, LLC ("Niya Holdings"), Nima Momayez ("Momayez"), and Jeremy Roma ("Roma") (collectively, "Defendants"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, file this Memorandum of Points and Authorities in support of Defendants' Reply ("Reply") in Support of Defendants' Motion for Judgment on the Pleadings ("Motion").

This Reply is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument this Court may request.

DATED this 16th day of October, 2025.

                BROWNSTEIN HYATT FARBER SCHRECK, LLP

                BY: */s/ Maximilien D. Fetaz*
                      Maximilien D. Fetaz, Esq.
                      Zachary R. Meyer, Esq.
                      100 North City Parkway, Suite 1600
                      Las Vegas, NV 89106-4614

                *Attorneys for Defendants/Counterclaimants*

35529472

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' opposition ("Opposition") reveals that their RICO Claim is the weak glue that holds their action together in federal court.[1] The Motion nowhere states that Defendants intend to remand to state court if successful, but Plaintiffs—paranoid that their federal-question-jurisdiction trojan horse is no longer convincing—accuse Defendants of so intending in the second sentence of their introduction. By the third sentence, Plaintiffs already use language absent from the Complaint like "association-in-fact enterprise" and cite swaths of insufficient allegations without any individual analysis—a strategy that recurs throughout the Opposition—in an effort to patch the holes in the RICO Claim. Aside from making new allegations or reimagining old ones, particularly with regard to those Defendants whose relationship to this action is tenuous, the Opposition does not hesitate to remind this Court that the Complaint includes repeated perfunctory and conclusory "and-this-was-done-to-further-the-RICO-scheme" allegations. These tactics are unavailing.

Defendants properly bring their Motion under 12(c) because the pertinent pleadings are closed, but this Court may also consider the Motion under the 12(b)(6) standard. Under either standard, Plaintiffs have failed to establish: a RICO enterprise; a pattern of RICO predicates as to Roma, Martin, Masternode, Momayez, and Niya Holdings; that each Defendant conducted the (non-existent) enterprise; that the RICO predicates proximately caused harm to Plaintiffs; or, that Defendants were aware that they were racketeering. Plaintiffs' post-hoc attempts to characterize the Complaint as accounting for these requirements is particularly unconvincing when the Complaint failed to even cite the subsection of 18 U.S.C. § 1962 Plaintiffs proceed under, specify what enterprise Plaintiffs allege under 18 U.S.C. § 1961(4), and only mentioned "enterprise" twice without elaboration. The Opposition tellingly says nothing about these undeniable omissions.

Plaintiffs do not dispute that personal jurisdiction over Roma and Martin evaporates without the RICO Claim. Martin did not waive her personal jurisdiction defense because she asserted it in the Amended Answer and Counterclaim ("ACC") as a matter of right. And, Plaintiffs' observation

---

[1] All terms have same meaning as given to them in the Motion.

3

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

that they failed to allege Roma was an agent of Disruptive Technologies OÜ ("Disruptive") does not save their tortious interference claim; Plaintiffs allege that Roma has an ownership interest in and facilitated a contract for Disruptive, so the claim fails as a matter of Nevada law.

While Defendants recognize that many plaintiffs are given the opportunity to amend before dismissal with prejudice, this is a rare case in which Plaintiffs cannot redeem the RICO Claim given the Complaint's allegations reflecting no coherent structure, roles, coordination, or non-conclusory relationships among Defendants, so dismissal with prejudice is appropriate.

## II. ARGUMENT

### A. Defendants Properly Moved under Rule 12(c).

Plaintiffs contend that Defendants' Motion is premature because Plaintiffs have not answered the ACC. *See* Opp'n pp.4:27-5:22. Plaintiffs' analysis is shallow; Defendants may proceed under Rule 12(c) because the Motion only challenges a single claim from the Complaint and does not seek a judgment regarding the ACC.

Courts in this Circuit have held that, where a Rule 12(c) motion *only* applies to a complaint, the existence of an unanswered counterclaim does not render the motion premature. *See, e.g.*, *Tibarom NV, Inc. v. Shell Oil Prods. U.S.*, No. 308-CV-00060-BES-VPC, 2008 WL 11404229, at *2 (D. Nev. Sept. 24, 2008) ("[A]lthough a counterclaim was filed, the Court finds that the pleadings were closed . . . because the motion relates solely to the claims made in the Amended Complaint."); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) ("Though Plaintiff correctly observes that a single Defendant has filed Counterclaims, . . . and Plaintiff had not answered the Counterclaims when the [Rule 12(c)] motion was filed, that fact is immaterial here as the [] motion . . . applies *only* to [Plaintiff's] complaint." (emphasis in original)).

The Ninth Circuit's holding that "the pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed, assuming, . . . that no counterclaim or cross-claim is made" does not imply that an unanswered counterclaim categorically renders the pleadings open; and, indeed, *Doe v. United States* only concerned an unanswered complaint. 419 F.3d 1058, 1061 (9th Cir. 2005); Opp'n pp.4:27-5:1. Not even the treatise *Doe* relied on for its holding states such a categorical rule. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

§ 1367 (3d ed. 2004) (explaining that, if a counterclaim is filed, "the filing of an answer to [the] counterclaim . . . *normally* will mark the close of the pleadings" (emphasis added)); *Doe*, 419 F.3d at 1061. Rather, "[t]he better interpretation of [Rule 12(c)] is that the 'pleadings are closed' in the relevant sense when the *pertinent* pleadings are closed[.]" *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 394 n.3 (S.D.N.Y. 2012) (emphasis in original), *aff'd*, 538 F. App'x 45 (2d Cir. 2013).

The case that Plaintiffs rely on, *Perez v. Wells Fargo N.A.*, is not binding but illustrates why a categorical rule should not be imposed:

> Because the counterclaim related to the same subject matter as Perez's complaint, and a ruling on the complaint would necessarily create law of the case for purposes of the issues raised in the counterclaim, it would make little sense to decide the claims at issue in the complaint without simultaneously considering the claims at issue in the counterclaim.

774 F.3d 1329, 1339 n.10 (11th Cir. 2014). Here, the Motion only posits that the RICO Claim fails as a matter of law, does not seek adjudication of any ACC claim, and ruling on the Motion would not create law of the case impacting the ACC. The "pertinent" pleadings (answer and complaint) are thus closed for purposes of the RICO Claim. *See Gilman*, 902 F. Supp. 2d at 394 n.3. Similarly, Plaintiffs' concern for the "new parties" is misplaced because granting the Motion as to the RICO Claim would have no impact on the ACC as to those parties. *See generally* ACC; Opp'n p.5:16.

*Perez* cited the same treatise as *Doe* stating that an answer to a counterclaim will "normally" mark the close of the pleadings and inferred "[a]pparently, for this reason, where a counterclaim is filed, the pleadings are not closed until a response to the counterclaim is filed." 774 F.3d at 1339 n.10; *see* 5C Wright & Miller, § 1367; *Doe*, 419 F.3d at 1061. *Perez's* categorical rule thus depends on a lukewarm inference from a treatise that does not contain categorical language. Thus, *Perez* is unpersuasive.

Alternatively, this Court may apply the identical standard under Rule 12(b)(6). *See Himelsein v. LS1 LLC*, No. CV-18-3940-GW(JCX), 2018 WL 11354027, at *4 (C.D. Cal. Dec. 10, 2018) ("Because LS1 filed counterclaims, with Himelsein and LCA not yet filing an answer to those counterclaims, the pleadings are not yet closed and thus Rule 12(c) is inoperable. As the same

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

legal standards apply to motions brought under Rule 12(c) and Rule 12(b)(6), there is no risk to either party in converting LS1's MTD to a Rule 12(b)(6) motion.").

### B. Plaintiffs Failed to Plead a RICO Enterprise.

#### 1. Plaintiffs Failed to Plead an Association-In-Fact Enterprise.

The Opposition fails to resolve fundamental questions about the RICO Claim. Plaintiffs do not explain how Defendants can discern the subsection of 18 U.S.C. § 1962 under which Plaintiffs are proceeding when the Complaint potentially sounds in all subsections and specifies no subsection. *See* Motion pp.4:9-5:2, 7 n.2; *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 511 n.4 (S.D.N.Y. 1990) ("Failure to plead a specific subsection of § 1962 may alone constitute grounds to dismiss a RICO complaint, because it fails to inform defendants of the unlawful conduct in which they allegedly engaged."). The Complaint "intone[s]" the word "enterprise" only twice without elaboration, but Plaintiffs do not explain how Defendants can divine from these intonations what allegations support the enterprise element. Opp'n p.6:22; *see id.* p.6:15-16 (listing dozens of allegations without individual analysis); Compl. ¶¶ 99, 104. Nor does the Opposition attempt to reconcile the Complaint's failure to specify any type of enterprise under 18 U.S.C. § 1961(4), instead sneaking "association-in-fact enterprise" into the Opposition despite the Complaint omitting that phrase. *See, e.g.*, Opp'n p.5:28; *see also generally* Compl.

Plaintiffs fail to respond to nearly all of Defendants' authority and analysis. *Compare* Motion pp.8:1-16:28 *with* Opp'n pp.5:24-7:14. Notably, the Opposition does not address how the Complaint alleges an enterprise distinct from wire fraud predicates. *See* Motion pp.9:5-11:8; Opp'n pp.5:25-7:14; *Boyle v. United States*, 556 U.S. 938, 945 (2009) ("[A]n association-in-fact enterprise must have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." (internal quotation marks omitted)).

The Opposition's bald assertion that "Rule 9(b) is satisfied" by the "dates, amounts, counterparties, and communications" in the Complaint conflates a mere fraudulent scheme with a RICO enterprise. *See* Opp'n p.6:21-25. A RICO claim requires allegations beyond a Rule 9(b) scheme—including an enterprise with structure, relationships, and roles—that the Complaint omits. *See Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d

6

1141, 1158-59 (D. Or. 2016) (applying the Rule 9(b) standard to the enterprise requirement). The Complaint omits the particular subsection of Section 1962 that the RICO Claim is proceeding under and does not reference any enterprise from Section 1961(4), so Defendants have not received the notice Rule 9(b) ensures. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Instead of grappling with the granular case analyses in the Motion, the Opposition briefly responds to the Motion's contention that the Complaint failed to adequately describe a RICO enterprise by citing general rule statements from *Boyle*, 556 U.S. 938, and *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007) (en banc). *See* Motion pp.11:10-14:15; Opp'n pp.5:28-6:20.

While *Boyle* recognized that an "association in fact enterprise"—which never appears in the Complaint—is "expansive," the Complaint fails to meet this expansive standard, which is why the Opposition attempts to recast allegations in terms of the elements from *Boyle*. 556 U.S. at 944; *see* Opp'n p.6:9-20. But the Complaint does not allege a common purpose, only distinct transactions among one or more Defendants and a repeated conclusory allegation that each transaction was fraudulent and served a greater purpose. *See Boyle*, 556 U.S. at 948. There are no "defined roles;" the interrelationships the Opposition now presents as an organizational structure are absent from the Complaint. *See* Opp'n p.6:12-20; *see also generally* Compl. (not mentioning "public-facing fundraisers," a "liaison," "SAFT counterparties," or "convertible-note leverage"). The Opposition does not explain how the Complaint alleges "sufficient longevity," likely because there is no coherent structure among Defendants that has a beginning or end. *See Boyle*, 556 U.S. at 946.

Although *Boyle* stated that an enterprise "need not have a hierarchal structure or a 'chain of command,'" *Boyle* continues that "decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." and "[m]embers of the group need not have fixed roles; different members may perform different roles at different times." 556 U.S. at 948; *see* Opp'n p.6:2-3. The Opposition does not identify allegations in the Complaint supporting any decisions or decision-making structure, coordinated interactions among Defendants, or assignment of roles. *See generally* Compl; Motion p.14:5-15.

*Odom*, like *Boyle*, requires *some* sort of structure. *See* 486 F.3d at 551. The Complaint admits of no structure among Defendants, hence the Opposition's attempt to now create one. *See*

7

Opp'n p.6:9-20. Plaintiffs notably have no response to the Motion's observation that, under Plaintiffs' interpretation of a RICO "enterprise," *any* fraudulent scheme involving more than one person qualifies as an enterprise, which cannot be the case. *See* Motion pp.9:27-10:8.

### 2. Plaintiffs' Distinctness Argument Demonstrates the Implausibility of their RICO Claim.

Plaintiffs incorrectly argue that Defendants "hint" at a "distinctness problem." Opp'n p.6:27. Plaintiffs' enterprise allegations are so unclear and lacking that Defendants felt compelled to address the possibility that the Complaint suggests that a Defendant-entity is an enterprise. *See* Motion p.10:28. That the Opposition had to clarify the Complaint is not so suggesting and could not cite any allegations demonstrating otherwise evinces that the Complaint provides inadequate notice. *See Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. at 511 n.4.

### C. Plaintiffs Failed to Plead a RICO Pattern.

In responding to Defendants' contention that Plaintiffs' RICO theory does not allege a threat of continued activity, Plaintiffs again reimagine their allegations and ignore Defendants' authority. *See* Opp'n p.7:17-27; Motion pp.17:8-18:10.

The Complaint contains no language implying that any predicate act or scheme has continued or will continue into the future, and none of the allegations Plaintiffs cite in bulk to present the façade of overwhelming support suggest otherwise. *See* Opp'n p.7:22. Rather, the Complaint indicates all predicate acts and schemes *have concluded*. *See, e.g.*, Compl. ¶ 42 (alleging that "Quinn and Denne carefully titrated the flow of funds to UI/UDI so that UI/UDI did not fail *while the fraud was ongoing*"). The quantity of wires and victims alleged in the past does not necessarily imply *future* conduct. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

The Niya Note "leverage"—a concept never mentioned in the Complaint—that Plaintiffs now stress is simply a loan that Plaintiffs have to repay; Plaintiffs do not explain how being required to repay a loan constitutes ongoing wire fraud. *See* Compl. ¶¶ 50-56; Opp'n p.7:21-22; *See* 18 U.S.C. § 1343. Plaintiffs' only allegations of fraud (which have no accompanying explanation of how they qualify as *wire* fraud) related to the NIYA Note are that, to induce UDI's entry into the Niya Note, Defendants promised Plaintiffs that Plaintiffs would not be required to repay the Note

8

despite its express provisions stating otherwise.  *See* Compl. ¶ 52.  This promise was allegedly made *three years ago* in 2022 and never reiterated.  *See id.*

*H.J.'s* analysis of the continuity requirement does not end, as Plaintiffs suggest, at its statement that the continuity necessary to establish a RICO pattern "is both a closed- and open-ended concept, referring to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  492 U.S. at 241; Opp'n p.7:23-26.  *H.J.* continues that predicate acts "threatening no future criminal conduct do not satisfy" the continuity requirement and "liability depends on whether the *threat* of continuity is demonstrated."  *Id.* at 242 (emphasis in original).  In other words, Plaintiffs cannot overcome the dearth of language in the Complaint implying that the alleged scheme or constituent predicate acts continued into the future by simply asserting "there were a lot of predicate acts."  *See id.*

Moreover, nothing about the allegations in the Complaint "project into the future the threat of repetition."  *Id.* at 241; *See* Compl. ¶ 42.  Contrary to Plaintiffs' indication that the Complaint alleged wire fraud predicates occurred as late as "late 2024," the latest date at which misrepresentations are alleged to have occurred is "throughout 2023 and into early 2024," but there are no specific misrepresentations alleged elsewhere in the Complaint from 2023 or 2024 supporting this allegation.  Compl. ¶ 45; *see Rubicon*, 226 F. Supp. 3d at 1158-59 (requiring RICO predicates of fraud to satisfy the FRCP 9(b) particularity requirement); *see also generally* Compl.  Thus, the most recent predicates that arguably satisfy the particularity standard are in 2022, and Plaintiffs' purported "threat" of continuity has been dormant for about three years.

Defendants did not "invit[e]" this Court "to credit their 'ordinary business alternative." Opp'n p.7:28.  Defendants observed that there is a glaring commonsense and benign alternative explanation for *Plaintiffs'* allegations—a series of transactions and failures common to business startups like Utherverse—that the Complaint does not "tend to exclude."  Opp'n p.8:5; *see* Motion pp.14:18-16:11; *Shaw v. Nissan North America., Inc.*, 220 F. Supp. 3d 1046, 1055 (C.D. Cal. 2016) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation." (quoting *In re Century*

9

*Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)). Plaintiffs appear to acknowledge and accept this as a plaintiff's burden, but then confusingly allege *Defendants* failed to carry the burden of excluding *Plaintiffs'* explanation in the Complaint. *See* Opp'n p.8:8-13. In any event, Plaintiffs make no effort to respond to the various examples in the Motion of commonsense alternatives the possibility of which the Complaint failed to exclude, so Defendants' allegations fail the plausibility standard. *See* Motion pp.15:11-16:11; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### D.     Plaintiffs Failed to Plead that Each Defendant Conducted the Enterprise's Affairs.

Plaintiffs argue that, because the standard for "conducting" a RICO enterprise does not require that a RICO defendant be a "primary architect" or have an "integral role[]," Plaintiff's allegations regarding each Defendant satisfy that standard. Opp'n p.9:7, 10. Plaintiffs confuse alleging a limited but sufficient role with alleging no role whatsoever, and the latter is true of the Complaint. *See* Motion pp.19:18-20:16.

Plaintiffs fail to directly quote any of their allegations in the Complaint to support their position that each Defendant conducted the affairs of the enterprise, again vaguely citing over a dozen allegations in hopes that the reader will assume overwhelming support. *See* Opp'n p.9:20. Just as none of Plaintiffs' allegations described any Defendant's role (as discussed *supra*) such that no enterprise is alleged, there are no allegations describing any individual Defendant's "conduct." *See generally* Compl. And, now, Plaintiffs attempt to reinvent their insufficient allegations in terms of the conduct standard. *See* Opp'n p.9:12-20. The Opposition relies on words like "management," "liaison," "obstructor," and "leverage activities" that are not in the complaint, and also uses words like "organize," "directed," and "participate" that scarcely appear in the Complaint and only with reference to *all* Defendants. *See id.*; *see, e.g.*, Compl. ¶ 14.

While *Reves v. Ernst & Young* only requires participation "in the operation or management" or "some part in directing" an enterprise, Plaintiffs' allegations fail to establish even that, especially with regard to Roma, Martin, Masternode, Momayez, and Niya Holdings. *See* Motion p.20:1-16. Plaintiffs further fail to explain how, according to the allegations in the Complaint, Defendants were conducting the enterprise's affairs rather than just their own, which *Reves* recognizes is

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

35529472

insufficient for "conduct." *See Reves*, 507 U.S. at 185 (explaining that "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprises's* affairs,' not just their own affairs" (emphasis in original)); Opp'n p.9:4-28; Motion pp.19:25-20:16.

Plaintiffs' citation to *Ahearn v. State* is unavailing because Plaintiffs have not alleged a Nevada RICO claim, *Ahearn* recognizes that Nevada's RICO statutes are distinct from the federal statute, and Plaintiffs' lack of allegations satisfies neither the federal nor Nevada "conduct" standards. 132 Nev. 938, 2016 WL 1109110, *3 (2016) (unpublished) ("Nevada's [RICO] statute is broader than the federal statute[.]").

### E. Plaintiffs Fail to Plead Two Predicate Acts for Roma, Martin, Masternode, Momayez, and Niya Holdings.

Plaintiffs accuse Defendants of "cherry-picking" allegations from the Complaint in arguing that Plaintiffs have not alleged more than one RICO predicate as to Roma, Martin, Masternode, Momayez, and Niya Holdings. *See* Opp'n p.10:2-10. However, Plaintiffs tellingly cite no allegations in particular, continuing with their pattern of citing as many "cherries" as possible to discourage scrutiny of their insufficient allegations. *See id.* p.10:6, 10. The only allegations that are arguably specifically alleged as to these Defendants are described in the Motion. *See* Motion pp.18:18-19:2. And, as Plaintiffs basically acknowledge through passive mention without analysis, their attempts to lump these Defendants into their conclusory and general allegations cannot satisfy the Rule 9(b) standard. *See* Opp'n p.10:11-12; Motion p.19:3-12 (explaining why general allegations are insufficient for the requirement of two predicate acts under RICO).

### F. Plaintiffs Fail to Plead Proximate Cause.

Plaintiffs do not address *Anza v. Ideal Steel Supply Corp.'s* material language that losses to a business can "result[] from factors other than [a defendants'] alleged acts of fraud" that serve as RICO predicates and thus indirect harm to a business in the form of lost sales or profits alone cannot establish proximate causation. 547 U.S. 451, 459 (2006); *see* Opp'n pp.10:14-25, 11:7-9. Here, Plaintiffs allege fraudulent misrepresentations including that Defendants misrepresented investors' willingness to invest in Utherverse, but these alleged harms did not directly cause Plaintiffs to *lose* money, and it "would require a complex assessment to establish what portion of [Utherverse's] lost

11

[business] w[as] the product of" any investor's decision not to invest. *Anza*, 547 U.S. at 459; *see, e.g.*, Compl. ¶ 36 ("Another aspect of the fraud were representations made to Shuster by Quinn and Denne that one or more potential investors were interested in buying UI or UDI stock.").

In some cases, Plaintiffs allege that they were defrauded into *receiving* money such as through the Niya Note, which is a *benefit* that could only have been rendered a harm indirectly through Plaintiffs' own mismanagement of the loan principal. *See id.* ¶ 52. The Complaint repeatedly asserts that Plaintiffs neared insolvency due to promises of investments and receipt of loans, but this too only indicates that Plaintiffs incurred debt, which does not directly equate to losses. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of his injury, but was the proximate cause as well.'" (quoting *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (2010)); *id.* (explaining proximate cause "requires 'some direct relation between the injury asserted and the injurious conduct alleged'" (quoting *Holmes*, 503 U.S. at 268)).

Plaintiffs assert that they "distinguish their case by alleging direct business or property injuries to UI/UDI's business that are not derivative or contingent on harm to third parties," and cite *Bridge v. Phoenix Bonf & Indemn. Co.* in support, but the fact that misrepresentations to third parties *can* be a proximate cause does not preclude the harms Plaintiffs allege here from being impermissibly attenuated. Opp'n p.11:1-3; *see* 553 U.S. 639 (2008).

### G. Plaintiffs Failed to Allege Defendants were Aware They were Engaged in Racketeering.

Again citing a swath of allegations with no individual analysis of any particular allegation, Plaintiffs assert that they sufficiently alleged Defendants were aware that they were engaged in racketeering. *See* Opp'n p.11:14-15. As discussed, the Complaint only offers conclusory allegations that Defendants acted in concert and fails to establish an enterprise, requiring Plaintiffs to now reimagine the allegations as implying roles or coordination. In the absence of allegations of roles, coordination, or any structure, there can be no non-conclusory allegations implying that Defendants were "aware of the essential nature and scope of the enterprise and intended to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

35529472

participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984)).

    **H.**    **Count Eight Should Also Be Dismissed as to Roma.**

Plaintiffs have no response to Defendants' argument that, if the RICO claim is dismissed, this Court does not have subject matter jurisdiction over Roma and supplemental jurisdiction would be inappropriate. *See* Opp'n pp.11:24-12:15; Motion p.22:2-22.

Plaintiffs' recitation of the elements of a tortious interference claim and explanation of how each is satisfied has no bearing on Defendants' argument for dismissal of the tortious interference claim as to Roma. *See* Opp'n pp.11:28-12:6. Defendants' contention is that, regardless of whether Plaintiffs' allegations otherwise satisfy the elements, Roma cannot interfere with the alleged contract between Plaintiffs and Disruptive Technologies under Nevada law because Roma is a party to the contract by virtue of being an agent of Disruptive Technologies. *See* Motion pp.22:23-23:3.

Plaintiffs fail to respond to Defendant's assertion that Roma's ownership interest in Disruptive Technologies—which *is* alleged in the Complaint—renders him an agent who cannot tortiously interfere with the Binding Letter to which Disruptive Technologies was a party as a matter of law. *See* Motion p.22:24-25; Compl. ¶ 37; Opp'n p.12:7-10. Plaintiffs also overlook Paragraph 157 of the Complaint, which alleges Roma "assisted in negotiating the terms of the Binding Letter and facilitated its execution." Compl. ¶ 157.

Plaintiffs' allegations do not establish that Roma exceeded the scope of his agency inherent to his ownership interest by acting with an improper motive, particularly because, as Plaintiffs insist, they do not explicitly mention Roma's agency. *See* Compl. ¶¶ 13, 37-41, 157-59, 161; Opp'n p.12:7-8. The case Plaintiffs cite for their proposition that an improper motive deprives an agent of agency, *Blanck v. Hager*, does not support the proposition that an "improper motive" deprives an agent of their agency. 360 F. Supp. 2d 1137 (D. Nev. 2005).

    **I.**    **This Court Lacks Personal Jurisdiction Over Martin if the RICO Claim is Dismissed.**

Plaintiffs are incorrect that Martin failed to preserve her lack of personal jurisdiction defense. *See* Opp'n pp.12:19-13:2. Plaintiffs cite the original Answer to the Complaint, but the

13

35529472

1  ACC asserts lack of personal jurisdiction, and Martin was permitted to assert the defense for the
2  first time in the ACC.  *See* ACC p.19 ¶ 35; *Brennan v. Hawaii*, No. CV 17-00163 HG-RLP, 2017
3  WL 3187215, at *3 (D. Haw. July 26, 2017) (holding that the defendant did not submit to the
4  jurisdiction of the court under Rule 12(h) where the defendant raised the defense of lack of personal
5  jurisdiction for the first time in an amended answer that was amended as a matter of course under
6  Rule 15(a)(1)).  Rule 15(a)(1)(B) permitted Martin to amend within 21 days *after* Plaintiffs filed a
7  pleading or motion responding to the original Answer and Counterclaims, and Defendants filed
8  their ACC *before* Plaintiffs even filed their Motion to Dismiss in response to the original Answer
9  and Counterclaims, so there was no waiver.  *See* ECF No. 30 (Answer to Complaint and
10 Counterclaim filed February 28, 2025); ECF No. 48 (ACC filed April 24, 2025); ECF No. 56
11 (Motion to Dismiss ACC filed May 30, 2025).

12  Plaintiffs have no specific response to Defendants' argument that there is a lack of personal
13 jurisdiction as to Martin.  *See* Opp'n p.13:4-12.  Of course, Defendants provide a swath of
14 allegations without analysis, but not one of those allegations reconciles the issue identified in the
15 motion that Martin simply has no contacts with Nevada reflected in the Complaint.  *See* Motion
16 pp.23:17-24:3.

### J. Dismissal Should be with Prejudice.

18 Plaintiffs offer no analysis as to how they could amend the Complaint to fill the glaring
19 holes in their RICO allegations.  *See* Opp'n p.13:14-17.  Nor do Plaintiffs explain how allowing
20 leave to amend would not be greatly prejudicial to Roma, Martin, and Masternode whose only
21 correlation to the scheme is expressed in vague and conclusory allegations that they were part of
22 the scheme.  *See* Motion p.24:13-20.

### III. CONCLUSION

24 Dismissal of the RICO claim with prejudice is appropriate.  The RICO Claim constitutes a
25 rare exception to the rule that amendment should be allowed given the Complaint's complete and
26 utter failure to make out a RICO claim in its allegations.  Consequently, there is no personal
27 jurisdiction over Martin or Roma, and supplemental jurisdiction over Roma is inappropriate.

DATED this 16th day of October, 2025.

                              BROWNSTEIN HYATT FARBER SCHRECK, LLP

                              BY: */s/ Maximilien D. Fetaz*
                                   Maximilien D. Fetaz, Esq.
                                   Zachary R. Meyer, Esq.
                                   100 North City Parkway, Suite 1600
                                   Las Vegas, NV 89106-4614

                                *Attorneys for Defendants/Counterclaimants*

15

35529472

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** was served via electronic service on the 16th day of October, 2025.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

35529472