1

2

3                         UNITED STATES DISTRICT COURT

4                              DISTRICT OF NEVADA

5                                    * * *

6    UTHERVERSE, INC., *et al.*,                Case No. 3:25-cv-00020-MMD-CSD

7                             Plaintiffs,               ORDER

8         v.

     BRIAN QUINN, *et al.*,

9
                            Defendants.
10

11   **I.    SUMMARY**

12         Counterclaimants filed an Amended Answer to Complaint (ECF No. 48 at 1-19

13   ("Answer")) and Amended Counterclaim (*id.* at 20-49 ("Counterclaim")) against Counter-

14   Defendants asserting state law claims arising from various agreements between various

15   parties related to the creation, development, and funding of metaverses in which

16   cryptocurrencies would be created and used.[1] Counter-Defendants move to dismiss the

17   Counterclaim (ECF No. 56 ("Motion"))[2] and to strike certain affirmative defenses in the

18   Answer and allegations in the Counterclaim (ECF No. 57 ("Motion to Strike").)[3] As

19   discussed below, the Court grants the Motion and dismisses the Counterclaim without

20   prejudice, and grants in part and denies in part the Motion to Strike.

21

22         [1]Counterclaimants are Brian Quinn, Joshua Denne, Blockchain Funding, Inc.
     ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode
23   Partners, LLC ("Masternode") Niya Holdings, LLC ("Niya Holdings") and Nima Momayez
     (collectively,    "Counterclaimaints").    Counter-Defendants    are    Utherverse,    Inc.
24   ("Utherverse, Inc."), Utherverse Digital, Inc. ("Utherverse Digital"), Utherverse
     International Ltd. ("Utherverse International"), Brian Shuster ("Shuster"), Peter Ganter,
25   Nexus Venture LLC ("Nexus"), Ari Good, and Gary Shuster ("Gary") (collectively,
     "Counter-Defendants").
26
           [2]Counterclaimants responded (ECF No. 60 ("Response")) and Counter-
27   Defendants replied (ECF No. 62 ("Reply")).

28         [3]Counterclaimants responded (ECF No. 61) and Counter-Defendants replied (ECF
     No. 63.)

II.    **BACKGROUND**[4]

In 2022, Denne was introduced to Shuster, who owns and operates each of the Utherverse entities.[5] (ECF No. 48 at 24.) Utherverse advertised itself as a successful player in the metaverse space with experience in building virtual economies and communities, but at that time, Utherverse had been struggling for over ten years to raise capital. (*Id.*) Utherverse was essentially a one-man show run by Shuster, and it lacked, among other things, a functioning website, formal presentation materials, investment documents, and a functional corporate structure. (*Id.*) Shuster made numerous false representations about his past successes and present Utherverse successes. (*Id.*) Based on false representations—including that Utherverse had 50 million users; over 1 million metaverses on the platform; a revenue of $8-10 million per year; that Shuster had invested $45 million of his personal money into the company; Utherverse had spent more than $40 million on the development of its metaverse offerings—Denne decided to invest in Utherverse. (*Id.* at 24-25.)

In April 2022, Shuster, on behalf of Utherverse, executed a senior secured convertible promissory note with Counterclaimants Momayez and Niya Holdings ("Niya Note"). (*Id.* at 25.) In accordance with the Niya Note, Momayez, individually and on behalf of Niya holdings, transferred $1,350,000 to Utherverse in reliance on Shuster's misrepresentations. (*Id.* at 25-26.) Shuster, on behalf of Utherverse, agreed to repay Momayez and Niya Holdings. Instead, Shuster has stolen the funds and refuses to repay them. (*Id.* at 26.)

In May 2022, Utherverse, by and through Shuster, entered into a simple agreement for future tokens ("SAFT") with Blockchain Funding ("Blockchain Funding SAFT"). (*Id.* at 26.) Blockchain Funding purchased 360,000,000 tokens at the then-price per token of

---

[4]The following facts are adapted from the Counterclaim.

[5]In the Counterclaim, Counterclaimants use "Utherverse" to refer collectively to Utherverse, Inc. and Utherverse Digital, but apparently do not include Utherverse International, Ltd. (ECF No. 48 at 20.)

1    $0.000033334, for a total purchase amount of $12,000.24. (*Id.*) While Blockchain Funding

2    fulfilled its terms of the agreement, Shuster never delivered the tokens nor remitted

3    payment for the tokens, and now claims that Blockchain Funding does now own any

4    tokens. (*Id.*) Shuster and Utherverse never intended to fulfill the terms of the Blockchain

5    Funding SAFT and intended to defraud Blockchain Funding. (*Id.*)

6         Also in May 2022, Utherverse, by and through Shuster, executed a SAFT with

7    Masternode, by and through Denne ("Masternode SAFT"). (*Id.* at 26.) Under the

8    Masternode SAFT, Masternode purchased 150,000,000 tokens at the then-price per

9    token of $0.000033334, for a total purchase amount of $5,000.01. (*Id.*) While Masternode

10   fulfilled its terms of the agreement, Shuster never delivered the tokens nor remitted

11   payment for the tokens and Shuster takes the position that Masternode does not own any

12   tokens. (*Id.*) Shuster and Utherverse never intended to fulfill the terms of the Masternode

13   SAFT and intended to defraud Masternode. (*Id.*)

14        In June 2023, Blockchain Funding, by and through Denne, loaned Utherverse, by

15   and through Shuster, $350,000. (*Id.*) This loan was evidenced by a promissory note

16   ("Blockchain Funding Note"), that was secured by a stock pledge agreement that pledged

17   2,800,000 shares of Utherverse, Inc. stock to Blockchain Funding. (*Id.*) Blockchain

18   Funding fulfilled its obligations and understood that the ownership of the shares was

19   transferred, however, the proceeds from the Blockchain Funding Note have not been

20   returned and Shuster takes the position that it does not own any shares. (*Id.* at 26-27.)

21   Shuster intended to defraud Blockchain Funding of the $350,000.

22        In reliance on the representations made by Shuster and the agreements between

23   these parties, Denne, Blockchain Funding, Blockchain Alliance, and Masternode

24   expended significant funds to promote and advance Utherverse. (*Id.* at 27.) These

25   expenses include, but are not limited to, token set up costs, PR, elevator social media,

26   digital marketing, advertisements, promotion, totaling over $1,300,000. (*Id.* at 27.) Denne

27   also made several efforts to assist in the development of Utherverse that were ultimately

28   foiled due to Shuster. Denne was able to find a private investor who would have raised

$25 million for Utherverse, but the investor ultimately refused to move forward based on representations a former employee of Shuster had made to him. (*Id.* at 28.) Denne brought in various experts or experienced individuals who would ultimately resign, be unable to finish their work, or not be hired, because of Shuster. (*Id.* at 28-29.) Denne brought in an accounting firm that found that Utherverse's revenue was less than $1.5 million a year, and it was unable to confirm that Shuster had invested his own money. (*Id.* at 29.)

Shuster's mismanagement resulted in missing twenty significant developmental deadlines and over a dozen launch dates. (*Id.*) Denne decided to part ways with Shuster and Utherverse in April 2024. During the separation process, Shuster acknowledged Denne's efforts to help Utherverse, including money spent, and tokens and stocks owned by Denne. The two had discussions both oral and memorialized in writing. (*Id.* at 30.) During this time, Denne also contributed an additional $160,000 for "necessary settlement liquidity." (*Id.*) Despite agreeing to an exit strategy in the Exit Agreement, Shuster reneged and took the position that Counterclaimants are not entitled to anything with regard to Utherverse. (*Id.*) He also sent letters to investors with whom Denne had previous relationships and made defamatory statements that Denne had defrauded Utherverse investors. (*Id.*)

Shuster has used Utherverse funds for his own personal gain, and his pattern of fraud has brought potential liability to Utherverse and investors who relied upon his misrepresentations. Examples include his paying commissions to unlicensed brokers, taking large investments from an investor and placing that investor and his wife on the Utherverse board, selling pre-sale tokens on an unregistered and non-SEC compliant platform, and using Utherverse investor funds to make pornographic films and pay for personal travel. (*Id.* at 31-32.)

Additionally, Counter-Defendant accomplices Good, Ganter, and Gary aided and conspired with Shuster in various ways. Good, a Florida attorney, created a business structure that enabled Shuster to obtain money from Counterclaimants, was knowingly

4

paid in fraudulently obtained money, and issued letters to Counterclaimants, investors and others to stifle or deprive Counterclaimants of their property interests. (*Id.* at 33.) Ganter, a developer of Utherverse's platform and CEO of Utherverse, created and developed a non-licensed platform to sell tokens that competed with Utherverse's platform, and Shuster paid Ganter commissions for selling Utherverse tokens and shares. (*Id.* at 34.) Ganter also created, owned, and operated Nexus to allow Shuster to launder money and hide funding from investors. (*Id.*) Gary, Shuster's brother and the Chief Intellectual Property Officer of Utherverse Digital and General Counsel of Utherverse Inc., aided and conspired with Shuster to defraud Counterclaimants and investors. (*Id.* at 34-35.) Shuster, Good, and Ganter circulated UTHER tokens under the label UTHX into cryptocurrency exchanges in Fall 2024. The tokens were initially sold for around $2.00 each, however, once various investors demanded the tokens that were owed to them, the price of the token dropped to less than $0.01. (*Id.* at 36.) They abandoned the UTHX token and created a different UTHER token called UTHR, leaving UTHX holders with a token devoid of value. (*Id.*)

Based on these allegations, Counterclaimants bring claims for (1) fraud against Shuster, Utherverse, Inc., and Utherverse Digital; (2) breach of fiduciary duty against Shuster; (3) aiding and abetting breach of fiduciary duty against Good, Ganter, Nexus and Gary; (4) civil conspiracy against all Counter-Defendants; (5) breach of contract against Shuster and Utherverse Digital arising from the Niya Note; (6) breach of contract against Shuster and Utherverse International Ltd. arising from the Blockchain Funding SAFT; (7) breach of contract against Shuster and Utherverse International Ltd. arising from the Masternode SAFT; (8) breach of contract against Shuster and Utherverse Digital arising from the Blockchain Funding Note; and (9) breach of contract against Shuster, Utherverse, Inc. and Utherverse Digital arising from the exit agreement.

## III.    MOTION TO DISMISS

Counter-Defendants seek dismissal, contending the claims constitute impermissible "shotgun pleading" in violation of Federal Rules of Civil Procedure 8 and

1   10(b). (ECF No. 56 at 11-13.) They also move to dismiss for failure to state a claim under

2   Federal Rule of Civil Procedure 12(b)(6) and 9(b). Counterclaimants respond that their

3   use of pleading by incorporation does not render the Counterclaim into a shotgun

4   complaint, and they assert that they have adequately pled all claims. (ECF No. 60.)

5         A properly pled complaint must provide "a short and plain statement of the claim

6   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atlantic*

7   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 8(a) notice pleading standard

8   requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the

9   grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and

10  citation omitted). The notice pleading requirements of Rule 8(a) can be violated not only

11  "when a pleading says too little," but also "when a pleading says too much." *Knapp v.*

12  *Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (citing *Cafasso, U.S. ex rel. v. Gen.Dynamics*

13  *C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011); *McHenry v. Renne*, 84 F.3d 1172,

14  1179-80 (9th Cir. 1996) (affirming a dismissal under Rule 8, and stating that "[p]rolix,

15  confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens

16  on litigants and judges")); *see also Collins v. Nevada Dep't of Corr.*, No. 2:22-CV-01795-

17  CDS-BNW, 2025 WL 638627, at *20 (D. Nev. Feb. 25, 2025) (Rule 8 is violated where

18  plaintiff "pleads multiple counts and does not identify which specific facts fit that very

19  count, but instead rely on a blanket incorporation clause that incorporates all statement

20  of facts") (cleaned up).

21        The Counterclaim fails to provide "a short and plain statement of the claim showing

22  that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). At 29 pages, the Counterclaim

23  is not particularly lengthy, but it is drafted such that factual allegations are unclear.

24  Counterclaimants allege most factual allegations in a "General Background" section of

25  the Counterclaim, and only sparsely plead facts germane to the individual causes of

26  action while pleading by incorporation all prior factual allegations under each cause of

27  action. The Court agrees with Counter-Defendants that this style of pleading forces them

28  to "parse the entirety of the ACC [Counterclaim] to discern whether there is support for a

6

1    claim" and renders it "impossible to rebut allegations that are internally inconsistent."

2    (ECF No. 56 at 13.) Counterclaimants, in their Response, argue that Counter-Defendants

3    merely cherry-pick sentences and feign confusion. (ECF No. 60.) But the Court shares in

4    Counterclaimants' confusion: the Counterclaim involves nine causes of action, seven

5    Counterclaimants, and eight Counter-Defendants, but it is unclear which allegations are

6    meant to support what claims against which parties.[6] The Court thus finds that the

7    Counterclaim fails to meet the requirements of Rule 8.

8          Counterclaimants raise three types of claims—claims arising in breach of contract,

9    breach of fiduciary duty, and fraud—and the Court finds deficiencies as to each category

10   of claims, as explained below.

11         As to the breach of contract claims, under Nevada law, a plaintiff must allege "(1)

12   the existence of a valid contract; (2) that plaintiff performed or was excused from

13   performance; (3) that the defendant breached the contract; and (4) that the plaintiff

14   sustained damages." *Sierra Development Co. v. Chartwell Advisory Group, Ltd.*, 223

15   F.Supp.3d 1098, 1103 (D. Nev. 2016) (citing *Calloway v. City of Reno*, 993 P.2d 1259,

16   1263 (Nev. 2000). Counterclaimants' breach of contract claims plead the barest of

17   allegations to track the elements of each claim. For example, under the ninth cause of

18   action for breach of the exit agreement, Counterclaimants allege in conclusory terms that

19   "Quinn, Denne, Shuster, Utherverse, Inc., and Utherverse Digital are parties to the Exit

20   Agreement" and "Shuster, Utherverse, Inc., and Utherverse Digital breached the material

21   terms of the Exit Agreement by failing to perform under its terms." (ECF No. 48 at 45-46.)

22   Counterclaimants have essentially stated legal conclusions but have failed to allege

23   adequate facts to support these conclusions. Regarding Counterclaimant Quinn in

24

25         [6]Factual allegations contained in the Counterclaim are broad and sweeping. For
     example, Counterclaimants allege in their summary that "Counter-Defendants unlawfully
26   induced Plaintiffs[sic] to invest in Utherverse by promising outsized returns,
     misrepresenting the state of Utherverse's financial health, and touting fictious market
27   success"—though the Court can discern no allegations, for example, that support
     involvement of Counter-Defendants Good or Nexus relevant to this allegation. (ECF No.
28   48 at 20.)

1    particular, the Counterclaim is largely devoid of factual allegations concerning him.[7] The

2    Court agrees with Counter-Defendants that the Counterclaim contains insufficient factual

3    allegations to determine whether a contract existed between all of the parties, what the

4    material terms were, and how Counter-Defendants breached it. (ECF No. 56 at 27.)

5    Regarding Counterclaimants' claims for breach of fiduciary duty and aiding and

6    abetting the breach of fiduciary duty, a plaintiff must establish "(1) existence of a fiduciary

7    duty, (2) breach of the duty, and (3) damages as a result of the breach." *Guzman v.*

8    *Johnson*, 483 P.3d 531, 538 (Nev. 2021). In the second cause of action for breach of

9    fiduciary duty against Shuster, Counterclaimants simply allege "Shuster was

10   Counterclaimants' fiduciary." (ECF No. 48 at 40.) Nowhere in the Counterclaim have

11   Counterclaimants have alleged factual allegations to support why Shuster owes a

12   fiduciary duty to Counterclaimants generally, let alone why Shuster is a fiduciary to each

13   and every Counterclaimant individually. Simply asserting that Shuster was a fiduciary to

14   all Counterclaimants is a legal conclusion, and as such, is not entitled to the assumption

15   of truth.[8]

16   Lastly, regarding the fraud claims, under Nevada law, the elements of fraud are (1)

17   a false representation made by the defendant; (2) defendant's knowledge or belief that

18   the representation is false; (3) defendant's intention to induce the plaintiff to act or refrain

19   from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon

20   the misrepresentation; and (5) damage to the plaintiff resulting from such reliance.

21   *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). "In alleging fraud or

22   mistake, a party must state with particularity the circumstances constituting fraud or

23   mistake." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

24

25   [7]Counterclaimants do not allege any non-conclusory factual allegations to support Quinn's involvement in this action. (ECF No. 48 at 21, 30, 46.)

26   [8]*See* Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 570 ( (holding that to withstand a

27   Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a

28   complaint, while legal conclusions are not entitled to the assumption of truth).

1103 (9th Cir. 2003) (a plaintiff must allege the circumstances constituting the alleged fraud specifically including the who, what, when, where and how of the misconduct charged). Counterclaimants have pled a list of misrepresentations made by Shuster in paragraphs 33 and 34 of the Counterclaim, but the Court agrees with Counter-Defendants that the Counterclaim is "void of any indication of when, where and to whom the representations were made." (ECF No. 56 at 15.) Counterclaimants attempt to clarify in their Response that Shuster made the representations to Denne and parties to the Agreements.[9] (ECF No. 60 at 14.) But from the face of the Counterclaim, the Court cannot discern when Shuster made these alleged misrepresentations to Denne, let alone the who, what, when, where how of the allegations pertinent to the other parties to the agreements.

As if to offset the deficiencies detailed above, Counterclaimants plead on information and belief that "each Counter-Defendant herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of the others, or was otherwise involved with the other Counter-Defendants in the wrongdoing alleged herein" and therefore "[e]ach Counter-Defendant is liable and responsible on the facts alleged herein for all of the relief sought." (ECF No. 48 at 23.) Elsewhere, Counterclaimants allege that Shuster is an alter ego of Utherverse, Inc., Utherverse Digital, and Utherverse International, Ltd. (*Id.* at 36-39.) While Counterclaimants may allege alter ego, they may not offer an unclear complaint and use broad allegations of alter ego and conspiracy as a panacea.

The Counterclaim simply must be clearer to pass Rule 8's pleading standard.

---

[9]Moreover, citing to a case from the Northern District of Illinois, Counterclaimants argue that the Rule 9(b) particularity requirement has been found met where a complaint contained "a long list of alleged misrepresentations" in which each entry of the list contained a description of the approximate date and recipient to whom the representation was made. (ECF No. 60 at 16 (citing *Dynabest Inc. v. Yao*, 760 F.Supp. 704, 707 (N.D. Ill. 1991).) The Court finds this argument unpersuasive, particularly given that Counterclaimants' list of Shuster's alleged misrepresentations is devoid of information about when and to whom the misrepresentations were made.

1      **IV.    MOTION TO STRIKE**

2              Counter-Defendants move to strike certain allegations in the Counterclaim and

3      affirmative defenses raised in the Answer under Federal Rule of Civil Procedure 12(f).

4      (ECF No. 57.) Because the Court granted Counter-Defendants' Motion above, the Court

5      denies the Motion to Strike as moot to the extent that it seeks to strike factual allegations

6      in the Counterclaim. Turning to affirmative defenses, Counter-Defendants argue that

7      certain affirmative defenses should be struck because they are immaterial or impertinent,

8      fail to provide fair notice, or fail the heightened pleading standard of *Twombly* and *Iqbal*.

9      (*Id.* at 11-12.) Counterclaimants argue that the Court should deny the Motion to Strike

10     because the affirmative defenses are proper and not subject to the heightened pleading

11     requirements of *Twombly* and *Iqbal*. (ECF No. 61 at 15-21.)

12             "The court may order stricken from any pleading any insufficient defense or any

13     redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The

14     purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of time and

15     money that must arise from litigating spurious issues." *SidneyVinstein v. A.H. Robins Co.*,

16     697 F.2d 880, 885 (9th Cir. 1983). The Federal Rules of Civil Procedure are interpreted

17     by the rule's plain meaning. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74

18     (9th Cir. 2010). Courts in this district have held that the heightened pleading standard of

19     *Twombly/Iqbal* does not apply to affirmative defenses. *See e.g. North Bay Credit Union*

20     *v. MRB Direct, Inc.*, No. 2:24-CV-00212-MMD-CSD, 2025 WL 1447635, at *4-5 (D. Nev.

21     May 19, 2025). The proper standard is whether the affirmative defense gives the plaintiff

22     fair notice of the defense. *Id.*; *see also Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016,

23     1019 (9th Cir. 2015) (noting that "the 'fair notice' required by the pleading standards only

24     requires describing the defense in 'general terms'").

25             Counter-Defendants argue that Counterclaimants' affirmative defense of failure to

26     state a claim on which relief can be granted should be struck because it is not an

27     affirmative defense. (ECF No. 57 at 11.) Counterclaimants argue that it is an appropriate

28     defense and it possibly benefits Counter-Defendants by providing notice that

Counterclaimants may file a Rule 12(b)(6) motion. (ECF No. 61 at 11-12.) While the Court agrees with Counter-Defendants that this defense may be properly brought as a Rule 12(b)(6) motion, the Court denies the Motion to Strike this affirmative defense because it is not redundant, immaterial, impertinent or scandalous, and it may be raised in the Answer. *See* Fed. R. Civ. P. 12(h)(2)(A) ("Failure to state a claim upon which relief can be granted. . . may be raised in any pleading allowed or ordered under Rule 7(a)"). For the same reasons, the Court denies the Motion to Strike Counter-Defendant's affirmative defense for failure to plead claims with particularity.

Next, Counter-Defendants argue that Counterclaimants' affirmative defenses for failure to join indispensable parties and unclean hands fail to give Counter-Defendants adequate notice. As to indispensable parties, the Court agrees with Counter-Defendants that the factual allegations in the Answer fail to give them fair notice of the identity of this indispensable party. (ECF No. 57 at 12.) Counterclaimants concede in their Response that they do not know the identity of the party, but "discovery will likely reveal that Shuster and Utherverse's fraud implicates unidentified indispensable parties." (ECF No. 61 at 12.) The Court accordingly grants the Motion to Strike to the extent it seeks to strike the affirmative defense for failure to join indispensable parties.

As to Counterclaimants' unclean hands affirmative defense and other similar defenses,[10] Counter-Defendants' Complaint raises several causes of action sounding in fraud (ECF No. 1 at 21-24) and Counterclaimants have generally denied these allegations (ECF No. 48 at 13-15). Counter-Defendants argue that there are insufficient factual allegations to support these affirmative defenses, but the Court disagrees.

---

[10]Counter-Defendants claim without citation to legal authority that affirmative defenses five, seven, eight, ten, and 24-28 "all comprise a variant of unclean hands" and should be struck for the same reasons as affirmative defense four. (ECF No. 57 at 14.) Counterclaimants respond to the arguments using these groupings, though they dispute them. (ECF No. 61 at 11.) Since the parties use the same groupings of affirmative defenses in the briefing, the Court addresses the groupings as such. However, the Court agrees with Counterclaimants. For example, the Court does not follow, without more from Counter-Defendants, how affirmative defense 10—"Plaintiffs failed to perform as promised"—is "a variant of unclean hands." (ECF No. 57 at 14.)

Counterclaimants' affirmative defenses—for example, unclean hands, Plaintiffs' prior wrongful conduct, and lack of good faith—appear to be affirmative defenses to Counter-Defendants' fraud claims. Indeed Counter-Defendants' briefing indicates that they are aware these defenses are defenses to fraud (ECF No. 63 at 5 (arguing that the unclean hands defense is defective because the Counterclaimants' allegations of fraud were not pled with the requisite specificity)). Thus, the Court denies the Motion to Strike to the extent it seeks to strike Counterclaimants' unclean hands and other equitable affirmative defenses.

Counter-Defendants move to strike defenses six, nine, 11-20, and 31-33, arguing that Counterclaimants merely assert failed elements of claims, and they are therefore impertinent. The Court denies the Motion to Strike as to these defenses. Counter-Defendants fail to cite to any legal authority to support that it is impertinent to assert failed elements of claims as a defense, nor does the Court find such defenses impertinent under the plain meaning of the word. Similarly, the Court denies the Motion to Strike affirmative defenses 21-23, 29, and 30. Counter-Defendants cite to no authority to support its claim that these defenses are immaterial, nor does the Court find them immaterial under the plain meaning of the word.

Lastly, the Court grants the Motion to Strike as to affirmative defense 36 reserving Counterclaimants' right to amend the answer to plead newly discovered affirmative defenses, because Counterclaimants intended it strictly as a reservation of rights and do not oppose it being stricken. (ECF No. 61 at 14-15.)

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Counter-Defendants' motion to dismiss (ECF No. 56) is granted.

12

It is further ordered that Counterclaimants' amended counter claim (ECF No. 48) is dismissed without prejudice.

It is further ordered Counter-Defendants' motion to strike (ECF No. 57) is granted in part and denied in part. It is denied as moot to the extent that it moves to strike factual allegations in the Counterclaim. It is granted as to the second and thirty-sixth affirmative defenses and denied as to all other affirmative defenses in the Answer.

DATED THIS 26th Day of January 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE