UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UTHERVERSE, INC. *et al.*, | Case No. 3:25-cv-00020-MMD-CSD |
| Plaintiffs, | ORDER |
| v. | |
| BRIAN QUINN, *et al.*, | |
| Defendants. | |

## I.     SUMMARY

Plaintiffs Utherverse, Inc. ("UI") and Brian Shuster sue Defendants[1] alleging claims arising from Defendants' purported scheme to defraud Plaintiffs by convincing them that Defendants could bring millions of dollars of investments to help them develop and launch a virtual world environment and cryptocurrency tokens. (ECF No. 1 ("Complaint").) Before the Court is Defendants' motion for judgment on the pleadings in which Defendants move to dismiss the count I for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO Act") against all Defendants; count VIII for tortious interference with contract against Roma; and all claims against Martin and Masternode for lack of subject matter jurisdiction. (ECF No. 70 ("Motion").)[2] For the reasons discussed below, the Court grants the Motion as to count I against Roma, Martin, Masternode, Momayez and Niya and to the extent it includes a RICO conspiracy claim, defers judgment as to count VIII against Roma, and defers judgment as to subject matter jurisdiction as to Martin and Masternode.

---

[1]Defendants are Brian Quinn, Joshua Denne, Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance, LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Lynne Martin, Nima Momayez, Niya Holdings, LLC ("Niya"), and Jeremy Roma. (ECF No. 1 at 2.)

[2]Plaintiffs responded (ECF No. 71) and Defendants replied (ECF No. 72).

## II.     BACKGROUND[3]

Shuster formed UI and Utherverse Digital Inc. ("UDI")[4] in November 2006 to employ software developers and others to develop and maintain virtual world environments and metaverses. (ECF No. 1 at 6.) UDI was developing new software with the goal of its software becoming widely adopted for virtual world environments. (*Id.* 6-7.)

Around early 2022, Shuster was approached by Quinn and Denne, who have both been charged with or convicted of crimes involving other fraudulent schemes. (*Id.* at 4-5.) They told Shuster that they were interested in investing in UI and had access to large investments and major investors. (*Id.* at 4-5, 6.) Quinn falsely misrepresented to Shuster that he would raise money for UI to reach profitability; take UI public on NASDAQ; spend $5 million to prepare, market, and sell IDU's cryptocurrency token, UTHER; mint the UTHER tokens that would be used as currency in UDI's virtual world; and bring investors to UI to purchase UI shares prior to its initial public offering. (*Id.* at 6.)

Quinn, Denne, and Defendants engaged in a complex scheme to defraud Plaintiffs—by diverting money intended for investment in UI to Defendants' own accounts—and other individuals and entities who thought they were investing in UI by purchasing stock or tokens, but had their intended investments diverted to Defendants' accounts. (*Id.* at 6-7.) On one such occasion around July 17, 2022, the initial presale of UTHER tokens went live, but by July 25, 2022, Plaintiffs had not received any funds. (*Id.* at 14.) Denne stated that nothing was wrong and the funds were forthcoming, but Shuster later learned that Denne had the developer change the digital wallet so that the funds would be wrongfully diverted. (*Id.* at 14-15.) Plaintiffs allege on information and belief that Defendants intended to mask their scheme by bankrupting UI so that defrauded investors would not discover that they did not own stock or tokens. (*Id.* at 7, 10.) To enact this

---

[3]The following facts are adapted from the Complaint.

[4]UDI invoices UI for development and maintenance, and UI provides accounting support and reimburses UDI for its work. (ECF No. 1 at 6.)

scheme, Defendants needed to keep UI solvent, but close to insolvency, so that it would not make public announcements about ceasing investment rounds. (*Id.* at 7.)

Quinn and Denne also introduced potential investors to Shuster, representing them as having large amounts of money or interest, but with few exceptions, the investors would disappear, and Quinn and Denne would say that the investors lost interest. (*Id.* at 8, 9-10.) One such investor was Disruptive Technologies OU ("Disruptive Technologies") who signed a binding Letter of Intent in August 2022, agreeing to distribute $30 million to UDI, Shuster, and Shuster's brother, Gary ("Sellers"), in exchange for 15% of the outstanding shares of UDI and 300 million UTHER tokens. (*Id.* at 7-8.) However, Disruptive Technologies withdrew before the first payment was due, and Quinn said that a former associate told Disruptive Technologies that Shuster was a fraud. (*Id.* at 8.) Plaintiffs allege on information and belief this communication never occurred, and the deal was part of the scheme to defraud Plaintiffs and UDI. (*Id.*)

Quinn and Denne conspired with Defendants to arrange loans that were ultimately detrimental to UI and UDI, and convinced Shuster to enter the following loan agreements based on false promises.

Around April 11, 2022, Niya transferred $1.35 million to UDI as a loan secured by a promissory note ("Niya Note"), that was convertible to UTHER tokens, so that UDI would not need to repay the loan out of pocket. (*Id.* at 11.) Quinn and Denne assured Shuster that the loan would be converted, but at the end of the loan term, Momayez demanded immediate and full repayment. (*Id.*) The Niya Note was part of Quinn, Denne, and Momayez's scheme to cause UI/UDI to go bankrupt. (*Id.* at 12.)

Around April 16, 2022, UDI and Blockchain entered into a Consulting Agreement, by which Blockchain Funding would provide services related to UTHER Tokens, including paying $5 million toward the launch and maintenance of tokens, in exchange for 12% of the tokens that would eventually be minted and were supposed to be used for the benefit of UDI. (*Id.*) Denne insisted that the tokens have no vesting schedule, which was unusual for the market. (*Id.*) Some of the tokens were used to benefit UDI, for example, by paying

3

for a software development company called Nexus Venture LLC ("Nexus") to build an online platform for token presale. (*Id.*) But Blockchain Funding ceased making payments at Quinn and Denne's instructions, and Quinn instructed Nexus to sell UI stock that was fraudulently allocated to it. (*Id.* at 13.)

Around August 12, 2022, UDI executed a promissory note with Blockchain Funding ("Blockchain Note") for $350,000 to use as working capital, because Quinn and Denne's investors had not materialized. (*Id.* at 14.) Prior to Shuster executing the Blockchain Note, Quinn told Shuster via email that he "ha[s] a lot of money" and "if we ever get in a tight sp[ot] I will bail us out." (*Id.*)

Around April 10, 2023, Denne on behalf of Blockchain Alliance and Shuster on behalf of UI entered into a Membership Interest Purchase Agreement ("Membership Agreement") whereby UI purchased a 25% membership interest in Blockchain Alliance in exchange for 3,685,000 shares of UI Class A Common Stock for $12,000.24. (*Id.* at 15.) Denne falsely represented that Blockchain Alliance was in good standing when it was or was soon to be administratively dissolved. (*Id.*) The Membership Agreement would give UI the option to purchase up to 100% interest in Blockchain Alliance and was to provide an additional income channel to IU, because it was falsely pitched as a massive network marketing company that would help make IU and its IPO successful. (*Id.*) On information and belief, Plaintiffs allege that Blockchain Alliance sold UI stock it was unauthorized to sell, Denne or Blockchain Alliance pocketed the funds, and UI never received money from investors. (*Id.*)

Around May 10, 2022, Blockchain Funding and Utherverse International LTD ("UI LTD")[5] entered into a Simple Agreement for Future Tokens (SAFT") ("Blockchain Funding SAFT"), pre-purchasing 360 million tokens at a price of $12,000.24. (*Id.* at 16.) Under its terms, it would terminate if the tokens were not generated by December 31, 2022. (*Id.*)

---

[5]UI LTD is "an administratively dissolved entity, with its rights and obligations under the legitimate SAFTs having been undertaken by a new company UTHX DAO, LLC." (*Id.* at 7.)

Quinn, Denne, and Blockchain Funding knew that the tokens would not be minted by the term set in the Membership Agreement, so UI would owe Blockchain Funding, and this was a way for Defendants to put UI in debt and drive them to bankruptcy.

Similarly, around May 10, 2022, Masternode[6] and UI LTD entered into a SAFT ("Masternode SAFT"), based on Martin's written and false representations that Masternode had authority to execute it, pre-purchasing 150 million UTHER tokens for $5,000.01. (*Id.* at 16-17.) The Masternode SAFT was another way for Defendants to put UI into further debt and drive them to bankruptcy. (*Id.* at 17.)

Denne, with Quinn's knowledge, falsified the SAFT prepared by UI's attorney by replacing UI LTD with either Blockchain Funding or Masternode, resulting in payments from at least 16 investors totaling at least $1,410,500 that were misappropriated by Quinn and/or Denne. (*Id.* at 17.) Defendants also attempted to entrap Shuster by presenting unaccredited investors to UI and lying to Shuster that they were accredited, and by attempting to have Shuster and UI make payments to unlicensed brokers. (*Id.* at 18-19.)

Around May 2023, Shuster notified Quinn that Quinn and Denne's failure to obtain investments was creating risk of UDI layoffs, and Shuster thought that the layoffs could be avoided if they minted cryptographic tokens. (*Id.* at 19.) However, because this would result in exposure of Defendants' fraudulent conspiracy, UI delayed minting the tokens at Quinn's insistence, resulting in delayed discovery of Defendants' scheme. (*Id.*) Denne and Quinn then attempted to negotiate an exit package that involved unearned and high compensation, and when the negotiations failed, Quinn began threatening Shuster that his friends at the SEC would bankrupt and imprison him. (*Id.*) The threats failed, and the tokens were minted around September 28, 2024. (*Id.* at 20.) After minting the tokens, investors began asking Plaintiffs for their tokens, and it became clear that Defendants had defrauded Plaintiffs. (*Id.*)

---

[6]Plaintiffs allege on information and belief that Martin is Denne's Mother, and a member of Masternode, which is an administratively dissolved Wyoming LLC. (*Id.* at 2.)

Arising from these allegations, Plaintiffs bring the following claims: (1) violation of Racketeer Influenced and Corrupt Organizations Act of 18 U.S.C. §§ 1962, 1964 against all Defendants; (2) fraud in the inducement against Quinn, Denne, Blockchain Funding, Masternode, Martin, and Blockchain Alliance; (3) fraud against Quinn, Denne, Blockchain Funding, Masternode, Martin, and Blockchain Alliance; (4) Conversion against Quinn, Denne, Blockchain Funding, Masternode, Martin, and Blockchain Alliance; (5) breach of fiduciary duty against Blockchain Funding; (6) aiding and abetting breach of fiduciary duty against Quinn and Denne; (7) tortious interference with contract as to the Niya Note against Quinn and Denne; and (8) tortious interference with Contract against Quinn, Denne and Roma as to the Binding Letter.

## III.    DISCUSSION

Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Plaintiff's RICO claim and argue that if the RICO claim is dismissed, then the tortious interference of contract claim against Roma and all claims against Martin and Masternode should be dismissed. "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation modified). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (citation modified); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that to withstand a Rule 12(b)(6) challenge, a plaintiff must allege facts to "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (holding that a district court must accept as true all well-pled factual allegations in a complaint, while legal conclusions are not entitled to the assumption of truth). Moreover, Rule 9 requires that claims sounding in fraud be pled with particularity. *See* Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake"); *see Kearns v. Ford Motor*

*Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (citation modified).

### A.   Timeliness

As an initial matter, Plaintiffs assert that Defendants' Motion should be denied in full because it was filed before the closing of the pleadings. (ECF No. 71 at 5-6.) Defendants counter that their Motion can proceed because it only challenges claims from the Complaint and does not seek a judgment regarding the amended counter claim.[7] (ECF No. 72 at 4.) The Court agrees with Defendants and finds that the Motion was not impermissibly filed.

In general, for the purposes of Rule 12(c), the pleadings are closed "once a complaint and answer have been filed, assuming. . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061-62 (9th Cir. 2005). However, other district courts in this circuit have held that a motion for judgment on the pleadings is not untimely where the pleadings are closed with respect to the count raised in the motion. *See, e.g., Tibarom NV, Inc. v. Shell Oil Prods. U.S.*, No. 3:08-cv-00060-BES-VPC, 2008 WL 11404229, at *2 (D. Nev. Sept. 24, 2008) (finding that the pleadings were closed for the purpose of the motion because it related solely to claims raised in the complaint); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020) (finding it immaterial whether the pleadings were fully answered because the motion for judgment on the pleadings applied only to plaintiff's complaint). The Court finds such cases persuasive. Defendants' Motion only seeks judgment as to claims raised in Plaintiffs' Complaint, and it was filed after Defendants answered the Complaint. (ECF Nos. 48, 70.) Therefore, the Court does not find the Motion to be prematurely filed.

### B.   RICO Claim

Defendants argue that Plaintiffs' RICO claim should be dismissed because it fails to (1) identify a RICO enterprise, (2) satisfy the pattern element, (3) satisfy the conduct

---

[7]In their reply brief, Defendants also argue that the Court may consider the Motion under the Rule 12(b)(6) standard. (ECF No. 72 at 3, 6-7.)

7

element, and (4) satisfy the proximate cause requirement. (ECF No. 70 at 7-21.) Moreover, Defendants seek dismissal as to certain Defendants because Plaintiffs have failed to allege at least two predicate acts as to them individually. (*Id.* at 18-19.) Plaintiffs counter that their RICO claim is sufficiently pled to survive the Motion. (ECF No. 71 at 6-12.)

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

### 1.    Association-in-Fact Enterprise

Defendants assert that Plaintiffs' RICO claim must be dismissed with prejudice because the Complaint does not allege an entity among Defendants separate and apart from the alleged wire fraud predicates, the Complaint does not describe the enterprise adequately under the heightened requirement of Rule 9(b), the Complaint only alleges ordinary business activity, and Plaintiffs' underlying RICO theory is not legally cognizable. (ECF No. 70 at 9-16.) Defendants further argue that Plaintiffs' failure to identify the subsection of Section 1962 under which they bring the RICO claim provides Defendants with insufficient notice. (*Id.* at 7.) Plaintiffs argue that they have clearly pled an enterprise under *Odom* and *Boyle v. United States*, 556 U.S. 938 (2009).

The definition of "enterprise" in the text of RICO is not very demanding; it includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Odom*, 486 F.3d at 548 (quoting 18 U.S.C. § 1961(4)). "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Id.* at 551. The "very concept of an association in fact is expansive." *Boyle*, 556 U.S. at 944.

Defendants argue that the claim is deficient because "[t]he Complaint includes no information about what structure the enterprise has, the way decisions are made within the enterprise, a hierarchy, or any substantive information." (ECF No. 70 at 12-13, 8-13.)

The Court disagrees. Plaintiffs allege that between late 2022 and early 2024, Defendants had the common purpose of "acting in concert to defraud Plaintiffs, embezzle and extort money. . ., and eventually bankrupt UI and [UDI] to cover up their scheme." (ECF No. 1 at 3.) Moreover, Plaintiffs allege that Quinn and Denne "organized and directed" the scheme; Roma either had an ownership interest in, or communications with, potential investor Disruptive Technologies and helped cause them to withdraw from the deal in furtherance of the scheme; Martin worked with Quinn and Denne, on behalf of Mastermode, to "put UI further into debt"; and that Quinn and Denne conspired with Momayez, Niya, and Blockchain Funding to arrange loans that were detrimental to UI and UDI. (*Id.* at 3, 7-8, 11, 16-17.) Such allegations are more specific than the conclusory allegations rejected by the court in *In re Jamster*. 2009 WL 1456632, at *5 (finding that plaintiffs failed the particularized pleading burden because they failed to allege a common purpose).

Defendants raise other arguments in their Motion and reply brief, but none are convincing. First, Defendants claim that they cannot discern the subsection under which Plaintiffs' RICO claim proceeds, arguing with citation to a single out of district case to that the claim should therefore be dismissed. (ECF No. 70 at 3, 7.) But Defendants' Motion presumes that Plaintiffs state an association-in-fact enterprise under Section 1962(c), noting that Plaintiffs' Complaint states the elements of that subsection. (*Id.*) Accordingly, the Court finds that Defendants can discern the relevant subsection. Next, Defendants argue that the Complaint only mentions the word "enterprise" twice (*id.* at 12), but the Court finds no issue with this given the above. Defendants also insist that the Complaint only contains a series of ordinary business transactions (*id.* at 14-16), but the Court agrees with Plaintiffs that this "gloss" mischaracterizes the factual allegations Plaintiffs plead (ECF No. 71 at 3). As to Defendants' argument that Plaintiffs fail to allege an enterprise distinct from the wire fraud predicates because that multiple Defendants are alleged to have propagated fraud (ECF Nos. 70 at 11; 72 at 6), but, as discussed above,

9

Plaintiffs allege that Defendants worked together to execute a common fraudulent scheme.

### 2.   Pattern

Defendants next argue that Plaintiffs fail to satisfy the pattern element because the Complaint fails to allege continuing activity and at least two predicate acts specifically committed by each of Roma, Martin, Masternode, Momayez, and Niya, therefore the claim must be dismissed against these Defendants. (ECF No. 70 at 17-19.) Plaintiffs respond that their "integrated pleading. . . attributes repeated wire fraud predicates to 'Defendants, and each of them' tied to specific episodes," as well as specific misrepresentations made in furtherance of the broader scheme. ECF No. 71 at 11.) The Court agrees with Defendants that Plaintiffs failed to plead at least two predicate acts as to certain Defendants.

The pattern element "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5); *see also Blake v. Dierdorff*, 856 F.2d 1365, 1370-71 (9th Cir. 1988) (finding failure to state a claim as to a particular defendant where the complaint alleged only one possible predicate act by that defendant). Moreover, "[t]o establish a RICO pattern, it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). The wire fraud statute imposes liability for those who "having devised or intended to devise and scheme or artifice to defraud, or for obtaining money. . . by means of false or fraudulent pretenses, representations, or promises. . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings. . . for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. "Wire fraud has three elements: a scheme to defraud, use of the wires in furtherance of the scheme, and the specific intent to defraud." *United States v. NcNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003).

Plaintiffs allege that Defendants "delivered literally hundreds, if not thousands of interstate and foreign wire communications in furtherance of their scheme" and "diverted

money from Plaintiffs utilizing interstate wire transfers" in violation of 18 U.S.C. § 1343, and sent forged documents via means of interstate and foreign communications for this purpose. (ECF No. 1 at 20.) As to the specific Defendants challenged in the Motion: Plaintiffs allege that Roma "was involved in facilitating communications" with Quinn, Denne, and Disruptive Technologies in furtherance of the scheme, and plead on information on belief that Disruptive Technologies transferred funds to Quinn, Denne, or other Defendants (*id.* at 8); that Martin, on behalf of Masternode, fraudulently represented in writing that Masternode had legal capacity and authority to execute the Masternode SAFT, and sold tokens without authorization while Martin and/or Masternode pocketed the token sales (*id.* at 16-17); and that Momayez and Niya transferred to UDI $1.35 million in furtherance of the scheme (*id.* at 11-12). While Plaintiffs seem to allege that Roma, Martin, Masternode, Momayez, and Niya each engaged in a singular predicate act of transferring funds, multiple predicate acts are not pled in particular as to each Defendant. To the extent that Plaintiffs object they have adequately tied predicate acts to "specific episodes" of "doctored SAFTs; forged documents; interstate wires; token sale misrepresentations; [Niya] Note assurances and reversal" that span "hundreds of communications" (ECF No. 71 at 11), that may be, but Plaintiffs failed to allege with specificity that these episodes involved transmittals via wire, and therefore failed to pled the requisite predicate acts.

Plaintiffs argue that they have adequately pled closed continuity[8] because the Complaint "alleges a two plus year course (January 2022 to at least late 2024) involving "'hundreds, if not thousands'" of interstate wires and multiple sets of victims. (ECF No. 71 at 8.) Here the Court agrees with Plaintiffs, because that the allegations contained in the Complaint show "a series of related predicates occurring over a substantial period of time." *See H.J.,* 492 U.S. at 242. Moreover, the Court disagrees with Defendants'

---

[8]Plaintiffs also allege that they had adequately pled open continuity, which the Court need not address.

11

characterization of the Complaint as only "describ[ing] a narrow scheme. . . to keep Plaintiffs on the edge of bankruptcy." (ECF No. 70 at 18.)

### 3.    Conduct

Defendants argue that Plaintiffs fail to allege that each Defendant conducted the enterprise's affairs, citing to their earlier arguments that Plaintiffs failed to define an enterprise and Plaintiffs merely allege that Defendants Roma, Martin, Masternode, Momayez and Niya were engaging in their own business affairs. (ECF No. 70 at 19-20.) As explained *supra*, the Court disagrees with Defendants' claim that Plaintiffs failed to define enterprise and merely alleged that Defendants engaged in their own business affairs.

### 4.    Proximate Cause

Defendants argue that Plaintiffs' RICO claim fails because their theory of injury is too remote and indirect and the Complaint's allegations as to other investors who were defrauded cannot support proximate cause. (ECF No. 70 at 20-21.) Plaintiffs counter that they allege direct business injuries and satisfy the required pleading threshold. (ECF No. 71 at 11-12.)

To state a claim under civil RICO, Plaintiffs are required to show that a RICO predicate offense was the proximate cause of injury. *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). "[P]roximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) (finding no proximate cause where plaintiff alleged its competitor's tax fraud allowed the competitor to undercut its prices and attract customers from plaintiff). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.

Here, Plaintiffs allege in the Complaint that Defendants' conduct in diverting "millions of investment dollars" "caused injury to UI, UDI, and Shuster's business and

property. (ECF No. 1 at 21.) Such conduct involved, among other things, selling UI shares and rights to purchase cryptocurrency that Defendants were not authorized to sell, providing investors with forged documents, misrepresenting to Shuster that funding was imminent, using false promises to convince Shuster to enter into loans detrimental to UI. (*Id.* at 7, 8, 9, 11-12, 17.) The Court finds that such allegations, viewed in the light most favorable to Plaintiffs, plausibly plead proximate cause because the alleged conduct would have directly injured Plaintiffs.

### 5. Conspiracy

Defendants argue that to the extent Plaintiffs allege a RICO conspiracy under Section 1962(d), the Complaint fails as a matter of law because Plaintiffs fail to plead that Defendants knew they were engaged in racketeering. (ECF No. 70 at 12.) Plaintiffs counter that they allege that Defendants "acted and conspired in concert" to carry out the scheme, which is sufficient to plead a RICO conspiracy. (ECF No. 71 at 21.)

Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "[C]onspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (affirming dismissal of a RICO conspiracy claim where the complaint was "bereft of any allegation of 'conspiracy' or 'agreement'") (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir.1988)).

Plaintiffs allege that "Defendants, and each of them, engaged in a conspiracy" to violate section 1962(c)[9] and that the acts of racketeering activity were "interrelated and part of a common, fraudulent scheme." (ECF No. 1 at 20-21.) They further allege that "Quinn and Denne conspired with Defendants, Momayez, [Niya] and Blockchain Funding" to convince Shuster to enter loan arrangements detrimental to UI and UDI. (*Id.* at 11.) In

---

[9]As previously discussed, Plaintiffs do not expressly plead an association-in-fact enterprise or a violation of section 1962(c), but they recite the elements of a section 1962(c) claim.

other words, Plaintiffs pled that Defendants conspired to violate RICO and that there was a common scheme, but Plaintiffs do not allege sufficient allegations to support that each Defendant was "aware of the essential nature and scope" of the conspiracy.

### 6.    Conclusion

In sum, the Court dismisses the RICO claim as to Defendants Roma, Martin, Masternode, Momayez, and Niya, and to the extent that Plaintiffs claim a RICO conspiracy. However, dismissal is without prejudice and with leave to amend because the Court is not convinced that amendment would be futile, particularly given that Plaintiffs may be able to plead additional facts to remedy the deficiency. *See Sanchez v. Los Angeles Dep't of Transp.*, 39 F.4th 548, 562 (9th Cir. 2022) (dismissal with prejudice is appropriate when "no additional facts could possibly have cured the deficiency").

### C.    Count VIII as to Defendant Roma

Defendants argue that if the RICO claim is dismissed against Roma, then the Court should decline to exercise supplemental jurisdiction over the state law tortious interference with contract claim,[10] and in the alternative, the claim fails as a matter of law because Plaintiffs essentially allege that Roma interfered with its own contract. (ECF No. 70 at 22-23.) Plaintiffs rebut that Defendants' argument is premature. (ECF No. 71 at 12-13.)

In Nevada, a tortious interference with contract claim requires "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2025) (citing *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1266 (Nev. 2003). "[A] party cannot, as a matter of law, tortiously interfere with its own contract." *Id.* (citation omitted).

---

[10]Because the Court has dismissed the RICO claim against Roma without prejudice, the Court defers judgment as to whether to exercise its supplemental jurisdiction over this claim.

Moreover, agents acting within the scope of employment cannot tortiously interfere with a contract to which the principal is a party. *Id.*

The Court finds that Plaintiffs have pled sufficient factual allegations to support their claim. Plaintiffs allege that there was a Binding Letter under which Disruptive Technologies would distribute $30 million to Sellers in exchange for UDI shares. (ECF No. 1 at 8, 27.) Roma, on information and belief, had an ownership interest in Disruptive Technologies or at least was involved in facilitating communications between Quinn, Denne, and Disruptive Technologies. (*Id.* at 8.) Right before the scheduled first payment, Quinn, Denne and Roma fabricated a story about Shuster, which caused Disruptive Technologies to withdraw from the deal. (*Id.*) To the extent that Defendants argue Plaintiffs' claim fails because Roma was working within the scope of his employment, the Court agrees with Plaintiffs that the allegations, construed in the light most favorable to them, allege that Roma acted with Quinn and Denne to further the scheme, rather than in the interest of Disruptive Technologies. (ECF No. 71 at 13); *see also Blanck*, 360 F. Supp. 2d at 1154-55 (dismissing claim where plaintiff pleaded that the defendant acted at all times "within the scope of his employment").

Accordingly, the Court denies the Motion as to the count VIII but defers judgment as to supplemental jurisdiction at this time.

### D.    Personal Jurisdiction over Martin and Masternode

Defendants argue that there is no personal jurisdiction over Martin and Masternode if the RICO claim is dismissed. (ECF No. 70 at 23-24.) Plaintiffs counter that Defendants have waived this defense by failing to plead it in their answer. (ECF No. 71 at 13.) In reply, Defendants argue that Martin preserved her affirmative defense, and Plaintiffs cite the answer that was later amended. (ECF No. 72 at 13.)

As an initial matter, the Court notes that the RICO claim against Martin and Masternode is dismissed without prejudice and with leave to amend. Accordingly, the Court defers judgment as to jurisdiction at this time. However, the Court agrees with Defendants that Martin did not waive jurisdiction as an affirmative defense (ECF No. 72

at 14) because Defendants pled this defense in the Amended Answer to the Complaint (ECF No. 48 at 19).

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion for judgment on the pleadings (ECF No. 70) is granted in part and denied in part. The Motion is granted as to count I against Defendants Roma, Martin, Masternode, Momayez, and Niya and to the extent it includes a RICO conspiracy claim without prejudice and with leave to amend. Plaintiffs will have 15 days to file an amended complaint to cure the deficiencies of this claim. Failure to file an amended complaint within 15 days will result in dismissal of this claim with prejudice against Defendants Roma, Martin, Masternode, Momayez, and Niya and as to RICO conspiracy. The Court defers judgment as to count VIII against Defendant Roma and as to personal jurisdiction as to Defendants Martin and Masternode.

DATED THIS 24th Day of June 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

16