MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a “NAZ NAMAZI,” an individual.<br><br>Defendants. | Case No.: 3:25-cv-00020-MMD-CSB<br><br>**MOTION FOR JUDGMENT ON THE PLEADINGS** |
| BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; and MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company,<br><br>Counterclaimants,<br><br>v. | |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

| |
|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia corporation; and UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation,<br><br>Counterdefendants. |

## I. INTRODUCTION AND BACKGROUND

On January 10, 2025, Brian Shuster and his company Utherverse, Inc., filed a Complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., among other claims.[1] ECF No. 1 ("Compl.") ¶¶103-161. The defendants moved for Judgment on the Pleadings on Count One (RICO) on the grounds that the Complaint failed to satisfy RICO's pleading requirements for an enterprise, a pattern, conduct of the enterprise's affairs, and proximate cause. Defendant Jeremy Roma also moved for Judgment on the Pleadings on Count Eight (Tortious Interference with Contract), on the grounds of legal insufficiency and jurisdiction. Defendants Martin and Masternode sought dismissal of the remaining counts against them due to lack of personal jurisdiction if the RICO claim is dismissed. ECF No. 70.

On June 24, 2026, the Court granted defendants' motion in part and denied it in part, holding that Plaintiffs: (a) failed to plead at least two predicate acts particular to Defendants Roma, Martin, Masternode, Momayez, and Niya; and (b) failed to sufficiently plead that each Defendant was aware of the essential nature and scope of a RICO conspiracy. The Court gave Plaintiffs 15 days to file an amended complaint to cure the aforementioned deficiencies, deferred judgment regarding Defendants' jurisdictional arguments, and denied the remaining defense arguments. ECF No. 76.

On July 9, 2026, Plaintiffs filed a First Amended Complaint ("FAC"), ECF No. 79-1, which, among other edits:

- Adds Nazanin Namazi as a defendant;
- Removes Niya Holdings, LLC, and Nima Momayez as defendants, because their alleged

[1] All terms have the same meaning as given to them in the First Amended Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

actions were "made in their names without their knowledge or authorization," FAC ¶ 13;

- Divides the original RICO count into two counts, now with specific cites to 18 U.S.C. § 1962(c) (Count One) and 18 U.S.C. 1962(d) (Count Two); and
- Adds sections entitled "Predicate Acts by Defendants" and "Section 1962(d): Knowing Agreement and Awareness of Enterprise's Scope," FAC ¶¶ 74-151.

In total, the FAC contains more than 50 new paragraphs and 30 new pages. However, nearly all of the new content and allegations refer to Defendants Brian Quinn and Joshua Denne. In fact, with regard to Movants Lynne Martin, and Jeremy Roma (together "Movants"), the FAC contains very little additional substance and suffers from the same fatal flaws as the original Complaint. For this reason, and as set forth below, Movants hereby move for dismissal of Counts One and Two as to Movants, for dismissal of Count Nine as to Roma, and for dismissal generally as to Martin for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2), 12(b)(6).

## II. ARGUMENT

### A. Legal Standard

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Wall v. NSB E. Bonanza LLC*, 2022 WL 526133, at *2 (D. Nev. Feb. 22, 2022) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Thus, to survive a Rule 12(c) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that alleges only "labels and conclusions" or a "formulaic

recitation of the elements of the cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

Additionally, when fraud or civil RICO claims are alleged, "a party must state with particularity the circumstances" giving rise to the claim. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *T1 Payments LLC v. New U Life Corp.*, 2022 WL 195111, at *12 (D. Nev. Jan. 21, 2022) ("Nevada and federal civil RICO claims sound in fraud, so Rule 9(b)'s heightened pleading standard applies."). Rule 9(b) requires that plaintiffs allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).

**B. <u>The FAC Fails to State a Claim Under RICO.</u>**

The FAC fails to state a claim under RICO for all of the reasons set forth in Defendants' Motion for Judgment on the Pleadings (ECF No. 70, incorporated herein by reference). However, this Motion to Dismiss will focus on three primary arguments: (a) that Count One fails as a matter of law with regard to Movants because the FAC fails to plead at least two predicate acts particular to each Movant, as required by 18 U.S.C. § 1961(5); (b) that Count One also fails as a matter of law with regard to Movants because the FAC fails adequately to plead that each Movant "participated in the operation or management" of the enterprise and played "some part in directing the enterprise's affairs," as required by the U.S. Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993); and (c) that Count Two fails as a matter of law with regard to Movants because it fails to adequately plead that each Movant was aware of the essential nature and scope of the enterprise and intended to participate in it, as articulated in *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**A. Count One Fails to State a Claim Under 18 U.S.C. § 1962(c).**

"To State a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima S.P.R.L. v. Imrex Co Inc.*, 473 U.S. 479, 496 (1985)). The FAC does not satisfy this standard because Plaintiffs: (a) fail to allege at least two predicate acts particular to each Movant, as required to state a "pattern;" and (b) fail to allege that each Movant "participated in the operation or management" of the enterprise and played "some part in directing the enterprise's affairs," as required of the "conduct element." *Reves*, 507 U.S. at 179, 185.

**1. Failure to Allege at Least Two Predicate Acts of Racketeering Particular to Each Movant, as Required to State a "Pattern."**

The "pattern" element requires each defendant to have participated in "at least two acts of racketeering activity." 18 U.S.C. § 1961(5); *Blake v. Dierdorff*, 856 F.2d 1365, 1370-71 (9th Cir. 1988) (dismissing Complaint as to defendant against whom only one predicate is alleged).

Any defendant who is not alleged to have participated in at least two specific acts of racketeering activity must be dismissed from the case. *Blake*, 856 F.2d at 1370-71. Further, general allegations that "defendants" – as a group – engaged in predicate acts of racketeering fail to satisfy the particularity requirement of Fed. R. Civ. P. 9(b). *See Sun Savings and Loan Assn v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987). Thus, in the *Blake* case, the Ninth Circuit Court of Appeals affirmed dismissal of a RICO claim against two defendants alleged generally to have "made and participated in the making of false financial statements and other public reports," because such allegation did not meet the requirement that fraud be pled with particularity. *Blake*, 856 F.2d at 1371; *see also Corona v. Marencik*, 2019 WL 5576939, at *2 (D. Nev. Oct. 29, 2019) ("A formulaic recitation of a cause of action with conclusory allegations is not sufficient"); *Robins v. The Wolf Firm*, 2010 WL 2817202, at *2 (D. Nev. July 15, 2010) (dismissing RICO claim because plaintiffs "failed to plead with specificity . . . how each Defendant was a part of the enterprise").

In its Order granting in part Defendants' Motion for Judgment on the Pleadings, this Court

held that Plaintiffs' original Complaint failed to allege at least two predicate acts of racketeering activity particular to movants Jeremy Roma and Lynne Martin, as follows:

> Plaintiffs allege that Defendants "delivered literally hundreds, if not thousands of interstate and foreign wire communications in furtherance of their scheme" and "diverted money from Plaintiffs utilizing interstate wire transfers" in violation of 18 U.S.C. 1343, and sent forged documents via means of interstate and foreign communications for this purpose. (ECF No. 1 at 20.) As to the specific Defendants challenged in the Motion: Plaintiffs allege that Roma "was involved in facilitating communications" with Quinn, Denne, and Disruptive Technologies in furtherance of the scheme, and plead on information on belief that Disruptive Technologies transferred funds to Quinn, Denne, or other Defendants (*id.* at 8); that Martin, on behalf of Masternode, fraudulently represented in writing that Masternode had legal capacity and authority to execute the Masternode SAFT, and sold tokens without authorization while Martin and/or Masternode pocketed the token sales (*id.* at 16-17); and that Momayez and Niya transferred to UDI $1.35 million in furtherance of the scheme (*id.* at 11-12). While Plaintiffs seem to allege that Roma, Martin, Masternode, Momayez, and Niya each engaged in a singular predicate act of transferring funds, multiple predicate acts are not pled in particular as to each Defendant. To the extent that Plaintiffs object that they have adequately tied predicate acts to "specific episodes" of "doctored SAFTs; forged documents; interstate wires; token sale misrepresentations; [Niya] Note assurances and reversal" that span "hundreds of communications" (ECF No. 71 at 11), that may be, but Plaintiffs failed to allege with specificity that these episodes involved transmittals via wire, and therefore failed to pled the requisite predicate acts.

ECF No. 76 at 10-11.

The FAC fails to rectify this flaw with regard to Martin and Roma. In fact, the FAC's efforts to highlight additional alleged predicate acts reveals Plaintiffs' inability to do so. Perhaps for this reason, Count One is pled as to Martin and Roma "in the alternative, to the extent the predicate acts alleged in Section G are attributable to them under enterprise and co-conspirator principles." FAC ¶ 154. But this allegation does not satisfy Plaintiffs' burden to plead a substantive violation of 18 U.S.C. § 1962(c), because the "pattern" element requires each defendant to have ***personally*** participated in "at least two acts of racketeering activity." 18 U.S.C. § 1961(5); *Blake*,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

856 F.2d at 1370-71. Such is not the case here.

**a. Failure to Allege at Least Two Predicate Acts Particular to Lynne Martin**

The FAC dedicates a section to alleged wire fraud predicate acts by Martin, but none of the acts qualify as wire fraud. *See* FAC ¶¶107-27; *see* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include "wire fraud" under 18 U.S.C. § 1343). "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" commits wire fraud. 18 U.S.C. § 1343. "[T]he communication must occur not only *after* the defendant's act, but *as a result of* that act. The statue requires a *causal* connection between the defendant's actions and the communication, not simply a temporal one." *United States v. Dooley*, 578 F.3d 582, 588 (7th Cir. 2009) (emphasis in the original). "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

The "SAFT-Transmittal Wire to Martin (May 23-24, 2022)" does not qualify as a wire fraud predicate. FAC ¶ 109; *see id.* ¶¶ 109-13. Plaintiffs concede that Martin only received this wire and made no transmission herself. *See id.* at 113. The only acts Martin allegedly took in furtherance of the scheme were her execution of the Masternode SAFT, unauthorized sale of tokens, and participation in litigation. *See, e.g.*, *id.* at ¶ 108 ("Masternode did not itself transmit the wires alleged in this Section. . . . Martin performed as the "Signor" that Quinn designated for the entity[.]"); ¶ 143. But the "SAFT-Transmittal Wire to Martin (May 23-24, 2022)" is alleged to have transmitted a yet-to-be executed version of the Matsernode SAFT. *See id.* ¶ 112 (alleging the wire delivered an executable" Masternode SAFT "for signature and return"). And Plaintiffs do not allege any actions by Martin before she executed the Masternode SAFT. Plaintiffs have thus failed

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

to allege any act by Martin that "caused" the "SAFT-Transmittal Wire to Martin (May 23-24, 2022)" to be delivered or to be foreseeable, and therefore it cannot serve as a wire fraud predicate as to her. Furthermore, Plaintiffs cannot fall back on their general allegations that Martin was part of a scheme to establish an act causing this or any other alleged wire fraud predicate because it would not satisfy the particularity requirement. *See Sun Sav.*, 825 F.2d at 196.

The "Advisor Investment" Funding/Wiring-Instruction Wire (May 24, 2022)" likewise does not qualify as a wire fraud predicate because Martin did not transmit it and Plaintiffs have failed to allege any act by Martin that caused it or rendered it foreseeable. *Id.* ¶ 114; *see id.* ¶¶ 114-17. Significantly, Martin is only "copie[d]" on this email wire. *See id.* ¶ 114. And the date of the wire is May 24, 2022—the day of or after Martin received the unexecuted Masternode SAFT in the "SAFT-Transmittal Wire to Martin (May 23-24, 2022)"—but Plaintiffs do not allege Martin executed the SAFT and returned it to Ari Good beforehand or engaged in any other act that could have caused this wire. *See id.* 109.

The "Quinn Signatory-Designation Wire (May 23, 2022)" is not a wire fraud predicate. *Id.* ¶ 118; *see id.* ¶¶ 118-24. Martin is neither the sender nor a recipient of this wire. *See id.* ¶ 118. The date of the wire, May 23, 2022, precedes or occurred on the same day as the (discussed above) "SAFT-Transmittal Wire to Martin (May 23-24, 2022)" and "Advisor Investment" Funding/Wiring-Instruction Wire (May 24, 2022)." *See id.* ¶¶ 109, 118. As with those wires, Plaintiffs make no allegations that Martin did anything before the "Quinn Signatory-Designation Wire (May 23, 2022)" that could have caused it or rendered it foreseeable. Indeed, the email asks Ari Good to make Martin the signor, so it precedes the earliest alleged act by Martin of executing the Masternode SAFT. *See id.* ¶ 119. Plaintiffs' passive reference to "Pinkerton/enterpirse-foreseeability" is unavailing because it is neither pled with the requisite particularity nor does it excuse the requirement that Plaintiffs must plead Martin in particular caused the wire. *See Dooley*, 578 F.3d at 588 (stating at § 1343 requires a causal connection "between the defendant's actions and the communication").

Plaintiffs' allegations under the heading "Martin's Written Capacity/Authority representation in the Executed Masternode SAFT" do not establish a wire fraud predicate. FAC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

¶ 123; *see id.* ¶¶123-24. Plaintiffs allege in conclusory fashion that Martin "returned [the Masternode SAFT] in executed form by wire on or about May 24, 2022[.]" *Id.* ¶ 123. Unlike the other wire fraud predicates alleged under the "Predicate Acts of Lynne Martin and Masternode Partners, LLC" Section, here, Plaintiffs do not allege: any specific email or other wire communication in which an executed Masternode was "returned[;]" who "returned" the wire (the allegation is in the passive voice); or how the wire was "returned." *See Vess*, 317 F.3d at 1106 (stating that Rule 9(b) requires that plaintiffs allege "the who, what, when, where, and how of the misconduct charged"). These allegations thus fail the particularity requirement. *See T1 Payments*, 2022 WL 195111, at *12; FAC ¶¶ 123-24. Nor do they alternatively show that Martin engaged in an act that caused any particular wire communication. *See* 18 U.S.C. § 1343.[2]

The last wire fraud predicate(s) Plaintiffs allege, "Unauthorized Token Sales with Retained Proceeds (on information and belief)[,]" also fails to satisfy 18 U.S.C. § 1343 because it is not particularly alleged. FAC ¶ 125; *see id.* ¶¶ 125-27. The allegations presented in support of this predicate repeatedly state that they are based on information and belief and fail to identify: any particular wires; who sent or received the wires; when the wires were sent; where the wires were sent; and how the wires were sent. *See Vess*, 317 F.3d at 1106. It also employs a strategy—recurring throughout Martin's alleged predicates—of blurring the distinction between Martin and Matsernode to present the façade of Martin potentially committing more predicate acts than can be particularly attributed to her. *See* FAC ¶ 125.

Thus, because Plaintiffs have not alleged any wire fraud predicates as to Martin, they have failed to establish she has a pattern of racketeering activity, and Plaintiffs' § 1962(c) claim must be dismissed as to her. *See id.* ¶ 127 (conceding "Plaintiffs' primary theory as to Martin and

---

[2] Additionally, Plaintiffs' allegations that Masternode knew it would be dissolved based on a tax delinquency notice are internally inconsistent. *See* FAC ¶ 124. Even assuming Masternode received a tax delinquency notice on February 2, 2022, Plaintiffs concede the previous alleged dissolution was cured on April 28, 2021, and elsewhere Plaintiffs allege that Masternode was not dissolved again thereafter until 2024. *See id.* & ¶ 40, 124. Masternode thus did not execute the Masternode SAFT (allegedly on May 24, 2022) during a period of impending inability to meet Masternode's obligations, and Plaintiffs do not allege how a delinquency notice necessitates an inference that Masternode definitively knew it could not meet its obligations when it entered into the Matsernode SAFT or knew it would not be an accredited investor. *See id.* ¶¶ 123-24.

Masternode remains the § 1962(d) claim pleaded in the Second Count; § 1962(c) is pleaded in the alternative.”).

**b. Failure to Allege at Least Two Predicate Acts Particular to Jeremy Roma**

The original Complaint alleged that Roma participated in only one predicate act, i.e., helping “fabricate[]” a story “to keep UDI in a weak position financially.” Compl. ¶ 39. Although the FAC admittedly contains a new section about alleged “Predicate Acts by Roma,” FAC ¶¶ 128-142, a careful read reveals that the new paragraphs simply readdress that same single predicate act and do not add a second.

More specifically, according to the FAC, the following allegations are “Predicate Acts by Roma”:

- “On information and belief Roma held an ownership interest in and controlled Disruptive Technology.” FAC ¶ 128. Even if true, Roma’s employment position is not a predicate act, because it is not an “act[] of racketeering activity.” 18 U.S.C. § 1961(5);
- On August 23, 2022, defendant Quinn is alleged to have sent an email to Plaintiff Shuster and to a third party named Ari Good, containing identifying data about Disruptive Technology. FAC ¶¶ 129-132. This email is discussed over four paragraphs. Roma is <u>not</u> alleged to have sent or received this email, and thus it cannot constitute a predicate act by him.
- On August 23, 2022, further emails were allegedly exchanged between Quinn, Shuster, and Good, which attached drafts of a Binding Letter of Intent. FAC ¶¶ 133-137. These emails are discussed over five paragraphs. Again, Roma is <u>not</u> alleged to have sent or received any of these emails, and thus they cannot constitute predicate acts by him. In addition, the FAC newly reveals that Roma is <u>not</u> alleged to have signed or executed the Binding Letter of Intent. In fact, the FAC contains no allegation that Roma was involved in these exchanges whatsoever.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

- In late-August and September 2022, Quinn allegedly sent an email to Shuster, falsely stating that a disgruntled former associate had contacted Disruptive Technology with negative information about Shuster, causing Disruptive Technology to withdraw from the deal. Roma is not alleged to have sent or received this email, and thus it cannot be a predicate act by him. FAC ¶¶ 138-141.
- Roma participated in a meeting at which the aforementioned story was "jointly authored" by him and other defendants. FAC ¶ 138. This did and does continue to reflect the sole predicate act allegedly committed by Roma, as held by the Court (ECF No. 76 at 11), though stretched over four paragraphs. FAC ¶¶ 138-141.

In sum, all of the above allegations amount to nothing more than a lengthier retelling of the single predicate act from the original Complaint, which this Court previously held was insufficient. No second predicate act is alleged.

The "Predicate Acts by Roma" section of the FAC does conclude with one additional paragraph confusingly entitled: "Predicate Acts (corroborative of pattern and intent): The parallel Roma/Daisy $40 million sham 'purchase.'" FAC ¶ 142. This allegation claims that another Roma-affiliated company was "was placed on Utherverse paperwork . . . produced no funds and was quietly 'canceled,'" and that a "'test' transfer of cryptocurrency in the amount of $66 was sent to Utherverse . . . on information and belief directed by Roma and Quinn." FAC ¶ 142. This allegation – supposedly "corroborative of pattern and intent," accompanied by an untethered quote by Shuster about the deal having fallen through, and devoid of any particular act by Roma personally – is confusing as to its meaning and its significance, and is certainly insufficient under the heightened pleading requirements of Rule 9(b).

In conclusion, the FAC does not articulate two predicate acts particular to Roma, and for this reason Count One must be dismissed as to him.

**2. Failure to Plead that Movants Participated in the Operation or Management of the Enterprise and Played Some Part in Directing Its Affairs, as Required by the "Conduct" Element.**

Plaintiffs' original Complaint failed to clarify under which section of RICO the Plaintiffs were proceeding. The FAC rectifies this issue by citing in Count One to 18 U.S.C. § 1962(c), but



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

in doing so highlights Plaintiffs' failure to state a claim in light of the "conduct" requirement of that section.

Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In other words, while section 1962(a) of RICO prohibits investment of racketeering income, and section 1962(b) prohibits acquisition or control over an enterprise through a pattern of racketeering activity, section 1962(c) very specifically prohibits anyone associated with an enterprise from "conduct[ing] or participat[ing] . . . in the conduct of such enterprise's affairs" through a pattern of racketeering activity. *Id*.

The U.S. Supreme Court has interpreted this "conduct" requirement to mean that each defendant must have "participated in the operation or management" of the enterprise and played "some part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179, 185. A section 1962(c) claim thus must allege that each defendant "had a requisite degree of control over [the enterprise's] operation or management." *Adams v. Silar Advisors, LP*, 2013 WL 1104787, at *3 (D. Nev. March 11, 2013); *see also Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996) (dismissing RICO claim against defendant who benefited from RICO enterprise but did not manage it); *Baumer*, 8 F3d at 1344 (dismissing section 1962(c) claim because defendant's role was "at best sporadic, . . . [n]or did he play any part in directing the affairs of the enterprise"); *Atlantic-Pacific Processing Systems NV Corp. v. Plaut*, 2023 WL 2744660, at *7-8 (D. Nev. March 31, 2023) (dismissing 1962(c) claim because a blanket statement that defendants participated in the operation or management of the enterprise is merely conclusory and not sufficiently particular to satisfy Rule 9(b)); *Adams*, 2013 WL 1104787, at *3 (granting motion to dismiss RICO claim because defendant was part of an enterprise and "provided services" to it, but did not have a role in its management nor rise to the level of direction) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)).

In this case, Plaintiffs' FAC allegations – though lengthy – are entirely devoid of any

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

allegation or indication that Movants participated in the operation or management of the alleged "Quinn-Denne Enterprise" and played some part in directing its affairs. In fact, FAC ¶ 71 explicitly alleges that only Quinn and Denne organized and directed the enterprise. In comparison, Martin and Roma are described as having "served as counterparties, signatories, and nominees." FAC ¶ 71. This is insufficient, especially in light of the heightened pleading requirements of Rule 9(b).

More specifically, and looking at the FAC in its entirety, Lynne Martin is alleged only to have received or been copied on emails, executed the Masternode SAFT, later sold tokens without authorization, and participated in litigation. *See, e.g.*, ¶¶ 107-27, 143. The only item on this list that arguably constituted controlling the enterprise's affairs would be selling tokens without authorization; but, as discussed, the allegations about Martin doing so are made on information and belief and with no particularity whatsoever. *See, e.g.*, *id.* ¶ 125; *Vess*, 317 F.3d at 1106; *Walter*, 538 F.3d at 1249 (holding that an attorney and her law firm did not satisfy the conduct requirement of section 1962(c) by participating in litigation).

Jeremy Roma is also alleged to have had only an attenuated connection to the alleged "Quinn-Denne Enterprise." His total and complete alleged involvement is as follows:

- Roma is alleged to have had an ownership interest in and control of Disruptive Technologies;
- Disruptive Technologies is alleged to have executed a Binding Letter of Intent, which Roma allegedly knew about but did not sign;
- Roma is alleged to have participated in a meeting at which a false story was generated about a disgruntled former associate, which story Quinn and Denne then used to explain Disruptive Technology's decision not to finalize the deal; and
- Quinn, Denne, and other defendants (<u>not</u> Roma) allegedly gave forged documents and false assurances to Disruptive Technology and other investors.

FAC ¶¶ 48-51, 128-151.

Roma is not alleged to have played any role in the alleged Quinn-Denne Enterprise beyond the aforementioned single occurrence. He is not alleged to have participated in its operation or

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

management, nor do the allegations support any inference that Roma designed its fraudulent plan, put it into action, knew its scope, or played any part in directing its affairs, as required by *Reves*, 507 U.S. at 179, 185.

In sum, taking all of the allegations as true, Plaintiffs do not articulate any theory under which Movants could be found to have participated in the "operation or management" or directed the affairs of an alleged Quinn-Denne enterprise. For this reason, the FAC does not and cannot satisfy the "conduct" requirement of RICO, and Count One must be dismissed as to Movants. *Reves*, 507 U.S. 170; *Pedrina*, 97 F.3d at 1301; *Baumer*, 8 F3d at 1344.

**B. <u>Count Two Fails to State a Claim Under 18 U.S.C. § 1962(d).</u>**

Count Two alleges that defendants participated in a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). A RICO conspiracy requires defendants to have been "aware of the essential nature and scope of the enterprise and intend[] to participate in it." *Baumer v. Pachl*, 8 F.3d at 1346 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)); *see also* ECF No. 76 at 13 (quoting *Baumer*); *Salinas v. United States*, 522 U.S. 52, 65 (1997) (RICO conspiracy statute requires that each defendant "knew about and agreed to facilitate the scheme," but does not require each actor to "commit or agree to commit the two or more predicate acts").

The Court dismissed Plaintiffs' original RICO claim for failure to satisfy this requirement, ECF 76 at 14, and the FAC should fare no better as to Movants. In fact, as detailed below, the FAC's new section entitled "Section 1962(d): Knowing Agreement and Awareness of the Enterprise's Scope" serves only to illustrate Plaintiffs inability to adequately plead awareness and intent. FAC ¶¶ 143-151.

**1. Failure to Allege Facts Indicating that Lynne Martin Was Aware of the Essential Nature and Scope of the Enterprise and Intended to Participate In It.**

Plaintiffs fail to make non-conclusory allegations to support an inference that Martin knew about and agreed to facilitate Quinn and Denne's alleged scheme. *See Salinas*, 522 U.S. at 65. Plaintiffs assert Martin's familial relationship to Denne; her only connection to "metaverse/crypto" ventures being through Denne; Denne discussing his mother with Shuster; and Denne keeping

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Martin informed about "Utherverse dealings" as grounds for Martin's knowledge and agreement. *See* FAC ¶¶ 39, 143. None of these allegations indicate that Martin was aware of and agreed to participate in a greater scheme to defraud and bankrupt Plaintiffs. The only basis for Martin's knowledge and agreement in the FAC is Plaintiffs' repeated conclusory assertion that Martin had knowledge. *See, e.g.*, *id.* ¶ 143 ("These facts support the inference that Martin knew the enterprise's fraudulent aims and knowingly agreed to further them[.]"). Plaintiffs allege only one specific communication that could possibly satisfy the particularity requirement, but the content of the message is only Denne saying he "told [his] mom the same thing[,]" which says nothing about Martin's knowledge of or agreement to the alleged scheme. *Id.* ¶ 143; *See Vess*, 317 F.3d at 1106.

Furthermore, as discussed in footnote 2 *supra*, the allegation that Martin misrepresented Masternode's capacity to execute the Masternode SAFT is belied by other allegations in the FAC reflecting that Masternode had no reason to believe it would be dissolved or unaccredited at the time Martin allegedly executed the SAFT. *See id.* ¶¶ 39-40, 123-24, 143. In any event, the FAC does not explain how Martin's alleged misrepresentation about Masternode's capacity to enter into the Masternode SAFT relates to Quinn and Denne's scheme such that Martin's knowledge of the scheme follows from the misrepresentation.

Plaintiffs baldly assert on information and belief that Martin knew the tokens would not be minted and that she knew Plaintiffs would owe the purchase price, which furthered Quinn and Denne's scheme to load Plaintiffs with debt. *See id.* ¶¶ 40, 143. It does not follow—short of making a conclusory inference—from Martin knowing that Plaintiffs would fail to mint tokens that she knew of and agreed to participate in some larger scheme. Regardless, these allegations about Martin's awareness of Plaintiffs' inevitable failure to mint tokens are not pled with sufficient particularity. *See Vess*, 317 F.3d at 1106. The FAC provides no communications or other specific details reflecting Martin's intentions behind entering into the Masternode SAFT.

Plaintiffs repeatedly assert that Masternode and Martin sold tokens without authorization and pocketed the proceeds. *See, e.g.*, FAC ¶¶ 40, 125-26, 143. These allegations are entirely conclusory and supported by no particular allegations. *See Vess*, 317 F.3d at 1106. There are no allegations of communications, banking activity, dates, or other information supporting Martin's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

alleged sales, much less her intent behind making the alleged sales.

Plaintiffs allege that Martin "served as . . . [a] signator[y]" in the enterprise. *See* FAC ¶ 71; *see also id.* ¶¶ 108, 143. The only document to which Martin is alleged to be a signatory is the Masternode SAFT. *See id.* ¶ 123. Only by crediting Plaintiffs' impermissibly conclusory allegations about Martin's involvement and flouting the particularity requirement could Martin simply signing the Masternode SAFT equate to her having knowledge of and agreeing to participate in Quinn and Denne's alleged scheme. *See Vess*, 317 F.3d at 1106. Plaintiffs allege no communications or instances from which Martin's intentions behind executing the Masternode SAFT can be inferred.

Martin is alleged to have been the recipient of or copied on emails regarding the execution of the Masternode SAFT. *See* FAC ¶¶ 107-22, 143. These allegations do not establish Martin's knowledge of or agreement to the alleged scheme. The content of the emails only concerns executing the Masternode SAFT, *see id.* ¶¶ 107-22, which, as discussed, Plaintiffs only link to Quinn and Denne's scheme through conclusory allegations that do not satisfy the particularity requirement. *See Vess*, 317 F.3d at 1106. Plaintiffs' allegation that Martin receiving these emails should have prompted her to disavow the scheme is circular: the emails and wire do not evince any scheme, so she could not have had knowledge of anything to disavow. *See* FAC ¶ 143.

Plaintiffs allege that Martin and Masternode being parties to the Orange County litigation constituted participation in Quinn and Denne's scheme such that knowledge of the scheme may be imputed to her. *See id.* ¶ 143. Plaintiffs' leap in logic from Martin merely participating in litigation to Martin having knowledge of a scheme by Quinn and Denne is asserted in conclusory fashion and without any elaboration. Moreover, Plaintiffs make no particular allegations supporting it, such as communications or conduct by Martin reflecting that she became aware that Quinn or Denne intended the Orange County action to be a part of any scheme. *See Vess*, 317 F.3d at 1106.

**2. Failure to Allege Facts Indicating that Jeremy Roma Was Aware of the Essential Nature and Scope of the Enterprise and Intended to Participate In It.**

The FAC contains a section entitled "Roma's Awareness of and Agreement to Further the Enterprise," which is eight paragraphs long but which entirely fails to allege facts about Roma's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

awareness of the nature and scope of the enterprise or his intent to participate in it. This section of the FAC alleges, and only alleges, as follows:

- "Roma knew of and agreed to the essential nature and objectives of the enterprise's scheme to defraud investors and Plaintiffs, and knowingly agreed to facilitate it." FAC ¶ 144.
- "Roma is a sophisticated, repeat architect of investment-fraud schemes," namely two alleged crypto programs which allegedly came under government scrutiny but which are not alleged to have been part of the Quinn-Dunne enterprise nor even involved any of the other defendants. FAC ¶ 144.
- "On information and belief Roma owned and controlled the Disruptive Technology shell." FAC ¶ 145.
- "Roma is alleged to have collaborated with Quinn and Denne to fabricate the 'disgruntled former associate' narrative." FAC ¶ 146.
- Roma "supplied his Daisy network as a source of credibility and investor access to the enterprise and continued partnering with Denne thereafter." FAC ¶ 147.
- "On information and belief Roma, together with Quinn and Denne, helped funnel monies raised through Disruptive Technology and diverted token pre-sale and stock-sale proceeds into the conspirators' own accounts." FAC ¶ 148.
- Email communications by Quinn and Denne with Shuster indicated that they spoke with Roma about the Disruptive Technology offer. FAC ¶ 149.
- On August 8, 2024, "defendants" (not including Roma) sent an email to Utherverse, stating that Roma had agreed to "a capital raise of $25MM" but then "understandably reversed course" after Shuster's disgruntled associate reported negative things about Shuster. FAC ¶ 150.
- "Taken together, these facts establish that Roma knowingly agreed that a member of the conspiracy would commit the predicate acts of wire fraud alleged above." FAC ¶ 151.

As set forth above, these eight paragraphs, when read carefully, say nothing about Roma's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

awareness and intent with regard to the nature and scope of the alleged Quinn-Denne enterprise, nor his intent to participate in it, as required. The first and last paragraph contain conclusory allegations devoid of facts, and thus are insufficient to satisfy Plaintiffs' burden to plead with particularity. The "prior bad acts" allegation also contains no facts regarding Roma's awareness and intent with regard to the alleged Quinn-Denne enterprise. And the remaining paragraphs are limited to what is said elsewhere in the FAC, i.e., that Roma's involvement – taking Plaintiffs' allegations as true – was limited to helping fabricate a story in order to avoid having to go through with an investment. The FAC does not, however, allege that Roma knew about the essential nature and scope of an alleged Quinn-Denne enterprise, about Quinn's and Denne's alleged plan to keep Plaintiffs on the brink of bankruptcy, or about Quinn's and Denne's alleged plan to defraud anyone, nor that Roma intended to participate in such an enterprise. For all of the above reasons, Count Two must be dismissed as to Roma.

**C. <u>Count Nine Should Be Dismissed as Against Roma.</u>**

If the RICO Claims are dismissed as against Jeremy Roma, then the only remaining claim against him (Count Nine, Tortious Interference with Contract) is a state law claim over which this Court should decline to exercise jurisdiction in the interest of justice, thus dismissing him from the case.

Without the broad jurisdictional reach of the RICO Act, Plaintiffs would not have had jurisdictional grounds to include Roma in this lawsuit. A nonresident may be sued in Nevada only when he has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Bakewell v. Streaming Solutions LLC*, 2022 WL 17833337, at *1 (D. Nev. Dec. 21, 2022) (recognizing that this Court need only "address federal due process standards" because Nevada's "long-arm" statute applies to the full extent permitted by the due process clause). In this case, as in *Walden*, there is simply no connection between Roma and the state of Nevada. As set forth in the FAC, Roma is a resident of California, does business in California, and has a residence in Dubai. FAC ¶ 11. Plaintiffs thus cannot articulate a basis to sue Roma in Nevada but for the RICO Claims which, as

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

stated above, are legally insufficient as against Roma.

Under 28 U.S.C. § 1367 (Supplemental Jurisdiction), a district court may decline to exercise supplemental jurisdiction over a state law claim if the court "has dismissed all claims over which it has original jurisdiction" or for any other compelling reason. Such a declination would be in the interest of justice here, because the Court's original jurisdiction over Roma was based on grossly insufficient and weak RICO claims that should never have been brought.

In the alternative, Count Nine should be dismissed as against Roma because it fails as a matter of law. Plaintiffs allege that Roma tortiously interfered with an alleged contract between Plaintiffs and Disruptive Technology, in which Roma "has an ownership interest."[3] FAC ¶ 49. In Nevada, "a party cannot, as a matter of law, tortiously interfere with its own contract." *Blanck v. Hager*, 360 F. Supp.2d 1137, 1154 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*, 81 Nev. 325, 402 P.2d 650, 651 (1965)), *aff'd*, 220 Fed.Appx. 697 (9th Cir. 2007). Further, agents acting within the scope of employment cannot tortiously interfere with a contract to which the principal is party. *Id*.

In its opinion on Defendants' Motion for Judgment on the Pleadings, the Court ruled that the allegations, construed in the light most favorable to Plaintiffs, survive dismissal because they "allege that Roma acted with Quinn and Denne to further the scheme, rather than in the interest of Disruptive Technologies." Plaintiffs embrace this finding in the FAC, now alleging explicitly that Roma was not acting within the scope of his corporate role, and that he was "a stranger to the contract for purposes of this Count and enjoys no privilege or immunity arising from any relationship with Disruptive Technology." FAC ¶ 211.

However, this allegation no longer rings true in light of Plaintiffs' lengthier RICO allegations set forth in the FAC. Both Plaintiffs' RICO claims against Roma rely upon his ability to control Disruptive Technology, an alleged "shell" used by Roma to do his bidding. FAC ¶ 128. Thus, plaintiffs' conclusory allegation in Count Nine that Roma was "a stranger to the contract for purposes of this Count" contradicts their factual allegations and is therefore insufficient to prevent

---

[3] Defendants deny that Roma has an ownership interest in Disruptive Technologies, but presume the truth of the allegations that he does have such interest for the purposes of this Motion.

dismissal. FAC ¶ 211.

In sum, the FAC makes clear that Roma is alleged to have used his control over his "shell" company Disruptive Technology to have tortiously interfered with its own contract, which cannot form the basis of a claim. *Blanck*, 360 F. Supp.2d at 1154. For all of these reasons, Count Nine should be dismissed as against Roma.

### D. <u>This Court Lacks Personal Jurisdiction Over Martin if the RICO Claims are Dismissed.</u>

Just as there is no personal jurisdiction over Roma in the absence of overarching RICO claims, nor is there personal jurisdiction over Martin if the RICO claims are dismissed. *See Walden*, 571 U.S. at 283.

Plaintiffs allege that Martin in a resident of California. *See* FAC ¶ 10. The FAC does not allege any contacts by Martin with Nevada. Martin is not alleged to have executed the Masternode SAFT in Nevada. *See, e.g.*, *id.* ¶¶ 123, 143. None of the alleged emails or communications in which Martin is a recipient or copied are alleged to have been sent or received in Nevada. *See id.* ¶¶ 107-27. And Martin is not alleged to have made unauthorized sales of tokens in or to anyone residing in Nevada. *See, e.g.*, *id.* ¶ 125.

As stated, this Court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction or for any other compelling reason. *See* 28 U.S.C. § 1367. Declining to exercise supplemental jurisdiction over Martin is warranted as to the remaining state law claims against Martin for fraud in the inducement, fraud/intentional misrepresentation, and conversion (counts III-V) because Martin's relationship to this case is extremely tenuous. After removing all of the conclusory and non-particular allegations against Martin, her involvement distills to executing the Masternode SAFT and being related to Denne. It would not serve justice to keep Martin in this litigation just for being Denne's mother and signing an agreement under which Martin is not alleged to have failed to perform.

### E. <u>Dismissal Should Be With Prejudice.</u>

Dismissal of a claim with prejudice is appropriate where further amendment would be futile. *Sanchez v. Los Angeles Dep't of Transp.*, 39 F.4th 548, 562 (9th Cir. 2022) (dismissal with

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

prejudice is appropriate when "no additional facts could possibly have cured the deficiency"). In this case, Plaintiffs have demonstrated their inability – despite more than 50 new paragraphs and 30 new pages, to state a claim entitling Plaintiffs to relief against Movants.

It is appropriate for this Court to consider "prejudice to the opposing party" when deciding whether to grant Plaintiffs leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Allowing Plaintiffs a second opportunity to amend their claims would work great prejudice to Movants, against whom the RICO claims (and thus any claim of personal jurisdiction) are truly feeble. Upon dismissal of the RICO claims, Roma and Martin should be released from the case entirely, and therefore dismissal with prejudice of this irremediable claim would be in the interest of justice.

For these reasons, as well as all articulated above, Movants seeks dismissal with prejudice. *Coronovirus Reporter v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (leave to amend appropriately denied when it would be futile); *Sanchez*, 39 F.4th at 562.

## III. CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court dismiss the following claims with prejudice: (a) Count One (RICO) as against Movants; (b) Count Two (RICO Conspiracy) as against Movants; (c) Count Nine (Tortious Interference with Contract) as against Jeremy Roma; and (d) all claims as to defendants Lynne Martin for lack of personal jurisdiction.

DATED this 18th day of August, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendant Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **MOTION FOR JUDGMENT ON THE PLEADINGS** was served via electronic service on the 18th day of August, 2026.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP