JAMES PUZEY (NV SBN 05745)
jpuzey@nvlawfirm.com
KEARNEY PUZEY DAMONTE
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700

SHERRIE M. FLYNN (*Pro Hac Vice*)
sflynn@ch-law.com
ROBERT K. ASHLEY (*Pro Hac Vice*)
rashley@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiffs and Counter-Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA – RENO DIVISION**

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming limited liability company; MASTERNODE PARTNERS, LLC, a Wyoming limited liability company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a "NAZ NAMAZI," an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCOMPLAINT. | Case No. 3:25-cv-00020-MMD-CSD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS LYNNE MARTIN AND JEREMY ROMA'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 89)**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025 |

Plaintiffs, Utherverse, Inc. ("UI") and Brian Shuster ("Shuster"), respectfully submit their Opposition Brief to Defendants' Motion for Judgment on the Pleadings.

## I. INTRODUCTION

This is Movants' second attempt to leave a case whose core this Court has already sustained. In June, the Court held that Plaintiffs adequately pleaded a RICO enterprise, a pattern with closed-ended continuity, the conduct element, and proximate cause. ECF No. 76 at 8–13, reported at *Utherverse, Inc. v. Quinn*, 2026 WL 1831729 (D. Nev. June 24, 2026). It denied outright the motion to dismiss the tortious-interference claim against Defendant Jeremy Roma ("Roma"), expressly rejecting the same "own contract" theory Movants press again here. *Id*. at 14–15. The Court identified two — and only two — curable defects as to Roma and Defendant Lynne Martin ("Martin," and together with Roma, "Movants"): Plaintiffs had "failed to allege with specificity that these episodes involved transmittals via wire" (*id*. at 11), and had not pleaded each Movant's awareness of "the essential nature and scope" of the conspiracy (*id*. at 13–14).

The First Amended Complaint (ECF No. 83; the "FAC") cures precisely those defects. Where the original Complaint referred generically to "hundreds" of communications, the FAC now pleads specific wires by date, clock time to the second, time zone, sender address, recipient address, subject line, attachment file name, verbatim content, and the state and national boundaries each transmission crossed. FAC ¶¶ 107–142. And the FAC adds a dedicated section pleading each Movant's knowing agreement and awareness. *Id*. ¶¶ 143–151. That is what the Court asked for, and it is what the FAC delivers.

Movants' answer is to re-argue what they lost and to misstate the law on what they did not. Four errors run through the Motion.

First, much of the Motion is an unacknowledged motion for reconsideration. This Court denied the tortious-interference motion on the merits and rejected Movants' conduct-element argument. ECF No. 76 at 12, 14–15. Movants identify no intervening authority, no new facts, and no clear error.

Second, Movants misstate the wire-fraud statute. Their refrain — that a wire cannot be a predicate because a Movant "is not alleged to have sent or received" it — omits the statute's operative

verbs. Section 1343 reaches whoever "transmits ***or causes to be transmitted***." 18 U.S.C. § 1343 (emphasis added). Movants' own authority says so: under *Pereira v. United States*, 347 U.S. 1, 8–9 (1954), which Movants cite, a defendant "causes" the use of the wires whenever that use "can reasonably be foreseen, even though not actually intended."

Third, Movants apply the wrong legal standard to the RICO conspiracy count. They argue that Movants did not "participate[] in the operation or management" of the enterprise under *Reves v. Ernst & Young*, 507 U.S. 170 (1993). But the Ninth Circuit has squarely held that the *Reves* operation-or-management test does not apply to a defendant charged under § 1962(d). United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004). A defendant is liable under § 1962(d) if she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Id*. (quoting Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001)). Movants also demand Rule 9(b) particularity for state of mind — the one thing Rule 9(b) expressly permits to "be alleged generally."

Fourth, Movants' jurisdictional argument is expressly conditional — it applies only "if the RICO claims are dismissed" — and so never ripens. It is also wrong on its own terms: RICO authorizes nationwide service of process, 18 U.S.C. § 1965(b), and Martin is a United States resident. Movants' request that the Court decline supplemental jurisdiction fails for a simpler reason still: 28 U.S.C. § 1367(c)(3) applies only where a court "has dismissed all claims over which it has original jurisdiction," and the RICO claims against Quinn, Denne, Blockchain Funding, Blockchain Alliance, and Namazi are not challenged here and will remain.

The Motion should be denied in its entirety.

## II. RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed suit on January 10, 2025. ECF No. 1. Defendants answered and counterclaimed (ECF Nos. 30, 48), and moved for judgment on the pleadings (ECF No. 70).

On June 24, 2026, the Court granted that motion in part and denied it in part. ECF No. 76. The Court sustained the enterprise allegations (*id*. at 8–10); sustained closed-ended continuity (*id*. at 11–12); rejected Defendants' conduct-element argument (*id*. at 12); and sustained proximate cause (*id*. at 12–13). It dismissed Count I as to Roma, Martin, Masternode, Momayez, and Niya, and

dismissed the conspiracy theory, in both instances without prejudice and with leave to amend, because the Court was "not convinced that amendment would be futile." *Id.* at 14. As to Count VIII (tortious interference) against Roma, the Court denied the motion, deferring only the discretionary question of supplemental jurisdiction. *Id.* at 15. It likewise deferred the jurisdictional question as to Martin and Masternode. *Id.*

Plaintiffs timely moved for leave to amend on July 9, 2026. ECF No. 79. The Court granted leave, and the FAC was filed on July 14, 2026. ECF Nos. 82, 83. Plaintiffs separately dismissed the Momayez Parties. ECF No. 82. The FAC expands the pleading from 161 to 216 paragraphs and adds two sections responsive to the Court's order: "Predicate Acts by Defendants" (FAC ¶¶ 74–142) and "Section 1962(d): Knowing Agreement and Awareness of the Enterprise's Scope" (*id.* ¶¶ 143–151).

Movants obtained a stipulated extension to respond. ECF Nos. 86, 87. On August 18, 2026, they filed an Answer and Amended Counterclaim (ECF No. 88), and the same day, the present Motion, ECF No. 89.

Two features of the Motion warrant note at the outset. First, although styled under Rule 12(c), the Motion invokes Rules 12(b)(2) and 12(b)(6) (ECF No. 89 at 3), which by their terms must be raised "before pleading." Fed. R. Civ. P. 12(b). Movants having pleaded (ECF No. 48), the Rule 12(c) standard governs, and under it the FAC's allegations are accepted as true. Second, the Motion purports to "incorporate[] herein by reference" the entirety of Defendants' earlier motion, ECF No. 89 at 4 (citing ECF No. 70). Incorporation by reference cannot be used to exceed LR 7–3's page limitation or to revive arguments this Court has already rejected, and the Court should decline to consider arguments not actually briefed in the Motion. Movants also direct their Motion at ECF No. 79–1, the lodged copy of the proposed FAC, rather than the operative pleading at ECF No. 83; the paragraph numbering is identical, and Plaintiffs cite the operative pleading throughout.

## III. LEGAL STANDARD

On a Rule 12(c) motion the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the non-movant. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment is proper only if, taking the pleadings as true, the movant is entitled to judgment as a matter of law. *Id.*

RICO is to be "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985); accord *Odom v. Microsoft Corp*., 486 F.3d 541, 547 (9th Cir. 2007) (en banc).

Rule 9(b) requires particularity as to "the circumstances constituting fraud." But the same Rule provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This Court has framed the inquiry functionally: "[a]s long as the complaint sufficiently describes the circumstances of the alleged fraud so that Defendants are able to understand them and respond, the complaint meets the particularity requirement of Rule 9(b)." *Martinez v. MXI Corp.*, 2016 WL 951430, at *5 (D. Nev. Mar. 9, 2016), citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The Rule is further relaxed as to matters "peculiarly within the defendant's knowledge"; there a plaintiff may plead on information and belief so long as the pleading states the factual basis for the belief. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Finally, a pleading may state claims "alternatively or hypothetically," and a party "may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3).

## IV. DISCUSSION

### A. Much Of The Motion Is An Unacknowledged Motion For Reconsideration.

The law of the case doctrine "generally preclude[s] [a court] from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). A court departs from a prior ruling only on substantially different evidence, intervening controlling authority, or a conviction that the earlier decision was clearly erroneous and would work manifest injustice. *Id*. at 155. Movants invoke none of these.

The conduct element. Defendants argued in ECF No. 70 that Plaintiffs "fail[ed] to allege that each Defendant conducted the enterprise's affairs" and that Roma, Martin, and Masternode "were engaging in their own business affairs." The Court rejected that argument. ECF No. 76 at 12. Movants now repackage the identical contention under *Reves*. A losing argument does not improve by recaptioning.

Count Nine. The Court squarely denied the motion to dismiss the tortious-interference claim,

holding that "Plaintiffs have pled sufficient factual allegations to support their claim," and specifically rejecting the agent-immunity theory because the allegations "allege that Roma acted with Quinn and Denne to further the scheme, rather than in the interest of Disruptive Technologies." ECF No. 76 at 14–15. Movants say this "no longer rings true" because the FAC alleges Roma owned and controlled Disruptive. ECF No. 89 at 19. But the original Complaint alleged the very same thing — the Court's order recites that "Roma, on information and belief, had an ownership interest in Disruptive Technologies," ECF No. 76 at 15 — and the Court denied the motion anyway. Nothing has changed except the outcome Movants seek.

**B. The FAC Pleads Multiple Particularized Wire-Fraud Predicates As To Each Movant.**

**1. The Court's prior holding was narrow, and the FAC answers it.**

The Court did not hold that no predicate acts were alleged. It held that Plaintiffs "failed to allege with specificity that these episodes involved transmittals via wire." ECF No. 76 at 11. The FAC responds with the specificity the Court required. It does not gesture at "hundreds" of communications; it identifies particular messages, at particular times, between particular addresses, with particular attachments and quoted content.

**2. Movants misstate § 1343 by requiring that the defendant personally send or receive the wire.**

Movants' central premise — repeated for nearly every predicate — is that a wire cannot count because a Movant "is not alleged to have sent or received" it. See, e.g., ECF No. 89 at 10. That is not the statute. Section 1343 reaches one who "transmits or causes to be transmitted." 18 U.S.C. § 1343.

The governing case is Movants' own citation. Under *Pereira*, "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." 347 U.S. at 8–9. And under *Schmuck v. United States*, 489 U.S. 705 (1989), the transmission need not be made by the defendant, need not itself contain any falsehood, and need only be "incident to an essential part of the scheme." *Id*. at 710–11, 714–15. Movants' contrary authority, *United States v. Dooley*, 578 F.3d 582, 588 (7th Cir. 2009), is an out-of-circuit criminal decision addressing

whether a particular communication resulted from the defendant's act; it does not displace *Pereira* and *Schmuck*, which bind this Court.

**3. *Blake v. Dierdorff*, Movants' lead authority, holds the opposite of what they say.**

Movants rest their pattern argument on *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988), for the proposition that "[a]ny defendant who is not alleged to have participated in at least two specific acts of racketeering activity must be dismissed." ECF No. 89 at 5. *Blake* does not say that. *Blake* reversed dismissal as to nine defendants and affirmed as to four. 856 F.2d at 1372.

*Blake* itself defeats Movants' categorical reading. It reversed dismissal of the claims against Ernest Leff and Leff & Mason even though "some of these allegations do not deal specifically with mail or wire fraud," because those allegations linked them to Sun Savings' management and were "sufficiently particular to show they may have conducted or participated, either directly or indirectly," in the issuance of false statements, press releases, and reports. 856 F.2d at 1372. *Blake* requires a fact-specific Rule 9(b) analysis; it does not announce the categorical rule Movants attribute to it.

The four defendants *Blake* did dismiss are nothing like Movants. Greenfield joined the board after every alleged misstatement was made, and the complaint alleged "only one possible predicate act" — a single oral remark. *Id*. at 1370–71. The allegations against Arthur Young and Kenneth Clare concerned a single annual audit and so established no pattern. *Id*. at 1371. And Grosvenor was described only as having "participated in the wrongs complained of herein," with "no specific allegations about his individual knowledge of or participation in any fraudulent scheme." *Id*. at 1372. Movants, by contrast, are alleged to have participated in a continuing scheme through conduct pleaded with dates, times, addresses, and quoted text.

**4. Martin.**

The FAC pleads the following, each accepted as true at this stage:

(a) The SAFT-Transmittal Wire (May 23, 2022). At 6:28 p.m. Pacific Daylight Time, transactional counsel Ari Good (info@goodattorneysatlaw.com) emailed Martin directly at lynnecmartin@gmail.com, and Brian Shuster in Vancouver, British Columbia, copying Quinn, under the subject line "SAFT for Masternode Partners, LLC," attaching the executable "Combined

Masternode Partners SAFT.pdf," and instructing: "Hello Lynne, Brian — Would you please find attached the SAFT between Masternode Partners, LLC and Utherverse International Ltd. Please print, scan and return to me. I prefer manual signatures because the agreement was established on 10 May, and I don't want a DocuSign stamp after that." FAC ¶¶ 109–113. Martin is a named direct addressee, and the transmission crossed state and national lines. *Id.* ¶ 111.

(b) The Advisor-Investments Funding and Wiring-Instruction Wire (May 24, 2022). At 3:18 p.m. PDT (22:18:42 UTC), Good emailed Quinn and Shuster, copying Martin at the same address, attaching "HSBC Wire Transfer UDI USD (legend) (2).docx," fixing "Masternode Partners, LLC — $5,000.01" as the funding amount, and supplying wire mechanics routing an HSBC Bank Canada (Vancouver) USD transfer through a New York intermediary via SWIFT. FAC ¶¶ 114–117.

(c) Martin's own written capacity-and-authority misrepresentation. Executing as Masternode's designated "Signor," Martin represented in writing that Masternode possessed full legal capacity and authority to enter into and perform the SAFT — a representation the FAC alleges was false, and which induced UI Ltd. to recognize a 150,000,000-token allocation for $5,000.01 and to incur the corresponding repurchase obligation. FAC ¶¶ 123–124. The instrument embodying that representation was transmitted in interstate and foreign commerce by email between California and British Columbia. *Id.* ¶ 123.

(d) Unauthorized token sales with retained proceeds, pleaded on information and belief. FAC ¶¶ 125–126.

Movants' objection to (a) and (b) is that Martin only received them. But Martin agreed to serve as Masternode's signatory, and Quinn designated her as such. FAC ¶¶ 119, 143. Having accepted that role, the delivery of the instrument to her for signature, and of the funding and wiring instructions that accompanied it, were not merely foreseeable — they were the necessary mechanics of the role she accepted. *Pereira*, 347 U.S. at 8–9. Movants' chronology argument — that these wires preceded her execution — assumes the scheme began when she signed. The FAC alleges otherwise: that Denne, her son, kept her informed of the Utherverse dealings "in the weeks before the Masternode SAFT was executed," and that she "accepted the nominee-signatory role those wires assigned her." FAC ¶ 143. On a Rule 12(c) motion that inference runs to Plaintiffs.

In any event, item (c) independently supplies a predicate. Martin's own affirmative written misrepresentation, made in an instrument she knew would be scanned and returned by email across national lines, is a paradigmatic § 1343 predicate. Movants' answer is that FAC ¶ 123 uses the passive voice in describing the return. ECF No. 89 at 9. That is a quibble about logistics, not about fraud. Rule 9(b) demands the who, what, when, where, and how of the misconduct charged (*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)), and the FAC supplies each: who (Martin, as designated Signor), what (the capacity-and-authority representation), when (on or about May 24, 2022), where (California to British Columbia), and how (by email transmission of the executed instrument).

As to (d), Movants complain that the token-sale allegations rest on information and belief. But which investors Masternode sold to, on what dates, through what accounts, and where the proceeds went are facts "peculiarly within" Movants' knowledge. *Neubronner*, 6 F.3d at 672. The FAC states the basis for the belief: that Masternode employed "the same misappropriation method used by the Denne-affiliated Blockchain Funding, Inc." FAC ¶ 125. In all events, Plaintiffs do not rest the pattern on this predicate: the wires identified in (a) through (c) are transmittal, funding, and capacity communications, not misrepresentations made in connection with the purchase or sale of any security, and the FAC separately pleads an alternative pattern composed entirely of concealment and lulling wires, funds-diversion wires, and the 2025 lien recordations. *Id.* ¶ 73; Fed. R. Civ. P. 8(d).

Movants' footnote regarding Masternode's dissolution history argues that the FAC is "internally inconsistent." ECF No. 89 at 9 n.2. Rule 8(d)(3) permits inconsistent pleading, and inconsistency is not a basis for judgment on the pleadings. In fact, there is none: the FAC alleges that Masternode had already been dissolved once for tax delinquency in April 2020, cured that dissolution in April 2021, and then received a further delinquency notice on February 2, 2022 — so that by May 2022 it knew what such a notice portended. FAC ¶ 124.

**5. Roma.**

The FAC pleads at least the following as to Roma:

(a) The August 23, 2022 counterparty-identity wire. At 8:35:55 a.m. PDT (15:35:55 UTC),

Quinn transmitted from his iCloud account to counsel and to Shuster in Vancouver the verbatim text: "Ari here is the name for counter party . . . Disruptive Technology OÜ Estonia, Tallinn, Mustamäe tee 6b, 10616 Signor Ilya Manin." FAC ¶¶ 129–131. The FAC alleges that this counterparty identifying data "originated from and was supplied and controlled by Roma as the undisclosed principal of Disruptive Technology." *Id.* ¶ 129. Quinn could not transmit data he did not have; on the FAC's allegations Roma supplied it and thereby caused its transmission.

(b) The August 23, 2022 Binding-Letter drafting and circulation wires. A three-transmission sequence — at 4:08:22 UTC, 16:12:03 UTC, and 18:43:58 UTC — by which counsel circulated the draft, Quinn directed that it be re-styled a "BINDING LETTER OF INTENT" with wire-transfer payment terms, and counsel circulated the revised instrument. FAC ¶¶ 133–137. The resulting instrument, executed by Roma's nominee Ilya Manin on August 25, 2022, committed Roma's shell to pay $30,000,000 in staged installments. *Id.* ¶ 135.

(c) The fabricated-withdrawal wire (late August-September 2022). Shortly after a meeting among Quinn, Denne, and Roma, and as the first $2.5 million installment came due, Quinn transmitted to Shuster in Vancouver the fabricated narrative that a "disgruntled former associate" had reported Shuster to be a fraud, causing Disruptive to withdraw. The FAC alleges the story was "jointly authored by Quinn, Denne, and Roma" and that no such contact ever occurred. FAC ¶¶ 138–141. Movants concede this is a predicate act by Roma. ECF No. 89 at 11.

(d) The $66 cryptocurrency test transfer, "on information and belief directed by Roma and Quinn," was sent to induce continued reliance that funds were incoming. FAC ¶ 142.

(e) The parallel Daisy sham purchase — a second purported $50 million "purchase" by Roma's own company placed on Utherverse paperwork, which produced no funds and was quietly "cancelled." *Id.*

Movants' response to (a) through (c) is again that Roma did not personally send or receive the emails. For the reasons above, that is not the test. A defendant who supplies the fabricated counterparty identity that others must transmit in order to paper a deal, and who co-authors a false narrative that others must transmit in order to kill it, has caused those transmissions as surely as if he had pressed send. *Pereira*, 347 U.S. at 8–9; *Schmuck*, 489 U.S. at 710–11.

Movants dismiss (d) and (e) as "confusing." ECF No. 89 at 11. They are not. They allege that Roma ran the same play twice: a headline purchase commitment papered through an entity he controlled, a token payment to sustain the illusion, and a quiet cancellation. That is precisely the relatedness and repetition that establishes a pattern. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Movants' brief misquotes this allegation as a "$40 million" sham while purporting to quote the FAC's heading; the FAC alleges $50 million. Compare ECF No. 89 at 11 with FAC ¶ 142.

**6. Count One is pleaded against Movants in the alternative.**

Plaintiffs have been explicit that their "primary theory as to Martin and Masternode remains the § 1962(d) claim pleaded in the Second Count; § 1962(c) is pleaded in the alternative." FAC ¶ 127; accord *id*. ¶ 154. Movants seize on this candor as a concession. ECF No. 89 at 6, 9–10. It is instead exactly what Rule 8(d)(2)-(3) authorizes. That Plaintiffs have identified their strongest theory is not a reason to dismiss their alternative one.

**C. The FAC Satisfies The Conduct Element.**

Movants argue that FAC ¶ 71 defeats the claim because it alleges that "Quinn and Denne organized and directed the enterprise" while Movants "served as counterparties, signatories, and nominees." ECF No. 89 at 13. Movants stop reading one sentence too soon. Paragraph 71 continues: "Each Defendant participated in the conduct of the enterprise's affairs — not merely their own — through the pattern alleged below." FAC ¶ 71.

More fundamentally, Movants misread *Reves*. The Supreme Court held that RICO liability is not confined to an enterprise's leadership: "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." 507 U.S. at 184. The Court was equally clear that "the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise." *Id*. at 179. Movants' theory — that identifying Quinn and Denne as the organizers immunizes everyone else, and that holding no office is dispositive — would invert *Reves*, converting a holding that expressly reaches lower-rung participants and those without formal positions into a safe harbor for them.

On the FAC's allegations Martin did not merely watch. She accepted designation as the human being through whom Masternode could act at all (FAC ¶¶ 108, 119, 143); she executed the instrument that created the 150,000,000-token allocation and the corresponding obligation (*id.* ¶¶ 108, 123); and Masternode, her vehicle, was made a plaintiff pressing affirmative claims in the enterprise's coordinated Orange County litigation (*id.* ¶ 143). Roma supplied the sham counterparty and the nominee signatory that gave the $30 million transaction its form (*id.* ¶¶ 128–137, 145), and then co-authored the pretext that destroyed it at the moment payment came due (*id.* ¶¶ 138–141, 146). Those are not the acts of bystanders; they are the performance of assigned roles without which the enterprise's central transactions could not have occurred.

**D. Movants Apply The Wrong Standard To The RICO Conspiracy Count.**

**1. *Reves* does not apply to a § 1962(d) defendant.**

Movants carry their Reves argument into Count Two. That is error, and the Ninth Circuit has said so directly. In *United States v. Fernandez* the court held that its earlier contrary rule "is no longer valid after the Supreme Court's opinion in *Salinas*," and adopted the Third Circuit's test, "which retains Reves' operation or management test in its definition of the underlying substantive § 1962(c) violation, but removes any requirement that the defendant have actually conspired to operate or manage the enterprise herself." 388 F.3d 1199, 1230 (9th Cir. 2004), amended, 425 F.3d 1248 (9th Cir. 2005). Under that test "a defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that she 'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'" *Id.* (quoting *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001)).

That disposes of Movants' principal argument, and it does more. Movants' best textual point — that FAC ¶ 71 identifies Quinn and Denne as the ones who organized and directed the enterprise — is not a defect under § 1962(d). It is the element. The scheme Movants are alleged to have agreed to facilitate is one that "includes the operation or management of a RICO enterprise," by Quinn and Denne. *Fernandez* itself sustained the § 1962(d) conviction of a defendant whose role was collecting money for the enterprise on her husband's behalf, passing messages, and accepting payment. *Id.*

**2. *Salinas* and *Howard* set the governing standard, and it is disjunctive.**

The Supreme Court has held that a RICO conspirator need not "himself commit or agree to

commit the two or more predicate acts," *Salinas v. United States*, 522 U.S. 52, 65 (1997) — a point Movants quote, ECF No. 89 at 14, without absorbing its consequence. It suffices that the defendant "adopt the goal of furthering or facilitating the criminal endeavor." *Id*. The Ninth Circuit states the requirement in the alternative: to establish a § 1962(d) violation a plaintiff "must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). A substantive violation is amply pleaded here — indeed Count One is unchallenged as to Quinn, Denne, Blockchain Funding, Blockchain Alliance, and Namazi — and Movants are alleged to have agreed to it. The Supreme Court has confirmed that a plaintiff may "sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962." *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000). Plaintiffs' injuries arise directly from the predicate acts, so Beck's limitation on conspiracy standing is not implicated.

**3. Rule 9(b) permits knowledge and intent to be alleged generally.**

Movants repeatedly fault the FAC for failing to plead their knowledge and intent "with particularity." See, e.g., ECF No. 89 at 15–16. Rule 9(b) says the opposite: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Ninth Circuit has likewise held that allegations of specific intent "need not be made expressly" and may be shown by "examining the scheme itself." *Blake*, 856 F.2d at 1370. Movants' standard would make RICO conspiracy claims impossible to plead against anyone careful enough not to memorialize his agreement.

**4. Martin's awareness is pleaded with supporting facts.**

The FAC does not rest on a bare assertion of knowledge. It alleges that Martin is Denne's mother; that her entry into the metaverse and crypto venture came solely through him and that she operated no independent business of her own; that on March 18, 2022 Denne wrote that he had described his new alignment with Shuster to his mother; that Denne kept her informed in the weeks before execution; that Quinn designated her as Masternode's Signor; that she accepted that role; that she executed the SAFT warranting capacity and authority; that Masternode thereafter sold UTHER token rights to outside investors and retained the proceeds; that she received the funding and wiring

communications that made the enterprise's use of Masternode apparent and took no step to disavow the role or correct the record; and that Masternode — administratively dissolved and not registered to do business in California — was nonetheless made a plaintiff pressing affirmative claims in the Orange County action. FAC ¶ 143.

Movants address these one at a time, arguing that no single item suffices. But a conspiracy is proved by the whole, not by the pieces, and direct evidence of agreement is rare. This Court has drawn precisely the distinction that matters: defendants supported by specific factual allegations state a claim, while those supported only by a "formulaic recitation" that they were members of the venture do not. *Martinez*, 2016 WL 951430, at *6. Martin is on the specific-allegation side of that line by a wide margin.

**5. Roma's awareness is pleaded with supporting facts — including his co-defendants' own written admission.**

As to Roma, the FAC alleges prior architecture of the same kind of scheme (the Apex program, which the SEC determined to be an unregistered offering raising approximately $21 million from more than 500 investors on false passive-return promises; and the Daisy program, the subject of a British Columbia Securities Commission caution dated November 20, 2023 and an Alberta Securities Commission caution dated December 12, 2023); ownership and control of the Disruptive shell; collaboration in fabricating the withdrawal narrative; the supply of his Daisy network as a source of investor access; continued partnership with Denne, including as a co-founder of BioLimitless; and participation in diverting proceeds. FAC ¶¶ 144–148.

It further alleges contemporaneous communications: Shuster's June 4, 2022 text that he had "Just got off with Jeremy and Quinn"; Denne's July 8, 2022 text that "Jeremy Roma and I are putting final touches on an offer and would love your mind on it. This is About to EXPLODE"; and, the same evening, "Walking to a qui[et] area with Roma now. I'll FaceTime shortly." FAC ¶ 149.

Most tellingly, the FAC quotes Movants' own co-defendants' August 8, 2024 letter: "Through a longstanding relationship Mr. Joshua Denne had with a gentleman named Jeremy Roma, a capital raise of $25MM was agreed to. Then, just days prior to the wire, [Shuster's] DISGRUNTAL ASSOCIATE GEORGE OR AN ASSOCIATE OF HIS placed a call to Mr. Roma and informed him

that Brian Shuster was a fraud… Mr. Roma understandably reversed course." FAC ¶ 150. Movants brush this aside because Roma did not send the letter. ECF No. 89 at 16-18. That misses its significance. It is Defendants' own written account, and it places Roma at the center of the transaction, personally agreeing to the raise and personally reversing course on the strength of the very "disgruntled associate" story the FAC alleges he helped fabricate. At the pleading stage it is taken as true.

Movants' remaining objection is that Roma's prior programs did not involve the other Defendants. ECF No. 89 at 16-18. That is not why they are pleaded. They are pleaded to show that Roma "knew precisely how a scheme built on false investment promises, diverted funds, and unregistered token sales operates," FAC ¶ 144 — that is, to support the inference that he understood the nature of what he was joining. Knowledge may be shown circumstantially, and a defendant's demonstrated fluency in a particular fraud architecture bears directly on whether he recognized it.

**E. Count Nine States A Claim Against Roma, As This Court Has Already Held.**

**1. Supplemental jurisdiction is not implicated.**

Movants ask the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367. But § 1367(c)(3) permits declination only where the district court "has dismissed all claims over which it has original jurisdiction." That will not occur. The RICO claims against Quinn, Denne, Blockchain Funding, Blockchain Alliance, and Namazi are not challenged in this Motion and will remain. The Court's original jurisdiction is secure however it rules as to Movants.

Count Nine confirms the point. It is asserted against Quinn, Denne, and Roma. FAC ¶¶ 208–216. Quinn and Denne do not seek its dismissal. Severing Roma alone would fracture a single claim arising from a single transaction and force Plaintiffs to try the same facts twice, serving neither judicial economy nor the convenience of the parties. This case has been pending since January 2025, fact discovery is open, and the Court has entered a schedule running through the joint pretrial order. ECF No. 78.

**2. Roma is not a party to the Binding Letter, and the agent rule does not reach him.**

Movants argue that "a party cannot, as a matter of law, tortiously interfere with its own contract," citing *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005), and that because the

FAC alleges Roma controlled Disruptive, the Binding Letter was "his own" contract. ECF No. 89 at 19-20. That conflates ownership with party status.

The Binding Letter is between Disruptive Technology OÜ, an Estonian private limited company, and the Sellers. FAC ¶ 209. Roma is not a signatory; Ilya Manin signed for Disruptive. *Id*. A corporation is a legal person distinct from its owners, and a shareholder is not a party to his corporation's contracts. The rule Movants invoke bars a contracting party from suing for interference with its own agreement; in *Blanck* it was applied to the school district, which was itself the contracting party. 360 F. Supp. 2d at 1155.

The agency branch of *Blanck* does not help Movants either. *Blanck* expressly noted that "Nevada courts have yet to address whether an agent of the principal, acting within the scope of his employment, is considered a third party as a matter of law" (*id*. at 1154) — so the rule Movants present as settled is a federal prediction of state law. And the prediction is expressly limited to agents acting within the scope of their employment, "i.e. the principal's interest." *Id*. *Blanck* dismissed as to the superintendent only because "Plaintiff concede[d] in the initial complaint that Hager was acting at all times within the scope of his employment." *Id*. at 1155. This Court described the case the same way in ECF No. 76 at 15 ("dismissing claim where plaintiff pleaded that the defendant acted at all times 'within the scope of his employment'").

The FAC pleads the opposite: that Roma "was not acting within the scope of any legitimate corporate role or in the interest of Disruptive Technology, but rather acted for his own personal benefit and in concert with Quinn and Denne to further their scheme." FAC ¶ 211. This Court has already held that allegation sufficient. ECF No. 76 at 14–15. And this Court has held, in terms, that "[w]hether defendants were acting in their individual capacity or on behalf of a corporation is a factual dispute that is not suited for resolution on a motion to dismiss." *Martinez*, 2016 WL 951430, at *7.

Movants' position also proves far too much. On their logic, the more completely a fraudster dominates the shell he uses, the more absolutely he is immunized from interference liability — and a defendant could defeat the claim by admitting that the counterparty was his alter ego. Nevada law does not reward that. And if Movants were right that Roma and Disruptive are legally

indistinguishable, the consequence would not be dismissal; it would be that Roma is answerable on the Binding Letter itself. Plaintiffs are entitled to plead in the alternative. Fed. R. Civ. P. 8(d)(2)-(3).

**F. The Court Has Personal Jurisdiction Over Martin.**

**1. The argument is conditional and never ripens.**

Movants argue there is no jurisdiction over Martin "if the RICO claims are dismissed." ECF No. 89 at 20. Because the RICO claims should not be dismissed, the condition fails and the Court need go no further.

**2. RICO authorizes nationwide service of process.**

Even reaching the question, Movants analyze it under the wrong framework. They apply Walden v. Fiore, 571 U.S. 277 (2014), and ask whether Martin has contacts with Nevada. ECF No. 89 at 20. But RICO provides for nationwide service of process. 18 U.S.C. § 1965(b). Nationwide service requires that the court have personal jurisdiction over "at least one of the participants in the alleged multidistrict conspiracy" and that "there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

Both conditions are satisfied. This Court has personal jurisdiction over at least Quinn, Denne, Blockchain Funding, Blockchain Alliance, and Masternode: each has appeared, answered without asserting any personal-jurisdiction defense on its own behalf, and pursued affirmative counterclaims here. ECF No. 88; see Fed. R. Civ. P. 12(h)(1). And no single alternative district could bind all Defendants, who are domiciled, incorporated, or organized in California, Arizona, Delaware, and Wyoming, and whose alleged instrumentalities reach Estonia, the British Virgin Islands, and British Columbia.

Butcher's Union is not to the contrary. There the plaintiffs pleaded four separate and independent conspiracies, and conceded that "none of the four defendant employers had any specific knowledge of or participation in any of the other conspiracies." *Id*. Here Plaintiffs plead a single association-in-fact enterprise embracing all Defendants, FAC ¶ 71 — and this Court has already sustained that pleading. ECF No. 76 at 8–10.

///

**3. Pendent personal jurisdiction reaches the state-law claims.**

Where a federal claim supported by nationwide service and a state-law claim arise from a common nucleus of operative fact, a court may exercise pendent personal jurisdiction over the state-law claim. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004). Counts III through V against Martin arise from the same Masternode SAFT transaction as the RICO claims. Movants' § 1367 argument fails for the reason given above.

**4. At minimum, jurisdictional discovery is warranted.**

Should the Court reach the issue and find the record insufficient, Plaintiffs request leave to take jurisdictional discovery. "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union*, 788 F.2d at 540, quoting *Data Disc, Inc. v. Systems Tech. Assocs.*, Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). Fact discovery remains open under ECF No. 78, and Martin's contacts — her communications with Quinn and Denne, her role in Masternode, and the destination of the token proceeds — are squarely within its scope.

**G. Dismissal With Prejudice Would Be Improper.**

Leave to amend is granted with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Plaintiffs have amended once, in direct response to this Court's order and within the time the Court allowed. The Court itself observed that it was "not convinced that amendment would be futile..." ECF No. 76 at 14.

Movants' prejudice argument inverts the standard. They say a second amendment would prejudice them because the claims against them are "feeble." ECF No. 89 at 21. Whether leave to amend should be granted typically turns on four factors, namely, "bad faith, undue delay, prejudice to the opposing party, and futility of amendment" (*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)) — not on the burden of defending a claim the movant believes is weak. Movants identify no bad faith, undue delay or futility of amendment — instead standing on their perception

of prejudice and their unsupported opinion that Plaintiffs' claims are weak.

Should the Court identify any remaining deficiency, Plaintiffs respectfully request leave to cure it. Because the amended-pleadings deadline set by ECF No. 78 was August 24, 2026 — before this Motion could be briefed and decided — any such amendment would proceed under Rule 16(b)(4), and good cause exists: Plaintiffs could not have been dilatory as to a deficiency first identified in the Court's ruling on this Motion. See *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## V. CONCLUSION

The Court told Plaintiffs what was missing, and the FAC supplies it: dated, timed, addressed, and quoted wire communications, and a defendant-by-defendant account of knowing agreement. Movants' answer is to re-argue issues the Court resolved against them, to read the words "causes to be transmitted" out of the wire-fraud statute, to apply § 1962(c)'s operation-or-management test to a § 1962(d) claim after the Ninth Circuit has held it inapplicable, and to demand particularity for state of mind that Rule 9(b) exempts. Plaintiffs respectfully request that the Motion be denied in its entirety. In the alternative, and as to any deficiency the Court identifies, Plaintiffs request leave to amend.

DATED: September 1, 2026 COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn
Sherrie M. Flynn. Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Email: sflynn@ch-law.com

James W. Puzey, Esq
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., and Utherverse International, Ltd.