Naz Namazi
29726 Felton Drive
Laguna Niguel, CA 92677
Phone | (949) 295-4233
Email: filmmakernaz@gmail.com
Defendant, Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA - RENO DIVISION

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation,<br>BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br>vs.<br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC.; BLOCKCHAIN ALLIANCE LLC; MASTERNODE PARTNERS, LLC; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a "NAZ NAMAZI," an individual,<br><br>Defendants | Case Number: 3:25-cv-00020-MMD-CSD<br><br>**DEFENDANT NAZANIN NAMAZI'S MOTION TO DISMISS COUNTS I AND II OF THE FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)** |

**<u>DEFENDANT NAZANIN NAMAZI'S MOTION TO DISMISS</u>**

Defendant Nazanin Namazi ("Namazi"), appearing pro se, respectfully moves under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Counts I and II of Plaintiffs' First Amended Complaint ("FAC") as asserted against her, with prejudice, or in the alternative without prejudice. Counts I and II are the only causes of action in the FAC that name Namazi. This motion is based on the FAC, the Court's June 24, 2026 Order (ECF No. 76), the record in this action, and the Memorandum of Points and Authorities set forth below.

Solely for purposes of the Rule 12(b)(6) portion of this motion, Namazi assumes the truth of Plaintiffs' well-pleaded factual allegations, but not legal conclusions or conclusory allegations.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The FAC describes an alleged racketeering enterprise beginning in early 2022 involving investments, cryptocurrency tokens, corporate transactions, loans, stock transactions, alleged diversion of investor funds, litigation, and lien recordings. Plaintiffs do not allege that Namazi conceived, organized, controlled, managed, invested in, or profited from any of it. To the contrary, Plaintiffs affirmatively allege that *only* Quinn and Denne organized and directed the alleged enterprise. FAC ¶ 71.

As to Namazi, Plaintiffs allege that she resided in California and "was employed by or acted as an agent and at the direction of Quinn." FAC ¶ 12. Plaintiffs identify only two purported predicate acts personally attributed to her: a May 23, 2025 electronic UCC-1 filing with the Nevada Secretary of State and a May 30, 2025 electronic submission to the United States Patent and Trademark Office ("USPTO"). FAC ¶¶ 103-104. Plaintiffs further allege that an earlier California filing was made by Namazi "at Quinn's direction," FAC ¶ 105, and expressly allege

that "Quinn directed and controlled" the May 30 USPTO filing and "caused the wire transmission." FAC ¶ 87.

Plaintiffs' own treatment of Niya Holdings, LLC and Nima Momayez underscores the importance of knowledge. The FAC explains that Plaintiffs dropped them as defendants because filings made in their names were "made in their names without their knowledge or authorization." FAC ¶ 13. Plaintiffs thus recognize in the FAC itself that association with an allegedly improper filing does not, without knowledge of the alleged scheme, establish RICO liability. Yet the FAC pleads no nonconclusory facts showing that Namazi knew of the alleged fraudulent scheme or its criminal objectives.

Those allegations do not state a substantive RICO claim under 18 U.S.C. § 1962(c). Under *Reves v. Ernst & Young*, a defendant must have some part in directing the enterprise's affairs. 507 U.S. 170, 179, 185 (1993). The Ninth Circuit has repeatedly held that merely providing services to an enterprise does not satisfy that operation-or-management requirement. *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).

Nor do two electronic submissions become two acts of wire fraud merely because they used interstate wires. As this Court recognized in ECF No. 76, wire fraud requires a scheme to defraud, use of the wires in furtherance of the scheme, and specific intent to defraud. ECF No. 76 at 10 (citing *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003)). The FAC pleads the transmissions but pleads no nonconclusory facts showing that Namazi herself possessed the required fraudulent intent.

The deficiency is dispositive because Plaintiffs attribute exactly two purported predicate acts to Namazi. FAC ¶¶ 103–104. A RICO pattern requires at least two qualifying predicate acts. Blake v. Dierdorff, 856 F.2d 1365, 1370–71 (9th Cir. 1988). If either alleged filing fails to qualify as wire fraud for want of adequately pleaded fraudulent intent, Plaintiffs cannot establish the statutory minimum. And even if both qualified as predicates, two filings made seven days apart

concerning the same claimed security interest do not, without more, establish the continuity required for a RICO "pattern."

Count II is independently deficient. In ECF No. 76, this Court held that Plaintiffs had not sufficiently alleged that each defendant was aware of the essential nature and scope of the conspiracy. The FAC now states that, for each Defendant's knowing agreement and awareness, Plaintiffs "rely in particular on FACTS, Section H." FAC ¶ 157. But Section H contains individualized awareness-and-agreement allegations for Martin (¶ 143) and Roma (¶¶ 144–151) — which account for every paragraph in that section — and none for Namazi. Paragraph 158 then states the conclusion that "Namazi agreed to and did execute the fabricated filings," but pleads no facts showing what Namazi allegedly knew, when she allegedly learned it, or what criminal objective she allegedly agreed to further.

Plaintiffs added Namazi to this case *after* this Court identified the individualized pleading requirements that govern RICO claims. They drafted her allegations with the governing standard in hand and still fell short. Counts I and II should be dismissed as to Namazi, and because they are the only counts asserted against her, she should be dismissed from this action.

## II. RELEVANT ALLEGATIONS

For purposes of Rule 12(b)(6) only, Namazi assumes the truth of well-pleaded factual allegations but not legal conclusions or conclusory characterizations. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

Plaintiffs allege that the purported enterprise began no later than early 2022 and was operated by Quinn and Denne, "with the entities they controlled and the persons they directed." FAC ¶ 15. Plaintiffs further allege that only Quinn and Denne organized and directed the enterprise, and describe the remaining individuals as having "served as counterparties, signatories, and nominees." FAC ¶ 71. The FAC describes investments, token presales, SAFT

agreements, stock transactions, loans, alleged diversion of investor funds, and other activities spanning years.

As to Namazi, Plaintiffs allege that she resided in California and "was employed by or acted as an agent and at the direction of Quinn." FAC ¶ 12. Section G identifies two purported predicate acts personally attributed to Namazi: (1) a May 23, 2025 Nevada UCC-1 filing and (2) a May 30, 2025 USPTO recordation. FAC ¶¶ 103–104. The two alleged acts occurred seven days apart and concern the recording of the same claimed security interest.

Plaintiffs also allege that Namazi made an earlier California UCC filing "at Quinn's direction," FAC ¶ 105, and that Quinn identified "Naz" as his assistant in August 2023 and forwarded a ledger allegedly prepared by her. FAC ¶ 106. As to the USPTO submission, Plaintiffs allege that Quinn's email appeared on the cover sheet and expressly allege that "Quinn directed and controlled the filing and caused the wire transmission to the USPTO." FAC ¶ 87. Every filing attributed to Namazi is alleged to have occurred on or after January 10, 2025, the date Plaintiffs commenced this action.

The FAC does not allege that Namazi negotiated the underlying investments, sold Utherverse stock or token rights, solicited investors, negotiated the Niya Note or any SAFT, controlled any Defendant entity, held an ownership interest in any Defendant entity, received any share of the alleged proceeds, or directed Quinn, Denne, or any other alleged enterprise member.

## III. LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted. A complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint that offers only labels, conclusions, or a formulaic recitation of the elements does not satisfy that standard. Twombly, 550 U.S. at 555. Courts do not accept as true "allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Because Plaintiffs predicate their RICO claim against Namazi on alleged wire fraud, Federal Rule of Civil Procedure 9(b) also applies. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009); T1 Payments LLC v. New U Life Corp., No. 2:19-cv-01816, 2022 WL 195111, at *12 (D. Nev. Jan. 21, 2022). Rule 9(b) requires a plaintiff to identify the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Although intent may be alleged generally, Rule 9(b) "does not give [a plaintiff] license to evade the less rigid — though still operative — strictures of Rule 8," and the allegations must still make the inference of intent plausible. Iqbal, 556 U.S. at 686–87.

## IV. COUNT I FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(c)

### A. The FAC Does Not Plausibly Allege That Namazi Operated or Managed the Enterprise

Section 1962(c) requires a defendant to "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Supreme Court has held that a defendant must participate in the "operation or management" of the enterprise and have "some part in directing" its affairs. Reves v. Ernst & Young, 507 U.S. 170, 179, 185 (1993).

Providing services to persons associated with an alleged enterprise is not enough. Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993) (defendant's role was "at best sporadic" and he played no "part in directing the affairs of the enterprise"); Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008). A defendant's association with, or even benefit from, an alleged enterprise does not establish the required operation or management. Pedrina v. Chun, 97 F.3d 1296, 1301 (9th Cir. 1996). District of Nevada decisions likewise recognize that providing services to an alleged enterprise, without a role in its management or direction, does not satisfy § 1962(c).

Adams v. Silar Advisors, LP, No. 3:12-cv-00490, 2013 WL 1104787, at *3 (D. Nev. Mar. 11, 2013). A blanket allegation that defendants participated in the operation or management of an enterprise is likewise insufficient. Atlantic-Pacific Processing Systems NV Corp. v. Plaut, No. 2:21-cv-01322, 2023 WL 2744660, at *7–8 (D. Nev. Mar. 31, 2023).

Plaintiffs' own pleading undermines this element. FAC ¶ 71 alleges that Quinn and Denne organized and directed the enterprise and describes the remaining individuals as having "served as counterparties, signatories, and nominees." As to Namazi specifically, the FAC does not allege that she organized or directed the enterprise or exercised authority over any participant in it. Instead, the FAC repeatedly alleges that she acted at Quinn's direction.

The FAC's remaining allegations place Namazi squarely on the service side of the Reves line. Plaintiffs allege that Namazi "was employed by or acted as an agent and at the direction of Quinn." FAC ¶ 12. Plaintiffs allege that the California filing was made "at Quinn's direction." FAC ¶ 105. And with respect to one of the two predicate acts attributed to her, Plaintiffs expressly allege that "Quinn directed and controlled the filing and caused the wire transmission to the USPTO." FAC ¶ 87.

Reves recognized that § 1962(c) is not limited to upper management and may reach lower-rung participants. 507 U.S. at 184. But that does not eliminate the requirement that the defendant have "some part in directing the enterprise's affairs." Id. at 179. The Ninth Circuit has accordingly emphasized that "there must be an element of direction" and that simply being involved in an enterprise is insufficient. Walter, 538 F.3d at 1249. A person may be part of an alleged enterprise without participating in its operation or management, and merely performing services for it does not itself establish the requisite direction. Id.

That distinction is dispositive here. The FAC alleges discrete filings performed by Namazi at Quinn's direction, but does not allege facts showing that Namazi directed any other participant, controlled any enterprise entity, made enterprise-level decisions, negotiated the underlying transactions, determined which assets would be subject to liens, or otherwise

exercised operational or managerial authority. Nor does it allege that Namazi had authority to decide whether the alleged filings would be made; to the contrary, the FAC alleges that Quinn directed the filings attributed to her. FAC ¶¶ 87, 105.

The conclusory allegation that Namazi "conducted or participated" in the enterprise cannot substitute for facts establishing the operation-or-management requirement. Because the FAC does not plausibly allege that Namazi had any part in directing the enterprise's affairs, Count I fails under Reves and its progeny.

**B. Two Electronic Transmissions Are Not Two Acts of Wire Fraud Absent Pleaded Intent to Defraud**

A RICO pattern requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5); Blake v. Dierdorff, 856 F.2d 1365, 1370–71 (9th Cir. 1988) (dismissing complaint as to a defendant against whom only one predicate act was alleged). Where fraud is alleged, generalized allegations against defendants collectively do not satisfy Rule 9(b). Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d 187, 196 (9th Cir. 1987).

Plaintiffs identify two electronic transmissions attributed to Namazi: the May 23, 2025 Nevada UCC-1 filing and the May 30, 2025 USPTO submission. FAC ¶¶ 103–104. Namazi does not dispute that the FAC identifies the transmissions by date and filing information. That is not the defect. Identifying two interstate transmissions is not the same as pleading two acts of wire fraud.

As this Court recognized, wire fraud requires "a scheme to defraud, use of the wires in furtherance of the scheme, and the specific intent to defraud." ECF No. 76 at 10 (citing United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003)). Each alleged transmission therefore qualifies as a RICO predicate only if Plaintiffs plausibly plead that Namazi knowingly participated in the alleged fraudulent scheme and possessed the required specific intent to defraud.

The FAC does not do so.

Paragraphs 103 and 104 identify dates and filing destinations, but plead no facts showing that Namazi knew the asserted security interests were unauthorized or that she made either submission with the specific intent to defraud. As to the USPTO submission, the FAC expressly alleges that Quinn "directed and controlled the filing and caused the wire transmission to the USPTO," and that Quinn's email appeared on the cover sheet. FAC ¶ 87. Those allegations describe Quinn's direction and control; they do not supply facts showing fraudulent knowledge or intent on Namazi's part.

Paragraph 105 alleges, on information and belief, that Namazi left a "Submitted Information" field blank "in an effort to conceal the persons behind the unlawful scheme." But the FAC identifies no communication, instruction, statement, or other factual allegation showing that Namazi left the field blank for the fraudulent purpose Plaintiffs attribute to her. The existence of a blank field, standing alone, does not plausibly establish that Namazi knew of the alleged fraudulent scheme or specifically intended to conceal its participants. Rule 8 requires factual allegations sufficient to make the asserted inference of fraudulent intent plausible, not merely possible. Iqbal, 556 U.S. at 678.

Paragraph 106 alleges that Quinn identified "Naz" as his assistant and forwarded a ledger allegedly prepared by her. Even accepting that allegation as true solely for purposes of this motion, acting as an assistant and preparing a ledger do not, without more, establish knowledge of the alleged enterprise's criminal objectives or specific intent to defraud Plaintiffs. Although Rule 9(b) permits intent to be alleged generally, it does not permit a plaintiff to substitute a conclusory assertion of fraudulent intent for facts making that inference plausible. Iqbal, 556 U.S. at 686–87.

Plaintiffs therefore have not adequately pleaded two wire-fraud predicate acts against Namazi. Because the FAC attributes exactly two purported predicate acts to her, the failure adequately to plead either one leaves Plaintiffs without the statutory minimum required for a RICO pattern. See 18 U.S.C. § 1961(5); Blake, 856 F.2d at 1370–71.

### C. Even Two Qualifying Predicates Would Not Establish a "Pattern" Because the FAC Pleads No Continuity

Two predicate acts are necessary to a RICO pattern, but they are not sufficient. A "pattern of racketeering activity" requires that the predicates be related and that they "amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Continuity may be either closed-ended, involving a closed period of repeated conduct, or open-ended, involving past conduct that by its nature projects into the future with a threat of repetition. Id. at 241.

Even assuming both alleged filings qualify as racketeering predicates, the FAC attributes to Namazi only two acts occurring seven days apart: the May 23 and May 30, 2025 filings concerning the same claimed security interest. Such a brief and discrete course of alleged conduct does not plausibly establish closed-ended continuity. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366–67 (9th Cir. 1992); Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).

Nor does the FAC plead facts showing a threat of continued racketeering activity by Namazi. It alleges no subsequent predicate acts by her, no ongoing course of similar conduct, and no facts suggesting that such filings constituted her regular way of conducting business. Instead, the alleged predicates consist of two closely related filings made seven days apart in connection with the same claimed security interest. Nothing alleged about Namazi's conduct suggests that it "by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241.

Accordingly, even if both alleged filings qualified as racketeering predicates, the FAC does not plausibly allege the continuity necessary to establish a RICO pattern against Namazi.

## V. COUNT II FAILS TO STATE A RICO-CONSPIRACY CLAIM UNDER 18 U.S.C. § 1962(d)

A RICO conspiracy requires that the defendant be "aware of the essential nature and scope of the enterprise and intend to participate in it." Baumer, 8 F.3d at 1346. The Supreme Court likewise requires that the alleged conspirator know about and agree to facilitate the scheme. Salinas v. United States, 522 U.S. 52, 65 (1997). Unlike a substantive § 1962(c) claim, a conspirator need not personally commit two predicate acts; the critical question is whether the defendant knowingly agreed to facilitate the RICO scheme. See id.

This Court previously held that Plaintiffs' RICO-conspiracy allegations were insufficient because Plaintiffs failed sufficiently to allege that each defendant was aware of the essential nature and scope of the alleged conspiracy. ECF No. 76 at 13–14.

The FAC expressly identifies where Plaintiffs contend they cured that defect. Paragraph 157 states that "[f]or each Defendant's knowing agreement to the scheme and awareness of the essential nature and scope of the enterprise, Plaintiffs rely in particular on FACTS, Section H." Section H is entitled "Section 1962(d): Knowing Agreement and Awareness of the Enterprise's Scope," and runs from ¶ 143 through ¶ 151.

Every paragraph of Section H is accounted for, and none concerns Namazi. Paragraph 143 addresses Martin and Masternode. Paragraphs 144 through 151 appear under the heading "Roma's Awareness of and Agreement to Further the Enterprise" and address Roma. That is the entirety of the section Plaintiffs themselves designated for allegations of each Defendant's knowing agreement and awareness. Namazi is absent from it.

Paragraph 158 then states that "Namazi agreed to and did execute the fabricated filings." But stating that Namazi "agreed" does not establish what she allegedly knew, when she allegedly learned it, or what criminal objective she allegedly agreed to further. It is precisely the type of conclusory assertion that Twombly and Iqbal do not require the Court to accept.

The FAC alleges no conversation, communication, meeting, ownership interest, profit-sharing arrangement, payment tied to the alleged scheme, or other fact from which Namazi's knowing agreement to facilitate the alleged RICO scheme could plausibly be inferred. Nor does the FAC allege that, other than Quinn, Namazi knew, communicated with, or had any relationship with Plaintiffs or the other alleged participants in the purported enterprise. The FAC likewise does not allege that Namazi received any proceeds or other benefit from the alleged scheme.

The alleged performance of filings at Quinn's direction, without factual allegations showing that Namazi knew the essential nature and scope of the alleged enterprise and agreed to facilitate its criminal objectives, does not plausibly plead a RICO conspiracy. Count II therefore fails to state a claim against Namazi.

**VI. THIS COURT LACKS PERSONAL JURISDICTION OVER NAMAZI**

Plaintiffs bear the burden of establishing personal jurisdiction over Namazi. The FAC alleges that Namazi is a resident of California. FAC ¶ 12. It does not allege that she resides, works, owns property, maintains an office or agent, solicits business, or otherwise conducts ongoing affairs in Nevada.

The existence of RICO claims does not, by itself, establish nationwide personal jurisdiction over every person named as a defendant. Under 18 U.S.C. § 1965(b), nationwide service in a civil RICO action is not unlimited. The Ninth Circuit has held that, to invoke § 1965(b), "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Investment, Inc., 788 F.2d 535, 539 (9th Cir. 1986). See also Aych v. University of Arizona, No. 24-4710, 2025 WL 1629305, at *2 (9th Cir. June 10, 2025) (unpublished memorandum disposition) (applying Butcher's Union).

Plaintiffs do not allege facts establishing that the "ends of justice" require Namazi, a California resident, to be brought before this Court pursuant to § 1965(b), nor do they allege or establish that no other district could exercise personal jurisdiction over all alleged co-conspirators. Merely naming a nonresident defendant in a RICO action is insufficient to invoke § 1965(b). Butcher's Union, 788 F.2d at 539.

Nor does the FAC establish personal jurisdiction over Namazi on traditional minimum-contacts grounds. Specific jurisdiction requires that a nonresident defendant purposefully direct activities toward the forum or purposefully avail herself of the privilege of conducting activities there, that the claims arise out of or relate to those forum-related activities, and that the exercise of jurisdiction be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004); see also Walden v. Fiore, 571 U.S. 277, 283–86 (2014).

The FAC alleges one Nevada-directed act by Namazi: the May 23, 2025 electronic UCC-1 submission to the Nevada Secretary of State. FAC ¶ 103. The other alleged predicate act attributed to her was a submission to the federal USPTO, and the FAC expressly alleges that Quinn "directed and controlled" that filing and "caused the wire transmission." FAC ¶ 87. Beyond the single Nevada UCC-1 submission, the FAC alleges no Nevada residence, employment, property, business operations, solicitation, continuing relationship, or other Nevada contacts by Namazi.

Personal jurisdiction must be assessed based on Namazi's own contacts with Nevada, not the Nevada contacts or alleged conduct of Quinn or other defendants. See Walden, 571 U.S. at 284–86. The FAC does not allege that Namazi directed the broader alleged enterprise toward Nevada, exercised control over its Nevada activities, or otherwise established continuing contacts with Nevada beyond the single filing alleged in ¶ 103.

Accordingly, Plaintiffs have not established personal jurisdiction over Namazi through RICO's nationwide-service provision and have not alleged sufficient additional contacts to

establish personal jurisdiction over her based on the broader alleged enterprise. Counts I and II should therefore also be dismissed under Rule 12(b)(2).

## VII. DISMISSAL SHOULD BE WITH PREJUDICE, OR IN THE ALTERNATIVE WITHOUT PREJUDICE

Dismissal with prejudice is appropriate where further amendment would be futile. Sanchez v. Los Angeles Dep't of Transp., 39 F.4th 548, 562 (9th Cir. 2022); Coronavirus Reporter v. Apple, Inc., 85 F.4th 948, 958 (9th Cir. 2023).

Namazi acknowledges that she was added as a defendant for the first time in the FAC. But Plaintiffs added her only after this Court's June 24, 2026 Order identified the deficiencies in Plaintiffs' RICO pleading and explained the need for predicate acts pleaded individually as to each defendant and individualized allegations demonstrating each alleged conspirator's awareness of the essential nature and scope of the conspiracy. ECF No. 76 at 10–11, 13–14. Plaintiffs then substantially expanded their pleading and chose to add Namazi as a defendant with the Court's identified pleading requirements already before them.

Despite that opportunity, the FAC attributes only two purported predicate acts to Namazi, repeatedly alleges that she acted at Quinn's direction, and ultimately relies on the bare conclusion that Namazi "agreed." Most tellingly, Plaintiffs created Section H for the express purpose of pleading each Defendant's knowing agreement and awareness, expressly directed the Court to that section in ¶ 157, and then included no individualized allegation concerning Namazi anywhere in it. A plaintiff who writes a section to answer the Court's ruling and leaves a defendant out of it has said all there is to say about that defendant.

The deficiencies are therefore not merely technical pleading defects. The FAC's own allegations concerning Namazi's limited role, together with the absence of facts plausibly establishing operation or management, fraudulent intent, continuity, or knowing agreement, demonstrate that further amendment would be futile. Counts I and II should therefore be dismissed as to Namazi with prejudice. If the Court concludes that further amendment should

nevertheless be permitted, Namazi respectfully requests dismissal without prejudice and that any leave to amend be limited to curing the specific deficiencies identified by the Court.

## VIII. CONCLUSION

For the foregoing reasons, Defendant Nazanin Namazi respectfully requests that the Court dismiss Counts I and II as asserted against her under Rules 12(b)(2) and 12(b)(6), with prejudice, or in the alternative without prejudice, and, because those are the only causes of action asserted against Namazi, dismiss her from this action.

DATED: September 4, 2026

Respectfully Submitted,

BY: /s/ Nazanin Namazi

Nazanin Namazi
Defendant, Pro Se

## CERTIFICATE OF SERVICE

I certify that on September 3, 2026, I electronically filed the foregoing DEFENDANT NAZANIN NAMAZI'S MOTION TO DISMISS with the Clerk of the United States District Court for the District of Nevada using the Court's CM/ECF system. Registered participants in this action will be served electronically through the CM/ECF system.

To the extent any party is not served electronically through CM/ECF, I certify that I served a true and correct copy in the manner required by Federal Rule of Civil Procedure 5.

**DATED: September 4, 2026**

**/s/ Nazanin Namazi**
Nazanin Namazi, Pro Se