JAMES PUZEY (NV SBN 05745)
jpuzey@nvlawfirm.com
KEARNEY PUZEY DAMONTE
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700

SHERRIE M. FLYNN (*Pro Hac Vice*)
sflynn@ch-law.com
ROBERT K. ASHLEY (*Pro Hac Vice*)
rashley@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiffs and Counter-Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA – RENO DIVISION**

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming limited liability company; MASTERNODE PARTNERS, LLC, a Wyoming limited liability company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a “NAZ NAMAZI,” an individual,<br><br>Defendants. | Case No. 3:25-cv-00020-MMD-CSD<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF COUNTER-DEFENDANTS' MOTION TO DISMISS PORTIONS OF AMENDED COUNTERCLAIM**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025 |
| AND RELATED COUNTERCLAIM. | |

TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that counter defendants, UTHERVERSE, INC., BRIAN SHUSTER, UTHERVERSE DIGITAL, INC., and UTHERVERSE INTERNATIONAL, LTD., respectfully requests that the Court take judicial notice of the following documents pursuant to Rule 201 of the Federal Rules of Evidence:

1. Defendants, JOSHUA DENNE ("Denne"); BLOCKCHAIN FUNDING, INC. ("Blockchain Funding"); BLOCKCHAIN ALLIANCE LLC ("Blockchain Alliance"); and MASTERNODE PARTNERS' ("Masternode") Complaint filed on November 6, 2024 in the Superior Court of California, County of Orange, Case No. 30-2024-01438251, a true and complete copy of which is attached hereto as **Exhibit A**.

2. Defendants, Denne, Blockchain Funding, Blockchain Alliance, and Masternode's First Amended Complaint filed on January 15, 2025 in the Superior Court of California, County of Orange, Case No. 30-2024-01438251, a true and complete copy of which is attached hereto as **Exhibit B**.

3. Defendants, BRIAN QUINN, Denne, Blockchain Funding, Blockchain Alliance, and Masternode's Answer to Complaint and Counterclaim, filed February 28, 2025 in the instant matter (ECF No. 30), a true and complete copy of is attached hereto as **Exhibit C**.

4. Defendants, BRIAN QUINN, Denne, Blockchain Funding, Blockchain Alliance, and Masternode's Amended Answer to Complaint and Counterclaim, filed April 25, 2025 in the instant matter (ECF No. 48), a true and complete copy of is attached hereto as **Exhibit D**.

DATED: September 16, 2026 COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn

Sherrie M. Flynn. Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248- 4820
Email: sflynn@ch-law.com

James W. Puzey, Esq
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851- 8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., and Utherverse International, Ltd.

# EXHIBIT A

Case 3:25-cv-00020-MMD-CSD Document 97-1 Filed 09/16/26 Page 5 of 148

DAILY LAW GROUP
James D. Daily, Esq. SBN 146699
Michael R. Jones, Esq. SBN 306957
660 Newport Center Drive, Suite 1000
Newport Beach, California 92660
Telephone: (949) 662-6000 | Facsimile: (949) 258-5555
jdaily@dailylawgroup.com
mjones@dailylawgroup.com

Attorneys for PLAINTIFFS
JOSHUA DENNE; NIMA MOMAYEZ;
BLOCKCHAIN FUNDING, INC.;
BLOCKCHAIN ALLIANCE LLC; and
MASTERNODE PARTNERS

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ORANGE**

Assigned for All Purposes
Judge Scott A Steiner

JOSHUA DENNE, an individual; NIMA MOMAYEZ, an individual; BLOCKCHAIN FUNDING, INC., a Delaware Corporation; MASTERNODE PARTNERS, a Wyoming Limited Liability Company; and BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company,

Plaintiffs,

v.

BRIAN SHUSTER, an individual; UTHERVERSE, INC., a Nevada Corporation; UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE GAMING, a New York Limited Liability Company; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,

Defendants.

Case No. 30-2024-01438251-CU-FR-NJC

**COMPLAINT FOR:**

1. **Fraud and Deceit**
2. **Penal Code § 496(c)**
3. **Breach of Fiduciary Duty**
4. **Defamation Per Se**

[DEMAND FOR JURY TRIAL]

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

1. Plaintiffs Joshua Denne, Nima Momayez, Blockchain Funding, Inc., Masternode Partners, and Blockchain Alliance LLC (collectively “Plaintiffs”) allege and plead as follows against Defendants Brian Shuster, Utherverse, Inc., Utherverse Digital Inc., Utherverse Gaming, Nexus Venture LLC, Peter Gantner, Ari Good, Gary Shuster, and DOES 1-25 (collectively “Defendants”):

**SUMMARY**

2. This case involves the fraudulent offer and sale of unregistered securities by Brian Shuster ("Shuster") and the entities he controlled and/or acted on behalf of: Utherverse, Inc., Utherverse Digital Inc., and Utherverse Gaming (collectively, “Utherverse"). These Defendants, acting in concert with partners Peter Gantner ("Gantner"), Nexus Venture ("Nexus"), and attorneys Ari Good ("Good") and Gary Shuster ("Gary"), orchestrated a scheme to defraud investors, including the Plaintiffs.

3. Since at least 2022 and continuing through the present, the Defendants engaged in a systematic and intentional pattern of fraudulent conduct, misappropriating investor funds, concealing material facts, and making multiple false statements about the nature and profitability of their investments. The Defendants unlawfully induced Plaintiffs to invest in Utherverse by promising outsized returns, misrepresenting the state of Utherverse’s financial health, and touting fictitious market success. Plaintiffs were deceived into believing that their investments would be used to develop virtual metaverse technologies and secure monetization opportunities through blockchain-based products.

4. In reality, the Defendants misappropriated investor funds for personal gain and undisclosed purposes, including payments to non-licensed brokers, personal travel, and unrelated business ventures. Defendants further misrepresented key financial metrics such as user numbers, transaction volume, and proprietary technology. Their fraudulent conduct has caused significant financial harm to the Plaintiffs.

5. Plaintiffs allege that, through this fraudulent scheme, Defendants violated California securities laws and committed theft under Penal Code § 496(c). The unlawful conduct includes:

a. Misrepresenting the expected return on investment and the state of the Utherverse platform;

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

b. Offering and selling unregistered securities through fraudulent inducement;

c. Concealing material facts, including conflicts of interest, misallocation of funds, and the financial instability of Utherverse; and

d. Using investor funds to pay commissions to unlicensed brokers and to finance personal expenses.

6. Defendants also failed to disclose material information about related-party transactions and the payment of unauthorized commissions to associates. Plaintiffs allege that each of the Utherverse entities are mere alter egos of Brian Shuster, whose personal use of corporate assets renders any separation between the entities and their owner illusory. Plaintiffs now seek compensatory and punitive damages, treble damages under Penal Code § 496(c), and equitable relief to remedy the harm caused by Defendants' intentional and reckless conduct.

7. Based upon the allegations made herein, Plaintiffs seek damages totaling over $2,936,659,500.

## PARTIES

**A. Plaintiffs.**

8. Plaintiff, JOSHUA DENNE, is an individual who resides in Paradise Valley, Arizona.

9. Plaintiff, NIMA MOMAYES, is an individual who resides in Irvine, California.

10. Plaintiff, BLOCKCHAIN FUNDING, INC., is a Delaware Corporation.

11. Plaintiff, MASTERNODE PARTNERS, is a Wyoming Limited Liability Company.

12. Plaintiff, BLOCKCHAIN ALLIANCE LLC, is a Wyoming Limited Liability Company.

**B. Defendants.**

13. Defendant, BRIAN SHUSTER, is an individual who resides in Vancouver, British Columbia.

14. Defendant, UTHERVERSE, INC., is a Nevada Corporation that conducts business in California.

15. Defendant, UTHERVERSE DIGITAL INC., is a Vancouver, British Columbia, Corporation that conducts business in California.

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

16. Defendant, UTHERVERSE GAMING, is a New York Limited Liability Company that, upon information and belief, conducts business throughout the country, including in the State of California.

17. Defendant, PETER GANTNER, is an individual who resides in Fountain Hills, Arizona.

18. Defendant, NEXUS VENTURE LLC, is a Arizona Limited Liability Company that conducts business in California.

19. Defendant, ARI GOOD, is an individual who resides in Miami, Florida.

20. Defendant, GARY SHUSTER, is an individual who resides in Fresno, California. On information and belief, at all times relevant herein, Defendant Gary Shuster was the Chief Intellectual Property Officer of Defendant Utherverse Digital, Inc., was General Counsel of Defendant Utherverse, Inc., and acted as a board member or manager of Defendant Utherverse Gaming.

21. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1-25, inclusive, are unknown to Plaintiffs at the present time, and Plaintiffs therefore sue said Defendants, and each of them, by such fictitious names. If necessary, Plaintiffs will seek leave of court to amend this Complaint to allege their true names and capacities when they are ascertained.

22. Plaintiffs are informed and believe, and on that basis allege, that each of Does 1-25, inclusive, participated in the activities described herein and rendered material assistance to Defendants in the performance of the activities described in this Complaint.

23. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants are responsible in some manner for the occurrences and matters alleged herein and that Plaintiffs' injuries and damages were and are the direct and proximate result of the actions and omissions of these Defendants, and each of them.

24. Plaintiffs are further informed and believe, and on that basis allege, that each Defendant herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of the others, or was otherwise involved with the other Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

obligations herein owed by Defendants to Plaintiffs. Each Defendant is liable and responsible on the facts alleged herein for all of the relief sought.

25. Plaintiffs are further informed and believe, and on that basis allege, that certain of the Defendants conspired and agreed with and aided and abetted one or more of the other Defendants in additional ways which are unknown to Plaintiffs at this time.

26. Plaintiffs are informed and believe, and on that basis allege, that at all relevant times hereto each of the Defendants was the merging entity, merged entity, subsidiary, acquiring corporation, the agent, servant, successor-in-interest, independent contractor and/or employee of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of their authority as agents, servants, successors-in-interest, independent contractors or employees, and with the express and/or implied permission, knowledge, consent, and ratification of their co-defendants, or otherwise acting with apparent authority. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents. Each Defendant therefore knowingly and substantially participated in the conduct as alleged herein and is liable for the damages arising therefrom.

27. Whenever this Complaint references acts of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting individually, jointly, and severally.

28. At all relevant times, each of the Defendants were acting in concert with, and in conspiracy with, each and every of the remaining Defendants.

**JURISDICTION AND VENUE**

29. This Court has jurisdiction over Defendants because they have sufficient minimum contacts with California so as to render the jurisdiction by California courts permissible under traditional notions of fair play and substantial justice. Defendants executed agreements with Plaintiffs in Orange County, California, which resulted in the fraud and theft alleged herein.

30. Venue is proper because the communications and actions upon which the causes of action are based occurred in Orange County, California. The fraudulent, unfair, and unlawful acts described herein have a direct effect on citizens within Orange County and throughout the State of

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

California.

## GENERAL BACKGROUND

31. Plaintiffs are informed and believe that Defendant Brian Shuster owns and operates each of the Utherverse entities, which act by and through Defendant Brian Shuster.

32. Utherverse advertises itself as being "not just another player in the metaverse space[, but] the pioneers, with over 15 years of experience in building successful virtual economies and communities…By harnessing the immense potential of web3, blockchain, and AI, we are creating a metaverse that is unmatched in its immersion, adaptability, and profitability."

33. Plaintiff Joshua Denne was introduced to Defendant Brian Shuster and Utherverse in or about 2022. At that time, Utherverse was represented by a loan officer and a defunct mortgage broker. Utherverse had been struggling to raise capital for more than 10 years with zero success—it did not have a functioning website, did not have any formal presentation materials, such as investment documents or subscription agreements, it did not have a functional corporate structure, and it was critically devoid of any effective management. At that time, Utherverse consisted of eleven (11) separate LLCs with no apparent ties to one another, and were all operated by Brian Shuster—a one man show.

34. Defendant Brian Shuster claimed numerous past successes, millions of active Utherverse users, billions in transactions on the Utherverse platform, and a robust patent portfolio, among numerous other representations that were later learned to be false.

35. A non-exhaustive list of representations made by Defendant Brian Shuster, which were relied upon by Plaintiffs in their decision to work with and invest in Utherverse is as follows:

a. Utherverse, Inc. having 50 million users;

b. Over 1 million metaverses on the platform;

c. Utherverse had a revenue of $8-10 million per year;

d. Utherverse, Inc. having $16,000,000,000 in transactions executed on its platform;

e. Defendant Brian Shuster claimed to have invested $45 million of his personal money in the company;

f. Utherverse has spent more than $40 million on development of its metaverse

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

offerings;

g. Utherverse was franchised out to 17 countries;

h. Utherverse generated more than $77 million in revenues through memberships, marketplaces, advertising and other metaverse related revenue streams;

i. Defendants Brian Shuster and Utherverse owned a large number of valuable patents; and

j. That development of the Utherverse platform was ongoing and would be operational on specific dates (which were never met).

36. In reliance on Defendant Brian Shuster's representations about himself and Utherverse, Plaintiff Joshua Denne agreed to invest and help promote and build Utherverse toward success.

37. On or about April 11, 2022, Defendant Brian Shuster, on behalf of Defendant Utherverse., executed a Senior Secured Convertible Promissory Note with Plaintiff Nima Momayez. This agreement was executed by Plaintiff Nima Momayes in Newport Beach, California. Pursuant to this agreement, Plaintiff Nima Momayez transferred $1,350,000 to Defendant Utherverse. Plaintiff Nima Momayez agreed to these terms, and to provide the funding, in reliance on Defendant Brian Shuster's numerous misrepresentations, as previously detailed herein. Defendant Brian Shuster, on behalf of Utherverse, agreed to repay Plaintiff Nima Momayez pursuant to the terms of the Promissory Note, but now refuses to do so. Instead, Defendant Brian Shuster has stolen the funds. Therefore, on information and belief, Plaintiff Nima Momayez alleges that Defendant Brian Shuster never intended to honor the Promissory Note or repay the funds, but always intended to defraud and steal the money from Plaintiff Nima Momayez.

38. On May 10, 2022, Defendant Utherverse, by and through Defendant Brian Shuster, and Plaintiff Blockchain Funding, Inc., by and through Plaintiff Joshua Denne, executed a Simple Agreement for Future Tokens ("SAFT Agreement") whereby Plaintiff Blockchain Funding, Inc. purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 USD. This agreement was executed by Plaintiff Joshua Denne in Huntington Beach, California. Plaintiff Blockchain Funding, Inc. fulfilled its obligations and made payment to

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

Defendant Utherverse in accordance with the SAFT Agreement. However, Defendant Brian Shuster now takes the position that Plaintiff Blockchain Funding, Inc. does not own any tokens whatsoever. Therefore, on information and belief, Plaintiff Blockchain Funding, Inc. alleges that Defendants Brian Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead intended to defraud Plaintiff Blockchain Funding, Inc. of the money paid. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $684,000,000 on the 360,000,000 tokens that were to be allocated to Plaintiff Blockchain Funding, Inc.

39. On May 10, 2022, Defendant Utherverse, by and through Defendant Brian Shuster, and Plaintiff Masternode Partners, LLC, by and through Plaintiff Joshua Denne, executed a SAFT Agreement whereby Plaintiff Masternode Partners, LLC purchased 150,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $5,000.01 USD. This agreement was executed by Plaintiff Joshua Denne in Huntington Beach, California. Plaintiff Masternode Partners, LLC fulfilled its obligations and made payment to Defendant Utherverse in accordance with the SAFT Agreement. However, Defendant Brian Shuster now takes the position that Plaintiff Masternode Partners, LLC does not own any tokens whatsoever. Therefore, on information and belief, Plaintiff Masternode Partners, LLC alleges that Defendants Brian Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead intended to defraud Plaintiff Masternode Partners, LLC of the money paid in reliance on the SAFT Agreement. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $285,000,000 on the 150,000,000 tokens owned that were to be allocated to Plaintiff Masternode Partners, LLC.

40. On or about June 5, 2023, Plaintiff Blockchain Funding, Inc., by and through Plaintiff Joshua Denne, loaned to Defendant Utherverse a total of $350,000.00, evidenced by a Promissory Note executed by Defendant Utherverse, by and through Defendant Brian Shuster. To secure the Promissory Note, Defendant Utherverse, by and through Defendant Brian Shuster, executed a Stock Pledge Agreement, which memorialized the Promissory Note and pledged 2,800,000 shares of Utherverse Inc. Class A Common Stock to Plaintiff Blockchain Funding, Inc. These agreements were executed by Plaintiff Joshua Denne in Huntington Beach, California, and

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

both explicitly agree to jurisdiction in the State of California. Plaintiff Blockchain Funding, Inc. fulfilled its obligations and provided $350,000.00 to Defendant Utherverse in accordance therewith; and Plaintiff Blockchain Funding, Inc. understood that ownership of the shares had been transferred accordingly. However, Defendant Brian Shuster now takes the position that Plaintiff Blockchain Funding, Inc. does not own any shares whatsoever. Therefore, on information and belief, Plaintiff Blockchain Funding, Inc. alleges that Defendants Brian Shuster and Utherverse never intended to transfer the shares, but instead intended to defraud Plaintiff Blockchain Funding, Inc. of the $350,000.00. As of September 2024, the stock of Utherverse Inc., was last sold to investors at $2.50 per share, putting a total value of $7,000,000 on the 2,800,000 shares owned by Plaintiff Blockchain Funding, Inc.

41. In reliance on the representations made by Defendant Brian Shuster and the agreements between Plaintiff Blockchain Funding, Plaintiff Masternode Partners, and Defendant Utherverse—Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode Partners expended significant funds to promote and advance the success of Utherverse, totaling more than $1,376,500. Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode Partners expended these funds in reliance on Defendant Brian Shuster's representations that they would be repaid by Utherverse. However, Defendant Brian Shuster now takes the position that Plaintiffs Blockchain Funding and Masternode Partners do not own any shares or tokens. Therefore, on information and belief, Plaintiffs Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance, and Masternode Partners, LLC allege that Defendants Brian Shuster and Utherverse intended to defraud them of these funds, by reaping the benefits therefrom without ever intending to compensate or repay them. A non-exhaustive list of the funds expended by Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode in furtherance of the business and operations of Utherverse is as follows:

a. Token set up costs (Grant Thornton) - $198,000
b. Honing PR - $65,000
c. Elevator Social Media - $145,000
d. Mona Hire - $20,000

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

DAILY LAW GROUP
And Justice for All

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

e. Tokensoft Platform - $35,000

f. HOW 3 (digital marketing) - $50,000

g. Ad spend - $6,500

h. Promote Republic Europe Group - $25,000

i. Additional digital marketing costs - $82,000

j. Blockchain Alliance marketing - $750,000

**APPROXIMATE TOTAL: $1,376,500**

42. Unfortunately, it was soon revealed that Defendant Brian Shuster had used Utherverse in a way that tied it to the pornography industry, which was severely detrimental to its reputation. In an effort to repair the damaged reputation of Utherverse, Plaintiff Joshua Denne, among other things, spent roughly $65,000 on a PR agency and spent an additional $165,000 on social media promotions, including professionally producing a video interview with Defendant Brian Shuster.

43. Through a longstanding relationship that Plaintiff Joshua Denne had developed with a private investor, Plaintiff Joshua Denne was able to secure an agreement that would have raised $25 million for Utherverse. However, days prior to the wiring of the funds from the investor, a disgruntled employee of Defendant Brian Shuster contacted the investor and informed him that Defendant Brian Shuster was a fraud and that a lawsuit against Defendant Brian Shuster and Utherverse was being prepared for filing. As a result, the investor refused to move forward.

44. Plaintiff Joshua Denne brought in Mr. Todd Pritcher, who is an expert on taking the necessary steps to make a company investable, which requires detailed documentation and structural reorganization. Mr. Pritcher eliminated the majority of the 11 LLCs that made up Utherverse and created a coherent parent company with subsidiaries. In the process, Mr. Pritcher attempted to verify and create proper intellectual property documentation to clearly illustrate which patents were owned by the various Utherverse entities. However, Mr. Pritcher was unable to verify ownership of numerous patents that Defendant Brian Shuster had represented were owned by himself and Utherverse. This realization was alarming, as Defendant Brian Shuster's misrepresentations were relied upon by investors and left Utherverse with potential liabilities. Ultimately, despite this



Daily Law Group
And Justice for All

understanding, Defendant Brian Shuster refused to disclose these misrepresentations.

45. Plaintiff Joshua Denne then brought in Mr. Robb Hackett, an accomplished CEO in the Web3 space, who had stewarded several successful investment exits in his past. However, after four months, the CEO refused to continue working with Defendant Brian Shuster and resigned due to a lack of payment for his work, a lack of effective corporate governance, and a legitimate fear of liabilities. Mr. Hackett is still owed $75,000 for his work on behalf of Defendants Brian Shuster and Utherverse.

46. Plaintiff Joshua Denne also attempted to bring in Mr. Joseph Ramelli to occupy the position of CFO, with an intention to clean up Utherverse's books and records, to create proper budgets and timelines, and oversee the use of investor funds. However, Defendant Brian Shuster refused to hire Mr. Ramelli, in an effort to maintain control over, and conceal, his misappropriation of investor funds.

47. Plaintiff Joshua Denne brought in a PCAOB accounting firm to produce audited financial statements to enable the company to participate in crowdfunding. This initiative was accomplished; however, it was discovered that the company's revenue was not $8-10 million per year—as Defendant Brian Shuster had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing significant investment funding. Rather, Utherverse's revenue was less than $1.5 million per year. Additionally, the accounting firm was unable to confirm in any way that Defendant Brian Shuster had invested $45 million of his own funds—as he had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing investment funding.

48. Prior to Plaintiff Joshua Denne's involvement, Utherverse was experiencing difficulty securing a banking relationship due to Defendant Brian Shuster's participation in the pornography industry. However, Plaintiff Joshua Denne aided Utherverse in securing a reputable banking relationship with Fresno Bank, where Utherverse still banks to this day.

49. Despite all of the notable progress that Utherverse experienced at the hand of Plaintiff Joshua Denne, Defendant Brian Shuster chose to continue in his misrepresentations and mismanagement of Utherverse. Over twenty (20) significant developmental deadlines were missed

and over a dozen "launch dates" were unmet. On information and belief, each of these deadlines and launch dates were only provided by Defendant Brian Shuster to further delay and conceal his fraudulent activities.

50. Defendant Brian Shuster's mismanagement was exemplified on numerous occasions, including him hiring an individual as a "Pro-Developer" for $30,000 per month. It was later discovered that this "Pro-Developer" was outsourcing the work overseas for $1,500 per month, submitting the work as his own, and keeping the remaining $28,500. On information and belief Defendant Brian Shuster conspired with this individual and used this opportunity to launder and/or siphon and misappropriate investor funds.

51. In or about April 2024, after Defendant Brian Shuster once again failed to meet a promised deadline, Plaintiff Joshua Denne ultimately decided to part ways with Defendants Brian Shuster and Utherverse.

52. During the separation process, Defendant Brian Shuster provided written acknowledgment of Plaintiff Joshua Denne's efforts to further the development and success of Utherverse—including the monies spent on behalf of Utherverse, as well as Plaintiff Joshua Denne's ownership of 510,000,000 tokens and 2,800,000 shares of Utherverse Inc. Defendant Brian Shuster and Plaintiff Joshua Denne engaged in detailed discussions, both oral and in writing, regarding this separation, and Plaintiff Joshua Denne provided an additional $160,000 in furtherance of these efforts—which was paid to promotion groups in order to create the necessary settlement liquidity.

53. Unsurprisingly, after agreeing in writing on a detailed exit strategy for Plaintiffs, Defendant Brian Shuster reneged and took the position that Plaintiffs own nothing with regard to Utherverse.

54. In or about September 2024, Defendant Brian Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Plaintiff Joshua Denne, and with whom Plaintiff Joshua Denne has had previous relationships. In these letters, Defendant Brian Shuster falsely states that Plaintiff Joshua Denne committed fraud on the investors of Utherverse. Defendant Brian Shuster falsely claims that Plaintiff Joshua Denne fraudulently

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

altered documents, stole investor funds, and stole Utherverse money and stock. Defendant Brian Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters." Defendant Brian Shuster claims that he has all evidence of this alleged fraud and theft. Plaintiff Josua Denne denies the truth of these defamatory statements and alleges that Defendant Brian Shuster knew the falsity of these claims and the harm they would cause at the time he made them.

55. On information and belief, Plaintiffs allege that Defendant Brian Shuster misrepresented the financial value and developmental progress of Utherverse, as previously discussed, in order to lure investors and disguise the actual state of Utherverse's operations, which were significantly underperforming. Plaintiffs relied on these misrepresentations when they decided to invest, believing Utherverse's platform was financially stable and poised for imminent growth. When these promises failed to materialize, Plaintiffs suffered significant financial harm

56. On information and belief, Defendant Brian Shuster has used investor funds for his own personal gain, for purposes entirely unrelated to the business of Utherverse or the purposes for which the funds were provided. Further, Defendant Brian Shuster's pattern of fraud and misrepresentation brought unfathomable liability upon Utherverse and the investors that relied upon those misrepresentations. Specific examples of Defendant Brian Shuster's character and propensity for fraudulent activity include, but are not limited to, the following:

a. Defendant Brian Shuster paid commissions to two separate unlicensed brokers for the investment of $1,350,000 that was made by Plaintiff Nima Moratz. This fraudulent activity brought significant liability on Utherverse and its investors.

b. Defendant Brian Shuster took a one-million-dollar ($1,000,000) investment from Mr. Chauncey Lufkin, who Defendant Brian Shuster then placed on the board of Utherverse. Again, Defendant Brian Shuster paid commission to an unlicensed broker for this investment, to a woman named Jasmine Yuan. This fraudulent activity brought significant liability on Utherverse and its investors.

c. After Mr. Chauncey Lufkin's investment, Defendant Brian Shuster entered a consulting agreement with Mr. Lufkin's wife, and paid her in Utherverse shares,



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Daily Law Group
And Justice for All

creating a major conflict of interest.

d. It was subsequently discovered that Mr. Lufkin was under investigation by the SEC for cryptocurrency investment fraud and was ultimately sanctioned. However, Defendant Brian Shuster refused to remove Mr. Lufkin from the board of Utherverse or remove Mr. Lufkin's wife as a consultant. Even more egregious, Defendant Brian Shuster chose not to inform any of the investors of this significant liability. Further, Defendant Brian Shuster did not disclose Mr. Lufkin or his wife's involvement with Utherverse to the SEC in the required SEC filings. This fraudulent activity brought significant liability on Utherverse and its investors.

e. Defendant Brian Shuster is currently selling pre-sale tokens on a United States based non-SEC compliant and unregistered platform, which is owned by a US corporation and an individual. This fraudulent activity brings significant liability on Utherverse and its investors.

f. Defendant Brian Shuster is currently taking token investments from non-accredited US investors. This fraudulent activity brings significant liability on Utherverse and its investors.

g. Defendant Brian Shuster is paying a commission and referral fees to US-based individuals for sales of Utherverse tokens. This fraudulent activity brings significant liability on Utherverse and its investors.

h. Defendant Brian Shuster has taken equity investment from non-accredited US investors and also paid commissions to unlicensed individuals for investments. One such non-accredited investor is Jennifer Chen, who has repeatedly requested that her $100,000 investment be returned for well over a year. This fraudulent activity has brought significant liability on Utherverse and its investors.

i. Defendant Brian Shuster continues to take investments in cash and cryptocurrency, but is not reporting the investments to the SEC, the IRS, or local tax authorities. This fraudulent activity brings significant liability on Utherverse

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

and its investors.

j. Defendant Brian Shuster is using Utherverse as a tool to launder money for himself and other criminal associates. This fraudulent activity brings significant liability on Utherverse and its investors.

k. Defendant Brian Shuster used Utherverse investor funds to make pornographic films.

l. Defendant Brian Shuster used Utherverse investor funds to pay for personal travel for himself and others.

m. Defendant Brian Shuster used Utherverse investor funds to pay attorneys for work on personal legal matters unrelated to Utherverse.

n. Defendant Brian Shuster gave shares and tokens to his escort girlfriend “Jade” for personal reasons unrelated to the operations of Utherverse.

57. The full extent of Defendant Brian Shuster’s fraudulent actions is presently unknown, and its discovery will require the parties to obtain all records from Defendants Brian Shuster and Utherverse, including banking data and cryptocurrency wallet data.

**CO-DEFENDANT ACCOMPLICES THAT AIDED AND CONSPIRED WITH DEFENDANT BRIAN SHUSTER IN PERPETRATING HIS FRAUD**

58. On information and belief, **Defendant Ari Good** is an attorney licensed in the state of Florida. On information and belief, Defendant Ari Good knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Ari Good created, formed, and operated a business structure which Defendant Shuster utilized to obtain money from Plaintiff in a manner constituting theft. On information and belief, Defendant Brian Shuster paid Defendant Ari Good using funds fraudulently obtained from Plaintiffs, and Defendant Ari Good knowingly received funds fraudulently obtained from Plaintiffs.

59. On information and belief, **Defendant Peter Gantner** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Peter Gantner created a non-licensed platform to

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

illegally and fraudulently sell tokens and receive commissions. On multiple occasions Defendant Brian Shuster paid Defendant Peter Gantner commissions for selling Utherverse tokens and shares to non-accredited US investors. On information and belief, Defendant Peter Gantner knowingly received funds fraudulently obtained from Plaintiffs.

60. On information and belief, **Defendant Nexus Venture** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Nexus Venture was created, owned, and operated by Defendant Peter Gantner, who allowed Defendant Brian Shuster to use Defendant Nexus Venture to launder money and misappropriate or hide funding from investors.

61. On information and belief, **Defendant Gary Shuster** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Gary Shuster is the brother of Defendant Brian Shuster, was the Chief Intellectual Property Officer of Defendant Utherverse Digital, Inc., and was General Counsel of Defendant Utherverse, Inc. Additionally, at all times relevant herein, on information and belief, Defendant Gary Shuster acted as a board member or manager of Defendant Utherverse Gaming.

62. On information and belief, at all times relevant, Defendant Brian Shuster, owned, operated, acted with authority on behalf of, and represented himself as having authority to act on behalf of, **Defendant Utherverse Gaming**. On information and belief, at all times relevant, Defendant Utherverse Gaming had knowledge of and consented to Brian Shuster's representations and actions as being on its behalf. On information and belief, Defendants Utherverse Gaming, Utherverse Inc., and Utherverse Digital are principals or agents of each of the other Utherverse Defendants, creating a unified front in their business dealings. Notably, Defendant Brian Shuster, either individually or through the Utherverse entities, publicly represented, and paid third party advertisers to publicly represent, that he, on behalf of Utherverse, is suing Epic Games for patent infringement, and that a positive result from that lawsuit will directly affect the value of the Utherverse Defendants. That lawsuit was brought by Defendant Utherverse Gaming. The patents in question, such as Patent Numbers 8276071, 8812954, 9123157, 9724605, which are inventoried

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

under Brian Shuster and assigned to Utherverse Gaming LLC, yet prominently featured on the Utherverse website, further link these entities. This intertwining of assets and representations underscores the lack of separation among Defendants Utherverse Gaming, Utherverse Inc., and Utherverse Digital Inc., supporting Plaintiffs' allegations that Utherverse Gaming knowingly aided, conspired with, and concealed funds obtained by fraud, thereby facilitating the scheme perpetrated by Brian Shuster. Therefore, on information and belief, at all times relevant herein, Defendant Brian Shuster acted on behalf of each of the Utherverse Defendants, including Utherverse Gaming. Otherwise, Defendant Utherverse Gaming has ratified Defendant Brian Shuster's public statements that he and the other Utherverse entities are intertwined with, acting in concert with, and owned/operated as one. On information and belief, Defendant Utherverse Digital entered an agreement with Defendant Utherverse Gaming, whereby Defendant Utherverse Gaming would obtain monetization rights to certain intellectual property that Defendant Brian Shuster represented were owned and able to be utilized solely by himself and Utherverse. Plaintiffs allege on information and belief that Defendant Utherverse Gaming knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs.

**ALER EGO**

63. Plaintiffs are informed and believe that Defendant Brian Shuster is the alter ego of Defendant Utherverse, Inc. as follows:

a. Plaintiffs are informed and believe there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse, Inc. such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that at all times mentioned herein Defendant Utherverse, Inc. was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Plaintiffs are informed and believe that the capitalization of Defendant Utherverse, Inc. was illusory, and that the capital assets of Defendants Brian Shuster and Utherverse, Inc. were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

DAILY LAW GROUP
And Justice for All

c. Plaintiffs are informed and believe that Defendant Brian Shuster has used Defendant Utherverse, Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized. For instance, Brian Shuster used Utherverse corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation, further demonstrating the lack of separation between the entities and their owner.

d. Adherence to the fiction of separate corporate existence of Defendant Utherverse, Inc. and Brian Schuster would sanction fraud and promote injustice. Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The companies were consistently undercapitalized, existing solely to funnel investor money for Brian Shuster's personal benefit.

64. Plaintiffs are informed and believes that Defendant Brian Shuster is the alter ego of Defendant Utherverse Digital Inc. as follows:

a. Plaintiffs are informed and believes there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse Digital Inc. such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that at all times mentioned herein Defendant Utherverse Digital Inc. was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Plaintiffs are informed and believe that the capitalization of Defendant Utherverse Digital Inc. was illusory, and that the capital assets of Defendants Brian Shuster and Utherverse Digital Inc. were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Plaintiffs are informed and believe that Defendant Brian Shuster has used Defendant Utherverse Digital Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized.

d. Adherence to the fiction of the separate existence of Defendant Utherverse

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Digital Inc., as a corporation separate from its owner, Defendant Brian Shuster, would sanction fraud and promote injustice. Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The companies were consistently undercapitalized, existing solely to funnel investor money for Brian Shuster's personal benefit.

65. Plaintiffs are informed and believe that Defendant Brian Shuster is the alter ego of Defendant Utherverse Gaming as follows:

a. Plaintiffs are informed and believe there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse Gaming such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that Defendant Brian Shuster has used and representing his authority to act on behalf of Defendant Utherverse Gaming for his own personal use without regard to the proper formalities.

c. Adherence to the fiction of separate corporate existence of Defendant Utherverse Gaming and Brian Schuster would sanction fraud and promote injustice.

**FIRST CAUSE OF ACTION**

**<u>Fraud and Deceit</u>**

**(Against All Defendants)**

66. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

67. The Defendants represented to Plaintiffs that specific facts concerning the Utherverse Defendants and Defendant Brian Shuster were true, as alleged herein.

68. The Defendants' representations were false.

69. The Defendants knew that the representations were false when they were made.

70. The Defendants made the representations recklessly and without regard for their truth.

71. The Defendants intended that Plaintiffs rely on the representations.



DAILY LAW GROUP
And Justice for All

72. The Plaintiffs reasonably relied on the representations.

73. As a direct and proximate result of the Defendants' fraudulent conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

a. Based on the allegations herein, Plaintiffs Joshua Denne, Blockchain Alliance, Blockchain Funding, and Masternode Partners seek to recover in an amount to be proven at trial, well over $977,536,500.

b. Based on the allegations herein, Plaintiff Nima Momayez seeks to recover in an amount to be proven at trial not less than $1,350,000.

74. Defendants' fraud as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

**Civil Claim Under Penal Code Section 496(c)**

**(Against All Defendants)**

75. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

76. Penal Code § 496(a) makes receiving or buying property "that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen obtained," a criminal offense punishable by imprisonment.

77. Penal Code § 496(c) provides that any person "who has been injured by a violation of [subdivision (a)] . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

78. Based on the statutory language, a criminal conviction under Penal Code § 496(a) is



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Daily Law Group
And Justice for All

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

not a prerequisite to recover treble damages under Penal Code § 496(c).

79. The phrase "any manner constituting theft" under Penal Code § 496(a) has been broadly construed and includes, inter alia, theft by false pretense and is further defined in Penal Code § 484(a) as being: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

80. As alleged herein, the Defendants obtained funds from Plaintiffs by way of fraud, in a manner constituting theft.

81. As alleged herein, the Defendants continue to withhold and conceal funds from Plaintiffs, which were obtained by way of fraud, in a manner constituting theft.

82. At all times relevant herein, Plaintiffs were damaged due to the Defendants theft.

83. As alleged herein, Defendants knowingly obtained, received, withheld and/or concealed the Plaintiffs' funds with the intent to deprive Plaintiffs of its use permanently and have knowingly, willfully, and deliberately, aided the other Defendants in obtaining, receiving, withholding, and/or concealing said monies, knowing that such property has been stolen from Plaintiffs' possession in a manner constituting theft.

84. Defendants knowingly withheld Plaintiffs' funds, which were obtained through fraudulent representations. Defendants knew or were recklessly indifferent to the fact that their conduct constituted theft under Penal Code § 496, and they acted with intent to permanently deprive Plaintiffs of their funds. These funds were diverted for personal use, including the payment of unauthorized commissions and legal fees unrelated to the business operations of Utherverse. Plaintiffs are entitled to treble damages, attorney's fees, and costs for the Defendants' intentional theft. These unauthorized uses of investor funds not only breached fiduciary duties but also



Daily Law Group
And Justice for All

undermined the financial stability of Utherverse, to the detriment of Plaintiff.

85. As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

86. Under California Penal Code section 496(c), Plaintiffs are entitled to three times the amount of actual damages, costs of suit, and reasonable attorney's fees.

a. Accordingly, Plaintiffs Joshua Denne, Blockchain Alliance, Blockchain Funding, and Masternode Partners seek to recover in an amount to be proven at trial, well over $977,536,500 x 3 = $2,932,609,500.

b. Based on the allegations herein, Plaintiff Nima Momayez seeks to recover in an amount to be proven at trial not less than $1,350,000 x 3 = $4,050,000.

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against All Defendants)**

87. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

88. Defendant Brian Shuster was Plaintiffs' fiduciary.

89. Defendant Brian Shuster acted on Plaintiffs' behalf for the purpose of obtaining their investments in the Utherverse Defendants.

90. Defendant Brian Shuster failed to act as a reasonably careful person would have acted under the same or similar circumstances.

91. Plaintiffs were harmed and Defendant Brian Shuster's conduct was a substantial factor in causing Plaintiff's Harm.

92. As a direct and proximate result of the Defendants' actions Plaintiffs have sustained damages in an amount to be proven at trial.

93. Defendants' actions as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Daily Law Group
And Justice for All

damages in an amount to be determined according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**

**Defamation Per Se**

**(Against All Defendants)**

94. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

95. In or about September 2024, Defendant Brian Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Plaintiff Joshua Denne, and with whom Plaintiff Joshua Denne has had previous relationships.

96. In these letters, Defendant Brian Shuster falsely states that Plaintiff Joshua Denne committed fraud on the investors of Utherverse.

97. Defendant Brian Shuster falsely claims that Plaintiff Joshua Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock.

98. Defendant Brian Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters."

99. Defendant Brian Shuster claims that he has all evidence of this alleged fraud and theft.

100. Defendant Brian Shuster made these statements knowing that they were false and knowing they would cause injury to Plaintiffs.

101. As a direct and proximate result of the false statements, Plaintiffs have sustained damages in an amount to be proven at trial.

102. Defendants' actions as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

//

//

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

**WHEREFORE**, Plaintiffs pray for judgment as follows:

On the First Cause of Action for Fraud and Deceit :

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Second Cause of Action for Civil Claim Under Penal Code § 496:

1. For three times the amount of actual damages or "treble damages"; and
2. For reasonable attorneys' fees.

On the Third Cause of Action for Breach of Fiduciary Duty:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Fourth Cause of Action for Defamation Per Se:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On All Causes of Action:

1. For costs of suit incurred herein;
2. For prejudgment interest at the maximum legal rate on all sums awarded; and
3. For such other and further relief as the court may deem proper.

AND WHEREFORE, Plaintiffs pray for injunctive relief and accounting

Plaintiffs request an order for:

1. Appointment of a receiver to oversee the Entity Defendants and ensure the preservation of investor funds. The appointed receiver shall take control of Utherverse's operations, including its financial records and bank accounts, to ensure no further dissipation of investor funds
2. Disgorgement of all ill-gotten gains derived from Defendants' fraudulent conduct.
3. A full and complete accounting of all funds received and disbursed by the Entity Defendants to determine the location and use of Plaintiffs' investments.
4. A preliminary injunction to freeze Defendants' assets, prevent further transfers, and ensure no additional investor harm.

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury to all issues so triable.

Dated: November 6, 2024

Respectfully submitted,

DAILY LAW GROUP

James D. Daily, Esq.
**ATTORNEYS FOR PLAINTIFFS**

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

# EXHIBIT B

DAILY LAW GROUP
James D. Daily, Esq. SBN 146699
Michael R. Jones, Esq. SBN 306957
660 Newport Center Drive, Suite 1000
Newport Beach, California 92660
Telephone: (949) 662-6000 | Facsimile: (949) 258-5555
jdaily@dailylawgroup.com
mjones@dailylawgroup.com

Attorneys for PLAINTIFFS
JOSHUA DENNE; NIMA MOMAYEZ;
BLOCKCHAIN FUNDING, INC.;
BLOCKCHAIN ALLIANCE LLC;
MASTERNODE PARTNERS; and NIYA
HOLDINGS, LLC

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ORANGE**

| | |
|---|---|
| JOSHUA DENNE, an individual; NIMA MOMAYEZ, an individual; BLOCKCHAIN FUNDING, INC., a Delaware Corporation; MASTERNODE PARTNERS, a Wyoming Limited Liability Company; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; and NIYA HOLDINGS, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN SHUSTER, an individual; UTHERVERSE, INC., a Nevada Corporation; UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE GAMING, a New York Limited Liability Company; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. Fraud and Deceit**<br>**2. Penal Code § 496(c)**<br>**3. Breach of Fiduciary Duty**<br>**4. Defamation Per Se**<br><br>[DEMAND FOR JURY TRIAL] |

1. Plaintiffs Joshua Denne, Nima Momayez, Blockchain Funding, Inc., Masternode Partners, Blockchain Alliance LLC, and Niya Holdings, LLC (collectively "Plaintiffs") allege and plead as follows against Defendants Brian Shuster, Utherverse, Inc., Utherverse Digital Inc., Utherverse Gaming, Nexus Venture LLC, Peter Gantner, Ari Good, Gary Shuster, and DOES 1-25 (collectively "Defendants"):

**SUMMARY**

2. This case involves the fraudulent offer and sale of unregistered securities by Brian Shuster ("Shuster") and the entities he controlled and/or acted on behalf of: Utherverse, Inc., Utherverse Digital Inc., and Utherverse Gaming (collectively, "Utherverse"). These Defendants, acting in concert with partners Peter Gantner ("Gantner"), Nexus Venture ("Nexus"), and attorneys Ari Good ("Good") and Gary Shuster ("Gary"), orchestrated a scheme to defraud investors, including the Plaintiffs.

3. Since at least 2022 and continuing through the present, the Defendants engaged in a systematic and intentional pattern of fraudulent conduct, misappropriating investor funds, concealing material facts, and making multiple false statements about the nature and profitability of their investments. The Defendants unlawfully induced Plaintiffs to invest in Utherverse by promising outsized returns, misrepresenting the state of Utherverse's financial health, and touting fictitious market success. Plaintiffs were deceived into believing that their investments would be used to develop virtual metaverse technologies and secure monetization opportunities through blockchain-based products.

4. In reality, the Defendants misappropriated investor funds for personal gain and undisclosed purposes, including payments to non-licensed brokers, personal travel, and unrelated business ventures. Defendants further misrepresented key financial metrics such as user numbers, transaction volume, and proprietary technology. Their fraudulent conduct has caused significant financial harm to the Plaintiffs.

5. Plaintiffs allege that, through this fraudulent scheme, Defendants violated California securities laws and committed theft under Penal Code § 496(c). The unlawful conduct includes:

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

a. Misrepresenting the expected return on investment and the state of the Utherverse platform;

b. Offering and selling unregistered securities through fraudulent inducement;

c. Concealing material facts, including conflicts of interest, misallocation of funds, and the financial instability of Utherverse; and

d. Using investor funds to pay commissions to unlicensed brokers and to finance personal expenses.

6. Defendants also failed to disclose material information about related-party transactions and the payment of unauthorized commissions to associates. Plaintiffs allege that each of the Utherverse entities are mere alter egos of Brian Shuster, whose personal use of corporate assets renders any separation between the entities and their owner illusory. Plaintiffs now seek compensatory and punitive damages, treble damages under Penal Code § 496(c), and equitable relief to remedy the harm caused by Defendants' intentional and reckless conduct.

7. Based upon the allegations made herein, Plaintiffs seek damages totaling over $2,936,659,500.

## PARTIES

**A. Plaintiffs.**

8. Plaintiff, JOSHUA DENNE, is an individual who resides in Paradise Valley, Arizona.

9. Plaintiff, NIMA MOMAYES, is an individual who resides in Irvine, California.

10. Plaintiff, BLOCKCHAIN FUNDING, INC., is a Delaware Corporation.

11. Plaintiff, MASTERNODE PARTNERS, is a Wyoming Limited Liability Company.

12. Plaintiff, BLOCKCHAIN ALLIANCE LLC, is a Wyoming Limited Liability Company.

13. Plaintiff, NIYA HOLDINGS, LLC, is a Nevada Limited Liability Company.

**B. Defendants.**

14. Defendant, BRIAN SHUSTER, is an individual who resides in Vancouver, British Columbia.

15. Defendant, UTHERVERSE, INC., is a Nevada Corporation that conducts business in California.

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

16. Defendant, UTHERVERSE DIGITAL INC., is a Vancouver, British Columbia, Corporation that conducts business in California.

17. Defendant, UTHERVERSE GAMING, is a New York Limited Liability Company that, upon information and belief, conducts business throughout the country, including in the State of California.

18. Defendant, PETER GANTNER, is an individual who resides in Fountain Hills, Arizona.

19. Defendant, NEXUS VENTURE LLC, is a Arizona Limited Liability Company that conducts business in California.

20. Defendant, ARI GOOD, is an individual who resides in Miami, Florida.

21. Defendant, GARY SHUSTER, is an individual who resides in Fresno, California. On information and belief, at all times relevant herein, Defendant Gary Shuster was the Chief Intellectual Property Officer of Defendant Utherverse Digital, Inc., was General Counsel of Defendant Utherverse, Inc., and acted as a board member or manager of Defendant Utherverse Gaming.

22. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1-25, inclusive, are unknown to Plaintiffs at the present time, and Plaintiffs therefore sue said Defendants, and each of them, by such fictitious names. If necessary, Plaintiffs will seek leave of court to amend this Complaint to allege their true names and capacities when they are ascertained.

23. Plaintiffs are informed and believe, and on that basis allege, that each of Does 1-25, inclusive, participated in the activities described herein and rendered material assistance to Defendants in the performance of the activities described in this Complaint.

24. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants are responsible in some manner for the occurrences and matters alleged herein and that Plaintiffs' injuries and damages were and are the direct and proximate result of the actions and omissions of these Defendants, and each of them.

25. Plaintiffs are further informed and believe, and on that basis allege, that each Defendant herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer,

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

co-venturer, co-conspirator, partner or alter ego of the others, or was otherwise involved with the other Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by Defendants to Plaintiffs. Each Defendant is liable and responsible on the facts alleged herein for all of the relief sought.

26. Plaintiffs are further informed and believe, and on that basis allege, that certain of the Defendants conspired and agreed with and aided and abetted one or more of the other Defendants in additional ways which are unknown to Plaintiffs at this time.

27. Plaintiffs are informed and believe, and on that basis allege, that at all relevant times hereto each of the Defendants was the merging entity, merged entity, subsidiary, acquiring corporation, the agent, servant, successor-in-interest, independent contractor and/or employee of each of the remaining defendants, and in doing the things herein alleged, was acting within the course and scope of their authority as agents, servants, successors-in-interest, independent contractors or employees, and with the express and/or implied permission, knowledge, consent, and ratification of their co-defendants, or otherwise acting with apparent authority. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents. Each Defendant therefore knowingly and substantially participated in the conduct as alleged herein and is liable for the damages arising therefrom.

28. Whenever this Complaint references acts of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting individually, jointly, and severally.

29. At all relevant times, each of the Defendants were acting in concert with, and in conspiracy with, each and every of the remaining Defendants.

**JURISDICTION AND VENUE**

30. This Court has jurisdiction over Defendants because they have sufficient minimum contacts with California so as to render the jurisdiction by California courts permissible under traditional notions of fair play and substantial justice. Defendants executed agreements with Plaintiffs in Orange County, California, which resulted in the fraud and theft alleged herein.

31. Venue is proper because the communications and actions upon which the causes of action



Daily Law Group
And Justice for All

are based occurred in Orange County, California. The fraudulent, unfair, and unlawful acts described herein have a direct effect on citizens within Orange County and throughout the State of California.

## GENERAL BACKGROUND

32. Plaintiffs are informed and believe that Defendant Brian Shuster owns and operates each of the Utherverse entities, which act by and through Defendant Brian Shuster.

33. Utherverse advertises itself as being "not just another player in the metaverse space[, but] the pioneers, with over 15 years of experience in building successful virtual economies and communities…By harnessing the immense potential of web3, blockchain, and AI, we are creating a metaverse that is unmatched in its immersion, adaptability, and profitability."

34. Plaintiff Joshua Denne was introduced to Defendant Brian Shuster and Utherverse in or about 2022. At that time, Utherverse was represented by a loan officer and a defunct mortgage broker. Utherverse had been struggling to raise capital for more than 10 years with zero success—it did not have a functioning website, did not have any formal presentation materials, such as investment documents or subscription agreements, it did not have a functional corporate structure, and it was critically devoid of any effective management. At that time, Utherverse consisted of eleven (11) separate LLCs with no apparent ties to one another, and were all operated by Brian Shuster—a one man show.

35. Defendant Brian Shuster claimed numerous past successes, millions of active Utherverse users, billions in transactions on the Utherverse platform, and a robust patent portfolio, among numerous other representations that were later learned to be false.

36. A non-exhaustive list of representations made by Defendant Brian Shuster, which were relied upon by Plaintiffs in their decision to work with and invest in Utherverse is as follows:

a. Utherverse, Inc. having 50 million users;

b. Over 1 million metaverses on the platform;

c. Utherverse had a revenue of $8-10 million per year;

d. Utherverse, Inc. having $16,000,000,000 in transactions executed on its platform;

e. Defendant Brian Shuster claimed to have invested $45 million of his personal

money in the company;

f. Utherverse has spent more than $40 million on development of its metaverse offerings;

g. Utherverse was franchised out to 17 countries;

h. Utherverse generated more than $77 million in revenues through memberships, marketplaces, advertising and other metaverse related revenue streams;

i. Defendants Brian Shuster and Utherverse owned a large number of valuable patents; and

j. That development of the Utherverse platform was ongoing and would be operational on specific dates (which were never met).

37. In reliance on Defendant Brian Shuster's representations about himself and Utherverse, Plaintiff Joshua Denne agreed to invest and help promote and build Utherverse toward success.

38. On or about April 11, 2022, Defendant Brian Shuster, on behalf of Defendant Utherverse, executed a Senior Secured Convertible Promissory Note with Plaintiffs Nima Momayez and Niya Holdings, LLC. This agreement was executed by Plaintiff Nima Momayes in Newport Beach, California on behalf of himself and as a Member of Niya Holdings, LLC. Pursuant to this agreement, Plaintiff Nima Momayez, on behalf of Niya Holdings, LLC transferred $1,350,000 to Defendant Utherverse. Plaintiff Nima Momayez individually, and on behalf of Niya Holdings, LLC, agreed to these terms, and to provide the funding, in reliance on Defendant Brian Shuster's numerous misrepresentations, as previously detailed herein. Defendant Brian Shuster, on behalf of Utherverse, agreed to repay Plaintiffs Nima Momayez and Niya Holdings, LLC pursuant to the terms of the Promissory Note, but now refuses to do so. Instead, Defendant Brian Shuster has stolen the funds. Therefore, on information and belief, Plaintiffs Nima Momayez and Niya Holdings, LLC allege that Defendant Brian Shuster never intended to honor the Promissory Note or repay the funds, but always intended to defraud and steal the money.

39. On May 10, 2022, Defendant Utherverse, by and through Defendant Brian Shuster, and Plaintiff Blockchain Funding, Inc., by and through Plaintiff Joshua Denne, executed a Simple

Agreement for Future Tokens ("SAFT Agreement") whereby Plaintiff Blockchain Funding, Inc. purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 USD. This agreement was executed by Plaintiff Joshua Denne in Huntington Beach, California. Plaintiff Blockchain Funding, Inc. fulfilled its obligations and made payment to Defendant Utherverse in accordance with the SAFT Agreement. However, Defendant Brian Shuster now takes the position that Plaintiff Blockchain Funding, Inc. does not own any tokens whatsoever. Therefore, on information and belief, Plaintiff Blockchain Funding, Inc. alleges that Defendants Brian Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead intended to defraud Plaintiff Blockchain Funding, Inc. of the money paid. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $684,000,000 on the 360,000,000 tokens that were to be allocated to Plaintiff Blockchain Funding, Inc.

40. On May 10, 2022, Defendant Utherverse, by and through Defendant Brian Shuster, and Plaintiff Masternode Partners, LLC, by and through Plaintiff Joshua Denne, executed a SAFT Agreement whereby Plaintiff Masternode Partners, LLC purchased 150,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $5,000.01 USD. This agreement was executed by Plaintiff Joshua Denne in Huntington Beach, California. Plaintiff Masternode Partners, LLC fulfilled its obligations and made payment to Defendant Utherverse in accordance with the SAFT Agreement. However, Defendant Brian Shuster now takes the position that Plaintiff Masternode Partners, LLC does not own any tokens whatsoever. Therefore, on information and belief, Plaintiff Masternode Partners, LLC alleges that Defendants Brian Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead intended to defraud Plaintiff Masternode Partners, LLC of the money paid in reliance on the SAFT Agreement. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $285,000,000 on the 150,000,000 tokens owned that were to be allocated to Plaintiff Masternode Partners, LLC.

41. On or about June 5, 2023, Plaintiff Blockchain Funding, Inc., by and through Plaintiff Joshua Denne, loaned to Defendant Utherverse a total of $350,000.00, evidenced by a Promissory Note executed by Defendant Utherverse, by and through Defendant Brian Shuster. To

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

secure the Promissory Note, Defendant Utherverse, by and through Defendant Brian Shuster, executed a Stock Pledge Agreement, which memorialized the Promissory Note and pledged 2,800,000 shares of Utherverse Inc. Class A Common Stock to Plaintiff Blockchain Funding, Inc. These agreements were executed by Plaintiff Joshua Denne in Huntington Beach, California, and both explicitly agree to jurisdiction in the State of California. Plaintiff Blockchain Funding, Inc. fulfilled its obligations and provided $350,000.00 to Defendant Utherverse in accordance therewith; and Plaintiff Blockchain Funding, Inc. understood that ownership of the shares had been transferred accordingly. However, Defendant Brian Shuster now takes the position that Plaintiff Blockchain Funding, Inc. does not own any shares whatsoever. Therefore, on information and belief, Plaintiff Blockchain Funding, Inc. alleges that Defendants Brian Shuster and Utherverse never intended to transfer the shares, but instead intended to defraud Plaintiff Blockchain Funding, Inc. of the $350,000.00. As of September 2024, the stock of Utherverse Inc., was last sold to investors at $2.50 per share, putting a total value of $7,000,000 on the 2,800,000 shares owned by Plaintiff Blockchain Funding, Inc.

42. In reliance on the representations made by Defendant Brian Shuster and the agreements between Plaintiff Blockchain Funding, Plaintiff Masternode Partners, and Defendant Utherverse—Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode Partners expended significant funds to promote and advance the success of Utherverse, totaling more than $1,376,500. Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode Partners expended these funds in reliance on Defendant Brian Shuster's representations that they would be repaid by Utherverse. However, Defendant Brian Shuster now takes the position that Plaintiffs Blockchain Funding and Masternode Partners do not own any shares or tokens. Therefore, on information and belief, Plaintiffs Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance, and Masternode Partners, LLC allege that Defendants Brian Shuster and Utherverse intended to defraud them of these funds, by reaping the benefits therefrom without ever intending to compensate or repay them. A non-exhaustive list of the funds expended by Plaintiffs Joshua Denne, Blockchain Funding, Blockchain Alliance, and Masternode in furtherance of the business and operations of Utherverse is as follows:

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

a. Token set up costs (Grant Thornton) - $198,000

b. Honing PR - $65,000

c. Elevator Social Media - $145,000

d. Mona Hire - $20,000

e. Tokensoft Platform - $35,000

f. HOW 3 (digital marketing) - $50,000

g. Ad spend - $6,500

h. Promote Republic Europe Group - $25,000

i. Additional digital marketing costs - $82,000

j. Blockchain Alliance marketing - $750,000

**APPROXIMATE TOTAL: $1,376,500**

43. Unfortunately, it was soon revealed that Defendant Brian Shuster had used Utherverse in a way that tied it to the pornography industry, which was severely detrimental to its reputation. In an effort to repair the damaged reputation of Utherverse, Plaintiff Joshua Denne, among other things, spent roughly $65,000 on a PR agency and spent an additional $165,000 on social media promotions, including professionally producing a video interview with Defendant Brian Shuster.

44. Through a longstanding relationship that Plaintiff Joshua Denne had developed with a private investor, Plaintiff Joshua Denne was able to secure an agreement that would have raised $25 million for Utherverse. However, days prior to the wiring of the funds from the investor, a disgruntled employee of Defendant Brian Shuster contacted the investor and informed him that Defendant Brian Shuster was a fraud and that a lawsuit against Defendant Brian Shuster and Utherverse was being prepared for filing. As a result, the investor refused to move forward.

45. Plaintiff Joshua Denne brought in Mr. Todd Pritcher, who is an expert on taking the necessary steps to make a company investable, which requires detailed documentation and structural reorganization. Mr. Pritcher eliminated the majority of the 11 LLCs that made up Utherverse and created a coherent parent company with subsidiaries. In the process, Mr. Pritcher attempted to verify and create proper intellectual property documentation to clearly illustrate which patents were owned



Daily Law Group
And Justice for All

by the various Utherverse entities. However, Mr. Pritcher was unable to verify ownership of numerous patents that Defendant Brian Shuster had represented were owned by himself and Utherverse. This realization was alarming, as Defendant Brian Shuster's misrepresentations were relied upon by investors and left Utherverse with potential liabilities. Ultimately, despite this understanding, Defendant Brian Shuster refused to disclose these misrepresentations.

46. Plaintiff Joshua Denne then brought in Mr. Robb Hackett, an accomplished CEO in the Web3 space, who had stewarded several successful investment exits in his past. However, after four months, the CEO refused to continue working with Defendant Brian Shuster and resigned due to a lack of payment for his work, a lack of effective corporate governance, and a legitimate fear of liabilities. Mr. Hackett is still owed $75,000 for his work on behalf of Defendants Brian Shuster and Utherverse.

47. Plaintiff Joshua Denne also attempted to bring in Mr. Joseph Ramelli to occupy the position of CFO, with an intention to clean up Utherverse's books and records, to create proper budgets and timelines, and oversee the use of investor funds. However, Defendant Brian Shuster refused to hire Mr. Ramelli, in an effort to maintain control over, and conceal, his misappropriation of investor funds.

48. Plaintiff Joshua Denne brought in a PCAOB accounting firm to produce audited financial statements to enable the company to participate in crowdfunding. This initiative was accomplished; however, it was discovered that the company's revenue was not $8-10 million per year—as Defendant Brian Shuster had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing significant investment funding. Rather, Utherverse's revenue was less than $1.5 million per year. Additionally, the accounting firm was unable to confirm in any way that Defendant Brian Shuster had invested $45 million of his own funds—as he had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing investment funding.

49. Prior to Plaintiff Joshua Denne's involvement, Utherverse was experiencing difficulty securing a banking relationship due to Defendant Brian Shuster's participation in the pornography industry. However, Plaintiff Joshua Denne aided Utherverse in securing a reputable



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

DAILY LAW GROUP
And Justice for All

banking relationship with Fresno Bank, where Utherverse still banks to this day.

50. Despite all of the notable progress that Utherverse experienced at the hand of Plaintiff Joshua Denne, Defendant Brian Shuster chose to continue in his misrepresentations and mismanagement of Utherverse. Over twenty (20) significant developmental deadlines were missed and over a dozen "launch dates" were unmet. On information and belief, each of these deadlines and launch dates were only provided by Defendant Brian Shuster to further delay and conceal his fraudulent activities.

51. Defendant Brian Shuster's mismanagement was exemplified on numerous occasions, including him hiring an individual as a "Pro-Developer" for $30,000 per month. It was later discovered that this "Pro-Developer" was outsourcing the work overseas for $1,500 per month, submitting the work as his own, and keeping the remaining $28,500. On information and belief Defendant Brian Shuster conspired with this individual and used this opportunity to launder and/or siphon and misappropriate investor funds.

52. In or about April 2024, after Defendant Brian Shuster once again failed to meet a promised deadline, Plaintiff Joshua Denne ultimately decided to part ways with Defendants Brian Shuster and Utherverse.

53. During the separation process, Defendant Brian Shuster provided written acknowledgment of Plaintiff Joshua Denne's efforts to further the development and success of Utherverse—including the monies spent on behalf of Utherverse, as well as Plaintiff Joshua Denne's ownership of 510,000,000 tokens and 2,800,000 shares of Utherverse Inc. Defendant Brian Shuster and Plaintiff Joshua Denne engaged in detailed discussions, both oral and in writing, regarding this separation, and Plaintiff Joshua Denne provided an additional $160,000 in furtherance of these efforts—which was paid to promotion groups in order to create the necessary settlement liquidity.

54. Unsurprisingly, after agreeing in writing on a detailed exit strategy for Plaintiffs, Defendant Brian Shuster reneged and took the position that Plaintiffs own nothing with regard to Utherverse.

55. In or about September 2024, Defendant Brian Shuster, as President and Chairman of

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

Utherverse, Inc., sent formal letters to several of the investors that were located by Plaintiff Joshua Denne, and with whom Plaintiff Joshua Denne has had previous relationships. In these letters, Defendant Brian Shuster falsely states that Plaintiff Joshua Denne committed fraud on the investors of Utherverse. Defendant Brian Shuster falsely claims that Plaintiff Joshua Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock. Defendant Brian Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters." Defendant Brian Shuster claims that he has all evidence of this alleged fraud and theft. Plaintiff Josua Denne denies the truth of these defamatory statements and alleges that Defendant Brian Shuster knew the falsity of these claims and the harm they would cause at the time he made them.

56. On information and belief, Plaintiffs allege that Defendant Brian Shuster misrepresented the financial value and developmental progress of Utherverse, as previously discussed, in order to lure investors and disguise the actual state of Utherverse's operations, which were significantly underperforming. Plaintiffs relied on these misrepresentations when they decided to invest, believing Utherverse's platform was financially stable and poised for imminent growth. When these promises failed to materialize, Plaintiffs suffered significant financial harm

57. On information and belief, Defendant Brian Shuster has used investor funds for his own personal gain, for purposes entirely unrelated to the business of Utherverse or the purposes for which the funds were provided. Further, Defendant Brian Shuster's pattern of fraud and misrepresentation brought unfathomable liability upon Utherverse and the investors that relied upon those misrepresentations. Specific examples of Defendant Brian Shuster's character and propensity for fraudulent activity include, but are not limited to, the following:

a. Defendant Brian Shuster paid commissions to two separate unlicensed brokers for the investment of $1,350,000 that was made by Plaintiff Nima Momayez on behalf of Plaintiff Niya Holdings, LLC. This fraudulent activity brought significant liability on Utherverse and its investors.

b. Defendant Brian Shuster took a one-million-dollar ($1,000,000) investment from Mr. Chauncey Lufkin, who Defendant Brian Shuster then placed on the board of

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

Utherverse. Again, Defendant Brian Shuster paid commission to an unlicensed broker for this investment, to a woman named Jasmine Yuan. This fraudulent activity brought significant liability on Utherverse and its investors.

c. After Mr. Chauncey Lufkin's investment, Defendant Brian Shuster entered a consulting agreement with Mr. Lufkin's wife, and paid her in Utherverse shares, creating a major conflict of interest.

d. It was subsequently discovered that Mr. Lufkin was under investigation by the SEC for cryptocurrency investment fraud and was ultimately sanctioned. However, Defendant Brian Shuster refused to remove Mr. Lufkin from the board of Utherverse or remove Mr. Lufkin's wife as a consultant. Even more egregious, Defendant Brian Shuster chose not to inform any of the investors of this significant liability. Further, Defendant Brian Shuster did not disclose Mr. Lufkin or his wife's involvement with Utherverse to the SEC in the required SEC filings. This fraudulent activity brought significant liability on Utherverse and its investors.

e. Defendant Brian Shuster is currently selling pre-sale tokens on a United States based non-SEC compliant and unregistered platform, which is owned by a US corporation and an individual. This fraudulent activity brings significant liability on Utherverse and its investors.

f. Defendant Brian Shuster is currently taking token investments from non-accredited US investors. This fraudulent activity brings significant liability on Utherverse and its investors.

g. Defendant Brian Shuster is paying a commission and referral fees to US-based individuals for sales of Utherverse tokens. This fraudulent activity brings significant liability on Utherverse and its investors.

h. Defendant Brian Shuster has taken equity investment from non-accredited US investors and also paid commissions to unlicensed individuals for investments. One such non-accredited investor is Jennifer Chen, who has repeatedly requested

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

that her $100,000 investment be returned for well over a year. This fraudulent activity has brought significant liability on Utherverse and its investors.

i. Defendant Brian Shuster continues to take investments in cash and cryptocurrency, but is not reporting the investments to the SEC, the IRS, or local tax authorities. This fraudulent activity brings significant liability on Utherverse and its investors.

j. Defendant Brian Shuster is using Utherverse as a tool to launder money for himself and other criminal associates. This fraudulent activity brings significant liability on Utherverse and its investors.

k. Defendant Brian Shuster used Utherverse investor funds to make pornographic films.

l. Defendant Brian Shuster used Utherverse investor funds to pay for personal travel for himself and others.

m. Defendant Brian Shuster used Utherverse investor funds to pay attorneys for work on personal legal matters unrelated to Utherverse.

n. Defendant Brian Shuster gave shares and tokens to his escort girlfriend "Jade" for personal reasons unrelated to the operations of Utherverse.

58. The full extent of Defendant Brian Shuster's fraudulent actions is presently unknown, and its discovery will require the parties to obtain all records from Defendants Brian Shuster and Utherverse, including banking data and cryptocurrency wallet data.

**CO-DEFENDANT ACCOMPLICES THAT AIDED AND CONSPIRED WITH DEFENDANT BRIAN SHUSTER IN PERPETRATING HIS FRAUD**

59. On information and belief, **Defendant Ari Good** is an attorney licensed in the state of Florida. On information and belief, Defendant Ari Good knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Ari Good created, formed, and operated a business structure which Defendant Shuster utilized to obtain money from Plaintiff in a manner constituting theft. On information and belief, Defendant Brian Shuster paid Defendant Ari Good using funds fraudulently

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

obtained from Plaintiffs, and Defendant Ari Good knowingly received funds fraudulently obtained from Plaintiffs.

60. On information and belief, **Defendant Peter Gantner** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Peter Gantner created a non-licensed platform to illegally and fraudulently sell tokens and receive commissions. On multiple occasions Defendant Brian Shuster paid Defendant Peter Gantner commissions for selling Utherverse tokens and shares to non-accredited US investors. On information and belief, Defendant Peter Gantner knowingly received funds fraudulently obtained from Plaintiffs.

61. On information and belief, **Defendant Nexus Venture** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Nexus Venture was created, owned, and operated by Defendant Peter Gantner, who allowed Defendant Brian Shuster to use Defendant Nexus Venture to launder money and misappropriate or hide funding from investors.

62. On information and belief, **Defendant Gary Shuster** knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs. On information and belief, Defendant Gary Shuster is the brother of Defendant Brian Shuster, was the Chief Intellectual Property Officer of Defendant Utherverse Digital, Inc., and was General Counsel of Defendant Utherverse, Inc. Additionally, at all times relevant herein, on information and belief, Defendant Gary Shuster acted as a board member or manager of Defendant Utherverse Gaming.

63. On information and belief, at all times relevant, Defendant Brian Shuster, owned, operated, acted with authority on behalf of, and represented himself as having authority to act on behalf of, **Defendant Utherverse Gaming**. On information and belief, at all times relevant, Defendant Utherverse Gaming had knowledge of and consented to Brian Shuster's representations and actions as being on its behalf. On information and belief, Defendants Utherverse Gaming, Utherverse Inc., and Utherverse Digital are principals or agents of each of the other Utherverse Defendants, creating a unified front in their business dealings. Notably, Defendant Brian Shuster,

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

either individually or through the Utherverse entities, publicly represented, and paid third party advertisers to publicly represent, that he, on behalf of Utherverse, is suing Epic Games for patent infringement, and that a positive result from that lawsuit will directly affect the value of the Utherverse Defendants. That lawsuit was brought by Defendant Utherverse Gaming. The patents in question, such as Patent Numbers 8276071, 8812954, 9123157, 9724605, which are inventoried under Brian Shuster and assigned to Utherverse Gaming LLC, yet prominently featured on the Utherverse website, further link these entities. This intertwining of assets and representations underscores the lack of separation among Defendants Utherverse Gaming, Utherverse Inc., and Utherverse Digital Inc., supporting Plaintiffs' allegations that Utherverse Gaming knowingly aided, conspired with, and concealed funds obtained by fraud, thereby facilitating the scheme perpetrated by Brian Shuster. Therefore, on information and belief, at all times relevant herein, Defendant Brian Shuster acted on behalf of each of the Utherverse Defendants, including Utherverse Gaming. Otherwise, Defendant Utherverse Gaming has ratified Defendant Brian Shuster's public statements that he and the other Utherverse entities are intertwined with, acting in concert with, and owned/operated as one. On information and belief, Defendant Utherverse Digital entered an agreement with Defendant Utherverse Gaming, whereby Defendant Utherverse Gaming would obtain monetization rights to certain intellectual property that Defendant Brian Shuster represented were owned and able to be utilized solely by himself and Utherverse. Plaintiffs allege on information and belief that Defendant Utherverse Gaming knowingly aided and conspired with Defendant Brian Shuster to defraud, and conceal and withhold funds obtained from, Plaintiffs.

**ALER EGO**

64. Plaintiffs are informed and believe that Defendant Brian Shuster is the alter ego of Defendant Utherverse, Inc. as follows:

a. Plaintiffs are informed and believe there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse, Inc. such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that at all times mentioned herein Defendant Utherverse, Inc. was inadequately capitalized in light of the nature of the business



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

DAILY LAW GROUP
And Justice for All

to be conducted and the accompanying risk of loss to its investors. Plaintiffs are informed and believe that the capitalization of Defendant Utherverse, Inc. was illusory, and that the capital assets of Defendants Brian Shuster and Utherverse, Inc. were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Plaintiffs are informed and believe that Defendant Brian Shuster has used Defendant Utherverse, Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized. For instance, Brian Shuster used Utherverse corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation, further demonstrating the lack of separation between the entities and their owner.

d. Adherence to the fiction of separate corporate existence of Defendant Utherverse, Inc. and Brian Schuster would sanction fraud and promote injustice. Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The companies were consistently undercapitalized, existing solely to funnel investor money for Brian Shuster's personal benefit.

65. Plaintiffs are informed and believes that Defendant Brian Shuster is the alter ego of Defendant Utherverse Digital Inc. as follows:

a. Plaintiffs are informed and believes there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse Digital Inc. such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that at all times mentioned herein Defendant Utherverse Digital Inc. was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Plaintiffs are informed and believe that the capitalization of Defendant Utherverse Digital Inc. was illusory, and that the capital assets of Defendants Brian Shuster and Utherverse Digital Inc. were so intertwined and comingled that their value could only be assessed as a whole, and

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



DAILY LAW GROUP
And Justice for All

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

the debts of one should be considered the debts of the other.

c. Plaintiffs are informed and believe that Defendant Brian Shuster has used Defendant Utherverse Digital Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized.

d. Adherence to the fiction of the separate existence of Defendant Utherverse Digital Inc., as a corporation separate from its owner, Defendant Brian Shuster, would sanction fraud and promote injustice. Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The companies were consistently undercapitalized, existing solely to funnel investor money for Brian Shuster's personal benefit.

66. Plaintiffs are informed and believe that Defendant Brian Shuster is the alter ego of Defendant Utherverse Gaming as follows:

a. Plaintiffs are informed and believe there is a unity of interest and ownership between Defendants Brian Shuster and Utherverse Gaming such that any individuality and separateness between the company and individual has ceased.

b. Plaintiffs are informed and believe that Defendant Brian Shuster has used and representing his authority to act on behalf of Defendant Utherverse Gaming for his own personal use without regard to the proper formalities.

c. Adherence to the fiction of separate corporate existence of Defendant Utherverse Gaming and Brian Schuster would sanction fraud and promote injustice.

**FIRST CAUSE OF ACTION**

**Fraud and Deceit**

**(Against All Defendants)**

67. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

68. The Defendants represented to Plaintiffs that specific facts concerning the Utherverse Defendants and Defendant Brian Shuster were true, as alleged herein.



Daily Law Group
And Justice for All

69. The Defendants' representations were false.

70. The Defendants knew that the representations were false when they were made.

71. The Defendants made the representations recklessly and without regard for their truth.

72. The Defendants intended that Plaintiffs rely on the representations.

73. The Plaintiffs reasonably relied on the representations.

74. As a direct and proximate result of the Defendants' fraudulent conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

a. Based on the allegations herein, Plaintiffs Joshua Denne, Blockchain Alliance, Blockchain Funding, and Masternode Partners seek to recover in an amount to be proven at trial, well over $977,536,500.

b. Based on the allegations herein, Plaintiffs Nima Momayez and Niya Holdings, LLC seek to recover in an amount to be proven at trial not less than $1,350,000.

75. Defendants' fraud as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

**Civil Claim Under Penal Code Section 496(c)**

**(Against All Defendants)**

76. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

77. Penal Code § 496(a) makes receiving or buying property "that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen obtained," a criminal offense punishable by imprisonment.



DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Daily Law Group
And Justice for All

78. Penal Code § 496(c) provides that any person "who has been injured by a violation of [subdivision (a)] . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

79. Based on the statutory language, a criminal conviction under Penal Code § 496(a) is not a prerequisite to recover treble damages under Penal Code § 496(c).

80. The phrase "any manner constituting theft" under Penal Code § 496(a) has been broadly construed and includes, inter alia, theft by false pretense and is further defined in Penal Code § 484(a) as being: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

81. As alleged herein, the Defendants obtained funds from Plaintiffs by way of fraud, in a manner constituting theft.

82. As alleged herein, the Defendants continue to withhold and conceal funds from Plaintiffs, which were obtained by way of fraud, in a manner constituting theft.

83. At all times relevant herein, Plaintiffs were damaged due to the Defendants theft.

84. As alleged herein, Defendants knowingly obtained, received, withheld and/or concealed the Plaintiffs' funds with the intent to deprive Plaintiffs of its use permanently and have knowingly, willfully, and deliberately, aided the other Defendants in obtaining, receiving, withholding, and/or concealing said monies, knowing that such property has been stolen from Plaintiffs' possession in a manner constituting theft.

85. Defendants knowingly withheld Plaintiffs' funds, which were obtained through fraudulent representations. Defendants knew or were recklessly indifferent to the fact that their conduct constituted theft under Penal Code § 496, and they acted with intent to permanently deprive

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

Plaintiffs of their funds. These funds were diverted for personal use, including the payment of unauthorized commissions and legal fees unrelated to the business operations of Utherverse. Plaintiffs are entitled to treble damages, attorney's fees, and costs for the Defendants' intentional theft. These unauthorized uses of investor funds not only breached fiduciary duties but also undermined the financial stability of Utherverse, to the detriment of Plaintiff.

86. As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained damages in an amount to be proven at trial.

87. Under California Penal Code section 496(c), Plaintiffs are entitled to three times the amount of actual damages, costs of suit, and reasonable attorney's fees.

a. Accordingly, Plaintiffs Joshua Denne, Blockchain Alliance, Blockchain Funding, and Masternode Partners seek to recover in an amount to be proven at trial, well over $977,536,500 x 3 = $2,932,609,500.

b. Based on the allegations herein, Plaintiffs Nima Momayez and Niya Holdings, LLC seek to recover in an amount to be proven at trial not less than $1,350,000 x 3 = $4,050,000.

**THIRD CAUSE OF ACTION**

**<u>Breach of Fiduciary Duty</u>**

**(Against All Defendants)**

88. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

89. Defendant Brian Shuster was Plaintiffs' fiduciary.

90. Defendant Brian Shuster acted on Plaintiffs' behalf for the purpose of obtaining their investments in the Utherverse Defendants.

91. Defendant Brian Shuster failed to act as a reasonably careful person would have acted under the same or similar circumstances.

92. Plaintiffs were harmed and Defendant Brian Shuster's conduct was a substantial factor in causing Plaintiff's Harm.

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

93. As a direct and proximate result of the Defendants' actions Plaintiffs have sustained damages in an amount to be proven at trial.

94. Defendants' actions as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**

**Defamation Per Se**

**(Against All Defendants)**

95. Plaintiffs repeat and re-allege each and every allegation of this Complaint and by reference incorporates the same as though fully set forth at length herein.

96. In or about September 2024, Defendant Brian Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Plaintiff Joshua Denne, and with whom Plaintiff Joshua Denne has had previous relationships.

97. In these letters, Defendant Brian Shuster falsely states that Plaintiff Joshua Denne committed fraud on the investors of Utherverse.

98. Defendant Brian Shuster falsely claims that Plaintiff Joshua Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock.

99. Defendant Brian Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters."

100. Defendant Brian Shuster claims that he has all evidence of this alleged fraud and theft.

101. Defendant Brian Shuster made these statements knowing that they were false and knowing they would cause injury to Plaintiffs.

102. As a direct and proximate result of the false statements, Plaintiffs have sustained damages in an amount to be proven at trial.

103. Defendants' actions as specifically set forth in this complaint are not meant to limit

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

the generality of the allegations contained herein but are merely illustrative of the depths of Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Plaintiffs to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

On the First Cause of Action for Fraud and Deceit :

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Second Cause of Action for Civil Claim Under Penal Code § 496:

1. For three times the amount of actual damages or "treble damages"; and
2. For reasonable attorneys' fees.

On the Third Cause of Action for Breach of Fiduciary Duty:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Fourth Cause of Action for Defamation Per Se:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On All Causes of Action:

1. For costs of suit incurred herein;
2. For prejudgment interest at the maximum legal rate on all sums awarded; and
3. For such other and further relief as the court may deem proper.

AND WHEREFORE, Plaintiffs pray for injunctive relief and accounting

Plaintiffs request an order for:

1. Appointment of a receiver to oversee the Entity Defendants and ensure the preservation of investor funds. The appointed receiver shall take control of Utherverse's operations, including its financial records and bank accounts, to ensure no further dissipation of investor funds
2. Disgorgement of all ill-gotten gains derived from Defendants' fraudulent conduct.
3. A full and complete accounting of all funds received and disbursed by the Entity Defendants

to determine the location and use of Plaintiffs' investments.

4. A preliminary injunction to freeze Defendants' assets, prevent further transfers, and ensure no additional investor harm.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury to all issues so triable.

Dated: January 15, 2025

Respectfully submitted,

DAILY LAW GROUP

______________________________

James D. Daily, Esq.
**ATTORNEYS FOR PLAINTIFFS**

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660



Daily Law Group
And Justice for All

## PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to this action. My business address is 660 Newport Center Drive, Suite 1000, Newport Beach, California 92660.

On January 15, 2025, I served the following document(s) described as **FIRST AMENDED COMPLAINT** on the following interested parties in this action in the manner specified below:

**COLEMAN & HOROWITT, LLP**
Sherrie M. Flynn, Esq.
499 W. Shaw Ave., Suite 116
Fresno, CA 93704
(559) 248-4820
**Attorneys for Defendants Brian Shuster, Utherverse, Inc., Utherverse Digital Inc., Peter Gantner, Nexus Venture LLC, Ari Good, and Gary Shuster**
sflynn@ch-law.com
aotori@ch-law.com
rashley@ch-law.com
nalshikhaiti@ch-law.com

☒ **BY ELECTRONIC MAIL:** I caused the aforementioned document(s) to be attached and sent via electronic transfer (email) from mjones@dailylawgroup.com to recipient(s) identified in the Service List. To the best of my knowledge, the transmission was reported complete and without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 15, 2025, at Newport Beach, California.

/s/
Michael R. Jones

DAILY LAW GROUP
660 Newport Center Drive, Suite 1000
Newport Beach, CA 92660

Daily Law Group
And Justice for All

# EXHIBIT C

MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,

Plaintiffs,

v.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual.

Defendants.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual,

Counterclaimants,

v.

Case No.: 3:25-cv-00020-MMD-CSB

**ANSWER TO COMPLAINT AND COUNTERCOMPLAINT**

| |
|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona Limited Liability Company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,<br><br>Counterdefendants. |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**ANSWER TO COMPLAINT**

Defendants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Lyne Martin ("Martin"), Niya Holdings, LLC ("Niya Holdings"), and Nima Momayez ("Momayez") (collectively, "Defendants") respond to the allegations set forth in Plaintiffs Utherverse, Inc. ("UI") and Brain Schuster's ("Schuster") (collectively, "Plaintiffs") complaint ("Complaint") as follows:[1]

1. Answering Paragraph 1 of Plaintiffs' Complaint, Defendant states that this Paragraph contains purported legal conclusions and/or statements or recitations of law rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

2. Answering Paragraph 2 of Plaintiffs' Complaint, Defendant states that this Paragraph contains purported legal conclusions and/or statements or recitations of law rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

3. Answering Paragraph 3 of Plaintiffs' Complaint, Defendants admit that UI is a corporation having its principal place of business in Carson City, Nevada.

/ / /

/ / /

[1] Unless otherwise specified, terms in this Answer have the same meaning given to them as in the Complaint.

4. Answering Paragraph 4 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to forma a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

5. Answering Paragraph 5 of Plaintiffs' Complaint, Defendants admit that Quinn is an individual residing in Orange County, California.

6. Answering Paragraph 6 of Plaintiffs' Complaint, Defendants admit that Denne is an individual residing in Paradise Valley, Arizona.

7. Answering Paragraph 7 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding is a Delaware corporation with its principal place of business at 1020 Wendy Lane, Cheyenne, Wyoming 82009.

8. Answering Paragraph 8 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Alliance is a Wyoming limited liability company with its principal place of business at 6933 E. Fanfol Dr., Paradise Valley, Arizona 85253.

9. Answering Paragraph 9 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Masternode is a Wyoming limited liability company with its principal place of business at 1020 Wendy Lane, Cheyenne, Wyoming 82009.

10. Answering Paragraph 10 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Martin is the mother of Denne.

11. Answering Paragraph 11 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Niya Holdings is a Nevada limited liability company with a mailing address at 187 Warm Springs Road, Suite B206, Las Vegas, Nevada 89119.

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12. Answering Paragraph 12 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Momayez is an individual residing in Irvine, California, and is a manager of Niya Holdings.

13. Answering Paragraph 13 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to forma a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

14. Answering Paragraph 14 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

15. Answering Paragraph 15 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

16. Answering Paragraph 16 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne discussed obtaining funding for UI and UDI as part of a business venture with Plaintiffs.

17. Answering Paragraph 17 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

18. Answering Paragraph 18 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

19. Answering Paragraph 19 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that the matter identified in this allegation, *Securities and Exchange Commission v. Tobin, et al.*, No. 18-CV-12451 (Dist. Mass. July 13, 2022), exists and speaks for itself.

20. Answering Paragraph 20 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

21. Answering Paragraph 21 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

22. Answering Paragraph 22 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

23. Answering Paragraph 23 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that the matter identified in this allegation, *Denne v. Shuster*, Cal. Sup. Ct., Co. of Orange, Case No. 30-2024-01438251-CU-FR-NJC, filed Nov. 8, 2024, exists and speaks for itself.

24. Answering Paragraph 24 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to forma a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

25. Answering Paragraph 25 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to forma a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein, except Defendants admit that Shuster represented UI and UDI as being in the business of developing virtual world environments and metaverses and working together in the ordinary course of their business.

26. Answering Paragraph 26 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein, except Defendants admit that UDI represented that it was developing various forms of new software to Defendants and the development thereof was slow and potentially non-existent and fraudulent.

27. Answering Paragraph 27 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations regarding software in said paragraph, and therefore denies the allegations about software, but admit that Quinn, Shuster, and Denne discussed investing in UI and represented that they were in contact with investors.

28. Answering Paragraph 28 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

29. Answering Paragraph 29 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

30. Answering Paragraph 30 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

31. Answering Paragraph 31 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

32. Answering Paragraph 32 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

33. Answering Paragraph 33 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

34. Answering Paragraph 34 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

35. Answering Paragraph 35 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

36. Answering Paragraph 36 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

37. Answering Paragraph 37 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

38. Answering Paragraph 38 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

39. Answering Paragraph 39 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that a former associate of UDI informed Quinn and Denne that Shuster was a fraud and that the associate indicated that he intended to sue Shuster.

40. Answering Paragraph 40 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

41. Answering Paragraph 41 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

42. Answering Paragraph 42 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

43. Answering Paragraph 43 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

44. Answering Paragraph 44 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except that Defendants admit that Quinn and Denne communicated their progress in securing funding from investors to Shuster, which communications speak for themselves.

45. Answering Paragraph 45 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

46. Answering Paragraph 46 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Robert Hackett served as CEO of UI.

47. Answering Paragraph 47 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

48. Answering Paragraph 48 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn communicated with Shuster about tokens, which communications speak for themselves.

49. Answering Paragraph 49 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

50. Answering Paragraph 50 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

51. Answering Paragraph 51 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

52. Answering Paragraph 52 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Shuster executed a promissory note with Niya Holdings on behalf of him individually and UDI for $1,350,000 at 6% interest.

Case 2:25-cv-00202-HMD-DSD Document 9 Filed 02/26/25 Page 8 of 41

53. Answering Paragraph 53 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

54. Answering Paragraph 54 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Niya Holdings and Momayez demanded repayment of the promissory note.

55. Answering Paragraph 55 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

56. Answering Paragraph 56 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

57. Answering Paragraph 57 of Plaintiffs' Complaint, Defendants contend that the Consulting Agreement speaks for itself and deny the allegations in Paragraph 57 to the extent that they deviate from the terms of the Consulting Agreement.

58. Defendants contend that the Consulting Agreement speaks for itself and deny the allegations in Paragraph 58 about the Consulting Agreement to the extent that they deviate from the terms of the Consulting Agreement. As for the remaining allegations in Paragraph 58 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

59. Answering Paragraph 59 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding and Denne contracted with Nexus to develop a software platform to launch tokens.

60. Answering Paragraph 60 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

61. Answering Paragraph 61 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

62. Answering Paragraph 62 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

63. Answering Paragraph 63 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

64. Answering Paragraph 64 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except that the presale of UTHER tokens by UDI went live on or about July 17, 2022.

65. Answering Paragraph 65 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein generally and specifically deny the allegations contained in said paragraph, except Defendant denies that Quinn and Denne had not brough significant investors to purchase stock of UI or UDI.

66. Answering Paragraph 66 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding loaned $350,000 to UDI at 5% per anum under the Blockchain Note.

67. Answering Paragraph 67 of Plaintiffs' Complaint, Defendants contend that Quinn's July 25, 2022 email to Shuster speaks for itself and deny the allegations in Paragraph 67 to the extent that they deviate from the content of that email.

68. Answering Paragraph 68 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

69. Answering Paragraph 69 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

70. Answering Paragraph 70 of Plaintiffs' Complaint, Defendants contend that the Membership Agreement speaks for itself and deny the allegations in Paragraph 70 to the extent that they deviate from the terms of the Membership Agreement.

71. Answering Paragraph 71 of Plaintiffs' Complaint, Defendants contend that the Membership Agreement speaks for itself and deny the allegations in Paragraph 70 to the extent that they deviate from the terms of the Membership Agreement.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

72. Answering Paragraph 72 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants deny the allegations regarding the Membership Agreement to the extent that they deviate from the terms of the Membership Agreement, which speaks for itself.

73. Answering Paragraph 73 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

74. Answering Paragraph 74 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

75. Answering Paragraph 75 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

76. Answering Paragraph 76 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that UI initially prepared a SAFT requiring investors who wished to buy tokens during the presale period to be accredited by demonstrating a minimum threshold of income.

77. Answering Paragraph 77 of Plaintiffs' Complaint, Defendants contend that the Blockchain SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Blockchain SAFT. Defendants deny that it is not typical for a SAFT to not provide vesting schedule or release schedule requirements.

78. Answering Paragraph 78 of Plaintiffs' Complaint, Defendants contend that the Blockchain SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Blockchain SAFT.

79. Answering Paragraph 79 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

80. Answering Paragraph 80 of Plaintiffs' Complaint, Defendants contend that the Masternode SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Masternode SAFT.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

81. Answering Paragraph 81 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

82. Answering Paragraph 82 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

83. Answering Paragraph 83 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein

84. Answering Paragraph 84 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

85. Answering Paragraph 85 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

86. Answering Paragraph 86 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

87. Answering Paragraph 87 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

88. Answering Paragraph 88 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

89. Answering Paragraph 89 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

90. Answering Paragraph 90 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn communicated to Shuster that Chen could be a potential investor.

91. Answering Paragraph 91 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

92. Answering Paragraph 92 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

93. Answering Paragraph 93 of Plaintiffs' Complaint, Defendants contend that the Subscription Agreement speaks for itself and deny the allegations contained in said paragraph to the extent that they contradict the Subscription Agreement.

94. Answering Paragraph 94 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

95. Answering Paragraph 95 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

96. Answering Paragraph 96 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

97. Answering Paragraph 97 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

98. Answering Paragraph 98 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

99. Answering Paragraph 99 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that, at one point, Quinn advised UI to delay minting tokens.

100. Answering Paragraph 100 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Denne and Quinn attempted to negotiate a separation from Plaintiffs that failed.

101. Answering Paragraph 101 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

102. Answering Paragraph 102 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegation that investors contacted Plaintiffs asking for tokens.

103. Defendants admit or deny the allegations in Paragraph 103 consistent with the above admissions and denials.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

104. Answering Paragraph 104 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

105. Answering Paragraph 105 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

106. Answering Paragraph 106 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

107. Answering Paragraph 107 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

108. Answering Paragraph 108 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

109. Answering Paragraph 109 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

110. Answering Paragraph 110 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

111. Answering Paragraph 111 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

112. Answering Paragraph 112 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

113. Answering Paragraph 113 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

114. Defendants admit or deny the allegations in Paragraph 114 consistent with the above admissions and denials.

115. Answering Paragraph 115 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

116. Answering Paragraph 116 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations in said paragraph, including that Defendants made false statements.

117. Answering Paragraph 117 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

118. Answering Paragraph 118 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

119. Answering Paragraph 119 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

120. Answering Paragraph 120 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

121. Answering Paragraph 121 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

122. Answering Paragraph 122 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

123. Defendants admit or deny the allegations in Paragraph 123 consistent with the above admissions and denials.

124. Answering Paragraph 124 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, including that Defendants made intentional misrepresentations of facts.

125. Answering Paragraph 125 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

126. Answering Paragraph 126 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

127. Answering Paragraph 127 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

128. Answering Paragraph 128 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

129. Answering Paragraph 129 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

130. Defendants admit or deny the allegations in Paragraph 130 consistent with the above admissions and denials.

131. Answering Paragraph 131 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

132. Answering Paragraph 132 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

133. Answering Paragraph 133 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

134. Answering Paragraph 134 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

135. Defendants admit or deny the allegations in Paragraph 135 consistent with the above admissions and denials.

136. Answering Paragraph 136 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

137. Answering Paragraph 137 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

138. Answering Paragraph 138 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

139. Answering Paragraph 139 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

140. Answering Paragraph 140 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

141. Answering Paragraph 141 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

142. Defendants admit or deny the allegations in Paragraph 142 consistent with the above admissions and denials.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

143. Answering Paragraph 143 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

144. Answering Paragraph 144 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

145. Answering Paragraph 145 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

146. Answering Paragraph 146 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

147. Answering Paragraph 147 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

148. Defendants admit or deny the allegations in Paragraph 148 consistent with the above admissions and denials.

149. Answering Paragraph 149 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

150. Answering Paragraph 150 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne knew of the NIYA Note.

151. Answering Paragraph 151 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

152. Answering Paragraph 152 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

153. Answering Paragraph 153 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

154. Answering Paragraph 154 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

155. Defendants admit or deny the allegations in Paragraph 155 consistent with the above admissions and denials.

156. Answering Paragraph 156 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

157. Answering Paragraph 157 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne knew of the Binding Letter.

158. Answering Paragraph 158 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

159. Answering Paragraph 159 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

160. Answering Paragraph 160 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

161. Answering Paragraph 161 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

**AFFIRMATIVE DEFENSES**

1. Plaintiffs failed to state a claim against Defendants on which relief can be granted.

2. Plaintiffs failed to join indispensable parties.

3. Plaintiffs failed to plead their claims with particularity.

4. Plaintiffs' claims are barred by Plaintiffs' unclean hands.

5. Plaintiffs' claim are barred as a result of Plaintiffs' prior wrongful conduct.

6. Defendants acted in a legally permissible way.

7. Plaintiffs' claims have been waived because of Plaintiffs' conduct.

8. Plaintiffs' claims are barred as a result of lack of good faith.

9. Defendants have properly and legally fulfilled their duties and obligations.

10. Plaintiffs failed to perform as promised.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

11. Defendants fulfilled their duty to deal with Plaintiffs in good faith.

12. All possible affirmative defenses may not have been alleged herein, insofar as sufficient facts were unavailable after reasonable inquiry upon filing of this Answer, therefore, Defendants reserve the right to amend their Answer to add affirmative defenses should the necessity arise.

WHEREFORE, Defendants pray for relief as follows:

1. That Plaintiffs take nothing by their Complaint.

2. That Defendants be awarded their attorneys' fees and costs incurred in defending against the Complaint.

3. That Defendants be awarded any other relief that the Court deems appropriate.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 7-1 Filed 02/16/25 Page 19 of 41

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## COUNTERCOMPLAINT

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Niya Holdings, LLC ("Niya Holdings"), and Nima Momayez ("Momayez") (collectively, "Counterclaimants") allege as follows against Counter-defendants Utherverse, Inc. ("Utherverse, Inc."), Brian Shuster ("Shuster"), Utherverse Digital, Inc. ("Utherverse Digital"), Peter Gantner ("Gantner"), Nexus Venture LLC ("Nexus"), Ari Good ("Good"), Gary Shuster ("Gary") and DOES 1-25, inclusive (collectively, "Counter-Defendants"):

**SUMMARY**

1. This case involves the fraudulent offer and sale of unregistered securities by Shuster and the entities he controlled and/or acted on behalf of: Utherverse, Inc. and Utherverse Digital (collectively, "Utherverse"). These Defendants, acting in concert with partners Gantner, Nexus, and attorneys Good and Gary, orchestrated a scheme to defraud investors, including the Plaintiffs.

2. Since at least 2022 and continuing through the present, Counter-Defendants engaged in a systematic and intentional pattern of fraudulent conduct, misappropriating investor funds, concealing material facts, and making multiple false statements about the nature and profitability of their investments. The Counter-Defendants unlawfully induced Plaintiffs to invest in Utherverse by promising outsized returns, misrepresenting the state of Utherverse's financial health, and touting fictitious market success. Counterclaimants were deceived into believing that their investments would be used to develop virtual metaverse technologies and secure monetization opportunities through blockchain-based products.

3. In reality, the Counter-Defendants misappropriated investor funds for personal gain and undisclosed purposes, including payments to non-licensed brokers, personal travel, and unrelated business ventures. Counter-Defendants further misrepresented key financial metrics such as user numbers, transaction volume, and proprietary technology. Their fraudulent conduct has caused significant financial harm to the Counterclaimants.

/ / /

/ / /

4. Counterclaimants allege that, through this fraudulent scheme, Counter-Defendants violated California securities laws and committed theft under Penal Code § 496(c). The unlawful conduct includes:

a. Misrepresenting the expected return on investment and the state of the Utherverse platform;

b. Offering and selling unregistered securities through fraudulent inducement;

c. Concealing material facts, including conflicts of interest, misallocation of funds, and the financial instability of Utherverse; and

d. Using investor funds to pay commissions to unlicensed brokers and to finance personal expenses.

5. Counter-Defendants also failed to disclose material information about related-party transactions and the payment of unauthorized commissions to associates. Counterclaimants allege that each of the Utherverse entities are mere alter egos of Shuster, whose personal use of corporate assets renders any separation between the entities and their owner illusory. Counterclaimants now seek compensatory and punitive damages, treble damages under California Penal Code § 496(c), and equitable relief to remedy the harm caused by Counter-Defendants' intentional and reckless conduct.

6. Based upon the allegations made herein, Counterclaimants seek damages totaling over $2,936,659,500.

**PARTIES**

**A. <u>Counterclaimants</u>**

7. Quinn is an individual who resides in Orange County, California.

8. Denne is an individual who resides in Paradise Valley, Arizona.

9. Momayez is an individual who resides in Irvine, California.

10. Blockchain Funding is a Delaware Corporation.

11. Masternode is a Wyoming Limited Liability Company.

12. Blockchain Alliance is a Wyoming Limited Liability Company.

13. Niya Holdings is a Nevada Limited Liability Company.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14. Momayez is an individual who resides in Irvine, California.

**B. Counter-Defendants**

15. Shuster is an individual who resides in Vancouver, British Columbia.

16. Utherverse, Inc. is a Nevada Corporation that conducts business in Nevada and California.

17. Utherverse Digital is a Vancouver, British Columbia, Corporation that conducts business in Nevada and California.

18. Gantner is an individual who resides in Fountain Hills, Arizona.

19. Nexus is an Arizona Limited Liability Company that conducts business in Nevada and California.

20. Good is an individual who resides in Miami, Florida.

21. Gary is an individual who resides in Fresno, California. On information and belief, at all times relevant herein, Counter-Defendant Gary Shuster was the Chief Intellectual Property Officer of Counter-Defendant Utherverse Digital, Inc., was General Counsel of Counter-Defendant Utherverse, Inc.

22. The true names and capacities, whether individual, corporate, associate or otherwise, of Counter-Defendants sued herein as Does 1-25, inclusive, are unknown to Counterclaimants at the present time, and Counterclaimants therefore sue said Counter-Defendants, and each of them, by such fictitious names. If necessary, Counterclaimants will seek leave of court to amend this Countercomplaint to allege their true names and capacities when they are ascertained.

23. Counterclaimants are informed and believe, and on that basis allege, that each of Does 1-25, inclusive, participated in the activities described herein and rendered material assistance to Counter-Defendants in the performance of the activities described in this Countercomplaint.

24. Counterclaimants are informed and believe, and on that basis allege, that each of the Counter-Defendants are responsible in some manner for the occurrences and matters alleged herein and that Counterclaimants' injuries and damages were and are the direct and proximate result of the actions and omissions of these Counter-Defendants, and each of them.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

25. Counterclaimants are further informed and believe, and on that basis allege, that each Counter-Defendant herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of the others, or was otherwise involved with the other Counter-Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by Counter-Defendants to Counterclaimants. Each Counter-Defendant is liable and responsible on the facts alleged herein for all of the relief sought.

26. Counterclaimants are further informed and believe, and on that basis allege, that certain of the Counter-Defendants conspired and agreed with and aided and abetted one or more of the other Counter-Defendants in additional ways which are unknown to counterclaimants at this time.

27. Counterclaimants are informed and believe, and on that basis allege, that at all relevant times hereto each of the Counter-Defendants was the merging entity, merged entity, subsidiary, acquiring corporation, the agent, servant, successor-in-interest, independent contractor and/or employee of each of the remaining Counter-Defendants, and in doing the things herein alleged, was acting within the course and scope of their authority as agents, servants, successors-in-interest, independent contractors or employees, and with the express and/or implied permission, knowledge, consent, and ratification of their co-Counter-Defendants, or otherwise acting with apparent authority. All actions of each Counter-Defendant as alleged herein were ratified and approved by every other Counter-Defendant or their officers or managing agents. Each Counter-Defendant therefore knowingly and substantially participated in the conduct as alleged herein and is liable for the damages arising therefrom.

28. Whenever this Countercomplaint references acts of any Counter-Defendant or Counter-Defendants, such allegation shall be deemed to mean the act of those Counter-Defendants named in the particular cause of action and each of them acting individually, jointly, and severally.

29. At all relevant times, each of the Counter-Defendants were acting in concert with, and in conspiracy with, each and every of the remaining Counter-Defendants.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 30 Filed 02/26/25 Page 23 of 41

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**GENERAL BACKGROUND**

30. Counterclaimants are informed and believe that Counter-Defendant Shuster owns and operates each of the Utherverse entities, which act by and through Shuster.

31. Utherverse advertises itself as being "not just another player in the metaverse space[, but] the pioneers, with over 15 years of experience in building successful virtual economies and communities. . . . By harnessing the immense potential of web3, blockchain, and AI, we are creating a metaverse that is unmatched in its immersion, adaptability, and profitability."

32. Counterclaimant Denne was introduced to Shuster and Utherverse in or about 2022. At that time, Utherverse was represented by a loan officer and a defunct mortgage broker. Utherverse had been struggling to raise capital for more than 10 years with zero success—it did not have a functioning website, did not have any formal presentation materials, such as investment documents or subscription agreements, it did not have a functional corporate structure, and it was critically devoid of any effective management. At that time, Utherverse consisted of eleven (11) separate LLCs with no apparent ties to one another, and were all operated by Shuster—a one man show.

33. Shuster claimed numerous past successes, millions of active Utherverse users, billions in transactions on the Utherverse platform, and a robust patent portfolio, among numerous other representations that were later learned to be false.

34. A non-exhaustive list of representations made by Shuster, which were relied upon by Counterclaimants in their decision to work with and invest in Utherverse is as follows:

a. Utherverse, Inc. having 50 million users;

b. Over 1 million metaverses on the platform;

c. Utherverse had a revenue of $8-10 million per year;

d. Utherverse, Inc. having $16,000,000,000 in transactions executed on its platform;

e. Shuster claimed to have invested $45 million of his personal money in the company;

f. Utherverse has spent more than $40 million on development of its metaverse offerings;

g. Utherverse was franchised out to 17 countries;

h. Utherverse generated more than $77 million in revenues through memberships, marketplaces, advertising and other metaverse related revenue streams;

i. Counter-Defendants Brian Shuster and Utherverse owned a large number of valuable patents; and

j. That development of the Utherverse platform was ongoing and would be operational on specific dates (which were never met).

35. In reliance on Shuster's representations about himself and Utherverse, Counterclaimant Denne agreed to invest and help promote and build Utherverse toward success.

36. On or about April 11, 2022, Shuster, on behalf of Utherverse, executed a Senior Secured Convertible Promissory Note with Counterclaimants Momayez and Niya Holdings. Pursuant to the Promissory Note, Momayez, on behalf of Niya Holdings, transferred $1,350,000 to Utherverse. Momayez individually, and on behalf of Niya Holdings, agreed to these terms, and to provide the funding, in reliance on Shuster's numerous misrepresentations, as previously detailed herein. Shuster, on behalf of Utherverse, agreed to repay Momayez and Niya Holdings pursuant to the terms of the Promissory Note, but now refuses to do so. Instead, Shuster has stolen the funds. Therefore, on information and belief, Counterclaimants allege that Shuster never intended to honor the Promissory Note or repay the funds, but always intended to defraud and steal the money.

37. On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant Blockchain Funding, by and through Denne, executed a Simple Agreement for Future Tokens ("SAFT Agreement") whereby Blockchain Funding purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 USD. Blockchain Funding fulfilled its obligations and made payment to Utherverse in accordance with the SAFT Agreement. However, Shuster now takes the position that Blockchain Funding does not own any tokens whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

intended to defraud Blockchain Funding of the money paid. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $684,000,000 on the 360,000,000 tokens that were to be allocated to Plaintiff Blockchain Funding, Inc.

38. On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant Masternode, by and through Denne, executed a SAFT Agreement whereby Masternode purchased 150,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $5,000.01 USD. Masternode fulfilled its obligations and made payment to Utherverse in accordance with the SAFT Agreement. However, Shuster now takes the position that Masternode does not own any tokens whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to fulfill their obligations under the SAFT Agreement and instead intended to defraud Masternode Partners of the money paid in reliance on the SAFT Agreement. As of September 2024, the tokens were trading at $1.90 per token, putting a total value of $285,000,000 on the 150,000,000 tokens owned that were to be allocated to Masternode.

39. On or about June 5, 2023, Blockchain Funding, by and through Denne, loaned to Utherverse a total of $350,000.00, evidenced by a Promissory Note executed by Utherverse, by and through Shuster. To secure the Promissory Note, Utherverse, by and through Shuster, executed a Stock Pledge Agreement, which memorialized the Promissory Note and pledged 2,800,000 shares of Utherverse Inc. Class A Common Stock to Blockchain Funding. Blockchain Funding fulfilled its obligations and provided $350,000.00 to Utherverse in accordance therewith; and Blockchain Funding understood that ownership of the shares had been transferred accordingly. However, Shuster now takes the position that Blockchain Funding does not own any shares whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to transfer the shares, but instead intended to defraud Blockchain Funding of the $350,000.00. As of September 2024, the stock of Utherverse Inc., was last sold to investors at $2.50 per share, putting a total value of $7,000,000 on the 2,800,000 shares owned by Blockchain Funding.

40. In reliance on the representations made by Shuster and the agreements between Blockchain Funding, Masternode, and Utherverse, Denne, Blockchain Funding, Blockchain

Alliance, and Masternode expended significant funds to promote and advance the success of Utherverse, totaling more than $1,376,500. Denne, Blockchain Funding, Blockchain Alliance, and Masternode expended these funds in reliance on Shuster's representations that they would be repaid by Utherverse. However, Shuster now takes the position that Blockchain Funding and Masternode do not own any shares or tokens. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse intended to defraud Denne, Blockchain Funding, Blockchain Alliance, and Masternode of these funds by reaping the benefits therefrom without ever intending to compensate or repay them. A non-exhaustive list of the funds expended by Denne, Blockchain Funding, Blockchain Alliance, and Masternode in furtherance of the business and operations of Utherverse is as follows:

a. Token set up costs (Grant Thornton) - $198,000
b. Honing PR - $65,000
c. Elevator Social Media - $145,000
d. Mona Hire - $20,000
e. Tokensoft Platform - $35,000
f. HOW 3 (digital marketing) - $50,000
g. Ad spend - $6,500
h. Promote Republic Europe Group - $25,000
i. Additional digital marketing costs - $82,000
j. Blockchain Alliance marketing - $750,000

APPROXIMATE TOTAL: $1,376,500

41. Unfortunately, it was soon revealed that Shuster had used Utherverse in a way that tied it to the pornography industry, which was severely detrimental to its reputation. In an effort to repair the damaged reputation of Utherverse, Denne, among other things, spent roughly $65,000 on a PR agency and spent an additional $165,000 on social media promotions, including professionally producing a video interview with Shuster.

42. Through a longstanding relationship that Denne had developed with a private investor, Denne was able to secure an agreement that would have raised $25 million for Utherverse.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 7-1 Filed 01/16/25 Page 27 of 41

However, days prior to the wiring of the funds from the investor, a disgruntled employee of Shuster contacted the investor and informed him that Shuster was a fraud and that a lawsuit against Shuster and Utherverse was being prepared for filing. As a result, the investor refused to move forward.

43. Denne brought in Mr. Todd Pritcher ("Pritcher"), who is an expert on taking the necessary steps to make a company investable, which requires detailed documentation and structural reorganization. Pritcher eliminated the majority of the eleven LLCs that made up Utherverse and created a coherent parent company with subsidiaries. In the process, Pritcher attempted to verify and create proper intellectual property documentation to clearly illustrate which patents were owned by the various Utherverse entities. However, Pritcher was unable to verify ownership of numerous patents that Shuster had represented were owned by himself and Utherverse. This realization was alarming, as Shuster's misrepresentations were relied upon by investors and left Utherverse with potential liabilities. Ultimately, despite this understanding, Shuster refused to disclose these misrepresentations.

44. Denne then brought in Mr. Robb Hackett ("Hackett"), an accomplished CEO in the Web3 space, who had stewarded several successful investment exits in his past. However, after four months, Hackett refused to continue working with Shuster and resigned due to a lack of payment for his work, a lack of effective corporate governance, and a legitimate fear of liabilities. Hackett is still owed $75,000 for his work on behalf of Shuster and Utherverse.

45. Denne also attempted to bring in Mr. Joseph Ramelli ("Ramelli") to occupy the position of CFO, with an intention to clean up Utherverse's books and records, to create proper budgets and timelines, and oversee the use of investor funds. However, Shuster refused to hire Ramelli, in an effort to maintain control over, and conceal, his misappropriation of investor funds.

46. Denne brought in a PCAOB accounting firm to produce audited financial statements to enable the company to participate in crowdfunding. This initiative was accomplished; however, it was discovered that the Utherverse's revenue was not $8-10 million per year—as Shuster had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing significant investment funding. Rather, Utherverse's revenue was less than $1.5 million per year. Additionally, the accounting firm was unable to confirm in any way that

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 30 Filed 02/26/25 Page 28 of 41

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Shuster had invested $45 million of his own funds—as he had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing investment funding.

47. Prior to Denne's involvement, Utherverse was experiencing difficulty securing a banking relationship due to Shuster's participation in the pornography industry. However, Denne aided Utherverse in securing a reputable banking relationship with Fresno Bank, where Utherverse still banks to this day.

48. Despite all of the notable progress that Utherverse experienced at the hand of Denne, Shuster chose to continue in his misrepresentations and mismanagement of Utherverse. Over twenty significant developmental deadlines were missed and over a dozen "launch dates" were unmet. On information and belief, each of these deadlines and launch dates were only provided by Shuster to further delay and conceal his fraudulent activities.

49. Shuster's mismanagement was exemplified on numerous occasions, including him hiring an individual as a "Pro-Developer" for $30,000 per month. It was later discovered that this "Pro-Developer" was outsourcing the work overseas for $1,500 per month, submitting the work as his own, and keeping the remaining $28,500. On information and belief, Shuster conspired with this individual and used this opportunity to launder and/or siphon and misappropriate investor funds.

50. In or about April 2024, after Shuster once again failed to meet a promised deadline, Denne ultimately decided to part ways with Shuster and Utherverse.

51. During the separation process, Shuster provided written acknowledgment of Denne's efforts to further the development and success of Utherverse—including the monies spent on behalf of Utherverse, as well as Denne's ownership of 510,000,000 tokens and 2,800,000 shares of Utherverse Inc. Shuster and Denne engaged in detailed discussions, both oral and in writing, regarding this separation, and Denne provided an additional $160,000 in furtherance of these efforts—which was paid to promotion groups in order to create the necessary settlement liquidity.

/ / /

/ / /

52. Unsurprisingly, after agreeing in writing on a detailed exit strategy for Counterclaimants, Shuster reneged and took the position that Counterclaimants own nothing with regard to Utherverse.

53. In or about September 2024, Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Denne, and with whom Denne has had previous relationships. In these letters, Shuster falsely states that Denne committed fraud on the investors of Utherverse. Shuster falsely claims that Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock. Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters." Shuster claims that he has all evidence of this alleged fraud and theft. Denne denies the truth of these defamatory statements and Counterclaimants allege that Shuster knew the falsity of these claims and the harm they would cause at the time he made them.

54. On information and belief, Counterclaimants allege that Shuster misrepresented the financial value and developmental progress of Utherverse, as previously discussed, in order to lure investors and disguise the actual state of Utherverse's operations, which were significantly underperforming. Counterclaimants relied on these misrepresentations when they decided to invest, believing Utherverse's platform was financially stable and poised for imminent growth. When these promises failed to materialize, Counterclaimants suffered significant financial harm.

55. On information and belief, Defendant Shuster has used investor funds for his own personal gain, for purposes entirely unrelated to the business of Utherverse or the purposes for which the funds were provided. Further, Shuster's pattern of fraud and misrepresentation brought unfathomable liability upon Utherverse and the investors that relied upon those misrepresentations. Specific examples of Shuster's character and propensity for fraudulent activity include, but are not limited to, the following:

a. Shuster paid commissions to two separate unlicensed brokers for the investment of $1,350,000 that was made by Momayez on behalf of Niya Holdings. This fraudulent activity brought significant liability on Utherverse and its investors.





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

b. Shuster took a one-million-dollar investment from Mr. Chauncey Lufkin ("Lufkin"), who Shuster then placed on the board of Utherverse. Again, Shuster paid commission to an unlicensed broker for this investment, to a woman named Jasmine Yuan. This fraudulent activity brought significant liability on Utherverse and its investors.

c. After Lufkin's investment, Shuster entered a consulting agreement with Lufkin's wife, and paid her in Utherverse shares, creating a major conflict of interest.

d. It was subsequently discovered that Lufkin was under investigation by the SEC for cryptocurrency investment fraud and was ultimately sanctioned. However, Shuster refused to remove Lufkin from the board of Utherverse or remove Lufkin's wife as a consultant. Even more egregious, Shuster chose not to inform any of the investors of this significant liability. Further, Shuster did not disclose Lufkin or his wife's involvement with Utherverse to the SEC in the required SEC filings. This fraudulent activity brought significant liability on Utherverse and its investors.

e. Shuster is currently selling pre-sale tokens on a United States based non-SEC compliant and unregistered platform, which is owned by a US corporation and an individual. This fraudulent activity brings significant liability on Utherverse and its investors.

f. Shuster is currently taking token investments from non-accredited US investors. This fraudulent activity brings significant liability on Utherverse and its investors.

g. Shuster is paying a commission and referral fees to US-based individuals for sales of Utherverse tokens. This fraudulent activity brings significant liability on Utherverse and its investors.

h. Shuster has taken equity investment from non-accredited US investors and also paid commissions to unlicensed individuals for investments. One such non-

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

accredited investor is Jennifer Chen, who has repeatedly requested that her $100,000 investment be returned for well over a year. This fraudulent activity has brought significant liability on Utherverse and its investors.

i. Shuster continues to take investments in cash and cryptocurrency, but is not reporting the investments to the SEC, the IRS, or local tax authorities. This fraudulent activity brings significant liability on Utherverse and its investors.

j. Shuster is using Utherverse as a tool to launder money for himself and other criminal associates. This fraudulent activity brings significant liability on Utherverse and its investors.

k. Shuster used Utherverse investor funds to make pornographic films.

l. Shuster used Utherverse investor funds to pay for personal travel for himself and others.

m. Shuster used Utherverse investor funds to pay attorneys for work on personal legal matters unrelated to Utherverse.

n. Shuster gave shares and tokens to his escort girlfriend "Jade" for personal reasons unrelated to the operations of Utherverse.

56. The full extent of Shuster's fraudulent actions is presently unknown, and its discovery will require the parties to obtain all records from Shuster and Utherverse, including banking data and cryptocurrency wallet data.

**CO-DEFENDANT ACCOMPLICES THAT AIDED AND CONSPIRED WITH SHUSTER IN PERPETRATING HIS FRAUD.**

57. On information and belief, Counter-Defendant Good is an attorney licensed in the state of Florida. On information and belief, Good knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants. On information and belief, Good created, formed, and operated a business structure which Shuster utilized to obtain money from Counterclaimants in a manner constituting theft. On information and belief, Shuster paid Good using funds fraudulently from Counterclaimants, and Good knowingly received funds fraudulently obtained from Counterclaimants.





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

58. 60. On information and belief, Counter-Defendant Gantner knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants. On information and belief, Gantner created a non-licensed platform to illegally and fraudulently sell tokens and receive commissions. On multiple occasions Shuster paid Gantner commissions for selling Utherverse tokens and shares to non-accredited US investors. On information and belief, Gantner knowingly received funds fraudulently obtained from Counterclaimants.

59. On information and belief, Counter-Defendant Nexus knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants. On information and belief, Nexus was created, owned, and operated by Gantner, who allowed Shuster to use Nexus to launder money and misappropriate or hide funding from investors.

60. On information and belief, Counter-Defendant Gary knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants. On information and belief, Gary is the brother of Shuster, was the Chief Intellectual Property Officer of Utherverse Digital, and was General Counsel of Utherverse, Inc.

61. On information and belief, at all times relevant, Shuster, owned, operated, acted with authority on behalf of, and represented himself as having authority to act on behalf of, Utherverse Gaming, LLC ("Utherverse Gaming"). Shuster, either individually or through the Utherverse entities, publicly represented, and paid third party advertisers to publicly represent, that he, on behalf of Utherverse, is suing Epic Games for patent infringement, and that a positive result from that lawsuit will directly affect the value of Utherverse. On information and belief, that lawsuit was brought by Utherverse Gaming. On information and belief, the patents in question, such as Patent Numbers 8276071, 8812954, 9123157, 9724605, which are inventoried under Shuster and assigned to Utherverse Gaming, but are yet prominently featured on the Utherverse website. On information and belief, Shuster represented that Utherverse Digital entered an agreement with Utherverse Gaming, whereby Utherverse Gaming would obtain monetization rights to certain

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

intellectual property that Shuster represented were owned and able to be utilized solely by himself and Utherverse. On information and belief, those representations were false.

**ALTER EGO**

62. Counterclaimants are informed and believe that Shuster is the alter ego of Utherverse, Inc. as follows:

a. Counterclaimants are informed and believe there is a unity of interest and ownership between Shuster and Utherverse, Inc. such that any individuality and separateness between the company and individual has ceased.

b. Counterclaimants are informed and believe that at all times mentioned herein Utherverse, Inc. was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Counterclaimants are informed and believe that the capitalization of Utherverse, Inc. was illusory, and that the capital assets of Shuster and Utherverse, Inc. were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Counterclaimants are informed and believe that Shuster has used Utherverse, Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized. For instance, Shuster used Utherverse corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation, further demonstrating the lack of separation between the entities and their owner.

d. Adherence to the fiction of separate corporate existence of Utherverse, Inc. and Brian Schuster would sanction fraud and promote injustice. Counter-Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The Utherverse entities were consistently

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 91 Filed 02/28/25 Page 34 of 41

undercapitalized, existing solely to funnel investor money for Shuster's personal benefit.

63. Counterclaimants are informed and believe that Shuster is the alter ego of Utherverse Digital as follows:

a. Counterclaimants are informed and believe there is a unity of interest and ownership between Shuster and Utherverse Digital such that any individuality and separateness between the company and individual has ceased.

b. Counterclaimants are informed and believe that at all times mentioned herein Utherverse Digital was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Counterclaimants are informed and believe that the capitalization of Utherverse Digital was illusory, and that the capital assets of Shuster and Utherverse Digital were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Counterclaimants are informed and believe that Shuster has used Utherverse Digital's assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized.

d. Adherence to the fiction of the separate existence of Utherverse Digital as a corporation separate from its owner, Shuster, would sanction fraud and promote injustice. Counter-Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The Utherverse entities were consistently undercapitalized, existing solely to funnel investor money for Shuster's personal benefit.

/ / /

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 30 Filed 02/26/25 Page 35 of 41

**FIRST CAUSE OF ACTION**

**Fraud and Deceit**

**(Against All Defendants)**

64. Counterclaimants repeat and re-allege each and every allegation of this Countercomplaint and by reference incorporates the same as though fully set forth at length herein.

65. Counter-Defendants represented to Counterclaimants that specific facts concerning Utherverse and Shuster were true, as alleged herein.

66. Counter-Defendants' representations were false.

67. Counter-Defendants knew that the representations were false when they were made.

68. Counter-Defendants made the representations recklessly and without regard for their truth.

69. Counter-Defendants intended that Counterclaimants rely on the representations.

70. Counterclaimants reasonably relied on the representations.

71. As a direct and proximate result of Counter-Defendants' fraudulent conduct, Counterclaimants have sustained damages in an amount to be proven at trial.

72. Based on the allegations herein, Denne, Blockchain Alliance, Blockchain Funding, and Masternode seek to recover in an amount to be proven at trial, well over $977,536,500.

73. Based on the allegations herein, Momayez and Niya Holdings seek to recover in an amount to be proven at trial not less than $1,350,000.

74. Counter-Defendants' fraud as specifically set forth in this Countercomplaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Counter-Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**SECOND CAUSE OF ACTION**

**Civil Claim Under Penal Code Section 496(c)**

**(Against All Defendants)**

75. Counterclaimants repeat and re-allege each and every allegation of this Countercomplaint and by reference incorporate the same as though fully set forth at length herein.

76. Penal Code § 496(a) makes receiving or buying property "that has been obtained in any manner constituting theft or extortion, knowing the property to be stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen obtained," a criminal offense punishable by imprisonment.

77. Penal Code § 496(c) provides that any person "who has been injured by a violation of [subdivision (a)] . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

78. Based on the statutory language, a criminal conviction under Penal Code § 496(a) is not a prerequisite to recover treble damages under Penal Code § 496(c).

79. The phrase "any manner constituting theft" under Penal Code § 496(a) has been broadly construed and includes, *inter alia*, theft by false pretense, which is further defined in Penal Code § 484(a) as being: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

80. As alleged herein, Counter-Defendants obtained funds from Counterclaimants by way of fraud, in a manner constituting theft.

81. As alleged herein, Counter-Defendants continue to withhold and conceal funds from Counterclaimants, which were obtained by way of fraud, in a manner constituting theft.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

82. At all times relevant herein, Counterclaimants were damaged due to Counter-Defendants' theft.

83. As alleged herein, Counter-Defendants knowingly obtained, received, withheld and/or concealed Counterclaimants' funds with the intent to deprive Counterclaimants of their use permanently and have knowingly, willfully, and deliberately, aided the other Counter-Defendants in obtaining, receiving, withholding, and/or concealing said monies, knowing that such property has been stolen from Counterclaimants' possession in a manner constituting theft.

84. Counter-Defendants knowingly withheld Counterclaimants' funds, which were obtained through fraudulent representations. Counter-Defendants knew or were recklessly indifferent to the fact that their conduct constituted theft under Penal Code § 496, and they acted with intent to permanently deprive Counterclaimants of their funds. These funds were diverted for personal use, including the payment of unauthorized commissions and legal fees unrelated to the business operations of Utherverse. Counterclaimants are entitled to treble damages, attorney's fees, and costs for the Counter-Defendants' intentional theft. These unauthorized uses of investor funds not only breached fiduciary duties but also undermined the financial stability of Utherverse, to the detriment of Counterclaimants.

85. As a direct and proximate result of Counter-Defendants' conduct, Counterclaimants have sustained damages in an amount to be proven at trial.

86. Under California Penal Code section 496(c), Counterclaimants are entitled to three times the amount of actual damages, costs of suit, and reasonable attorney's fees.

a. Accordingly, Denne, Blockchain Alliance, Blockchain Funding, and Masternode seek to recover in an amount to be proven at trial, well over $977,536,500 x 3 = $2,932,609,500.

b. Based on the allegations herein, Momayez and Niya Holdings seek to recover in an amount to be proven at trial not less than $1,350,000 x 3 = $4,050,000.

/ / /

/ / /

/ / /

**THIRD CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against All Defendants)**

87. Counterclaimants repeat and re-allege each and every allegation of this Countercomplaint and by reference incorporate the same as though fully set forth at length herein.

88. Shuster was Counterclaimants' fiduciary.

89. Shuster acted on Counterclaimants' behalf for the purpose of obtaining their investments in Utherverse.

90. Shuster failed to act as a reasonably careful person would have acted under the same or similar circumstances.

91. Counterclaimants were harmed and Shuster's conduct was a substantial factor in causing Counterclaimants' harm.

92. As a direct and proximate result of Counter-Defendants' actions, Counterclaimants have sustained damages in an amount to be proven at trial.

93. Counter-Defendants' actions as specifically set forth in this Countercomplaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Counter-Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**

**Defamation Per Se**

**(Against All Defendants)**

94. Counterclaimants repeat and re-allege each and every allegation of this Countercomplaint and by reference incorporate the same as though fully set forth at length herein.

95. In or about September 2024, Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Denne, and with whom Denne had previous relationships.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

96. In these letters, Shuster falsely states that Denne committed fraud on the investors of Utherverse.

97. In these letters, Shuster falsely claims that Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock.

98. Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters."

99. Shuster claims that he has all evidence of this alleged fraud and theft.

100. Shuster made these statements knowing that they were false and knowing they would cause injury to Counterclaimants.

101. As a direct and proximate result of the false statements, Counterclaimants have sustained damages in an amount to be proven at trial.

102. Counter-Defendants' actions as specifically set forth in this complaint are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Counter-Defendants' intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**WHEREFORE**, Counterclaimants pray for judgment as follows:

On the First Cause of Action for Fraud and Deceit:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Second Cause of Action for Civil Claim Under Penal Code § 496:

1. For three times the amount of actual damages or "treble damages"; and
2. For reasonable attorneys' fees.

On the Third Cause of Action for Breach of Fiduciary Duty:

1. For compensatory damages in an amount according to proof; and
2. For punitive damages in an amount to be determined at the time of trial.

On the Fourth Cause of Action for Defamation Per Se:

1. For compensatory damages in an amount according to proof; and

2. For punitive damages in an amount to be determined at the time of trial.

On All Causes of Action:

1. For costs of suit incurred herein;

2. For prejudgment interest at the maximum legal rate on all sums awarded; and

3. For such other and further relief as the court may deem proper.

AND WHEREFORE, Counterclaimants pray for injunctive relief and account

Counterclaimants request and order for:

1. Appointment of a receiver to oversee the Utherverse entities and ensure the preservation of investor funds. The appointed receiver shall take control of Utherverse's operations, including its financial records and bank accounts, to ensure no further dissipation of investor funds.

2. Disgorgement of all ill-gotten gains derived from Counter-Defendants' fraudulent conduct.

3. A full and complete accounting of all funds received and disbursed by the Utherverse entities to determine the location and use of Counterclaimants' investments.

4. A preliminary injunction to freeze Counter-Defendants' assets, prevent further transfers, and ensure no additional investor harm.

**DEMAND FOR JURY TRIAL**

Counterclaimants demand a trial by jury to all issues so triable.

DATED this 28th day of February, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 9-1 Filed 02/28/25 Page 41 of 41

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **ANSWER TO COMPLAINT AND COUNTERCOMPLAINT** was served via electronic service on the 28th day of February, 2025.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

# EXHIBIT D

Case 3:25-cv-00020-MMD-CSD Document 91 Filed 09/12/25 Page 1 of 49

MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants/Counterclaimants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,

Plaintiffs,

v.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; LYNNE MARTIN, an individual; NIYA HOLDINGS, LLC, a Nevada limited liability company; NIMA MOMAYEZ, an individual; and JEREMY ROMA, an individual.

Defendants.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability company; NIYA HOLDINGS, LLC, a Nevada limited liability company; and NIMA MOMAYEZ, an individual,

Counterclaimants,

v.

Case No.: 3:25-cv-00020-MMD-CSB

**AMENDED ANSWER TO COMPLAINT AND AMENDED COUNTERCLAIM**





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation; PETER GANTNER, an individual; NEXUS VENTURE LLC, an Arizona limited liability company; ARI GOOD, an individual; GARY SHUSTER, an individual; and DOES 1-25, inclusive,

Counterdefendants.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## AMENDED ANSWER TO COMPLAINT

Defendants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Lyne Martin ("Martin"), Niya Holdings, LLC ("Niya Holdings"), Nima Momayez ("Momayez"), and Jeremy Roma ("Roma") (collectively, "Defendants") respond to the allegations set forth in Plaintiffs Utherverse, Inc. ("UI") and Brain Schuster's ("Schuster") (collectively, "Plaintiffs") complaint ("Complaint") as follows:[1]

1. Answering Paragraph 1 of Plaintiffs' Complaint, Defendant states that this Paragraph contains purported legal conclusions and/or statements or recitations of law rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

2. Answering Paragraph 2 of Plaintiffs' Complaint, Defendant states that this Paragraph contains purported legal conclusions and/or statements or recitations of law rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

3. Answering Paragraph 3 of Plaintiffs' Complaint, Defendants admit that UI is a corporation having its principal place of business in Carson City, Nevada.

[1] Unless otherwise specified, terms in this Answer have the same meaning given to them as in the Complaint.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

4. Answering Paragraph 4 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

5. Answering Paragraph 5 of Plaintiffs' Complaint, Defendants admit that Quinn is an individual residing in Orange County, California.

6. Answering Paragraph 6 of Plaintiffs' Complaint, Defendants admit that Denne is an individual residing in Paradise Valley, Arizona.

7. Answering Paragraph 7 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding is a Delaware corporation with its principal place of business at 1020 Wendy Lane, Cheyenne, Wyoming 82009 and is owned and operated by Denne.

8. Answering Paragraph 8 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Alliance is a Wyoming limited liability company with its principal place of business at 6933 E. Fanfol Dr., Paradise Valley, Arizona 85253 and is owned and operated by Denne.

9. Answering Paragraph 9 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Masternode is a Wyoming limited liability company with its principal place of business at 1020 Wendy Lane, Cheyenne, Wyoming 82009.

10. Answering Paragraph 10 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Martin is the mother of Denne and is a resident of California.

11. Answering Paragraph 11 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Niya Holdings is a Nevada limited liability company with a mailing address at 187 Warm Springs Road, Suite B206, Las Vegas, Nevada 89119.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12. Answering Paragraph 12 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Momayez is an individual residing in Irvine, California, and is a manager of Niya Holdings.

13. Answering Paragraph 13 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Roma is an individual residing in Orange County, California.

14. Answering Paragraph 14 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

15. Answering Paragraph 15 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

16. Answering Paragraph 16 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne discussed obtaining funding for UI and UDI as part of a business venture with Plaintiffs.

17. Answering Paragraph 17 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

18. Answering Paragraph 18 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

19. Answering Paragraph 19 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that the matter identified in this allegation, *Securities and Exchange Commission v. Tobin, et al.*, No. 18-CV-12451 (Dist. Mass. July 13, 2022), exists and speaks for itself.

20. Answering Paragraph 20 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

21. Answering Paragraph 21 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

22. Answering Paragraph 22 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

23. Answering Paragraph 23 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that the matter identified in this allegation, *Denne v. Shuster*, Cal. Sup. Ct., Co. of Orange, Case No. 30-2024-01438251-CU-FR-NJC, filed Nov. 8, 2024, exists and speaks for itself.

24. Answering Paragraph 24 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

25. Answering Paragraph 25 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein, except Defendants admit that Shuster represented UI and UDI as being in the business of developing virtual world environments and metaverses and working together in the ordinary course of their business.

26. Answering Paragraph 26 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein, except Defendants admit that UDI represented that it was developing various forms of new software to Defendants and the development thereof was slow and potentially non-existent and/or fraudulent.

27. Answering Paragraph 27 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations regarding software in said paragraph, and therefore denies the allegations about software, but admit that Quinn, Shuster, and Denne discussed investing in UI and represented that they were in contact with investors.

28. Answering Paragraph 28 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

29. Answering Paragraph 29 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 91-4 Filed 09/16/25 Page 6 of 49

30. Answering Paragraph 30 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

31. Answering Paragraph 31 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

32. Answering Paragraph 32 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

33. Answering Paragraph 33 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

34. Answering Paragraph 34 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

35. Answering Paragraph 35 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

36. Answering Paragraph 36 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

37. Answering Paragraph 37 of Plaintiffs' Complaint, Defendants contend that the Letter of Intent speaks for itself and deny the allegations in Paragraph 37 to the extent that they deviate from the terms of the Letter of Intent. Defendants generally and specifically deny the remaining allegations contained in said paragraph.

38. Answering Paragraph 38 of Plaintiffs' Complaint, Defendants contend that the Letter of Intent speaks for itself and deny the allegations in Paragraph 38 to the extent that they deviate from the terms of the Letter of Intent. Defendants generally and specifically deny the remaining allegations contained in said paragraph.

39. Answering Paragraph 39 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that a former associate of UDI informed Quinn and Denne that Shuster was a fraud and that the associate indicated that he intended to sue Shuster.

40. Answering Paragraph 40 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 91-4 Filed 09/24/25 Page 7 of 49

41. Answering Paragraph 41 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

42. Answering Paragraph 42 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

43. Answering Paragraph 43 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

44. Answering Paragraph 44 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except that Defendants admit that Quinn and Denne communicated their progress in securing funding from investors to Shuster, which communications speak for themselves.

45. Answering Paragraph 45 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

46. Answering Paragraph 46 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Robert Hackett served as CEO of UI.

47. Answering Paragraph 47 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

48. Answering Paragraph 48 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn communicated with Shuster about tokens, which communications speak for themselves.

49. Answering Paragraph 49 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

50. Answering Paragraph 50 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

51. Answering Paragraph 51 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

52. Answering Paragraph 52 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Shuster

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 91-4 Filed 09/04/25 Page 18 of 19

executed a promissory note with Niya Holdings on behalf of him individually and UDI for $1,350,000 at 6% interest.

53. Answering Paragraph 53 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

54. Answering Paragraph 54 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Niya Holdings and Momayez demanded repayment of the Niya Note.

55. Answering Paragraph 55 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

56. Answering Paragraph 56 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

57. Answering Paragraph 57 of Plaintiffs' Complaint, Defendants contend that the Consulting Agreement speaks for itself and deny the allegations in Paragraph 57 to the extent that they deviate from the terms of the Consulting Agreement.

58. Defendants contend that the Consulting Agreement speaks for itself and deny the allegations in Paragraph 58 about the Consulting Agreement to the extent that they deviate from the terms of the Consulting Agreement. As for the remaining allegations in Paragraph 58 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

59. Answering Paragraph 59 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding and Denne contracted with Nexus to develop a software platform to launch tokens.

60. Answering Paragraph 60 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

61. Answering Paragraph 61 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

62. Answering Paragraph 62 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

63. Answering Paragraph 63 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

64. Answering Paragraph 64 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except that the presale of UTHER tokens by UDI went live on or about July 17, 2022.

65. Answering Paragraph 65 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein generally and specifically deny the allegations contained in said paragraph, except Defendant denies that Quinn and Denne had not brough significant investors to purchase stock of UI or UDI.

66. Answering Paragraph 66 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Blockchain Funding loaned $350,000 to UDI at 5% per anum under the Blockchain Note.

67. Answering Paragraph 67 of Plaintiffs' Complaint, Defendants contend that Quinn's July 25, 2022 email to Shuster speaks for itself and deny the allegations in Paragraph 67 to the extent that they deviate from the content of that email.

68. Answering Paragraph 68 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

69. Answering Paragraph 69 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

70. Answering Paragraph 70 of Plaintiffs' Complaint, Defendants contend that the Membership Agreement speaks for itself and deny the allegations in Paragraph 70 to the extent that they deviate from the terms of the Membership Agreement.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 2:25-cv-00020-MMD-SCD Document 9748 Filed 09/24/25 Page 109 of 148

71. Answering Paragraph 71 of Plaintiffs' Complaint, Defendants contend that the Membership Agreement speaks for itself and deny the allegations in Paragraph 70 to the extent that they deviate from the terms of the Membership Agreement.

72. Answering Paragraph 72 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants deny the allegations regarding the Membership Agreement to the extent that they deviate from the terms of the Membership Agreement, which speaks for itself.

73. Answering Paragraph 73 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

74. Answering Paragraph 74 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

75. Answering Paragraph 75 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

76. Answering Paragraph 76 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that UI initially prepared a SAFT requiring investors who wished to buy tokens during the presale period to be accredited by demonstrating a minimum threshold of income.

77. Answering Paragraph 77 of Plaintiffs' Complaint, Defendants contend that the Blockchain SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Blockchain SAFT. Defendants deny that it is not typical for a SAFT to not provide vesting schedule or release schedule requirements.

78. Answering Paragraph 78 of Plaintiffs' Complaint, Defendants contend that the Blockchain SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Blockchain SAFT.

79. Answering Paragraph 79 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

80. Answering Paragraph 80 of Plaintiffs' Complaint, Defendants contend that the Masternode SAFT speaks for itself and deny the allegations in said paragraph to the extent that they deviate from the terms of the Masternode SAFT.

81. Answering Paragraph 81 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

82. Answering Paragraph 82 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

83. Answering Paragraph 83 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein

84. Answering Paragraph 84 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

85. Answering Paragraph 85 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

86. Answering Paragraph 86 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

87. Answering Paragraph 87 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

88. Answering Paragraph 88 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

89. Answering Paragraph 89 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

90. Answering Paragraph 90 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn communicated to Shuster that Chen could be a potential investor.

91. Answering Paragraph 91 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 97 Filed 09/26/25 Page 12 of 48

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

92. Answering Paragraph 92 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

93. Answering Paragraph 93 of Plaintiffs' Complaint, Defendants contend that the Subscription Agreement speaks for itself and deny the allegations contained in said paragraph to the extent that they contradict the Subscription Agreement.

94. Answering Paragraph 94 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

95. Answering Paragraph 95 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

96. Answering Paragraph 96 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

97. Answering Paragraph 97 of Plaintiffs' Complaint, Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in said paragraph, and therefore denies each and every allegation contained therein.

98. Answering Paragraph 98 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

99. Answering Paragraph 99 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that, at one point, Quinn advised UI to delay minting tokens.

100. Answering Paragraph 100 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Denne and Quinn attempted to negotiate a separation from Plaintiffs that failed.

101. Answering Paragraph 101 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

102. Answering Paragraph 102 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

103. Defendants admit or deny the allegations in Paragraph 103 consistent with the above admissions and denials.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

104. Answering Paragraph 104 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

105. Answering Paragraph 105 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

106. Answering Paragraph 106 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

107. Answering Paragraph 107 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

108. Answering Paragraph 108 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

109. Answering Paragraph 109 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

110. Answering Paragraph 110 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

111. Answering Paragraph 111 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

112. Answering Paragraph 112 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

113. Answering Paragraph 113 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

114. Defendants admit or deny the allegations in Paragraph 114 consistent with the above admissions and denials.

115. Answering Paragraph 115 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

/ / /

/ / /

116. Answering Paragraph 116 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations in said paragraph, including that Defendants made false statements.

117. Answering Paragraph 117 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

118. Answering Paragraph 118 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

119. Answering Paragraph 119 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

120. Answering Paragraph 120 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

121. Answering Paragraph 121 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

122. Answering Paragraph 122 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

123. Defendants admit or deny the allegations in Paragraph 123 consistent with the above admissions and denials.

124. Answering Paragraph 124 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, including that Defendants made intentional misrepresentations of facts.

125. Answering Paragraph 125 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

126. Answering Paragraph 126 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

127. Answering Paragraph 127 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

128. Answering Paragraph 128 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

129. Answering Paragraph 129 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

130. Defendants admit or deny the allegations in Paragraph 130 consistent with the above admissions and denials.

131. Answering Paragraph 131 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

132. Answering Paragraph 132 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

133. Answering Paragraph 133 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

134. Answering Paragraph 134 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

135. Defendants admit or deny the allegations in Paragraph 135 consistent with the above admissions and denials.

136. Answering Paragraph 136 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

137. Answering Paragraph 137 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

138. Answering Paragraph 138 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

139. Answering Paragraph 139 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

140. Answering Paragraph 140 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

141. Answering Paragraph 141 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

142. Defendants admit or deny the allegations in Paragraph 142 consistent with the above admissions and denials.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

143. Answering Paragraph 143 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

144. Answering Paragraph 144 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

145. Answering Paragraph 145 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

146. Answering Paragraph 146 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

147. Answering Paragraph 147 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

148. Defendants admit or deny the allegations in Paragraph 148 consistent with the above admissions and denials.

149. Answering Paragraph 149 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

150. Answering Paragraph 150 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne knew of the Niya Note.

151. Answering Paragraph 151 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

152. Answering Paragraph 152 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

153. Answering Paragraph 153 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

154. Answering Paragraph 154 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

155. Defendants admit or deny the allegations in Paragraph 155 consistent with the above admissions and denials.

156. Answering Paragraph 156 of Plaintiffs' Complaint, Defendants state that this Paragraph contains purported legal conclusions and/or statements or recitations of law, rather than allegations, and as such, no response is necessary. To the extent that a response is necessary, Defendants deny generally and specifically each and every allegation contained therein.

157. Answering Paragraph 157 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph, except Defendants admit that Quinn and Denne knew of the Binding Letter.

158. Answering Paragraph 158 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

159. Answering Paragraph 159 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

160. Answering Paragraph 160 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

161. Answering Paragraph 161 of Plaintiffs' Complaint, Defendants generally and specifically deny the allegations contained in said paragraph.

## AFFIRMATIVE DEFENSES

1. Plaintiffs failed to state a claim against Defendants on which relief can be granted.

2. Plaintiffs failed to join indispensable parties.

3. Plaintiffs failed to plead their claims with particularity.

4. Plaintiffs' claims are barred by Plaintiffs' unclean hands.

5. Plaintiffs' claim are barred as a result of Plaintiffs' prior wrongful conduct.

6. Defendants acted in a legally permissible way.

7. Plaintiffs' claims have been waived because of Plaintiffs' conduct.

8. Plaintiffs' claims are barred as a result of lack of good faith.

9. Defendants have properly and legally fulfilled their duties and obligations.

10. Plaintiffs failed to perform as promised.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

11. Defendants fulfilled their duty to deal with Plaintiffs in good faith.

12. Defendants made no false representations of material fact which they knew to be false.

13. Defendants had no intent to defraud Plaintiffs.

14. Defendants did not intend for Plaintiffs to rely on any alleged misrepresentations.

15. Plaintiffs did not detrimentally rely on misrepresentations.

16. Defendants' conduct was not oppressive, fraudulent, nor committed with malice.

17. Defendants' acts were not misleading in any material way.

18. Plaintiffs have not been injured as a result of any deceptive acts of Defendants.

19. Defendants have not made any false or misleading statements in a commercial setting.

20. Defendants' statements have not actually deceived and are not likely to deceive any part of an intended audience.

21. Defendants have committed no acts of dominion over Plaintiffs' property/chattels.

22. Defendants' acts of dominion, if any, were not wrongful.

23. The claims, and each of them, for wrongful detention of personal property and conversion, are barred by the failure to satisfy conditions precedent.

24. Shuster breached his fiduciary duties to Defendants.

25. Shuster forfeited any entitlements because of his breach of fiduciary duties.

26. Shuster's conduct was not conducted in the interest of the corporation.

27. Plaintiffs conduct was conducted for their own personal motivation.

28. Shuster violated his duty of loyalty to Defendants.

29. Shuster owed fiduciary duties to Defendants to exercise due care, a duty of loyalty and a duty to act in Defendants' interest.

30. Defendants are not an officer, director, or agent of Utherverse.

31. Defendants committed no intentional acts intended or designed to disrupt contractual relationships of Plaintiffs.

32. No actual disruption of contract occurred to Plaintiffs' contracts.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

33. Defendants did not intend to harm Plaintiffs if any relationship was prevented between Plaintiffs and a third party.

34. This court lacks personal jurisdiction over Jeremy Roma because as a resident of California he (i) does not have contacts with the state of Nevada that are so continuous and systematic that he is essentially "at home" in Nevada and (ii) has not purposefully availed himself of the privilege of acting in the state of Nevada or of causing important consequences in the forum state.

35. This court lacks personal jurisdiction over Lynne Martin because as a resident of California she (i) does not have contacts with the state of Nevada that are so continuous and systematic that she is essentially "at home" in Nevada and (ii) has not purposefully availed herself of the privilege of acting in the state of Nevada or of causing important consequences in the forum state.

36. All possible affirmative defenses may not have been alleged herein, insofar as sufficient facts were unavailable after reasonable inquiry upon filing of this Amended Answer, therefore, Defendants reserve the right to amend their Amended Answer to add affirmative defenses should the necessity arise.

WHEREFORE, Defendants pray for relief as follows:

1. That Plaintiffs take nothing by their Complaint.

2. That Defendants be awarded their attorneys' fees and costs incurred in defending against the Complaint.

3. That Defendants be awarded any other relief that the Court deems appropriate.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## AMENDED COUNTERCLAIM

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), Masternode Partners, LLC ("Masternode"), Niya Holdings, LLC ("Niya Holdings"), and Nima Momayez ("Momayez") (collectively, "Counterclaimants") allege as follows against Counter-defendants Utherverse, Inc. ("Utherverse, Inc."), Brian Shuster ("Shuster"), Utherverse Digital, Inc. ("Utherverse Digital"), Utherverse International Ltd., Peter Gantner ("Gantner"), Nexus Venture LLC ("Nexus"), Ari Good ("Good"), Gary Shuster ("Gary") and DOES 1-25, inclusive (collectively, "Counter-Defendants"):

## SUMMARY

1. This case involves the fraudulent offer and sale of unregistered securities by Shuster and the entities he controlled and/or acted on behalf of: Utherverse, Inc. and Utherverse Digital (collectively, "Utherverse"). These Defendants, acting in concert with partners Gantner, Nexus, and attorneys Good and Gary, orchestrated a scheme to defraud investors, including the Plaintiffs.

2. Since at least 2022 and continuing through the present, Counter-Defendants engaged in a systematic and intentional pattern of fraudulent conduct, misappropriating investor funds, concealing material facts, and making multiple false statements about the nature and profitability of their investments. The Counter-Defendants unlawfully induced Plaintiffs to invest in Utherverse by promising outsized returns, misrepresenting the state of Utherverse's financial health, and touting fictitious market success. Counterclaimants were deceived into believing that their investments would be used to develop virtual metaverse technologies and secure monetization opportunities through blockchain-based products.

3. In reality, the Counter-Defendants misappropriated investor funds for personal gain and undisclosed purposes, including payments to non-licensed brokers, personal travel, and unrelated business ventures. Counter-Defendants further misrepresented key financial metrics such as user numbers, transaction volume, and proprietary technology. Their fraudulent conduct has caused significant financial harm to the Counterclaimants.

Case 2:25-cv-00020-MMD-CSD Document 97 Filed 09/16/25 Page 21 of 49

4. Counterclaimants allege that, through this fraudulent scheme, Counter-Defendants violated California securities laws and committed theft under Penal Code § 496(c). The unlawful conduct includes:

a. Misrepresenting the expected return on investment and the state of the Utherverse platform;

b. Offering and selling unregistered securities through fraudulent inducement;

c. Concealing material facts, including conflicts of interest, misallocation of funds, and the financial instability of Utherverse; and

d. Using investor funds to pay commissions to unlicensed brokers and to finance personal expenses.

5. Counter-Defendants also failed to disclose material information about related-party transactions and the payment of unauthorized commissions to associates. Counterclaimants allege that each of the Utherverse entities are mere alter egos of Shuster, whose personal use of corporate assets renders any separation between the entities and their owner illusory. Counterclaimants now seek compensatory and punitive damages, treble damages under California Penal Code § 496(c), and equitable relief to remedy the harm caused by Counter-Defendants' intentional and reckless conduct.

**PARTIES**

**A. <u>Counterclaimants</u>**

6. Quinn is an individual who resides in Orange County, California.

7. Denne is an individual who resides in Paradise Valley, Arizona.

8. Momayez is an individual who resides in Irvine, California.

9. Blockchain Funding is a Delaware Corporation.

10. Masternode is a Wyoming Limited Liability Company.

11. Blockchain Alliance is a Wyoming Limited Liability Company.

12. Niya Holdings is a Nevada Limited Liability Company.

13. Momayez is an individual who resides in Irvine, California.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Case 3:25-cv-00020-MMD-CSD Document 48 Filed 04/14/25 Page 22 of 49

**B. Counter-Defendants**

14. Shuster is an individual who resides in Vancouver, British Columbia.

15. Utherverse, Inc. is a Nevada Corporation that conducts business in Nevada and California.

16. Utherverse Digital is a Vancouver, British Columbia, Corporation that conducts business in Nevada and California.

17. Upon information and belief, Utherverse International Ltd. is a corporation duly organized and existing under the laws of the British Virgin Islands that conducts business in Nevada and California.

18. Gantner is an individual who resides in Fountain Hills, Arizona.

19. Nexus is an Arizona Limited Liability Company that conducts business in Nevada and California.

20. Good is an individual who resides in Miami, Florida.

21. Gary is an individual who resides in Fresno, California. On information and belief, at all times relevant herein, Counter-Defendant Gary Shuster was the Chief Intellectual Property Officer of Counter-Defendant Utherverse Digital, Inc. and was the General Counsel of Counter-Defendant Utherverse, Inc.

22. The true names and capacities, whether individual, corporate, associate or otherwise, of Counter-Defendants sued herein as Does 1-25, inclusive, are unknown to Counterclaimants at the present time, and Counterclaimants therefore sue said Counter-Defendants, and each of them, by such fictitious names. If necessary, Counterclaimants will seek leave of court to amend this Amended Counterclaim to allege their true names and capacities when they are ascertained.

23. Counterclaimants are informed and believe, and on that basis allege, that each of Does 1-25, inclusive, participated in the activities described herein and rendered material assistance to Counter-Defendants in the performance of the activities described in this Amended Counterclaim.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24. Counterclaimants are informed and believe, and on that basis allege, that each of the Counter-Defendants are responsible in some manner for the occurrences and matters alleged herein and that Counterclaimants' injuries and damages were and are the direct and proximate result of the actions and omissions of these Counter-Defendants, and each of them.

25. Counterclaimants are further informed and believe, and on that basis allege, that each Counter-Defendant herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of the others, or was otherwise involved with the other Counter-Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by Counter-Defendants to Counterclaimants. Each Counter-Defendant is liable and responsible on the facts alleged herein for all of the relief sought.

26. Counterclaimants are further informed and believe, and on that basis allege, that certain of the Counter-Defendants conspired and agreed with and aided and abetted one or more of the other Counter-Defendants in additional ways which are unknown to counterclaimants at this time.

27. Counterclaimants are informed and believe, and on that basis allege, that at all relevant times hereto each of the Counter-Defendants was the merging entity, merged entity, subsidiary, acquiring corporation, the agent, servant, successor-in-interest, independent contractor and/or employee of each of the remaining Counter-Defendants, and in doing the things herein alleged, was acting within the course and scope of their authority as agents, servants, successors-in-interest, independent contractors or employees, and with the express and/or implied permission, knowledge, consent, and ratification of their co-Counter-Defendants, or otherwise acting with apparent authority. All actions of each Counter-Defendant as alleged herein were ratified and approved by every other Counter-Defendant or their officers or managing agents. Each Counter-Defendant therefore knowingly and substantially participated in the conduct as alleged herein and is liable for the damages arising therefrom.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

28. Whenever this Amended Counterclaim references acts of any Counter-Defendant or Counter-Defendants, such allegation shall be deemed to mean the act of those Counter-Defendants named in the particular cause of action and each of them acting individually, jointly, and severally.

29. At all relevant times, each of the Counter-Defendants were acting in concert with, and in conspiracy with, each and every of the remaining Counter-Defendants.

**GENERAL BACKGROUND**

30. Counterclaimants are informed and believe that Counter-Defendant Shuster owns and operates each of the Utherverse entities, which act by and through Shuster.

31. Utherverse advertises itself as being "not just another player in the metaverse space[, but] the pioneers, with over 15 years of experience in building successful virtual economies and communities. . . . By harnessing the immense potential of web3, blockchain, and AI, we are creating a metaverse that is unmatched in its immersion, adaptability, and profitability."

32. Counterclaimant Denne was introduced to Shuster and Utherverse in or about 2022. At that time, Utherverse was represented by a loan officer and a defunct mortgage broker. Utherverse had been struggling to raise capital for more than 10 years with zero success—it did not have a functioning website, did not have any formal presentation materials, such as investment documents or subscription agreements, it did not have a functional corporate structure, and it was critically devoid of any effective management. At that time, Utherverse consisted of eleven (11) separate LLCs with no apparent ties to one another, and were all operated by Shuster—a one man show.

33. Shuster claimed numerous past successes, millions of active Utherverse users, billions in transactions on the Utherverse platform, and a robust patent portfolio, among numerous other representations that were later learned to be false.

34. A non-exhaustive list of representations made by Shuster, which were relied upon by Counterclaimants in their decision to work with and invest in Utherverse is as follows:

a. Utherverse, Inc. having 50 million users;

b. Over 1 million metaverses on the platform;

c. Utherverse had a revenue of $8-10 million per year;

d. Utherverse, Inc. having $16,000,000,000 in transactions executed on its platform;

e. Shuster claimed to have invested $45 million of his personal money in the company;

f. Utherverse has spent more than $40 million on development of its metaverse offerings;

g. Utherverse was franchised out to 17 countries;

h. Utherverse generated more than $77 million in revenues through memberships, marketplaces, advertising and other metaverse related revenue streams;

i. Counter-Defendants Brian Shuster and Utherverse owned a large number of valuable patents, were involved in or affiliated with litigation concerning some of the patents, and imminently stood to win said litigation and profit greatly therefrom; and

j. That development of the Utherverse platform was ongoing and would be operational on specific dates (which were never met).

35. In reliance on Shuster's representations about himself and Utherverse, Counterclaimant Denne agreed to invest and help promote and build Utherverse toward success.

36. On or about April 11, 2022, Shuster, on behalf of Utherverse, executed a senior secured convertible promissory note with Counterclaimants Momayez and Niya Holdings ("Niya Note"). Pursuant to the Niya Note, Momayez, on behalf of Niya Holdings, transferred $1,350,000 to Utherverse. Momayez individually, and on behalf of Niya Holdings, agreed to these terms, and to provide the funding, in reliance on Shuster's numerous misrepresentations, as previously detailed herein. Shuster, on behalf of Utherverse, agreed to repay Momayez and Niya Holdings pursuant to the terms of the Niya Note, but now refuses to do so. Instead, Shuster has stolen the funds. Therefore, on information and belief, Counterclaimants allege that Shuster never intended to honor the Niya Note or repay the funds, but always intended to defraud and steal the money.

37. On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant Blockchain Funding, by and through Denne, executed a simple agreement for future tokens





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

("SAFT") whereby Blockchain Funding purchased 360,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $12,000.24 USD ("Blockchain Funding SAFT"). Blockchain Funding fulfilled its obligations and made payment to Utherverse in accordance with the Blockchain Funding SAFT. However, Shuster never delivered tokens to Blockchain Funding or remitted Blockchain Funding's payment for the tokens in accordance with the Blockchain Funding SAFT. Shuster now takes the position that Blockchain Funding does not own any tokens whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to fulfill their obligations under the Blockchain Funding SAFT and instead intended to defraud Blockchain Funding of the money paid.

38. On May 10, 2022, Utherverse, by and through Shuster, and Counterclaimant Masternode, by and through Denne, executed a SAFT whereby Masternode purchased 150,000,000 tokens at the then-price per token of $0.000033334, for a total purchase amount of $5,000.01 USD ("Masternode SAFT"). Masternode fulfilled its obligations and made payment to Utherverse in accordance with the Masternode SAFT. However, Shuster never delivered tokens to Blockchain or remitted Blockchain's payment for the tokens in accordance with the SAFT. Shuster now takes the position that Masternode does not own any tokens whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to fulfill their obligations under the Masternode SAFT and instead intended to defraud Masternode of the money paid in reliance on the Masternode SAFT.

39. On or about June 5, 2023, Blockchain Funding, by and through Denne, loaned to Utherverse a total of $350,000.00, evidenced by a promissory note ("Blockchain Funding Note") executed by Utherverse, by and through Shuster. To secure the Blockchain Funding Note, Utherverse, by and through Shuster, executed a stock pledge agreement ("Stock Pledge Agreement"), which memorialized the Blockchain Funding Note and pledged 2,800,000 shares of Utherverse Inc. Class A Common Stock to Blockchain Funding. Blockchain Funding fulfilled its obligations and provided $350,000.00 to Utherverse in accordance therewith; and Blockchain Funding understood that ownership of the shares had been transferred accordingly. However, the proceeds from the Blockchain Funding Note have not been returned, and Shuster now takes the

position that Blockchain Funding does not own any shares whatsoever. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse never intended to transfer the shares, but instead intended to defraud Blockchain Funding of the $350,000.00.

40. In reliance on the representations made by Shuster and the agreements between Blockchain Funding, Masternode, and Utherverse, Denne, Blockchain Funding, Blockchain Alliance, and Masternode expended significant funds to promote and advance the success of Utherverse, totaling more than $1,376,500. Denne, Blockchain Funding, Blockchain Alliance, and Masternode expended these funds in reliance on Shuster's representations that they would be repaid by Utherverse. However, Shuster now takes the position that Blockchain Funding and Masternode do not own any shares or tokens. Therefore, on information and belief, Counterclaimants allege that Shuster and Utherverse intended to defraud Denne, Blockchain Funding, Blockchain Alliance, and Masternode of these funds by reaping the benefits therefrom without ever intending to compensate or repay them. A non-exhaustive list of the funds expended by Denne, Blockchain Funding, Blockchain Alliance, and Masternode in furtherance of the business and operations of Utherverse is as follows:

a. Token set up costs (Grant Thornton) - $198,000
b. Honing PR - $65,000
c. Elevator Social Media - $145,000
d. Mona Hire - $20,000
e. Tokensoft Platform - $35,000
f. HOW 3 (digital marketing) - $50,000
g. Ad spend - $6,500
h. Promote Republic Europe Group - $25,000
i. Additional digital marketing costs - $82,000
j. Blockchain Alliance marketing - $750,000

APPROXIMATE TOTAL: $1,376,500

41. It was later revealed that Shuster had used Utherverse in a way that tied it to the pornography industry, which was severely detrimental to its reputation. In an effort to repair the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

damaged reputation of Utherverse, Denne, among other things, spent roughly $65,000 on a PR agency and spent an additional $165,000 on social media promotions, including professionally producing a video interview with Shuster.

42. Through a longstanding relationship that Denne had developed with a private investor, Denne was able to secure an agreement that would have raised $25 million for Utherverse. However, days prior to the wiring of the funds from the investor, a disgruntled employee of Shuster contacted the investor and informed him that Shuster was a fraud and that a lawsuit against Shuster and Utherverse was being prepared for filing. As a result, the investor refused to move forward.

43. Denne brought in Mr. Todd Pritcher ("Pritcher"), who is an expert on taking the necessary steps to make a company investable, which requires detailed documentation and structural reorganization. Pritcher eliminated the majority of the eleven LLCs that made up Utherverse and created a coherent parent company with subsidiaries. In the process, Pritcher attempted to verify and create proper intellectual property documentation to clearly illustrate which patents were owned by the various Utherverse entities. However, Pritcher was unable to verify ownership of numerous patents that Shuster had represented were owned by himself and Utherverse. This realization was alarming, as Shuster's misrepresentations were relied upon by investors and left Utherverse with potential liabilities. Ultimately, despite this understanding, Shuster refused to disclose these misrepresentations.

44. Denne then brought in Mr. Robb Hackett ("Hackett"), an accomplished CEO in the Web3 space, who had stewarded several successful investment exits in his past. However, after four months, Hackett refused to continue working with Shuster and resigned due to a lack of payment for his work, a lack of effective corporate governance, and a legitimate fear of liabilities. Hackett is still owed $75,000 for his work on behalf of Shuster and Utherverse.

45. Denne also attempted to bring in Mr. Joseph Ramelli ("Ramelli") to occupy the position of CFO, with an intention to clean up Utherverse's books and records, to create proper budgets and timelines, and oversee the use of investor funds. However, Shuster refused to hire Ramelli, in an effort to maintain control over, and conceal, his misappropriation of investor funds.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

46. Denne brought in a Public Company Accounting Oversight Board accounting firm to produce audited financial statements to enable Utherverse to participate in crowdfunding. This initiative was accomplished; however, it was discovered that the Utherverse's revenue was not $8-10 million per year—as Shuster had previously represented, and which representation was relied upon by the parties in becoming involved with Utherverse and providing significant investment funding. Rather, Utherverse's revenue was less than $1.5 million per year. Additionally, the accounting firm was unable to confirm in any way that Shuster had invested $45 million of his own funds—as he had previously represented, and which was relied upon by the parties in becoming involved with Utherverse and providing investment funding.

47. Prior to Denne's involvement, Utherverse was experiencing difficulty securing a banking relationship due to Shuster's participation in the pornography industry. However, Denne aided Utherverse in securing a reputable banking relationship with Fresno Bank, where Utherverse still banks to this day.

48. Despite all of the notable progress that Utherverse experienced at the hand of Denne, Shuster chose to continue in his misrepresentations and mismanagement of Utherverse. Over twenty significant developmental deadlines were missed and over a dozen "launch dates" were unmet. On information and belief, each of these deadlines and launch dates were only provided by Shuster to further delay and conceal his fraudulent activities.

49. Shuster's mismanagement was exemplified on numerous occasions, including him hiring an individual as a "Pro-Developer" for $30,000 per month. It was later discovered that this "Pro-Developer" was outsourcing the work overseas for $1,500 per month, submitting the work as his own, and keeping the remaining $28,500. On information and belief, Shuster conspired with this individual and used this opportunity to launder and/or siphon and misappropriate investor funds.

50. In or about April 2024, after Shuster once again failed to meet a promised deadline, Denne ultimately decided to part ways with Shuster and Utherverse.

51. During the separation process, Shuster provided written acknowledgment of Denne's efforts to further the development and success of Utherverse—including the monies spent

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

on behalf of Utherverse, as well as Denne's ownership of 510,000,000 tokens and 2,800,000 shares of Utherverse Inc. Shuster and Denne engaged in detailed discussions, both oral and in writing, regarding this separation, and Denne provided an additional $160,000 in furtherance of these efforts—which was paid to promotion groups in order to create the necessary settlement liquidity.

52. Counterclaimants Quinn and Denne sought to wind down their relationship with Shuster and Utherverse on mutually beneficial terms through an exit agreement ("Exit Agreement").

53. Despite agreeing to the detailed exit strategy for Counterclaimants in the Exit Agreement, including sale of tokens and distribution of funds therefrom, Shuster reneged and took the patently incorrect position that neither Quinn, Denne, nor Counterclaimants own or are entitled to anything with regard to Utherverse.

54. In or about September 2024, Shuster, as President and Chairman of Utherverse, Inc., sent formal letters to several of the investors that were located by Denne, and with whom Denne has had previous relationships. In these letters, Shuster falsely states that Denne committed fraud on the investors of Utherverse. Shuster falsely claims that Denne fraudulently altered documents, stole investor funds, and stole Utherverse money and stock. Shuster implored recipients of these letters to keep it a secret and to "undertake any investigation, criminal reporting, and civil litigation against the fraudsters." Denne denies the truth of these defamatory statements and Counterclaimants allege that Shuster knew the falsity of these claims and the harm they would cause at the time he made them.

55. On information and belief, Counterclaimants allege that Shuster misrepresented the financial value and developmental progress of Utherverse, as previously discussed, in order to lure investors and disguise the actual state of Utherverse's operations, which were significantly underperforming. Counterclaimants relied on these misrepresentations when they decided to invest, believing Utherverse's platform was financially stable and poised for imminent growth. When these promises failed to materialize, Counterclaimants suffered significant financial harm.

56. On information and belief, Defendant Shuster has used investor funds, including some or all of those mentioned herein, for his own personal gain, for purposes entirely unrelated to

Case 2:25-cv-00020-MMD-DJA Document 48 Filed 04/14/25 Page 31 of 49

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

the business of Utherverse or the purposes for which the funds were provided. Further, Shuster's pattern of fraud and misrepresentation brought unfathomable potential liability upon Utherverse and the investors that relied upon those misrepresentations. Specific examples of Shuster's character and propensity for fraudulent activity include, but are not limited to, the following:

a. Shuster paid commissions to two separate unlicensed brokers for the investment of $1,350,000 that was made by Momayez on behalf of Niya Holdings. This fraudulent activity brought significant liability on Utherverse and its investors.

b. Shuster took a one-million-dollar investment from Mr. Chauncey Lufkin ("Lufkin"), who Shuster then placed on the board of Utherverse. Shuster likewise paid a commission to an unlicensed broker for this investment, to a woman named Jasmine Yuan. This fraudulent activity brought significant liability on Utherverse and its investors.

c. After Lufkin's investment, Shuster entered a consulting agreement with Lufkin's wife, and paid her in Utherverse shares, creating a major conflict of interest.

d. It was subsequently discovered that Lufkin was under investigation by the SEC for cryptocurrency investment fraud and was ultimately sanctioned. However, Shuster refused to remove Lufkin from the board of Utherverse or remove Lufkin's wife as a consultant. Even more egregious, Shuster chose not to inform any of the investors of this significant liability. Further, Shuster did not disclose Lufkin or his wife's involvement with Utherverse to the SEC in the required SEC filings. This fraudulent activity brought significant liability on Utherverse and its investors.

e. Shuster was and/or is currently selling pre-sale tokens on a United States based non-SEC compliant and unregistered platform, which is owned by a US corporation and an individual. This fraudulent activity brings significant potential liability on Utherverse and its investors.

Case 3:25-cv-00020-MMD-CSD Document 74-1 Filed 04/16/25 Page 32 of 48

f. Shuster is currently taking token investments from non-accredited US investors. This fraudulent activity brings significant liability on Utherverse and its investors.

g. Shuster is paying a commission and referral fees to US-based individuals for sales of Utherverse tokens. This fraudulent activity brings significant liability on Utherverse and its investors.

h. Shuster has taken equity investment from non-accredited US investors and also paid commissions to unlicensed individuals for investments. One such non-accredited investor is Jennifer Chen, who has repeatedly requested that her $100,000 investment be returned for well over a year. This fraudulent activity has brought significant liability on Utherverse and its investors.

i. Shuster continues to take investments in cash and cryptocurrency, but is not reporting the investments to the SEC, the IRS, or local tax authorities. This fraudulent activity brings significant liability on Utherverse and its investors.

j. Shuster is using Utherverse as a tool to launder money for himself and other criminal associates. This fraudulent activity brings significant liability on Utherverse and its investors.

k. Shuster used Utherverse investor funds to make pornographic films.

l. Shuster used Utherverse investor funds to pay for personal travel for himself and others.

m. Shuster used Utherverse investor funds to pay attorneys for work on personal legal matters unrelated to Utherverse.

n. Shuster gave shares and tokens to his escort girlfriend “Jade” for personal reasons unrelated to the operations of Utherverse.

57. The full extent of Shuster’s fraudulent actions is presently unknown, and its discovery will require the parties to obtain all records from Shuster and Utherverse, including banking data and cryptocurrency wallet data.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CO-DEFENDANT ACCOMPLICES THAT AIDED AND CONSPIRED WITH SHUSTER IN PERPETRATING HIS FRAUD.**

58. On information and belief, Counter-Defendant Good is an attorney licensed in the state of Florida. On information and belief, Good knowingly aided and conspired with Shuster to fraudulently conceal and withhold funds obtained from Counterclaimants. On information and belief, Good created, formed, and operated a business structure which Shuster utilized to obtain money from Counterclaimants in a manner constituting theft, including setting up and transferring money to offshore accounts and corporations. On information and belief, Shuster paid Good using funds fraudulently obtained from Counterclaimants, and Good knowingly received funds fraudulently obtained from Counterclaimants.

59. Good issued several cease and desist letters to Counterclaimants, investors, and others to stifle or otherwise deprive Counterclaimants of their property interests in, among other things, shares, tokens, cryptocurrencies, and funds. The letters further encouraged the recipients to take actions against Counterclaimants to undermine Counterclaimants' interests related to the various agreements and investment activities described *supra*. Good knowingly undermined Counterclaimants' interests and right to benefit from the Notes and SAFTs mentioned herein, including by, among other things, attempting to cancel the agreements without remitting the funds received by Counter-Defendants pursuant to those agreements. On information and belief, Good had an individual interest in Utherverse and the actions that he took to cancel the Counterclaimants' agreements benefitted his individual interest in Utherverse.

60. This Court has personal jurisdiction over Good because the foregoing conspiracy, aiding and abetting, and other misconduct harmed Niya Holdings, a Nevada Corporation that relied on Good, Shuster, and Utherverse's coordinated representations. Good's foregoing misconduct was also done in furtherance of Utherverse, Inc. and Utherverse Digital's business in Nevada.

61. On information and belief, Counter-Defendant Gantner knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants and investors. On information and belief, Gantner created and developed a non-licensed platform –that competed with Utherverse's platform—to illegally and fraudulently sell tokens and receive

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

commissions. On multiple occasions Shuster paid Gantner commissions for selling Utherverse tokens and shares to non-accredited US investors, including on Gantner's unlicensed platform. On information and belief, Gantner knowingly received funds fraudulently obtained from Counterclaimants. Gantner further intentionally misrepresented and/or overstated the capabilities (*e.g.*, the readiness of the Utherverse platform and/or UTHER tokens for launch), financial data (*e.g.*, claimed over $70,000,000.00 in revenues), user data (*e.g.*, claimed over 50 million users), and other information about Utherverse's platform that was material to Counterclaimants' and investors' dedication of funds, time, and effort to Utherverse. Gantner exploited his roles as a developer of Utherverse's platform and CEO of Utherverse in doing so, knowing that his technical expertise, background, and intimate knowledge of the platform and company would lead Counterclaimants and investors to rely upon his misrepresentations.

62. This Court has personal jurisdiction over Gantner because the foregoing conspiracy, aiding and abetting, and other misconduct harmed Niya Holdings, a Nevada Corporation that relied on Gantner, Shuster, and Utherverse's coordinated representations. Gantner's foregoing misconduct was also done in furtherance of Utherverse, Inc. and Utherverse Digital's business in Nevada.

63. On information and belief, Counter-Defendant Nexus knowingly aided and conspired with Shuster to defraud, and conceal and withhold funds obtained from Counterclaimants. On information and belief, Nexus was created, owned, and operated by Gantner, who allowed Shuster to use Nexus to launder money and misappropriate or hide funding from investors.

64. This Court has personal jurisdiction over Nexus because the foregoing conspiracy, aiding and abetting, and other misconduct harmed Niya Holdings, a Nevada Corporation that relied on Nexus, Gantner, Shuster, and Utherverse's coordinated representations. Nexus and Gantner's foregoing misconduct was also done in furtherance of Utherverse, Inc. and Utherverse Digital's business in Nevada.

65. On information and belief, Counter-Defendant Gary knowingly aided and conspired with Shuster to defraud, and conceal and obtain and/or withhold funds from Counterclaimants and

investors. On information and belief, Gary is the brother of Shuster, was the Chief Intellectual Property Officer of Utherverse Digital, was the General Counsel of Utherverse, Inc, and is a member and serves on the executive board of Utherverse Gaming, LLC ("Utherverse Gaming").

66. At all times relevant, Shuster acted with authority on behalf of, and represented himself as having authority to act on behalf of, Utherverse Gaming, including by emphasizing his relationship with his brother Gary who is a member of and serves in an executive role for Utherverse Gaming. On information and belief, Shuster and/or the Utherverse entities, with Gary's support and/or approval, publicly represented, and paid third party advertisers to publicly represent, that Shuster, on behalf of Utherverse, is suing Epic Games, Inc. for patent infringement, and that a positive result from that lawsuit will directly affect the value of Utherverse. Shuster so publicly represented in order to entice Counterclaimants and investors to provide more time, funding, and other resources to Utherverse, some or all of which resources were misappropriated by Shuster for his own benefit. On information and belief, Shuster made said public representations and misappropriations with Gary's support and/or approval. On information and belief, the patent lawsuit was brought by Utherverse Gaming. On information and belief, the patents in question, such as Patent Numbers 8276071, 8812954, 9123157, 9724605, and 10198154, are designated as invented by Shuster (expect for 10198154 that shows Gary as the inventor) and assigned to Utherverse Gaming, but they remain prominently featured on the Utherverse website as though Utherverse possesses rights to them. On information and belief, Shuster represented that Utherverse Digital entered into an agreement with Utherverse Gaming, whereby Utherverse Gaming would obtain monetization rights to certain intellectual property that Shuster represented were owned and able to be utilized solely by himself and Utherverse. On information and belief, those representations were false. Indeed, on information and belief, Utherverse Gaming purchased the patents from Utherverse in 2020 and Utherverse assigned the patents to Utherverse Gaming that same year, which resulted in Utherverse Gaming being the sole and exclusive owner of the patents.

67. This Court has personal jurisdiction over Gary because the foregoing conspiracy, aiding and abetting, and other misconduct harmed Niya Holdings, a Nevada Corporation that relied

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

on Gary, Shuster, and Utherverse's coordinated representations. Gary's foregoing misconduct was also done in furtherance of Utherverse, Inc. and Utherverse Digital's business in Nevada.

68. After minting the UTHER tokens—and failing to deliver them to the Counterclaimants who were entitled to them—Utherverse, through Shuster, Good, and Gantner, circulated the UTHER tokens into the market (*i.e.*, into cryptocurrency exchanges under the label "UTHX") in Fall 2024 in minimal amounts in an attempt to manipulate the value of the tokens. Because of the artificial scarcity that Shuster, Good, and Gantner created, UTHER tokens initially sold around $2.00 each. However, once the various investors to whom Shuster and Utherverse owed tokens learned of the release of tokens into the market, demanded their tokens, and sold the tokens upon receiving them, the price of the UTHX token quickly plummeted to less than $0.01.

69. Shuster, Good, and Gantner then feigned a malfunction in the UTHER tokens, abandoned the UTHX token, and created a new UTHER token (under the label "UTHR"). Shuster, Good, and Gantner distributed the new version of the UTHER tokens to a select few, and in some cases non-accredited, investors and left all the holders of UTHX with a token devoid of value. On information and belief, Shuster, Good, and Gantner attempted to manipulate the price of the new UTHR token with the same artificial scarcity approach as for UTHX with similar results: the token initially sold for $0.70 and was trading around $0.07 the last time that Counterclaimants researched its value.

**ALTER EGO**

70. Counterclaimants are informed and believe that Shuster is the alter ego of Utherverse, Inc. as follows:

a. Counterclaimants are informed and believe there is a unity of interest and ownership between Shuster and Utherverse, Inc. such that any individuality and separateness between the company and individual has ceased.

b. Counterclaimants are informed and believe that at all times mentioned herein Utherverse, Inc. was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Counterclaimants are informed and believe that the capitalization of Utherverse,

Inc. was illusory, and that the capital assets of Shuster and Utherverse, Inc. were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Counterclaimants are informed and believe that Shuster has used Utherverse, Inc.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized. For instance, Shuster used Utherverse corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation, further demonstrating the lack of separation between the entities and their owner.

d. Adherence to the fiction of separate corporate existence of Utherverse, Inc. and Brian Schuster would sanction fraud and promote injustice. Counter-Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The Utherverse entities were consistently undercapitalized, existing solely to funnel investor money for Shuster's personal benefit.

71. Counterclaimants are informed and believe that Shuster is the alter ego of Utherverse Digital as follows:

a. Counterclaimants are informed and believe there is a unity of interest and ownership between Shuster and Utherverse Digital such that any individuality and separateness between the company and individual has ceased.

b. Counterclaimants are informed and believe that at all times mentioned herein Utherverse Digital was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Counterclaimants are informed and believe that the capitalization of Utherverse Digital was illusory, and that the capital assets of Shuster and Utherverse Digital

Case 3:25-cv-00020-MMD-CSD Document 97-3 Filed 09/26/25 Page 38 of 49

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Counterclaimants are informed and believe that Shuster has used Utherverse Digital's assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized.

d. Adherence to the fiction of the separate existence of Utherverse Digital as a corporation separate from its owner, Shuster, would sanction fraud and promote injustice. Counter-Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The Utherverse entities were consistently undercapitalized, existing solely to funnel investor money for Shuster's personal benefit.

72. Counterclaimants are informed and believe that Shuster is the alter ego of Utherverse International, Ltd. as follows:

a. Counterclaimants are informed and believe there is a unity of interest and ownership between Shuster and Utherverse International, Ltd. such that any individuality and separateness between the company and individual has ceased.

b. Counterclaimants are informed and believe that at all times mentioned herein Utherverse International, Ltd.was inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to its investors. Counterclaimants are informed and believe that the capitalization of Utherverse International, Ltd.was illusory, and that the capital assets of Shuster and Utherverse International, Ltd.were so intertwined and comingled that their value could only be assessed as a whole, and the debts of one should be considered the debts of the other.

c. Counterclaimants are informed and believe that Shuster has used Utherverse International, Ltd.'s assets for his own personal use without regard to the proper formalities and in such a manner as to cause the company to be undercapitalized.

For instance, Shuster used Utherverse corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation, further demonstrating the lack of separation between the entities and their owner.

d. Adherence to the fiction of separate corporate existence of Utherverse International, Ltd. and Brian Schuster would sanction fraud and promote injustice. Counter-Defendants used corporate assets for personal gain, including extravagant travel and unauthorized payments to non-licensed brokers, blurring the line between personal and business interests. The Utherverse entities were consistently undercapitalized, existing solely to funnel investor money for Shuster's personal benefit.

**FIRST CAUSE OF ACTION**

**<u>Fraud</u>**

**(Against Shuster, Utherverse, Inc., and Utherverse Digital)**

73. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporates the same as though fully set forth at length herein.

74. Shuster, Utherverse, Inc., and Utherverse Digital represented to Counterclaimants that specific facts concerning Utherverse and Shuster were true, as alleged herein.

75. Shuster, Utherverse, Inc., and Utherverse Digital's representations were false.

76. Shuster, Utherverse, Inc., and Utherverse Digital knew that the representations were false when they were made.

77. Shuster, Utherverse, Inc., and Utherverse Digital made the representations recklessly and without regard for their truth.

78. Shuster, Utherverse, Inc., and Utherverse Digital intended that Counterclaimants rely on the representations.

79. Counterclaimants reasonably relied on the representations.

/ / /

/ / /





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

80. As a direct and proximate result of Shuster, Utherverse, Inc., and Utherverse Digital's fraudulent conduct, Counterclaimants have sustained damages in an amount to be proven at trial.

81. Based on the allegations herein, Denne, Blockchain Alliance, Blockchain Funding, and Masternode seek to recover in an amount to be proven at trial.

82. Based on the allegations herein, Momayez and Niya Holdings seek to recover in an amount to be proven at trial.

83. Shuster, Utherverse, Inc., and Utherverse Digital's fraud as specifically set forth in this Amended Counterclaim are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of Shuster, Utherverse, Inc., and Utherverse Digital's intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against Shuster)**

84. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

85. Shuster was Counterclaimants' fiduciary.

86. Shuster acted on Counterclaimants' behalf for the purpose of obtaining their investments in Utherverse.

87. Shuster failed to act as a reasonably careful person would have acted under the same or similar circumstances.

88. Counterclaimants were harmed and Shuster's conduct was a substantial factor in causing Counterclaimants' harm.

89. As a direct and proximate result of Shuster's actions, Counterclaimants have sustained damages in an amount to be proven at trial.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

90. Shuster's actions as specifically set forth in this Amended Counterclaim are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of his intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against Good, Gantner, Nexus, and Gary)**

91. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

92. As described in Paragraphs *supra*, Shuster breached his fiduciary duty or duties to Counterclaimants.

93. Good, Gantner, Nexus, and Gary knowingly and substantially assisted and/or encouraged Shuster to breach his fiduciary duty or duties to Counterclaimants.

94. Good, Gantner, Nexus, and Gary were aware of their roles in assisting and/or encouraging Shuster to breach his fiduciary duty or duties to Counterclaimants when they so assisted and/or encouraged.

95. Counterclaimants were harmed and Good, Gantner, Nexus, and Gary's conduct was a substantial factor in causing Counterclaimants' harm.

96. As a direct and proximate result of Good, Gantner, Nexus, and Gary's actions, Counterclaimants have sustained damages in an amount to be proven at trial.

97. Good, Gantner, Nexus, and Gary's actions as specifically set forth in this Amended Counterclaim are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of their intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**FOURTH CAUSE OF ACTION**

**Civil Conspiracy**

**(Against Shuster, Utherverse, Inc., Utherverse Digital, Good, Gantner, Nexus, and Gary )**

98. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

99. Each Counter-Defendant knowingly acted in concert with one or more other Counter-Defendants to accomplish an unlawful objective or objectives for the purpose of harming Counterclaimants, including Shuster, Utherverse, Inc., and Utherverse Digital's effort to commit fraud against the Counterclaimants.

100. In so acting, each Counter-Defendant intended to cause such harm.

101. As a direct and proximate result of Counter-Defendants' actions in concert, Counterclaimants were in fact harmed and suffered damages in an amount to be proven at trial.

102. Counter-Defendants' actions as specifically set forth in this Amended Counterclaim are not meant to limit the generality of the allegations contained herein but are merely illustrative of the depths of their intentional, willful, knowing, malicious, oppressive, despicable, fraudulent and/or reckless conduct, which were done in bad faith, entitling the Counterclaimants to exemplary and punitive damages in an amount to be determined according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**

**Breach of the Niya Note**

**(Against Shuster and Utherverse Digital)**

103. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

104. Niya Holdings, Shuster, and Utherverse Digital are parties to the Niya Note.

105. Niya Holdings, Shuster, and Utherverse Digital are mutually obligated to perform under the Niya Note.

106. Niya Holdings, Shuster, and Utherverse Digital fully executed the Niya Note.

107. Shuster and Utherverse Digital breached the material terms of the Niya Note by failing to perform under its terms.

108. Shuster and Utherverse Digital's material breach of the Niya Note is unexcused.

109. As much as possible, Niya Holdings performed its obligations under the Niya Note.

110. All conditions precedent to Shuster and Utherverse Digital's performance of the Niya Note have been satisfied.

111. Niya Holdings provided notice of Shuster and Utherverse Digital's material breach of the Niya Note.

112. As a direct and proximate result of Shuster and Utherverse Digital's breach, Niya Holdings was in fact harmed and suffered damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Breach of the Blockchain Funding SAFT**

**(Against Shuster and Utherverse International Ltd.)**

113. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

114. Blockchain Funding and Utherverse International Ltd.are parties to the Blockchain Funding SAFT.

115. Blockchain Funding, Shuster, and Utherverse International Ltd. are mutually obligated to perform under the Blockchain Funding SAFT.

116. Blockchain Funding and Utherverse International Ltd. fully executed the Blockchain Funding SAFT.

117. Shuster and Utherverse International Ltd.breached the material terms of the Blockchain Funding SAFT by failing to perform under its terms.

118. Shuster and Utherverse International Ltd.'s material breach of the Blockchain Funding SAFT is unexcused.

119. As much as possible, Blockchain Funding performed its obligations under the Blockchain Funding SAFT.

120. All conditions precedent to Shuster and Utherverse International Ltd.'s performance of the Blockchain Funding SAFT have been satisfied.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

121. Blockchain Funding provided notice of Shuster and Utherverse International Ltd.'s material breach of the Blockchain Funding SAFT.

122. As a direct and proximate result of Shuster and Utherverse International Ltd.'s breach, Blockchain Funding was in fact harmed and suffered damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**Breach of the Masternode SAFT**

**(Against Shuster and Utherverse International Ltd.)**

123. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

124. Masternode andand Utherverse International Ltd. are parties to the Masternode SAFT.

125. Masternode, Shuster, and Utherverse International Ltd. are mutually obligated to perform under the Masternode SAFT.

126. Masternode and Utherverse International Ltd. fully executed the Masternode SAFT.

127. Shuster and Utherverse International Ltd.breached the material terms of the Masternode SAFT by failing to perform under its terms.

128. Shuster and Utherverse International Ltd.'s material breach of the Masternode SAFT is unexcused.

129. As much as possible, Masternode performed its obligations under the Masternode SAFT.

130. All conditions precedent to Shuster and Utherverse International Ltd.'s performance of the Masternode SAFT have been satisfied.

131. Masternode provided notice of Shuster and Utherverse International Ltd.'s material breach of the Masternode SAFT.

132. As a direct and proximate result of Shuster and Utherverse International Ltd.'s breach, Masternode was in fact harmed and suffered damages in an amount to be proven at trial.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

EIGHTH CAUSE OF ACTION

**Breach of the Blockchain Funding Note**

**(Against Shuster and Utherverse Digital)**

133. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.

134. Blockchain Funding, Shuster, and Utherverse Digital are parties to the Blockchain Funding Note.

135. Blockchain Funding, Shuster, and Utherverse Digital are mutually obligated to perform under the Blockchain Funding Note.

136. Blockchain Funding, Shuster, and Utherverse Digital fully executed the Blockchain Funding Note.

137. Shuster and Utherverse Digital breached the material terms of the Blockchain Funding Note by failing to perform under its terms.

138. Shuster and Utherverse Digital's material breach of the Blockchain Funding Note is unexcused.

139. As much as possible, Blockchain Funding performed its obligations under the Blockchain Funding Note.

140. All conditions precedent to Shuster and Utherverse Digital's performance of the Blockchain Funding Note have been satisfied.

141. Blockchain Funding provided notice of Shuster and Utherverse Digital's material breach of the Blockchain Funding Note.

142. As a direct and proximate result of Shuster and Utherverse Digital's breach, Blockchain Funding was in fact harmed and suffered damages in an amount to be proven at trial.

NINTH CAUSE OF ACTION

**Breach of the Exit Agreement**

**(Against Shuster, Utherverse, Inc., and Utherverse Digital)**

143. Counterclaimants repeat and re-allege each and every allegation of this Amended Counterclaim and by reference incorporate the same as though fully set forth at length herein.





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

144. Quinn, Denne, Shuster, Utherverse, Inc., and Utherverse Digital are parties to the Exit Agreement.

145. Quinn, Denne, Shuster, Utherverse, Inc., and Utherverse Digital are mutually obligated to perform under the Exit Agreement.

146. Quinn, Denne, Shuster, Utherverse, Inc., and Utherverse Digital fully executed the Exit Agreement.

147. Shuster, Utherverse, Inc., and Utherverse Digital breached the material terms of the Exit Agreement by failing to perform under its terms.

148. Shuster, Utherverse, Inc., and Utherverse Digital's material breach of the Exit Agreement is unexcused.

149. As much as possible, Quinn and Denne performed their obligations under the Exit Agreement.

150. All conditions precedent to Shuster, Utherverse, Inc., and Utherverse Digital's performance of the Exit Agreement have been satisfied.

151. Quinn and Denne provided notice of Shuster, Utherverse, Inc., and Utherverse Digital's material breach of the Exit Agreement.

152. As a direct and proximate result of Shuster, Utherverse, Inc., and Utherverse Digital's breach, Quinn and Denne were in fact harmed and suffered damages in an amount to be proven at trial.

153.

**WHEREFORE**, Counterclaimants pray for judgment as follows:

On the First Cause of Action for Fraud:

1. For compensatory and damages in an amount according to proof; and

2. For punitive damages in an amount to be determined at the time of trial.

On the Second Cause of Action for Breach of Fiduciary Duty:

1. For compensatory damages in an amount according to proof; and

2. For punitive damages in an amount to be determined at the time of trial.

On the Third Cause of Action for Aiding and Abetting Breach of Fiduciary Duty:





BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1. For compensatory damages in an amount according to proof; and

2. For punitive damages in an amount to be determined at the time of trial.

On the Fourth Cause of Action for Civil Conspiracy:

1. For compensatory damages in an amount according to proof; and

2. For punitive damages in an amount to be determined at the time of trial.

On the Fifth Cause of Action for Breach of the Niya Note:

1. For compensatory damages in an amount according to proof; and

2. For consequential damages in an amount to be determined at the time of trial.

On the Sixth Cause of Action for Breach of the Blockchain Funding SAFT:

1. For compensatory damages in an amount according to proof; and

2. For consequential damages in an amount to be determined at the time of trial.

On the Seventh Cause of Action for Breach of the Masternode SAFT:

1. For compensatory damages in an amount according to proof; and

2. For consequential damages in an amount to be determined at the time of trial.

On the Eighth Cause of Action for Breach of the Blockchain Funding Note:

1. For compensatory damages in an amount according to proof; and

2. For consequential damages in an amount to be determined at the time of trial.

On the Ninth Cause of Action for Breach of the Exit Agreement:

1. For compensatory damages in an amount according to proof; and

2. For consequential damages in an amount to be determined at the time of trial.

On All Causes of Action:

1. For costs of suit incurred herein;

2. For prejudgment interest at the maximum legal rate on all sums awarded; and

3. For such other and further relief as the court may deem proper.

AND WHEREFORE, Counterclaimants pray for injunctive relief and an order for:

1. Disgorgement of all ill-gotten gains derived from Counter-Defendants' fraudulent conduct.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2. A full and complete accounting of all funds received and disbursed by the Utherverse entities to determine the location and use of Counterclaimants' investments.

3. A preliminary injunction to freeze Counter-Defendants' assets, prevent further transfers, and ensure no additional investor harm.

**DEMAND FOR JURY TRIAL**

Counterclaimants demand a trial by jury to all issues so triable.

DATED this 24th day of April, 2025.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Defendants/Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **AMENDED ANSWER TO COMPLAINT AND AMENDED COUNTERCLAIM** was served via electronic service on the 24th day of April, 2025.

*/s/ Wendy Cosby*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP