JAMES PUZEY (NV SBN 05745)
jpuzey@nvlawfirm.com
KEARNEY PUZEY DAMONTE
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700

SHERRIE M. FLYNN (*Pro Hac Vice*)
sflynn@ch-law.com
ROBERT K. ASHLEY (*Pro Hac Vice*)
rashley@ch-law.com
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 W. Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile: (559) 248-4830

Attorneys for Plaintiffs and Counter-Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA – RENO DIVISION**

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation, BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming limited liability company; MASTERNODE PARTNERS, LLC, a Wyoming limited liability company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a "NAZ NAMAZI," an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCOMPLAINT. | Case No. 3:25-cv-00020-MMD-CSD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NAZANIN NAMAZI'S MOTION TO DISMISS (ECF NO. 94)**<br><br>**Complaint Filed:** January 10, 2025<br><br>**Counterclaim Filed:** February 28, 2025 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Nazanin Namazi is the person who filed the liens. Her name, her email address, her telephone number, and her home address appear on the Nevada financing statement as the filer. First Amended Complaint "FAC", ECF No. 83 ¶ 66. Her electronic signature, "/Nazanin Namazi/," appears on the submission to the United States Patent and Trademark Office, beneath a recital that the document "serves as an Oath/Declaration (37 CFR 1.63)." *Id.* ¶ 67. That submission recited an execution date three years earlier than the filing, named as conveying parties a company and an individual who had conveyed nothing, and listed forty-four patents as collateral for a note that secured only the assets of a company holding interests in two of them. *Id.* ¶¶ 67–68. Plaintiffs allege that she did this as the enterprise's designated filer — the person who "executed its filing operations" (*id.* ¶ 71) — having served as Quinn's assistant since at least 2023, when, on information and belief, she prepared a ledger tracking investor deposits routed across his accounts (*id.* ¶ 106).

Namazi's Motion does not dispute any of that. It accepts the allegations as true for purposes of Rule 12(b)(6) and argues that they are not enough. The argument rests on four propositions, each of which fails.

First, that the Court lacks personal jurisdiction. But Namazi's own act — recording a financing statement in the Nevada Secretary of State's registry, naming a secured party at a Las Vegas address, to cloud title to a patent portfolio the FAC alleges belongs to a Nevada corporation — is the very conduct on which she is sued, and it supplies specific jurisdiction under the authorities she cites. RICO's nationwide-service provision, which the FAC invokes in ¶ 2, is an additional basis.

Second, that she cannot satisfy *Reves* because she acted at Quinn's direction. *Reves* requires "some part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). However, the Court was explicit that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. The Ninth Circuit distinguishes an outside professional who merely renders services from a participant who knowingly implements the decisions of upper management and is vital to the enterprise's goal. *Walter v. Drayson*, 538 F.3d 1244, 1248–49 (9th Cir. 2008). The

FAC places Namazi in the second category.

Third, that "two acts occurring seven days apart" cannot establish continuity. ECF No. 94 at 10. The FAC expressly pleads two interstate-wire predicates by Namazi (FAC ¶¶ 103–104), which is the statutory minimum, and continuity is a characteristic of the pattern that the enterprise's predicates form — a pattern this Court has already held adequately pleaded on a closed-ended basis. ECF No. 76 at 11–12. Namazi's predicates are part of that pattern.

Fourth, that Section H of the FAC contains no subsection captioned with her name. That is true, and it is a matter of headings. The facts from which her knowing agreement is inferred are pleaded at FAC Paragraphs 12, 65–71, 87, and 103–106, all of which paragraph 157 incorporates into Count II. A complaint is read as a whole, not heading by heading. And under the standard this Circuit applies to § 1962(d), those facts — a role as the organizer's assistant since 2023; the alleged preparation of the ledger tracking where investor deposits were routed; execution of the Nevada and USPTO filings under her own name, and of the California filing on information and belief; a signature beneath a § 1.63 recital on a submission reciting a fabricated execution date and fabricated conveying parties; and the blank submitter fields on the first filing — plausibly allege that she knowingly agreed to facilitate the scheme. That is what § 1962(d) requires. *Salinas v. United States*, 522 U.S. 52, 65 (1997); *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), amended, 425 F.3d 1248 (9th Cir. 2005).

The Motion should be denied.

## II. THE FAC ALLEGATIONS RELATED TO NAMAZI

Because the Motion's central theme is that the FAC says too little about Namazi, Plaintiffs collect here what it says. All of the following is accepted as true on this Motion.

### A. <u>Her Relationship to the Enterprise</u>.

Namazi "at all relevant times was employed by or acted as an agent and at the direction of Quinn." FAC ¶ 12. In an August 24, 2023 text exchange — sixteen months before the first lien — Quinn identified "Naz" as his assistant and forwarded "a ledger prepared by her tracking investor deposits routed across multiple Quinn-affiliated accounts." *Id.* ¶ 106 (pleaded on information and belief). Within the enterprise, "Namazi executed its filing operations." *Id.* ¶ 71.

**B. The California Filing.**

On January 10, 2025 — the day this action was commenced (*see* ECF No. 1) — a UCC-1 financing statement was filed with the California Secretary of State, naming Brian Shuster and UDI as debtors and Niya Holdings, LLC as secured party. FAC ¶ 65. Neither Momayez nor Niya authorized it. *Id*. The filing "improperly left all identifying information about the party making the filing blank." *Id*. Plaintiffs allege on information and belief, stating the basis — that the same person made the later USPTO filing, and that the blank submitter fields served "to further conceal the persons behind the unlawful scheme" — that Namazi made it at Quinn's direction. *Id.* ¶¶ 65, 105.

**C. The Nevada Filing.**

On May 23, 2025, a UCC-1 financing statement, Nevada Secretary of State Initial Filing No. 2025476203-7, was filed "by 'Naz Namazi' (filmmakernaz@gmail.com; (949) 295–4233; 29726 Felton Drive, Laguna Niguel, CA)." FAC ¶ 66. It named UDI as debtor and Niya Holdings, LLC as secured party, and listed forty-four U.S. patents as collateral — "including patents owned of record by Brian Shuster and Gary Shuster as individuals, and patents assigned to third parties many years prior to the filing." *Id*. The filing itself, attached as Exhibit B to the FAC, identifies the secured party's address as 187 Warm Springs Road, Suite B206, Las Vegas, Nevada 89119. *Id*., Ex. B.

**D. The USPTO Filing.**

On May 30, 2025, "Namazi electronically transmitted" to the USPTO's Electronic Patent Assignment System in Alexandria, Virginia, a submission recorded at Reel/Frame 071469/0405 designating a lien in favor of Niya against the same forty-four patents. FAC ¶ 67. Its cover sheet "named UDI and 'Mr. Brian Shuster' as conveying parties with a purported April 11, 2022 execution date; listed correspondence emails filmmakernaz@gmail.com and brianquinn27@icloud.com — an email of Defendant Quinn; was signed '/Nazanin Namazi/' on May 30, 2025; and stated it 'serves as an Oath/Declaration (37 CFR 1.63).'" *Id*.

**E. Why the Filings Were Fraudulent.**

"Neither Brian Shuster nor UDI executed or authorized a lien to Niya against those patents; the Niya Note secured only UDI assets (UDI owned two of the 44 patents); many listed patents were owned by non-parties to the Note; and neither Momayez nor Niya Holdings authorized the filings."

FAC ¶ 68. The instruments were "fabricated" and recorded "to cloud title to UI's patent portfolio and impair UI's ability to finance or monetize its patents." *Id.* ¶ 87. A partial reconveyance recorded on August 6, 2025, omitted at least one patent, and neither UCC-1 has been terminated. *Id.* ¶ 68.

### F. <u>The Counts</u>.

Count I (§ 1962(c)) is pleaded against Namazi directly (*id.* at 152), and attributes two interstate-wire predicates to her: the Nevada filing and the USPTO transmission. *Id.* ¶¶ 103–104. Count II (§ 1962(d)) is pleaded against all Defendants and alleges that "Namazi agreed to and did execute the fabricated filings." *Id.* ¶ 158. Count II incorporates Paragraphs 1 through 150 and Count I. *Id.* ¶ 157.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 9(b) requires particularity as to "the circumstances constituting fraud" but provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Allegations on information and belief may satisfy Rule 9(b) where the facts "are peculiarly within the defendant's knowledge" and the pleading states the factual basis for the belief. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). RICO is to be "'liberally construed to effectuate its remedial purposes.'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) (quoting Pub. L. 91-452, § 904(a), 84 Stat. 947).

On a Rule 12(b)(2) motion decided on the pleadings, the plaintiff need only make a prima facie showing of jurisdictional facts; uncontroverted allegations are taken as true and conflicts are resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

## IV. ARGUMENT

### A. <u>The Court Has Personal Jurisdiction Over Namazi</u>.

#### 1. Namazi's own Nevada filing supplies specific jurisdiction.

Namazi is subject to specific jurisdiction in Nevada on ordinary due-process principles, under the authorities she cites. Specific jurisdiction exists where (1) the defendant purposefully

directed her activities at the forum, (2) the claim arises out of or relates to those forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. For a claim sounding in intentional wrongdoing, purposeful direction is shown by an intentional act, expressly aimed at the forum, causing harm the defendant knows is likely to be suffered there. *Id*. at 803 (applying *Calder v. Jones*, 465 U.S. 783 (1984)).

Each element is met on the face of the FAC. Namazi intentionally recorded a financing statement in the Nevada Secretary of State's public registry. FAC ¶ 66. The filing was aimed at Nevada: it used a Nevada governmental registry to record a purported security interest; it named as secured party an entity identified by a Las Vegas, Nevada address *(id*., Ex. B); and its alleged purpose was to cloud title to the patent portfolio of Utherverse, Inc., a Nevada corporation headquartered in Carson City, where the harm of a clouded portfolio is felt (*id*. ¶¶ 3, 87). And Count I's first predicate act against her is that filing. *Id*. ¶ 103. Plaintiffs' claim against Namazi does not merely relate to her Nevada contact; the contact is part of the challenged conduct itself.

Namazi argues that a single filing cannot suffice. ECF No. 94 at 13. But "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). A defendant who deliberately uses the forum State's own recording system to assert a purported interest in a forum corporation's patent portfolio has created that connection; the act is not an attenuated or fortuitous contact but the means by which the alleged injury was inflicted in Nevada. See *Walden v. Fiore*, 571 U.S. 277 (2014), on which the Motion relies, is not to the contrary. *Walden* holds that jurisdiction must rest on the defendant's own contacts with the forum, not on a co-defendant's or the plaintiff's. *Id*. at 284–86. The Nevada filing is Namazi's own contact. It bears her name, her email, her telephone number, and her address. FAC ¶ 66.

Nor is exercising jurisdiction unreasonable. Namazi is a California resident litigating in a neighboring State; Nevada has a manifest interest in adjudicating the alleged fraudulent use of its Secretary of State's registry against the assets of a Nevada corporation; and every other Defendant is already before this Court. Namazi identifies no burden beyond the ordinary.

///

**2. Section 1965(b) is an additional basis for jurisdiction.**

RICO provides for nationwide service of process. 18 U.S.C. § 1965(b). Under *Butcher's Union Local No. 498 v. SDC Investment, Inc*., 788 F.2d 535, 539 (9th Cir. 1986), which the Motion cites, the Court must have personal jurisdiction over at least one participant in the alleged conspiracy, and the plaintiff must show that there is no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators. The Motion asserts that the FAC alleges neither the "ends of justice" nor the absence of another district. ECF No. 94 at 13. Paragraph 2 of the FAC alleges that this Court has jurisdiction over each Defendant "under 18 U.S.C. § 1965(a)-(b), including because a substantial part of the events occurred in this District, the fabricated UCC-1 financing statement was filed with the Nevada Secretary of State, and the ends of justice require that the members of the single conspiracy alleged herein be brought before one court." FAC ¶ 2. The Motion does not mention paragraph 2.

Plaintiffs acknowledge that paragraph 2 does not add, in terms, that no other district could exercise jurisdiction over every alleged participant. The pleaded facts support that inference. The Defendants are alleged to reside or be organized in California (Quinn, Martin, Namazi, and Roma who also maintains a residence in Dubai), Arizona (Denne), Delaware and Wyoming (Blockchain Funding), and Wyoming (Blockchain Alliance, with its principal place of business in Arizona, and Masternode). FAC ¶¶ 5–12. Namazi identifies no district in which all of them could be sued, and none is apparent. The first *Butcher's Union* condition is satisfied outright: Quinn, Denne, Blockchain Funding, Blockchain Alliance, and Masternode have each appeared, answered without asserting any personal-jurisdiction defense on their own behalf, and pursued affirmative counterclaims in this Court. ECF No. 88 (the Answer reserves that defense only for Martin and Roma, *id*. at 36); Fed. R. Civ. P. 12(h)(1). Plaintiffs made the same showing in opposing the co-defendants' motion. ECF No. 90 at 17–18.

*Butcher's Union* itself shows why the provision applies here. There, the unions alleged a nationwide conspiracy carried out by a group of lawyers with four employers, together with four individual conspiracies between the lawyers and each employer, but they conceded that the employers had no connection with one another beyond their use of the same lawyers and that "none

of the four defendant employers had any specific knowledge of or participation in any of the other conspiracies." 788 F.2d at 537, 539. Here, Plaintiffs plead a single association-in-fact enterprise embracing all Defendants (FAC ¶ 71), and this Court has sustained that pleading (ECF No. 76 at 8–10). Namazi is alleged to be that enterprise's filer, acting under the direction of its organizer. FAC ¶¶ 12, 71, 106. The ends of justice are served by adjudicating the liens she filed in the court where the enterprise that directed them is already being tried.

**3. At minimum, jurisdictional discovery is warranted.**

Should the Court find the record insufficient on any jurisdictional fact, Plaintiffs request jurisdictional discovery rather than dismissal. "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union*, 788 F.2d at 540 (quoting *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Namazi's communications with Quinn concerning the Nevada filing, and her relationship with the secured party at the Las Vegas address, are squarely within the scope of fact discovery already open under ECF No. 78.

**B. <u>Count I States a Claim Against Namazi Under § 1962(c)</u>.**

**1. The FAC alleges that Namazi knowingly implemented the enterprise's decisions**

The Motion's conduct-element argument is that because the FAC alleges Namazi acted "at Quinn's direction," she was a mere service provider outside the reach of *Reves*. ECF No. 94 at 6–8. *Reves* holds that § 1962(c) requires "some part in directing" the enterprise's affairs (507 U.S. at 179), and that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management" (*id*. at 184). The Motion quotes the second passage (ECF No. 94 at 7) and then treats acting under direction as if it were a defense.

The Ninth Circuit's cases draw the line the Motion overlooks. In *Walter v. Drayson*, the court held that counsel to a trust and its trustees, who "wrote emails, gave advice, and took positions on behalf of her clients," did not conduct the enterprise's affairs, because "[s]imply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside.'" 538

F.3d at 1248. But the court explained what would have sufficed: a participant who "[knowingly implements decisions] of upper management" and is "[indispensable] to . . . achievement of the enterprise's . . . goal" — like the contractors who "[knowingly undertook] the predicate acts . . . 'at the direction' of the enterprise's [management]" in *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc*., 62 F.3d 967, 979 (7th Cir. 1995) — occupies a place in the "chain of command" through which the enterprise's affairs are conducted. *Walter*, 538 F.3d at 1249. *Baumer v. Pachl* is the same distinction from the other side: an outside attorney whose involvement, consisting of two letters, a partnership agreement, and assistance in a bankruptcy, was "at best sporadic," who "at no time held any formal position" in the enterprise, and whose "role was limited to providing legal services." 8 F.3d 1341, 1344 (9th Cir. 1993).

The FAC alleges more than the provision of routine services. It alleges that Namazi was Quinn's employee and assistant, FAC ¶ 12; that she was the person who "executed [the enterprise's] filing operations" (*id*. ¶ 71); that she made the Nevada and USPTO filings, and, on information and belief, the California filing, at Quinn's direction (*id*. ¶¶ 87, 103–105); and that those filings were the means by which the enterprise clouded title to Plaintiffs' patent portfolio after this action exposed the scheme (*id*. ¶¶ 65–68, 87). That is the allegation *Walter* found missing: a participant inside the enterprise who knowingly carried out the decisions of its management in a function vital to its goal. Whether those facts will ultimately establish participation in directing the enterprise's affairs is a question for the merits; at the pleading stage they plausibly place Namazi within the implementation chain *Walter* describes, not among the outside professionals in *Baumer* and *Walter*. *Reves*' point that lower-rung participants are liable when they act under the direction of upper management (507 U.S. at 184), would mean nothing if acting under direction were itself a defense.

The Motion also argues that FAC Paragraph 71's statement that "Quinn and Denne organized and directed the enterprise" forecloses liability for anyone else, and that the remaining Defendants are described only as "counterparties, signatories, and nominees." ECF No. 94 at 7. FAC Paragraph 71 says more than that: "Namazi executed its filing operations; ... Each Defendant participated in the conduct of the enterprise's affairs — not merely their own — through the pattern alleged below." Identifying who organized an enterprise does not immunize those who operated it under that

organization. In ECF No. 76 at 12, the Court rejected the characterization of the participants as merely conducting their own business affairs; that ruling did not concern Namazi, who was not then a party, and Plaintiffs do not rely on it for more than it decided.

**2. The FAC pleads two wire-fraud predicates and intent with the required particularity.**

The FAC expressly alleges two interstate-wire predicates by Namazi — the May 23, 2025 Nevada filing and the May 30, 2025 USPTO submission (FAC ¶¶ 103–104) — and separately alleges, on information and belief, that she made the January 10, 2025 California filing at Quinn's direction, leaving the submitter fields blank (*id*. ¶¶ 65, 105). Two predicates is the statutory minimum. 18 U.S.C. § 1961(5); *Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir. 1988). The California filing supplies context bearing on role, knowledge, and intent; Plaintiffs do not depend on characterizing it as an additional wire predicate. The allegation that Namazi made it is pleaded on information and belief, as it must be when the filer's identity was withheld, and it states its basis: the California filing named the same debtors, the same secured party, and the same collateral as the two filings that bear her name. FAC ¶ 65. That satisfies *Neubronner*. 6 F.3d at 672.

The Motion's principal argument is that the transmissions are pleaded but fraudulent intent is not. ECF No. 94 at 8–9. Rule 9(b) provides that intent "may be alleged generally," and the Motion concedes as much (*id*. at 6, 9), while insisting that the inference must still be plausible. It is. The FAC alleges that Namazi signed, beneath the recital that the document "serves as an Oath/Declaration (37 CFR 1.63)," a submission that stated an execution date of April 11, 2022 for an instrument transmitted May 30, 2025; that named as "conveying parties" a company and an individual who had conveyed nothing; and that listed forty-four patents as collateral for a note that secured only UDI's assets, many of the patents being owned by persons who were not parties to the note at all. FAC ¶¶ 67–68. A person who transmits, over a recital that the document serves as a declaration, an instrument bearing an execution date three years before the day of transmission may plausibly be inferred to have known that the date was not genuine. The FAC further alleges that the filer's identity was withheld on the first filing (*id*. ¶¶ 65, 105); that Quinn's personal email was placed on her USPTO submission as a correspondence address (*id*. ¶ 67); and that, on information and

belief, she had been tracking investor deposits as they were routed across Quinn's accounts since 2023 (*id.* ¶ 106) — the diversion the FAC describes at Paragraph 22. A person who keeps that ledger, and who then transmits a lien against the victims' assets under a declaration recital while the first such filing was made anonymously, may plausibly be inferred to have known what she was doing. That inference is drawn in Plaintiffs' favor on this Motion.

The Motion's response to Paragraph 106 — that "acting as an assistant and preparing a ledger do not, without more, establish knowledge," ECF No. 94 at 9 — isolates one allegation and asks whether it alone proves intent. That is not the test. Allegations are read together, and the ledger in Paragraph 106 is alleged to have tracked "investor deposits routed across multiple Quinn-affiliated accounts" — the funds at the center of the scheme. An assistant who, as alleged, tracks where investor deposits were routed may plausibly be inferred to know that they were being routed, and among whom.

Finally, the Motion's reliance on FAC Paragraph 87 — that Quinn "directed and controlled" the USPTO filing — misunderstands wire fraud. Section 1343 reaches whoever "transmits or causes to be transmitted." Quinn is alleged to have caused the transmission; Namazi is alleged to have transmitted it. FAC ¶¶ 67, 104. Both may be liable for the same wire. That Quinn directed the filing is not evidence that Namazi lacked intent; it is the allegation that she acted under the direction of upper management, which is what *Reves* contemplates.

**3. Continuity is a characteristic of the enterprise's pattern, which this Court has already sustained.**

The Motion argues that Namazi's "two acts occurring seven days apart" cannot establish closed-ended continuity under *Religious Technology Center v. Wollersheim*, 971 F.2d 364 (9th Cir. 1992), and *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004). ECF No. 94 at 10. Plaintiffs do not contend that the seven-day interval between Namazi's two wire acts, viewed alone, establishes continuity. The argument tests the wrong thing.

A "pattern of racketeering activity" is defined by reference to "acts of racketeering activity," 18 U.S.C. § 1961(5), and continuity asks whether the predicates "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239

(1989). Closed-ended continuity is shown by "a series of related predicates extending over a substantial period of time." *Id*. at 242. The requirement that each defendant have committed at least two predicates (§ 1961(5); *Blake*, 856 F.2d at 1370), is a separate inquiry from whether the pattern those predicates form is continuous. *Religious Technology Center* and *Turner* are consistent with that: in each, the court examined the entire course of conduct alleged and found the whole scheme too short-lived and too finite. 971 F.2d at 366–67; 362 F.3d at 1229–31. Neither carved out one participant's acts and tested them in isolation.

This Court applied the same framework in ECF No. 76. It first required that at least two predicate acts be pleaded as to each Defendant (ECF No. 76 at 10–11) and then assessed closed-ended continuity across the scheme's overall course, holding that the pleading showed "a series of related predicates extending over a substantial period of time" *Id*. at 11–12 (quoting *H.J. Inc*., 492 U.S. at 242). The FAC pleads a pattern extending from at least March 2022 through August 2025 and continuing after this action was commenced (FAC ¶¶ 72, 102), and Namazi's two predicates are among its latest acts (*id*. ¶¶ 87, 103–104). Under the framework the Court has already applied, a participant who commits two predicates within a pattern that is itself continuous satisfies the pattern element; she does not need to have committed a continuous pattern by herself. *Cf. United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) (although co-participants' predicate acts cannot supply a defendant's own two predicates, they "can prove the relatedness and continuity essential to a pattern, thereby helping to establish 'that the defendant's own acts constitute a pattern within the meaning of RICO'" (quoting *United States v. Indelicato*, 865 F.2d 1370, 1384 (2d Cir. 1989) (en banc))). Were the rule otherwise, a participant recruited in an enterprise's final months would be beyond § 1962(c) regardless of what she did, a result difficult to reconcile with *Reves*' inclusion of lower-rung participants. The FAC also pleads, in the alternative, that the 2024–2025 lien and litigation acts show a threat of continuing activity (FAC ¶ 72); the Court did not need to reach open-ended continuity in ECF No. 76, at 11 n.8 and need not reach it here.

### C. <u>Count II States A Claim Against Namazi Under § 1962(d)</u>.

#### 1. Section H's headings do not limit what Count II incorporates.

The Motion's principal structural point is that Section H of the FAC, to which Paragraph 157

refers "in particular" for each Defendant's awareness, contains subsections captioned for Martin and for Roma but none captioned for Namazi. ECF No. 94 at 4, 11. Plaintiffs acknowledge the point as a matter of organization. It does not carry the weight the Motion places on it, for three reasons.

First, Paragraph 157 does not confine Count II to Section H. It "reallege[s] and incorporate[s] the allegations of Paragraphs 1 through 150 of this First Amended Complaint, and Count I," and then states that Plaintiffs "rely in particular" on Section H. FAC ¶ 157. "In particular" is a word of emphasis, not exclusion. Every allegation concerning Namazi on which Plaintiffs rely — Paragraphs 12, 65–71, 87, and 103–106 — falls within Paragraphs 1 through 150 and is incorporated into Count II by its terms.

Second, a complaint is construed as a whole and "so as to do justice," Fed. R. Civ. P. 8(e), not heading by heading. The question under *Iqbal* is whether the facts pleaded, wherever they appear, make the claim plausible. The Motion does not argue that the Namazi allegations in Paragraphs 12, 65–71, and 103–106 are not in the FAC; it argues that they are in the wrong section. Rule 8 does not require otherwise.

Third, Count II itself pleads Namazi's agreement in terms: "Namazi agreed to and did execute the fabricated filings." FAC ¶ 158. The Motion calls that conclusory. Standing alone it would be. Read with the incorporated facts — which is how it must be read — it is the conclusion those facts support.

**2. Section 1962(d) asks whether Namazi knowingly agreed to facilitate the scheme; it does not ask whether she managed it.**

A defendant violates § 1962(d) if she "'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'" *Fernandez*, 388 F.3d at 1230 (quoting *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001)). She need not commit or agree to commit any predicate act (*Salinas*, 522 U.S. at 65), and *Reves*' operation-or-management test does not apply to the conspiracy claim (*Fernandez*, 388 F.3d at 1230). A plaintiff may "sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962." *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000). The pleading must still allege the agreement and an injury flowing from the predicate acts; both are alleged here. FAC ¶¶ 158–159. Plaintiffs briefed the same standard, with the

same authorities, in opposing the co-defendants' motion. ECF No. 90 at 12–13.

Knowledge and agreement are conditions of mind that "may be alleged generally" (Fed. R. Civ. P. 9(b)) and are ordinarily inferred from conduct and relationships rather than proved by confession. The Motion's demand for "conversation, communication, meeting, ownership interest, profit-sharing arrangement, [or] payment" (ECF No. 94 at 12), describes evidence, not a pleading requirement. The question is whether the facts alleged make knowing agreement plausible.

**3. The pleaded facts make Namazi's knowing agreement plausible.**

Namazi was Quinn's employee and assistant. FAC ¶ 12. By August 2023, on information and belief, she was preparing the ledger that tracked investor deposits as they were routed across Quinn's accounts — the mechanics of the diversion at the heart of the enterprise. *Id*. ¶ 106. Sixteen months later she became the enterprise's filer. *Id*. ¶ 71. On information and belief, she made the first filing anonymously (*id*. ¶¶ 65, 105); she made the second under her own name from her own home (*id*. ¶ 66); and she made the third beneath a recital that it served as a declaration under § 1.63, reciting a fabricated execution date and fabricated conveying parties on an instrument that carried Quinn's email address as a correspondence contact (*id*. ¶ 67). Every filing served the same alleged purpose — to cloud title to the assets of the people the enterprise had been defrauding since 2022 — and every filing was made after this action had exposed the scheme. *Id*. ¶¶ 65, 87.

Those facts support the inference that Namazi knew what the filings were for and agreed to make them. A person who, as alleged, tracked where the victims' money went, and who then transmitted a false instrument encumbering the victims' property after the first such filing was made anonymously, is not plausibly described as someone with no knowledge of what the filings were for. At the pleading stage the inference is Plaintiffs' to draw.

**4. The Momayez comparison supports Plaintiffs, not Namazi.**

The Motion argues that Plaintiffs' dismissal of Momayez and Niya — because filings were "made in their names without their knowledge or authorization" (FAC ¶ 13) — shows that "association with an allegedly improper filing does not, without knowledge of the alleged scheme, establish RICO liability." ECF No. 94 at 3. Plaintiffs agree, and the comparison is instructive. Momayez's name was placed on filings by others, without his knowledge; when that became clear,

Plaintiffs dismissed him. Namazi's name is on the filings because, as alleged, she put it there. She is the filer whose email, telephone, and address appear on the Nevada financing statement, and the signatory whose electronic signature appears on the USPTO submission. FAC ¶¶ 66–67. The FAC distinguishes between the person whose name was used and the person who used it. Namazi is alleged to be the latter.

**D. Any Dismissal Should Be Without Prejudice.**

A district court may dismiss without leave to amend only if "'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Sanchez v. Los Angeles Dep't of Transp*., 39 F.4th 548, 562 (9th Cir. 2022) (quoting *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988); cited at ECF No. 94 at 14). The Motion's futility argument is that Plaintiffs added Namazi after ECF No. 76 and "still fell short." ECF No. 94 at 4. But Namazi was not a party when ECF No. 76 was decided, has never before challenged the pleading, and the FAC is the first pleading to name her. Plaintiffs have had no prior opportunity to address any deficiency the Court may find as to her.

Nor could amendment be futile. If the Court concludes that Section H should contain a subsection collecting the Namazi allegations, that is a matter of organization that can be cured in a page. If the Court concludes that additional facts are required, facts of record exist that the FAC does not presently plead: among others, that the California filing was made not only on the day this action was commenced but one day after motions to quash service were served in the related Orange County action on behalf of Utherverse, Inc., Utherverse Digital Inc., and three other counter-defendants in this action, and that the secured party named on the Nevada filing is identified there by a Las Vegas address, FAC Ex. B.

**V. CONCLUSION**

The FAC pleads that Namazi filed the liens, under her own name and beneath a declaration recital, as the enterprise's designated filer and Quinn's longtime assistant. It pleads the facts from which her knowledge and agreement are inferred. It pleads the Nevada filing that gives this Court jurisdiction over her, and it invokes, in paragraph 2, RICO's nationwide-service provision. The Court should deny the Motion. Alternatively, if the Court concludes that any allegation is deficient,

Plaintiffs request dismissal without prejudice and leave to amend.

DATED: September 22, 2026

COLEMAN & HOROWITT, LLP

By: /s/ Sherrie M. Flynn

Sherrie M. Flynn, Esq.
Robert K. Ashley, Esq.
499 West Shaw Avenue, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Email: sflynn@ch-law.com

James W. Puzey, Esq.
800 South Meadows Parkway, Suite 800
Reno, Nevada 89521
Telephone: (775) 851-8700
Email: jpuzey@nvlawfirm.com

Attorneys for Plaintiffs Utherverse, Inc. and Brian Shuster and Counter-Defendants Utherverse, Inc., Brian Shuster, Utherverse Digital Inc., and Utherverse International, Ltd.