Naz Namazi
29726 Felton Drive
Laguna Niguel, CA 92677
Phone | (949) 295-4233
Email: filmmakernaz@gmail.com
Defendant, Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA - RENO DIVISION

| | |
|---|---|
| UTHERVERSE, INC., a Nevada corporation,<br>BRIAN SHUSTER, an individual,<br><br>Plaintiffs,<br>vs.<br>BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC.; BLOCKCHAIN ALLIANCE LLC; MASTERNODE PARTNERS, LLC; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a "NAZ NAMAZI," an individual,<br><br>Defendants | Case Number: 3:25-cv-00020-MMD-CSD<br><br>**DEFENDANT NAZANIN NAMAZI'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS I AND II OF THE FIRST AMENDED COMPLAINT** |

**DEFENDANT NAZANIN NAMAZI'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS I AND II OF THE FIRST AMENDED COMPLAINT**

Defendant Nazanin Namazi ("Namazi"), appearing pro se, respectfully submits this Reply in support of her Motion to Dismiss Counts I and II of the First Amended Complaint ("FAC") (ECF No. 94).

## I. INTRODUCTION

Plaintiffs' Opposition (ECF No. 100) confirms the central deficiency identified in Namazi's Motion: the FAC pleads what Namazi allegedly did, but does not plead facts plausibly showing what she knew.

Plaintiffs allege that Namazi acted as Quinn's assistant, allegedly prepared a ledger in 2023, and later made filings at Quinn's direction in 2025. From those acts, Plaintiffs ask the Court to infer that Namazi knew of the alleged years-long racketeering scheme, knowingly committed wire fraud, participated in operating the alleged enterprise, and knowingly agreed to facilitate its criminal objectives. The required knowledge and intent cannot be supplied merely by characterizing the acts themselves as fraudulent.

For Count I, the FAC must plausibly allege that Namazi participated in the operation or management of the alleged enterprise and committed at least two qualifying predicate acts. Reves v. Ernst & Young, 507 U.S. 170, 179, 185 (1993). Because Plaintiffs rely on wire fraud as Namazi's predicates, those acts require specific intent to defraud. Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014). Although intent may be alleged generally, the pleaded facts must still support a plausible inference that the particular defendant possessed that intent. Id. at 995 n.5, 999–1000. Plaintiffs plead two transmissions, but identify no nonconclusory allegation showing that Namazi knew the asserted security interest was unauthorized, knew the identified collateral was improper, knew the April 11, 2022 execution date was fabricated, or otherwise acted with specific intent to defraud.

For Count II, Plaintiffs must plausibly allege that Namazi knowingly agreed to facilitate the alleged RICO scheme and was aware of the essential nature and scope of the enterprise and

intended to participate in it. United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004), modified on other grounds, 425 F.3d 1248 (9th Cir. 2005); Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000). Performing an act at another person's direction is not the same as knowingly joining that person's alleged racketeering scheme.

Therefore, Counts I and II should be dismissed.

## II. PLAINTIFFS STILL DO NOT PLAUSIBLY ALLEGE THAT NAMAZI PARTICIPATED IN THE OPERATION OR MANAGEMENT OF THE ENTERPRISE

Plaintiffs argue that the allegation that Namazi acted “at Quinn's direction” supports rather than defeats the operation-or-management requirement because Reves recognizes that lower-rung participants may operate an enterprise under the direction of upper management. ECF No. 100 at 8–9. Namazi does not contend that acting at another person's direction categorically precludes § 1962(c) liability. But Plaintiffs' authorities illustrate what is missing here. Reves requires that a defendant have “some part in directing the enterprise's affairs.” 507 U.S. at 179. The Ninth Circuit accordingly requires an “element of direction”; merely performing services for an enterprise does not itself satisfy § 1962(c). Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008).

Plaintiffs rely on MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc., 62 F.3d 967 (7th Cir. 1995). But the lower-rung participants there were alleged to have knowingly undertaken predicate acts at management's direction and to have been vital to achieving the enterprise's primary goal. Id. at 978–79. Walter distinguished those circumstances. 538 F.3d at 1249. Indeed, Plaintiffs' own description of Walter identifies the distinction: a participant who “knowingly implements” management's decisions. ECF No. 100 at 9. That is precisely the factual bridge missing here.

The FAC alleges that Quinn and Denne “organized and directed” the enterprise. FAC ¶ 71. It alleges that Namazi acted “at the direction of Quinn,” FAC ¶ 12; that the California filing was made “at Quinn's direction,” FAC ¶ 105; and, regarding the USPTO submission, that

"Quinn directed and controlled the filing and caused the wire transmission," FAC ¶ 87. Plaintiffs nevertheless rely on the characterization that Namazi "executed [the enterprise's] filing operations." FAC ¶ 71; ECF No. 100 at 9.

But executing a filing does not itself establish direction of an enterprise. The FAC does not allege that Namazi decided whether the filings would be made, determined the patents or scope of the asserted security interest, directed another participant, exercised authority over an enterprise entity, negotiated the underlying transactions, or made enterprise decisions. Nor does the FAC allege circumstances comparable to MCM Partners. Plaintiffs describe an enterprise operating since 2022 through investments, SAFTs, token and stock transactions, loans, investor communications, and alleged diversion of proceeds. The two predicates attributed to Namazi occurred in May 2025. Plaintiffs' argument therefore assumes the fact that must be plausibly pleaded: that Namazi knowingly implemented fraudulent enterprise decisions.

The District of Nevada likewise distinguishes providing services from participating in operation or management. Adams v. Silar Advisors, LP, 2013 WL 1104787, at *3 (D. Nev. Mar. 11, 2013). The FAC alleges filing services at Quinn's direction. It does not plausibly allege that Namazi participated in operating or managing the enterprise as required by § 1962(c).

## III. THE FAC DOES NOT PLAUSIBLY ALLEGE TWO ACTS OF WIRE FRAUD BY NAMAZI

Plaintiffs identify two interstate-wire predicates attributed to Namazi: the May 23, 2025 Nevada filing and the May 30, 2025 USPTO submission. They expressly state that the California filing is context, not an additional wire predicate. ECF No. 100 at 10. Count I therefore depends upon both May transmissions qualifying as wire fraud.

Wire fraud requires "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." Eclectic Props., 751 F.3d at 997. Although Rule 9(b) permits intent to be alleged generally, Twombly and Iqbal still

require facts supporting a plausible inference of fraudulent intent. Id. at 995 n.5. Allegations providing "at best a possible basis" for believing that a defendant specifically intended to defraud are insufficient. Id. at 999–1000.

**A. The Difference Between an Execution Date and Filing Date Does Not Establish Knowledge That the Execution Date Was Fabricated**

Plaintiffs argue that because the USPTO submission was transmitted on May 30, 2025 but recited an April 11, 2022 execution date, Namazi may plausibly be inferred to have known "that the date was not genuine." ECF No. 100 at 10.

An execution date and a later filing or recordation date are different concepts. Knowledge that a document transmitted in 2025 bears a 2022 execution date establishes awareness of those dates. Without additional facts, it does not establish knowledge that the earlier date was fabricated. The relevant question is whether the FAC pleads facts plausibly showing that Namazi knew the 2022 execution date was false. Plaintiffs identify none.

**B. The Alleged Falsity of the Instrument Does Not Establish Namazi's Knowledge of Its Falsity**

Plaintiffs emphasize that the USPTO submission allegedly identified conveying parties who had conveyed nothing and included forty-four patents although the underlying note allegedly secured only UDI's assets. ECF No. 100 at 10. Those allegations concern the alleged falsity of the instrument, not Namazi's knowledge of its falsity. The FAC does not allege that Namazi negotiated the Niya Note, determined its collateral, maintained Plaintiffs' patent ownership records, participated in the underlying investment transaction, or otherwise possessed information establishing which assets could properly secure the obligation.

Plaintiffs thus collapse two distinct propositions: that the instrument contained false representations, and that Namazi knew those representations were false and transmitted them with specific intent to defraud.

The first does not establish the second.

**C. The Ledger Allegation Does Not Plausibly Establish Knowledge of Fraudulent Diversion**

Plaintiffs rely substantially on FAC ¶ 106, which alleges on information and belief that Namazi prepared a ledger tracking investor deposits routed across multiple Quinn-affiliated accounts. Even accepting that allegation as true for purposes of Rule 12(b)(6), it does not allege that Namazi knew those deposits were fraudulent, stolen, unauthorized, or unlawfully diverted.

Indeed, Plaintiffs contend that an assistant tracking investor deposits "may plausibly be inferred to know that they were being routed, and among whom." ECF No. 100 at 11. But knowledge that funds were routed, and among whom, is not knowledge that the routing was fraudulent or criminal. Describing those funds in the Opposition as "victims' money" or the ledger as reflecting the alleged diversion does not establish Namazi's knowledge of the alleged illegality.

Nor does Neubronner v. Milken, 6 F.3d 666 (9th Cir. 1993), cure the deficiency. Although information-and-belief pleading may sometimes be permitted where facts are peculiarly within the opposing party's knowledge, that exception "does not nullify Rule 9(b)." Id. at 672. Even assuming FAC ¶ 106 adequately alleges that Namazi prepared the ledger, the FAC must still plead facts supporting Plaintiffs' additional inference that she understood the transactions recorded there to constitute fraudulent diversion. It supplies none.

Taken together, the ledger allegation and later filings may make Plaintiffs' theory possible. Eclectic Properties requires facts supporting a plausible inference that Namazi herself possessed specific intent to defraud.

**D. Plaintiffs' Momayez Comparison Establishes Conduct, Not Knowledge**

Plaintiffs agree that association with an allegedly improper filing, without knowledge of the alleged scheme, does not establish RICO liability. ECF No. 100 at 14. They distinguish Momayez because his name allegedly appeared on filings without his knowledge, whereas

Namazi allegedly performed the filings herself.

That distinction establishes who allegedly performed the act. It does not establish whether the person performing it knew that the underlying representations were fraudulent. Because Plaintiffs attribute exactly two purported wire-fraud predicates to Namazi, FAC ¶¶ 103–104, failure adequately to plead fraudulent intent defeats the predicate-act requirement of Count I.

**IV. COUNT II STILL FAILS TO PLAUSIBLY ALLEGE A KNOWING AGREEMENT TO FACILITATE THE RICO SCHEME**

Plaintiffs correctly observe that Reves' operation-or-management requirement does not itself apply to § 1962(d). ECF No. 100 at 13. Namazi does not contend otherwise. But § 1962(d) still requires knowing agreement. Under Fernandez, a defendant need not personally operate or manage the enterprise, but she must "knowingly agree[] to facilitate a scheme which includes the operation or management of a RICO enterprise." 388 F.3d at 1230. A defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it." Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000) (quoting Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993)).

This Court applied that individualized requirement in its prior order, concluding that Plaintiffs had not adequately alleged that each defendant was aware of the essential nature and scope of the alleged conspiracy. ECF No. 76 at 13–14.

Plaintiffs respond that they need not plead a particular meeting, communication, confession, ownership interest, profit-sharing arrangement, or payment. ECF No. 100 at 14. Namazi does not contend that an express agreement is required. The question is whether the FAC pleads facts from which a knowing agreement can plausibly be inferred.

Plaintiffs rely on Namazi's alleged status as Quinn's assistant, the ledger, the three filings, and FAC ¶ 158's assertion that "Namazi agreed to and did execute the fabricated filings." But Plaintiffs themselves acknowledge that the latter allegation, "[s]tanding alone[,] ... would be" conclusory. ECF No. 100 at 13. The remaining allegations therefore must supply the factual

basis for knowing agreement. They do not.

Those allegations may support an inference that Namazi performed work for Quinn and made filings at his direction. They do not plausibly establish that she was aware of the essential nature and scope of an enterprise allegedly operating since 2022 through investor solicitations, SAFT and token transactions, stock transactions, loans, and alleged diversion of proceeds, or that she intended to participate in it.

Plaintiffs' ledger argument illustrates the gap. At most, they contend Namazi may be inferred to know that investor funds "were being routed, and among whom." ECF No. 100 at 11. That does not establish knowledge that the transfers constituted fraudulent diversion.

The contrast with Fernandez is instructive. There, evidence supporting RICO-conspiracy liability included collecting protection money, transmitting communications between murder conspirators, smuggling drugs into prison, and accepting payment for street drug sales. 388 F. 3d at 1230. Those facts supported awareness of the enterprise's essential nature and scope and intent to participate.

Here, the FAC identifies no communication informing Namazi that the liens were fraudulent or unauthorized; no participation in the underlying SAFT or investment transactions; no investor solicitation or token sales by Namazi; no receipt of investor proceeds by Namazi; and no allegation identifying when or how she supposedly learned of the enterprise's alleged criminal objectives. None of those particular facts is independently required. Their absence matters because the FAC must contain some factual basis from which knowing agreement can plausibly be inferred.

A person may knowingly perform a filing without knowingly joining a racketeering conspiracy, and may knowingly record transactions without knowing they are unlawful. Section 1962(d) requires the additional inference of knowing agreement. The FAC does not plausibly supply it.

**V. PLAINTIFFS CANNOT SUPPLY THE MISSING KNOWLEDGE AND INTENT**

**THROUGH CHARACTERIZATIONS IN THEIR OPPOSITION**

Plaintiffs describe Namazi as the enterprise's "designated filer," refer to deposits in the alleged ledger as "victims' money," describe the ledger as reflecting "the mechanics of the diversion," and characterize Namazi as knowingly implementing enterprise decisions. ECF No. 100 at 14. Those characterizations cannot substitute for factual allegations establishing the required elements.

Plaintiffs effectively concede the point as to FAC ¶ 158's allegation that "Namazi agreed to and did execute the fabricated filings," acknowledging that "[s]tanding alone it would be" conclusory. ECF No. 100 at 13. The remaining allegations therefore must make knowledge and agreement plausible. They do not.

Knowledge that funds were routed does not establish knowledge that the transfers were fraudulent. Knowledge that a document filed in 2025 bears a 2022 execution date does not establish knowledge that the earlier date was fabricated. Performing a filing at another person's direction does not itself establish knowledge that the asserted security interest was unauthorized.

Plaintiffs also state that "facts of record exist that the FAC does not presently plead." ECF No. 100 at 15. Their examples—that the California filing occurred one day after motions to quash service were served in related litigation and that the Nevada filing identified a Las Vegas address for the secured party—still do not supply the missing knowledge, fraudulent intent, or knowing agreement.

The complaint must be considered as a whole. But doing so does not change what its allegations say: they allege acts; they do not plausibly allege the knowledge and intent necessary to transform those acts into wire fraud, operation or management of a RICO enterprise, or knowing participation in a RICO conspiracy.

**VI. PLAINTIFFS' CONTINUITY AND JURISDICTION ARGUMENTS DO NOT CURE THE ELEMENTAL DEFICIENCIES IN COUNTS I AND II**

Plaintiffs argue that continuity may be assessed by reference to the alleged enterprise's broader pattern rather than solely by the seven-day interval between the two purported predicates attributed to Namazi.

Even assuming Plaintiffs are correct for purposes of this Motion, that does not cure Count I. Continuity cannot substitute for qualifying predicate acts. Plaintiffs must first plausibly allege that the transmissions attributed to Namazi constitute wire fraud committed with the required specific intent.

Plaintiffs' reliance on United States v. Basciano, 599 F.3d 184, 207 (2d Cir. 2010), does not resolve the issue in this Circuit. In Religious Technology Center v. Wollersheim, the Ninth Circuit examined whether the allegations established a "pattern of racketeering activity" by the particular defendants before it and measured continuity by the duration and threatened repetition of the predicate conduct attributed to those defendants. 971 F.2d 364, 366–67 (9th Cir. 1992). The court held that alleged predicate activity lasting six months, with no threat of future criminal conduct, did not establish continuity. Id. The two alleged predicates attributed to Namazi span only seven days, and the FAC identifies no future threat of racketeering activity by Namazi. At minimum, Plaintiffs' reliance on the enterprise's broader history does not eliminate their obligation to plausibly plead qualifying predicates attributable to Namazi in the first instance.

Plaintiffs also argue that specific personal jurisdiction exists because the Nevada UCC filing constitutes a Nevada contact and alternatively invoke 18 U.S.C. § 1965(b). Namazi preserves the jurisdictional arguments presented in ECF No. 94. See Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538–39 (9th Cir. 1986).

The Court need not resolve the broader jurisdictional issues to address the independent pleading deficiencies under Rule 12(b)(6). Even assuming personal jurisdiction for purposes of resolving those issues, Counts I and II fail for the reasons stated above.

**VII. DISMISSAL WITH PREJUDICE IS WARRANTED; ALTERNATIVELY, ANY**

**FURTHER AMENDMENT SHOULD BE LIMITED TO CURING THE IDENTIFIED DEFICIENCIES**

Plaintiffs emphasize that the FAC is the first pleading naming Namazi and request another opportunity to amend. ECF No. 100 at 15–16.

But Plaintiffs added Namazi after this Court had already identified the need for individualized RICO allegations. In ECF No. 76, the Court concluded that Plaintiffs had not adequately alleged that each defendant was aware of the "essential nature and scope" of the alleged conspiracy. ECF No. 76 at 13–14. Plaintiffs therefore drafted the FAC with that requirement already identified by the Court.

Nevertheless, the FAC still pleads no facts plausibly showing that Namazi knew the lien documents were unauthorized or false, possessed the specific intent required for wire fraud, participated in directing the enterprise's affairs, or knowingly agreed to facilitate the alleged RICO scheme. The additional facts identified in the Opposition likewise do not supply those missing elements.

Dismissal with prejudice is warranted where further amendment would be futile. See Sanchez v. Los Angeles Dep't of Transp., 39 F.4th 548, 562 (9th Cir. 2022). Alternatively, if the Court determines Plaintiffs should receive another opportunity to amend, Namazi respectfully requests dismissal without prejudice, with any leave to amend directed to curing the specific deficiencies identified by the Court and consistent with Federal Rule of Civil Procedure 11.

**VIII. CONCLUSION**

Plaintiffs' Opposition does not cure the central defect in the FAC. Plaintiffs plead what Namazi allegedly did. They still do not plausibly plead what she allegedly knew.

Count I requires facts plausibly establishing participation in the operation or management of the enterprise and qualifying predicate acts committed with specific intent to defraud. Count II requires facts plausibly establishing knowing agreement and awareness of the essential

nature and scope of the alleged enterprise. The FAC does not plead those facts.

For these reasons, Defendant Nazanin Namazi respectfully requests that the Court grant ECF No. 94, dismiss Counts I and II as asserted against her with prejudice, and dismiss Namazi from this action. Alternatively, Namazi requests dismissal without prejudice and such other relief as the Court deems appropriate.

DATED: September 28, 2026

Respectfully Submitted,

Nazanin Namazi
Defendant, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2026, I electronically filed the **foregoing DEFENDANT NAZANIN NAMAZI'S reply in support of motion to dismiss counts I and II of the first amended complaint** with the Clerk of Court using the Pro Se Portal, which will send notification of such filing to all registered participants.

DATED: September 28, 2026

/s/ Nazanin Namazi
Nazanin Namazi, Pro Se