MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,

Plaintiffs,

v.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a "NAZ NAMAZI," an individual,

Defendants.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; and MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company,

Counterclaimants,

v.

Case No.: 3:25-cv-00020-MMD-CSD

**COUNTERCLAIMANTS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE AMENDED COUNTERCLAIM**

| |
|---|
| UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation,<br><br>Counter-Defendants. |

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), and Masternode Partners, LLC ("Masternode"), (collectively "Counterclaimants"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, LLP, file this Memorandum of Points and Authorities in support of Counterclaimants' Opposition ("Opposition") to Counter-Defendants' Motion to Strike Portions of the Amended Counterclaim ("Motion").

This Opposition is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument this Court may request.

DATED this 30th day of September, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counter-Defendants move to strike allegations from the Amended Counterclaim ("ACC") that are neither impertinent, nor immaterial, nor scandalous—much less so impertinent, immaterial, or scandalous that they meet the high bar set by Rule 12(f). Counter-Defendants seek to strike an allegation mentioning the Niya Note[1] and Niya Holdings merely because Niya Holdings was dismissed from this action, but fail to recognize that the Niya Note was secured by Counterclaimants for the benefit of Counter-Defendants and in performance of the Consulting Agreement. Nor do Counter-Defendants explain how the Niya Note is prejudicial to them.

Counter-Defendants also seek to strike allegations relating to misrepresentations made by Shuster about the finances and assets of the remaining Counter-Defendants. Yet these allegations support Shuster as an alter ego of the remaining Counter-Defendants insofar as his misrepresentations about the funds and assets of the remaining Counter-Defendants evince undercapitalization and concealment of information supporting that he is an alter ego. These misrepresentations are also relevant background and historical information about the course of dealing and events that precipitated Counter-Defendants' breaches and unjust enrichment.

Finally, Counter-Defendants ask this Court to strike allegations to the extent they mention Shuster's ties to the pornography industry, asserting that they are scandalous. They are not. Counterclaimants claim damages of over $200,000 for expenses and efforts to remove Counter-Defendants' ties to the pornography industry, which were necessary to make Counter-Defendants marketable and profitable and to perform under the Consulting Agreement. These damages are high and substantiated specifically by the fact that they are based on public relations efforts to remove the taint of Counter-Defendants being affiliated with pornography. Removing any mention of pornography removes the justification for the high expenditures. These allegations further only mention the "pornography industry" instead of detailing the exact ways in which Shuster is associated with pornography—information Counterclaimants could have included but chose not to.

---

[1] All terms used herein have the same meaning as given them in the ACC unless stated otherwise. *See* ECF No. 88.

Accordingly, Counterclaimants respectfully request that this Court deny the Motion.

## II. ARGUMENT

### A. Legal Standard

"Motions to strike are not favored and 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *DS-Concept Trade Inv., LLC v. Morgan-Todt, Inc.*, No. 16-CV-02785-YGR, 2017 WL 2180982, at *3 (N.D. Cal. May 18, 2017) (quoting *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)). "When a court considers a motion to strike, it 'must view the pleading in a light most favorable to the pleading party.'" *Id.* (quoting *In re 2TheMart.com, Inc. Sec Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Id.*

"Rule 12(f) of the Federal Rules of Civil Procedure states that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fed. R. Civ. P. 12(f)). "Where the moving party cannot demonstrate the material will prejudice a party, 'courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f).'" *DS-Concept*, 2017 WL 2180982, at *3 (quoting *N.Y.C. Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009)).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Id.* (citing *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 121, n. 4 (D.P.R. 1972)). To be stricken as scandalous, allegations "must reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court." *Vay v. Huston*, No. CIV. A. 14-769, 2015 WL 4461000, at *4 (W.D. Pa. July 21, 2015) (quoting

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Donnelly v. Commonwealth Fin. Sys., Inc.*, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008)).

**B. The Niya Note Supports the Claim for Breach of the Consulting Agreement.**

Counter-Defendants contend that Paragraph 17 of the ACC must be stricken because it does not support any cause of action alleged in the ACC and Niya Holdings has been dismissed from the case. *See* Motion at 5:12-6:1. Counter-Defendants are mistaken. Counterclaimants' efforts to secure the Niya Note for the benefit of Counter-Defendants constitute a benefit conferred upon Counter-Defendants in furtherance of Blockchain Funding's performance of the Consulting Agreement. It therefore supports the claim for breach of the Consulting Agreement and the alternative claim for unjust enrichment.

The allegations in the ACC regarding the Consulting Agreement provide that "Blockchain Funding agreed to perform marketing and business development services, including, among others: services in connection with the launch and release of Utherverse Digital's token; . . . providing capital to cover expenditures associated with the [Utherverse] token[;] . . . and other services reasonably related to the token development and launch, as agreed upon by the parties." ACC ¶ 19. Quinn and Denne obtaining the Niya Note for Counter-Defendants, which provided Counter-Defendants with $1,350,000, qualifies as a "service in connection with the launch and release of Utherverse Digital's token[,]" "providing capital to cover expenditures associated with the [Utherverse] token[,]" or an "other service[] reasonably related to token development and launch[.]" *Id.*; *see id.* ¶ 17. Thus, Paragraph 17 supports Blockchain Funding's performance under the Consulting Agreement, and it is material and pertinent to Counterclaimants' claim for breach of the Consulting Agreement. *See id.* ¶¶ 51-60. Moreover, the Niya Note allegation supports the claim for unjust enrichment pled in the alternative to the claim for breach because Quinn and Denne obtaining the Niya Note constitutes a benefit that was conferred upon Counter-Defendants. *See id.* at ¶¶ 61-68.

The fact that the signposts in the ACC do not specifically cite Paragraph 17 does not render Paragraph 17 immaterial or impertinent. *See* Motion at 5:20-23. The claims for breach of the Consulting Agreement and alternative claim for unjust enrichment both incorporate all previous

allegations, so Quinn and Denne's efforts to secure the Niya Note are incorporated into the claims. *See* ACC ¶¶ 51, 61. Counter-Defendants cite no authority for the proposition that the claims were not permitted to incorporate Paragraph 17 in this manner or are forbidden from relying on allegations outside of those in a "signposting," and such incorporation by reference is permitted where it is clear what allegations pertain to what claims. *See Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co.*, LLC, No. 219-CV-00329-GMN-EJY, 2023 WL 2843649, at *3 (D. Nev. Jan. 30, 2023) (finding that "the general allegations [in the complaint] provide[d] context for Plaintiff's claims, and Plaintiff's incorporation of the general allegations into each Count d[id] not make the [complaint] a 'shotgun' pleading").

Counter-Defendants tie the fact that Niya Holdings is no longer in the case to no apparent principle of law that would require striking Paragraph 17. *See* Motion at 5:24-26. Both Niya Holdings and the Niya Note are a part of the history and context of the efforts made and funds secured by Counterclaimants for the benefit of Counter-Defendants in furtherance of the agreements alleged in the ACC. So they should not be stricken even if this Court credits Counter-Defendants' premise that Paragraph 17 does not directly support any claim. *See Belen as Co-Tr. of Tr. v. Herman*, No. 22 CIV. 6455 (AKH), 2025 WL 843745, at *1 (S.D.N.Y. Mar. 18, 2025) (concluding a motion to strike failed on the merits because the allegations "that [the] defendant [sought] to strike [were] relevant to provide critical context to [the] action, and to help explain its complicated history and background").

Counter-Defendants further make no effort to describe how Paragraph 17 prejudices them—especially when their Amended Complaint discusses the Niya Note at length. *See DS-Concept*, 2017 WL 2180982, at *3 ("Where the moving party cannot demonstrate the material will prejudice a party, 'courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f).'" (quoting *N.Y.C. Emps.' Ret. Sys.*, 667 F. Supp. 2d at 1128)); *see also, e.g.*, ECF No. 83 ¶¶ 26-29.

Additionally, Counter-Defendants' attempt to remove Paragraph 17 amounts to an attempt to erase efforts clearly made by Quinn and Denne for the benefit of Counter-Defendants. As a matter of equity, Counter-Defendants should not be able to do so.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**C. The ACC's Allegations Regarding Shuster's False Statements Are Pertinent and Material.**

Counter-Defendants contend that the allegations in the ACC regarding Shuster's misrepresentations must be stricken because they do not support the claims for breach of contract or unjust enrichment. *See* Motion at 6:2-7:5. These allegations should not be stricken because they are pertinent and material to Counterclaimants' alter-ego allegations—which are used to establish Shuster as a defendant to the claims in the ACC—and the history and context of events supporting the claims in the ACC. *See* ACC ¶¶ 48-50.

Under Nevada law, "[t]he alter ego doctrine applies if '(a) The corporation is influenced and governed by the stockholder, director or officer; (b) There is such a unity of interest and ownership that the corporation and the stockholder, director or officer are inseparable from each other; and (c) Adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008) (quoting Nev. Rev. Stat. § 78.747). "The Nevada Supreme Court has set forth factors to consider in the analysis of unity which include: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as individual's own; and (5) failure to observe corporate formalities." *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1214 (D. Nev. 2001). "Such factors may indicate an alter ego relationship, but no one factor is determinative." *Brown*, 531 F. Supp. 2d at 1242.

The fact that Shuster misrepresented the assets, finances, and financial success of the remaining Counter-Defendants evinces that the remaining Counter-Defendants were undercapitalized and Shuster concealed their undercapitalization, which is a factor to be considered in determining whether Shuster is an alter ego of the remaining Counter-Defendants. *See Mallard*, 153 F. Supp. 2d at 1214; ACC ¶¶ 15, 42, 45; Motion at 6:5-14. The misrepresentations further evince that Shuster was mismanaging funds, including potentially by commingling funds, diverting funds, treating the funds as his own, or otherwise flouting corporate formalities. *See Mallard*, 153 F. Supp. 2d at 1214. The exact manner in which Shuster mismanaged the remaining Counter-Defendants and their funds, thereby establishing a unity of interest with them, will be revealed

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

through discovery.

Counterclaimants are permitted to make the allegations in Paragraphs 15, 42, and 45 even if they are not pled in support of a fraud claim or directly support the breach or unjust enrichment claims. *See* Motion at 6:15-20. It is sufficient that the allegations support alter ego liability, which establishes Shuster as a counter-defendant to the claims in the ACC, and further form a part of the history of Shuster's conduct and course of dealing with Counterclaimants that ultimately precipitated Counter-Defendants' breaches of agreements and unjust enrichment. *DS-Concept*, 2017 WL 2180982, at *3 (explaining that motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation" and "must [be] den[ied] if there is any doubt whether the allegations in the pleadings might be relevant in the action" (quoting *Colaprico*, 758 F. Supp. at 1339)); *Belen*, 2025 WL 843745, at *1.

Counter-Defendants' concerns about prejudice are irrelevant given that Paragraphs 15, 42, and 45 are pertinent and material to the alter ego allegations (and thereby the claims in which Shuster is a counter-defendant) and the history underlying the claims in the ACC. Counter-Defendants' concerns about prejudice are, furthermore, belied by the fact that their Amended Complaint alleges a broad fraudulent scheme that will inevitably require discovery into the truth of Shuster's representations and his management of Counter-Defendants' funds, so they have already opened the door to the prejudice they now claim to fear. *See generally* ECF No. 83.

### D. The ACC's Allegations Regarding Shuster's Ties to the Pornography Industry Are Not Scandalous or Unnecessary.

Counter-Defendants contend that Paragraphs 40 and 46 of the ACC must be stricken to exclude their mention of pornography because they are impermissibly scandalous in their current form. *See* Motion at 7:6-23. According to Counter-Defendants, the public relations components of the allegations can stand alone. *See id.* at 7:12-17. Counter-Defendants' argument is unpersuasive.

Including the fact that the public relations efforts were to remove Counter-Defendants' ties to the pornography industry in particular is imperative to Paragraphs 40 and 46. Counter-Defendants will inevitably dispute the assessment of damages to be awarded to Counterclaimants based on the benefits they conferred in performance of the agreements or alternatively to enrich

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Counter-Defendants. *See* ACC ¶ 57 (stating that Counterclaimants performed as much as possible under the Consulting Agreement, including by performing the public relations and banking services described in Paragraphs 40 and 46). The fact that these public relations efforts were made to scrub Counter-Defendants of their ties to the pornography industry is a necessary detail to justify Counterclaimants seeking over $200,000 in damages for the public relations and banking efforts. *See id.* ¶¶ 40, 46. No doubt, if Counterclaimants merely alleged a "public relations" campaign for over $200,000, Counter-Defendants would argue that this amount is unreasonably high and should be reduced. It is ***because*** the public relations and banking efforts and funding were made to overcome the ties to the pornography industry that Counterclaimants expended this large amount of money and effort, and therefore mentioning the pornography industry is not merely a matter of making Counter-Defendants look bad as Counter-Defendants suggest. *See* Motion at 7:18-23.

Paragraphs 40 and 46 do not meet the scandalous standard in any event. That standard requires that allegations "must reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court." *Vay*, 2015 WL 4461000, at *4 *(quoting Donnelly*, 2008 WL 762085, at *4). Counter-Defendants do not cite authority or explain how this high standard is met, instead baldly asserting that Paragraphs 40 and 46 must be construed as nothing more than an attack on Counter-Defendants' character. *See* Motion at 7:18-23. However, these allegations merely mention the pornography industry and do not go into further detail. *See* ACC ¶¶ 40, 46. Indeed, Counterclaimants possess knowledge of exactly how Shuster associated Counter-Defendants with the pornography industry and could have pleaded additional details, but left the allegations to merely mentioning the "pornography industry" as necessary context to justify the amount of expenses and extent of effort for which Counterclaimants seek damages.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Thus, Paragraphs 40 and 46 of the ACC should not be stricken of their mention of the pornography industry.

**III. <u>CONCLUSION</u>**

For the foregoing reasons, Counter-Defendants' Motion should be denied in its entirety.

DATED this 30th day of September, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **COUNTERCLAIMANTS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE AMENDED COUNTERCLAIM** was served via electronic service on the 30th day of September, 2026.

*/s/ Dominique Hoskins*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP