MAXIMILIEN D. FETAZ, ESQ.
Nevada Bar No. 12737
mfetaz@bhfs.com
ZACHARY R. MEYER, ESQ.
Nevada Bar No. 15783
zmeyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone: 702.382.2101
Facsimile: 702.382.8135

*Attorneys for Defendants Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual,

Plaintiffs,

v.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company; LYNNE MARTIN, an individual; JEREMY ROMA, an individual; and NAZANIN NAMAZI a/k/a “NAZ NAMAZI,” an individual,

Defendants.

BRIAN QUINN, an individual; JOSHUA DENNE, an individual; BLOCKCHAIN FUNDING, INC., a Delaware corporation; BLOCKCHAIN ALLIANCE LLC, a Wyoming Limited Liability Company; and MASTERNODE PARTNERS, LLC, a Wyoming Limited Liability Company,

Counterclaimants,

v.

Case No.: 3:25-cv-00020-MMD-CSD

**COUNTERCLAIMANTS’ OPPOSITION TO COUNTER-DEFENDANTS’ MOTION TO DISMISS AMENDED COUNTERCLAIM IN PART, OR ALTERNATIVELY, ENTIRE COUNTERCLAIM**

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

UTHERVERSE, INC., a Nevada corporation, and BRIAN SHUSTER, an individual, UTHERVERSE DIGITAL INC., a Vancouver, British Columbia, Corporation; UTHERVERSE INTERNATIONAL, LTD., a British Virgin Islands Corporation,

Counter-Defendants.

Counterclaimants Brian Quinn ("Quinn"), Joshua Denne ("Denne"), Blockchain Funding, Inc. ("Blockchain Funding"), Blockchain Alliance LLC ("Blockchain Alliance"), and Masternode Partners, LLC ("Masternode"), (collectively, "Counterclaimants"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, LLP, file this Memorandum of Points and Authorities in support of Counterclaimants' Opposition ("Opposition") to Counter-Defendants' Motion to Dismiss Amended Counterclaim in Part, or Alternatively, Entire Counterclaim ("Motion").

This Opposition is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument this Court may request.

DATED this 1st day of October, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Relying heavily on their own assertions and little authority, Counter-Defendants move to dismiss the Amended Counterclaim ("ACC") on narrow but unavailing grounds. First, Counter-Defendants assert that Brian Shuster ("Shuster") must be dismissed as a Counter-Defendant because he is not named as a party to any of the contracts supporting the claims for breach. Yet the ACC plausibly alleges—including with particular allegations—that Shuster is an alter ego of the remaining Counter-Defendants who are parties to the contracts, making Shuster synonymous with the parties. The ACC further specifically names Shuster in the headings of its claims for breach, thereby complying with Rule 8.

Second, Counter-Defendants assert that Quinn, Denne, and Blockchain Alliance must be dismissed as Counterclaimants because they are not specifically named in any of the claims in the ACC. However, Counter-Defendants mischaracterize the ACC, which alleges alternative unjust enrichment claims on behalf of all "Counterclaimants" who conferred benefits upon Counter-Defendants, with "Counterclaimants" defined to include Quinn, Denne, and Blockchain Alliance.

Third, Counter-Defendants assert that the ACC is a shotgun pleading because its claims incorporate all previous allegations by reference and the new language in the claims identifying specific ranges of pertinent allegations is not sufficient to render them compliant with Rule 8. But Counter-Defendants' own Amended Complaint employs the exact same method of incorporating by reference and identifying pertinent allegations for three times as many general allegations. And this Court's case law permits incorporation by reference so long as it is clear what allegations correspond to what claim and further supports using signposting to do so. In any event, it is clear from the headings in the general allegations of the ACC what allegations apply to what claims, and the ACC's permissible signposting only bolsters this clarity, so the ACC complies with Rule 8.

Counterclaimants thus respectfully request that this Court deny the Motion in its entirety or, at a minimum, grant Counterclaimants leave to amend.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## II. FACTUAL BACKGROUND

On January 26, 2026, this Court granted Counter-Defendants' motion to dismiss without prejudice. *See* ECF No. 73 ("Order"). This Court concluded, among other things, that the allegations in the Counterclaim did not satisfy the Rule 8(a) pleading requirement and failed to plausibly allege claims for breach of contract. *See id.* at 7:3-7, 8:1-4.

Counterclaimants filed the ACC on August 18, 2026. *See* ECF No. 88. The ACC narrowed Counterclaimants' claims to four breach of contract claims and four claims for unjust enrichment. *See id.* ¶¶ 51-122. Each claim incorporates all previous allegations by reference—as permitted by this Court's case law—and cites the allegations "of particular relevance" to the claim, specifying the main allegations that apply. *See id.* ¶¶ 51, 61, 69, 79, 87, 97, 105, 115. Furthermore, there are now only 50 allegations in the general background section of the ACC, and the allegations are delineated by headings corresponding to the claims to which they apply. *See id.* ¶¶ 12-50.

The ACC includes a discrete "Alter Ego" section in which Counterclaimants describe how Shuster is an alter ego of the remaining Counter-Defendants. *See id.* ¶¶ 48-50. These allegations specify that the remaining Counter-Defendants were "inadequately capitalized in light of the nature of the business to be conducted and the accompanying risk of loss to [their] investors[,]" making "the capitalization of [the remaining Counter-Defendants] illusory." *Id.* ¶ 48(b); *see also id.* ¶¶ 49(b), 50(b). Further, Shuster is alleged to have used the remaining Counter-Defendants' "assets for his own personal use without regard to proper formalities[,]" causing the aforementioned undercapitalization, including by using "corporate funds to pay for personal travel and transferr[ing] company assets to his own account without proper documentation[.]" *Id.* ¶ 48(c); *see also id.* ¶¶ 49(c)-(d), 50(c).

Elsewhere in the ACC, Counterclaimants further describe Shuster's conduct establishing or concealing Shuster as an alter ego of the remaining Counter-Defendants. The ACC alleges that "Shuster owns and operates each of the [remaining Counter-Defendants], which act by and through Shuster." *Id.* ¶ 12. When Denne was introduced to Shuster, the remaining Counter-Defendants "did not have a functioning website, did not have any formal presentation materials, such as investment documents or subscription agreements, [] did not have a functional corporate structure, . . . [were]

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

critically devoid of effective management[,]" and "consisted of eleven (11) separate LLC's with no apparent ties to one another, . . . all operated by Shuster—a one man show." *Id.* ¶ 14. Shuster made various false representations about the remaining Counter-Defendants' finances. *See id.* ¶ 15. An accounting firm confirmed that Shuster misrepresented the revenue of the remaining Counter-Defendants. *See id.* ¶ 45. Shuster refused to hire a CFO who would have cleaned up the remaining Counter-Defendants' books and records, created proper budgets and timelines, and overseen use of investor funds. *See id.* ¶ 44. Shuster personally executed the contracts identified in the ACC on behalf of each Counter-Defendant. *See id.* ¶¶ 17, 24, 28, 32-33.[1] A former CEO of the remaining Counter-Defendants refused to continue working with Counter-Defendants due in part to a lack of effective corporate governance. *See id.* ¶ 43. And an expert who attempted to organize the Counter-Defendants' structure, including by documenting the remaining Counter-Defendants' intellectual property portfolio, could not verify their ownership of numerous patents. *See id.* ¶ 42.

The ACC further alleges the benefits conferred by Counterclaimants to Counter-Defendants. *See id.* ¶¶ 16-17, 38-46. These allegations include that Counterclaimants "expended significant funds to promote and advance the success of Utherverse,[[2]] totaling more than $1,500,000[,]" and a non-exhaustive list of the categories of the expenses. *Id.* ¶ 38. The allegations also describe specific efforts made by Denne to support the remaining Counter-Defendants. *See id.* ¶¶ 40-46.

Despite the foregoing allegations in the ACC, Counter-Defendants now move to dismiss Shuster as a Counter-defendant; to dismiss Quinn, Denne, and Blockchain Alliance as Counterclaimants; and to dismiss the ACC in its entirety for failure to comply with Rule 8(a).

## III. ARGUMENT

### A. Legal Standard

"Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot

[1] While the ACC does not affirmatively state that Shuster executed the Consulting Agreement (regardless, the evidence will confirm his signature), that alone is not enough to dismiss Shuster from the first cause of action given the alter ego allegations asserted against Shuster related to Utherverse Digital. *See infra* at § III.B.

[2] When used in singular form in the ACC or this Opposition, "Utherverse" refers to all Counter-Defendants.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

prove any set of facts in support of the claim that would entitle them to relief." *Hu v. Aria Resort & Casino LLC*, No. 2:25-CV-00320-MMD-NJK, 2025 WL 3124309, at *1 (D. Nev. Nov. 7, 2025) (Du, J.). "In making this determination, the Court takes as true all allegations of material fact in the complaint and construes them in the light most favorable to the plaintiff." *Id.* "Where, as here, the heightened pleading standard of Rule 9(b) does not apply, the complaint 'need only satisfy the Rule 8(a) notice pleading standard . . . to survive a Rule 12(b)(6) dismissal.'" *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008) (alteration in original) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004)).

To state a claim for breach of contract under Nevada law, "a plaintiff must allege '(1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages.'" Order at 7:11-16 (quoting *Sierra Development Co. v. Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016)).

### B. Shuster is a Party to the Agreements in the ACC Because He Is an Alter Ego of Utherverse.

Counter-Defendants assert that Shuster must be dismissed from all breach of contract claims in the ACC because he is neither a named party to the contracts nor specifically named in the claims. *See* Motion at 5:2-6:10. Nor, according to Counter-Defendants, is Shuster a party by virtue of being an alter ego of the remaining Counter-Defendants because the ACC fails to plausibly allege Shuster is an alter ego. *See id.* at 6:12-28. Counter-Defendants then emphasize changes to the alter ego allegations made over the course of previous iterations of the ACC and question whether it is "appropriate to permit further repleading, after four pleadings and the current one[.]" *Id.* at 7:21-22. Lastly, Counter-Defendants posit that, even if the ACC sufficiently alleged Shuster as an alter ego, doing so does not establish that Shuster is a party to the agreements supporting the breach claims because the claims do not explicitly state Shuster is a party or that the claims are proceeding under an alter-ego theory. *See id.* at 7:23-8:4. None of these arguments are persuasive.

#### 1. Alter-Ego Allegations May Supply the Party to a Contract.

"Where the alter ego doctrine applies, . . . the two corporations [or corporation and

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

individual] are treated as one for purposes of determining liability." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008) (alteration in original) (quoting *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983)). "The effect of applying the alter ego doctrine is that the corporation and the individual who dominates it are treated as one, 'so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . .'" *Id.* (alteration in original) (quoting *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974)). "For example, the Ninth Circuit held . . . that a breach of contract claim could proceed if a defendant was an alter ego or successor in interest to a party to the contract." *Id.* (citing *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (9th Cir. 2003)). "Because Nevada law implicitly sanctions contractual alter ego liability and other courts specifically have applied it, [Counter-Defendants'] contractual liability . . . extend[s] to [Shuster], if [Shuster is an] alter ego of" the remaining Counter-Defendants. *Id.*

Alleging that Shuster is an alter ego of the remaining Counter-Defendants named in the claims for breach—and specifically naming him in the headings—is sufficient to establish he was a party to the agreements. Rule 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first alteration in original) (internal citation omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The ACC not only clearly alleges that Shuster is an alter ego of each remaining Counter-Defendant—which makes Shuster synonymous with each Counter-Defendant and obviates the need to name him—but specifically names Shuster in the headings with each Counter-Defendant anyway. *See* ACC ¶¶ 48-50. These allegations provide Counter-Defendants with fair notice that Shuster is an alter ego of the remaining Counter-Defendants such that he is a party to the contracts. *See* Fed. R. Civ. P. 8(a)(2).

Counter-Defendants cite no authority for the proposition that identifying Shuster in the heading of the claims and making alter-ego allegations that are incorporated into the claims for breach are insufficient to identify him as a party to said claims. *See* Motion at 5:2-6:10; *see also* *Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co.*, LLC, No. 2:19-CV-00329-

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

GMN-EJY, 2023 WL 2843649, at *3 (D. Nev. Jan. 30, 2023) (finding that "the general allegations [in the complaint] provide[d] context for Plaintiff's claims, and Plaintiff's incorporation of the general allegations into each Count d[id] not make the [complaint] a 'shotgun' pleading"). And Counter-Defendants' arguments specifically challenging whether Shuster is a party to the agreements based on the alter-ego allegations reflect that the ACC sufficiently apprised them of the basis for Shuster's liability. *See* Order at 7:5-6 (finding Counterclaimants' claims did not satisfy Rule 8 because "it is unclear which allegations are meant to support what claims against which parties"); Fed. R. Civ. P. 8(a)(2).

**2. The ACC Plausibly Alleges Shuster as an Alter Ego of the Remaining Counter-Defendants.**

Under Nevada law,

> [t]he alter ego doctrine applies if '(a) The corporation is influenced and governed by the stockholder, director or officer; (b) There is such a unity of interest and ownership that the corporation and the stockholder, director or officer are inseparable from each other; and (c) Adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice.'

*Brown*, 531 F. Supp. 2d at 1241 (quoting Nev. Rev. Stat. § 78.747); *see also* Motion at 6:19 (citing NRS 78.747 for the alter-ego standard). "However, '[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case.'" *Brown*, 531 F. Supp. 2d at 1242 (alteration in original) (quoting *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 602, 747 P.2d 884, 887 (1987)). "The individual circumstances and interests of justice control." *Id.* "[F]raud or other wrongful purpose need not be proven." *Id.* (alteration in original) (quoting *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 233 (D. Nev. 1985)). "It is sufficient to show recognizing the separate corporate existence would bring about an inequitable result." *Id.*

"The Nevada Supreme Court has set forth factors to consider in the analysis of unity which include: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as individual's own; and (5) failure to observe corporate formalities." *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1214 (D. Nev. 2001).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

"Such factors may indicate an alter ego relationship, but no one factor is determinative." *Brown*, 531 F. Supp. 2d at 1242.

In *Las Vegas Sun*, this Court held that the Las Vegas Review Journal, Inc. ("RJ") alleged sufficient facts to establish that Greenspun Media Group, Inc. ("GMG") was an alter ego of the Las Vegas Sun, Inc. ("LVS"). *See Las Vegas Sun, Inc. v. Adelson*, No. 2:19-CV-01667-GMN-BNW, 2022 WL 876937, at *14 (D. Nev. Mar. 23, 2022). The RJ

> Provide[d] sufficient facts that 'GMG is the pertinent actor for much of the misconduct alleged in these claims.' In addition to this claim, RJ allege[d] that 'GMG owns, directly or through subsidiaries, [LVS], media websites—including LasVegasSun.com—and weekly magazines.' RJ also allege[d] that GMG 'comingles the finances of the various media entities' and 'improperly allocates expenses to the printed [LVS newspaper] instead of the [LVS] website to . . . make the [LVS] paper appear less profitable.' RJ thus alleges a plausible claim of alter ego for GMG.

*Id.* (last alteration in original) (internal citations omitted).

This Court further held in *Geanacopulos v. Narconon Fresh Start* that, although the plaintiffs "present[ed] largely conclusory [alter-ego] allegations[,]" the Court would "not foreclose plaintiffs' opportunity to [present sufficient evidence to support an alter-ego or agency theory] through discovery[.]" 39 F. Supp. 3d 1127, 1135 (D. Nev. 2014). This Court reasoned that the other allegations in the complaint made it "plausible that plaintiffs could show an alter ego or agency relationship." *Id.*

The alter-ego allegations in the ACC plausibly allege Shuster is an alter ego of the remaining Counter-Defendants. The ACC alleges in the alter-ego section and throughout the ACC that the remaining Counter-Defendants are influenced and governed by Shuster. *See, e.g.*, ACC ¶¶ 48(c), 50(c) (each alleging a "lack of separation between the entities and their owner[,]" Shuster); *id.* ¶¶ 49(b)-(c) (same); *id.* ¶ 12 (alleging "Counter-Defendant Shuster owns and operates each of the [remaining Counter-Defendants], which act by and through Shuster").

The ACC's alter-ego allegations satisfy each of the factors for unity of interest. *See Mallard*, 153 F. Supp. 2d at 1214; ACC ¶¶ 48(b), 49(b), 50(b) (alleging that the remaining Counter-Defendants "were inadequately capitalized [*i.e.*, undercapitalized] in light of the nature of the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

business to be conducted and the accompanying risk of loss to [their] investors"); *id.* ¶¶ 48(c), 50(c) (alleging that "Shuster used [*i.e.*, commingled, diverted, and/or treated as his own] [the remaining Counter-Defendants'] corporate funds to pay for personal travel and transferred company assets to his own accounts without proper documentation"); *id.* ¶¶ 48(d), 49(d), 50(d) (alleging that "[a]dherence to the fiction of separate corporate existence of [the remaining Counter-Defendants] and Brian Shuster would promote injustice" insofar as "Counter-Defendants used corporate assets for personal gain, such as for extravagant travel, blurring the line between personal and business interests."). The general allegations of the ACC also support the unity factors. *See, e.g.*, *id.* ¶ 14 (alleging that Shuster and the remaining Counter-Defendants "did not have a functional corporate structure, . . . were critically devoid of effective management" and were "all operated by Shuster—a one man show[,]" thereby establishing a lack of corporate formalities).

*Las Vegas Sun* confirms that the ACC plausibly alleges Shuster as an alter ego. The ACC allegations regarding Shuster's influence and governance over the remaining Counter-Defendants are as robust or more robust than the allegations deemed sufficient in *Las Vegas Sun*. *Compare Las Vegas Sun*, 2022 WL 876937, at *14 *with* ACC ¶¶ 12, 48(c), 49(c), 50(c). RJ tersely alleged that GMG "comingle[d] the finances of the various media entities" and "improperly allocate[d] expenses to the printed [LVS newspaper] instead of the [LVS] website" to establish unity of interest; both of these allegations are just as general as the ACC's allegations that "Shuster has used [the remaining Counter-Defendants'] assets for his own personal use without regard to proper formalities[,]" including by using "corporate funds to pay for personal travel and transfer[ring] company assets to his own accounts without proper documentation." *Las Vegas Sun*, 2022 WL 876937, at *14; ACC ¶¶ 48(c), 50(c); *see also id.* ¶ 49(c)-(d). And, while the sufficient allegations in *Las Vegas Sun* did not specifically explain how adherence to separateness would promote injustice, here, the ACC specifically states such adherence would promote injustice because "Counter-Defendants used corporate assets for personal gain, such as for extravagant travel, blurring the line between personal and business interests[,]" making the ACC alter-ego allegations more plausible with regard to the final element. ACC ¶¶ 48(d), 49(d), 50(d); *see Las Vegas Sun*, 2022 WL 876937, at *14.

Even assuming *arguendo* that the alter-ego allegations in the ACC are implausible despite being equivalent to those held sufficient in *Las Vegas Sun*, the remaining allegations in the ACC establish that Counterclaimants can plausibly show Shuster is an alter ego of the remaining Counter-Defendants, so *Geanacopulos* forecloses dismissal. *See* 39 F. Supp. 3d at 1135. The general allegations of the ACC establish that Shuster: is a "one man show," acting unilaterally on behalf of each of the remaining Counter-Defendants; has flouted corporate formalities; has made various false representations about the remaining Counter-Defendants' finances; has resisted or refused efforts to implement proper governance for the remaining Counter-Defendants; and has resisted or refused efforts to properly manage the remaining Counter-Defendants' funds. *See* ACC ¶¶ 12, 14-15, 17, 24, 28, 32-33, 42-45. These allegations are sufficient to sustain the alter-ego allegations even if they are conclusory so that Counterclaimants may prove Shuster is an alter ego of the remaining Counter-Defendants through discovery. *See Geanacopulos*, 39 F. Supp. 3d at 1135.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**a. Counter-Defendants' plausibility arguments are unavailing.**

Counter-Defendants employ fallacious tactics and make assertions unsupported by authority to contend that the alter-ego allegations are implausible. *See* Motion at 6:15-28. Counter-Defendants quote segments of the above-described alter-ego allegations to make a straw man argument that the allegations are impermissibly formulaic. *See id.* at 6:19-23. Counter-Defendants charge that the alter-ego allegations are pleaded "entirely on information and belief," but cite no authority proscribing pleading alter-ego allegations in this manner. *Id.* at 6:15-16. Counter-Defendants assert that the alter-ago allegations merely track the alter-ego elements "verbatim and add essentially nothing else[,]" but then cite "concrete particulars" in the very next sentence without explaining why these particulars are insufficient according to any authority. *Id.* at 6:20; *see id.* at 6:23-24. And Counter-Defendants emphasize that the alter-ego allegations are duplicated between each of the Counter-Defendant entities, but cite no authority supporting the proposition that doing so precludes plausibility. *See id.* at 6:24-26.

Notably, Counter-Defendants offer only a bare recitation of NRS 78.747 and citations to generic language from *Twombly* and *Iqbal*, but no authority considering the plausibility of alter-

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

ego allegations. This Court should rely on the case analyses provided above rather than Counter-Defendants' bald assertions.

**3. Previous Iterations of the Alter-Ego Allegations Are Irrelevant.**

Counter-Defendants describe the evolution of Counterclaimants' alter-ego allegations across previous iterations of the ACC and assert that not many changes have been made. *See* Motion at 7:1-22. Counter-Defendants ask this Court to consider "[w]hether it is appropriate to permit further repleading of this language, after four pleadings and the current one[.]" *Id.* at 7:21-22. Counter-Defendants present no authority or basis for applying a standard of "appropriateness" to determine whether alter-ego allegations should be dismissed. *See id.* at 7:1-22. This Court should decline to consider this non-cogent argument, which at best appears to be a request for this Court to manufacture some basis for dismissal of the ACC's alter-ego allegations. *See Goldberg v. Barreca*, No. 2:17-CV-2106-JCM-VCF, 2020 WL 954965, at *3 (D. Nev. Feb. 26, 2020) (declining to consider a motion to dismiss that merely requested dismissal, did not provide any grounds for dismissal, and did not present cogent argument or citation to legal authority).

If this Court elects to consider the appropriateness of the alter-ego allegations in light of the changes or lack thereof in previous iterations of the ACC, it should also consider the appropriateness of entertaining Counter-Defendants' arguments for dismissal in light of the fact that Counter-Defendants are only now seeking dismissal of the alter-ego allegations, despite not doing so in response to the previous iterations of the ACC. *See* Motion at 7:1-22.

**4. The ACC's Alter-Ego Allegations Sufficiently Establish Shuster as a Party to the Breached Contracts.**

Counter-Defendants mischaracterize the ACC and make incorrect assertions about how alter-ego allegations function with regard to breach of contract claims. *See id.* at 7:23-8:4. First, Counter-Defendants assert that an alter-ego theory cannot be a "substitute for the element it is offered to replace." *Id.* at 7:24. But Counterclaimants do not offer alter-ego allegations to "substitute" or "replace" any element of the claims for breach in the ACC. The ACC plausibly alleges each element for each of its breach of contract claims against the remaining Counter-Defendants, and because Shuster is an alter ego of those Counter-Defendants, he is equally liable.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*See* ACC ¶¶ 51-60, 69-78, 87-96, 105-14; *Brown*, 531 F. Supp. 2d at 1241 ("The effect of applying the alter ego doctrine is that the corporation and the individual who dominates it are treated as one, 'so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound . . . .'" (alteration in original) (quoting *Dudley*, 504 F.2d at 982). Indeed, Counter-Defendants do not identify any element that is lacking from the claims for breach in the ACC. *See* Motion at 7:23-8:4.

Without any accompanying explanation, Counter-Defendants cite *Ahcom Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010), as support for the aforementioned "substitution" argument. *See* Motion at 7:24-25. This page from *Ahcom* analyzes whether there is "such thing as a substantive alter ego claim" under California law, not whether alter-ego allegations can be used as substitutes for elements of a claim for breach under Nevada law. *Ahcom*, 623 F.3d at 1251; *see* Motion at 6:19 (relying on NRS 78.747 for the alter-ego standard).

Next, Counter-Defendants argue that "[e]ven a well-pleaded alter ego theory would not make Shuster a party to a contract he did not sign;[[3]] it would at most supply a derivative route to liability after a breach by the entity is established." Motion at 7:25-27. These assertions are false and unsupported by the authority to which Counter-Defendants cite (again) without any explanation. *See id.* at 7:25-28. As discussed, the ACC's well-pleaded alter-ego allegations indeed make Shuster liable for the breach of contract claims. *See Brown*, 531 F. Supp. 2d at 1241 (explaining that "Nevada law implicitly sanctions contractual alter ego liability"). And, under Nevada law, such liability is not derivative. *See id.* at 1241-42 (expounding on Nevada's alter-ego doctrine without stating that it is a form of derivative liability). The case Counter-Defendants baldly cite, *Double Bogey, L.P. v. Enea*, analyzed California's alter-ego doctrine—not Nevada's—and does not state or address whether alter-ego liability for a claim for breach can only ever be derivative under California law in any event. *See* 794 F.3d 1047, 1051-52 (9th Cir. 2015). Rather, *Double Bogey* appears to support direct liability for individuals who are alter egos. *See id.* at 1051-52 ("California's alter ego doctrine . . . acts as a procedural mechanism by which an individual can

[3] The ACC alleges that Shuster signed the relevant agreements. *See* ACC ¶¶ 17, 24, 28, 32-33. Counterclaimants interpret this assertion to mean Shuster did not sign in his individual capacity.

be held ***jointly liable*** for the wrongdoing of his or her corporate alter ego"); *id.* at 1052 (acknowledging that an "individual [can be] held liable for an act of his corporate alter ego under California law" and that an individual who is an alter ego "is held liable for his corporation's wrongdoing to provide an additional source of relief to the aggrieved party").

Lastly, without the support of any authority, Counter-Defendants provide a list of items they believe the ACC should have done to make it more clear to them that Shuster is alleged to be an alter ego of the remaining Counter-Defendants. *See* Motion at 7:28-8:4. None of these items are required for sufficient notice under Rule 8(a)(2). The claims for breach were not required to specifically "mention alter ego" or "incorporate paragraphs 48 through 50 by specific reference[.]" *Id.* at 7:28-8:1. As discussed, the claims provided sufficient notice to Counter-Defendants under Rule 8(a)(2) by virtue of making alter-ego allegations in the general allegations and specifically naming Shuster in the headings of the claims. Although not necessary to establish Shuster as a party given that it is obvious from the alter-ego allegations and headings of the breach claims that Shuster is liable for the remaining Counter-Defendants' breaches, each of the breach claims permissibly incorporates the alter-ego allegations by general reference, thereby "mentioning" the alter-ego allegations. *See Navajo Health Found.*, 2023 WL 2843649, at *3; ACC ¶¶ 51, 69, 87, 105. And Counter-Defendants' assertion that the breach claims "do not allege that Shuster is answerable for the entities' obligations" depends on their incorrect and unsupported premise that they can ignore Shuster's name in the claim headings. *See* Motion at 8:1-2.

The ACC thus plausibly alleges that Shuster is liable for the claims for breach as an alter ego of the remaining Counter-Defendants who are parties to the claims.

### C. Quinn, Denne, and Blockchain Alliance, Are Properly Named as Counterclaimants.

Counter-Defendants contend that Quinn, Denne, and Blockchain Alliance must be dismissed as Counterclaimants because they are not pled as Counterclaimants to any of the claims alleged in the ACC, "are not alleged to have conferred any benefit, and are not alleged to have suffered any damages." Motion at 8:16-17; *see id.* at 8:5-22. Counter-Defendants mischaracterize the ACC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The ACC pleads four unjust enrichment claims in the alternative to the four breach of contract claims. *See* ACC ¶¶ 51-122. Significantly, the second cause of action for unjust enrichment states that "Counterclaimants"—not just Blockchain Funding—incorporate by reference all allegations and, in particular, "allegations 18-23 and 38-46 of the General Background section[.]" *See id.* ¶ 61. Allegations 38-39 describe "Counterclaimants' Expenses and Efforts to Promote Utherverse[,]" which expenses each of Quinn, Denne, and/or Blockchain Alliance incurred for the benefit of Counter-Defendants in furtherance of the agreements, particularly the Consulting Agreement expressly requiring such expenditures. *Id.* § F (heading); *see id.* ¶¶ 19, 38-39. And allegations 40-46 detail examples of Denne's specific expenses in furtherance of the agreements. *See id.* at ¶¶ 40-46.

While the claim for breach of the Consulting Agreement does not expressly name Quinn, Denne, or Blockchain Alliance as a party, they are nonetheless "Counterclaimants" who conferred benefits on Counter-Defendants in furtherance of Blockchain Funding's performance of the Consulting Agreement, and thus the ACC plausibly alleges they unjustly enriched Counter-Defendants. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct."). Nevada law does not require more for a claim for unjust enrichment than Quinn, Denne, and Blockchain Alliance conferring benefits and Counter-Defendants retaining benefits as described in allegations 38-46. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010) (stating that the elements for unjust enrichment under Nevada law are "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant; (4) in circumstances where it would be inequitable to retain the benefit without payment"); *id.* ("An indirect benefit will support an unjust enrichment claim."). The ACC thus plausibly alleges a cause of action for unjust enrichment for Quinn, Denne, and Blockchain Alliance, so they should not be dismissed as Counterclaimants.[4]

---

[4] Furthermore, the ACC reflects that Counterclaimants collectively conferred benefits upon Counter-Defendants, so dismissal based on the technicalities identified is inappropriate,

Additionally, Counter-Defendants worry that, if Quinn, Denne, and Blockchain Alliance are allowed to remain as Counterclaimants, it will "expand[] the scope of discovery, the number of depositions, and the trial record for parties who have asserted nothing." Motion at 8:19-22. Regardless of the outcome of this Motion, it is highly unlikely that Counter-Defendants will forgo any discovery—much less depositions—of Quinn, Denne, or Blockchain Alliance, so this concern is disingenuous.

**D. The ACC Complies with Rule 8 and Is Not a Shotgun Pleading.**

Counter-Defendants contend that, because the ACC incorporates all previous allegations by reference, this Court must dismiss the ACC. *See* Motion at 8:23-9:7. According to Counter-Defendants, the "signposts" in each claim identifying specific ranges of allegations are insufficient to enable Counter-Defendants to identify what allegations are pertinent to each claim. *See id.* at 9:14-20. Counter-Defendants' arguments are unavailing.

It is worth noting at the outset that, if Counter-Defendants' arguments on this point were applied to their own Amended Complaint, it would need to be dismissed in its entirety. *See* ECF No. 83. Each claim in the Amended Complaint begins by incorporating all 150 of the general allegations—compared to only 50 in the ACC—with some claims signposting to the general allegations "in particular" that apply. *See id.* ¶¶ 152, 157, 160, 170, 178, 186, 193, 200, 208. The claims do not contain language otherwise limiting the 150 allegations incorporated by reference. If Counter-Defendants "cannot determine, for any given count, whether an allegation appearing elsewhere in the pleadings is being asserted against them under that count" when only 50 allegations are generally alleged in the ACC with clear headings and signposting, surely Counter-Defendants cannot expect Counterclaimants to do so with ***three times*** the number of allegations

---

especially when the Motion does not cite authority that such technicalities are dispositive. *See* Fed. R. Civ. P. 8(e) (requiring pleadings to be "construed so as to do justice"); *Hu*, 2025 WL 3124309, at *1 (Du, J.) ("Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief."); *see also* Motion at 8:7-22 (citing only *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), for the proposition that "[a] counterclaimant who pleads no claim has stated no claim upon which relief can be granted," which citation does not support this proposition). Alternatively, if this Court concludes that Quinn, Denne, and/or Blockchain Alliance are not sufficiently identified by the second claim for unjust enrichment, this Court should grant leave to amend to allow Counterclaimants to clarify their individual roles. *See* § E *infra*.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

being incorporated by reference. Motion at 9:17-18.

Irony aside, Counter-Defendants' argument is incorrect on the law. The standard for whether a pleading impermissibly incorporates all previous allegations by reference is not simply a categorical prohibition on incorporation by reference; it asks whether such incorporation leaves the opposing party unable to determine what allegations apply to what claims. *See Collins v. Nevada Dep't of Corr.*, No. 2:22-CV-01795-CDS-BNW, 2025 WL 638627, at *20 (D. Nev. Feb. 25, 2025) ("A 'shotgun pleading' is a 'pleading that excessively prioritizes breadth over depth such that the complaint is "***so vague and ambitious that [the defendants] [could] not reasonably be required to frame a responsive pleading***."'" (emphasis added) (alterations in original) (quoting *In re Mortgs. Ltd.*, No. 2:08-BK-07465-RJH, 2013 WL 1336830, at *12 (D. Ariz. Mar. 28, 2013)); *id.* (commenting that a shotgun pleading occurs when one party "does not identify which specific facts fit that count in that very count, but instead rely on a blanket incorporation clause that incorporates all of the statement of facts" (alterations omitted) (quoting *In re Mortgs. Ltd.*, 2013 WL 1336830, at *12)).

In *Navajo Health Foundation*, this Court held that a complaint consisting of "132 pages of 278 numbered paragraphs" was not a shotgun pleading, rejecting the defendants' argument that the complaint was a shotgun pleading based on its claims incorporating each preceding allegation by reference. *See* 2023 WL 2843649, at *2. This Court found "that the general allegations provide context for Plaintiff's claims, and [thus] Plaintiff's incorporation of the general allegations into each count [did] not make the [complaint] a 'shotgun' pleading." *Id.* at *3.

The ACC complies with Rule 8 and is not a shotgun pleading under the above standards. First, even without the signposting allegations, Counter-Defendants can reasonably be expected to figure out what allegations apply to which claim in the ACC and frame a responsive pleading because "the general allegations provide context for [Counterclaimants'] claims." *Id.* The ACC alleges four claims for breach of contract that have their own discrete headings demarcating allegations in the General Background section. *See* ACC ¶¶ 18-37, 51-60, 69-78, 87-96, 105-14. The alternative claims for unjust enrichment are specific to each contract, and are plainly based on the allegations corresponding to the contracts and/or the remaining allegations regarding the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

benefits conferred on Utherverse. *See id.* ¶¶ 38-46, 61-68, 79-86, 97-104, 115-22.

Second, the ACC includes signposting allegations, so Counter-Defendants' feigned inability to determine what allegations apply to any given claim is unpersuasive. *See id.* ¶¶ 51, 61, 69, 79, 87, 97, 105, 115. Counter-Defendants do not identify any authority stating that signposting cannot be used in addition to incorporation by reference to prevent a pleading from being a shotgun pleading. *See* Motion at 8:25-9:20. Rather, the authority relied on by Counter-Defendants and this Court appears to encourage signposting. *See Collins*, 2025 WL 638627, at *20 (commenting that a shotgun pleading exists when a party "does not identify which specific facts fit that count in that very count"); Order at 6:16-20 (citing *Collins*); Motion at 9:2-5 (same).

Because the ACC complies with Rule 8 and is not a shotgun pleading with or without the signposts, this Court need not indulge Counter-Defendants' request—unsupported by any authority or rule of procedure—that this Court specifically draft its order so "that Counterclaimants [are] held to the paragraph ranges they have identified." Motion at 9:19-20.

**E. At Minimum, Counterclaimants Should Be Granted Leave to Amend.**

If this Court grants Counter-Defendants' Motion on any of the grounds raised therein, the appropriate remedy is leave to amend rather than dismissal. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts.'" (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130, 1131 (9th Cir. 2000))). Assuming *arguendo* that the deficiencies posited by Counter-Defendants are correct, they are easily cured by adding facts about Counterclaimants and/or more definitive signposts in the claims. Furthermore, while Counter-Defendants emphasize that there have been previous iterations of the ACC and previous alter ego allegations, Counterclaimants are aware of no authority holding that the mere existence of previous iterations of pleadings or allegations negates the rule that leave to amend should be granted when the pleading can be cured by additional allegations of facts. *See id.*; Motion at 7:1-22**.**

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## IV. CONCLUSION

For the foregoing reasons, Counterclaimants respectfully request that this Court deny the Motion in its entirety or grant Counterclaimants leave to amend.

DATED this 1st day of October, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Maximilien D. Fetaz*
Maximilien D. Fetaz, Esq.
Zachary R. Meyer, Esq.
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for Brian Quinn, Joshua Denne, Blockchain Funding, Inc., Blockchain Alliance LLC, Masternode Partners, LLC, Lynne Martin, and Jeremy Roma and Counterclaimants*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **COUNTERCLAIMANTS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTERCLAIM IN PART, OR ALTERNATIVELY, ENTIRE COUNTERCLAIM** was served via electronic service on the 1st day of October, 2026.

*/s/ Dominique Hoskins*
An employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP